Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)
(Cite as: 2009 WL 1391537 (S.D.Cal.))

C
Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
DATAQUILL LIMITED, Plaintiff,
v.
HIGH TECH COMPUTER CORP., Defendant.
High Tech Computer Corp., Counterplaintiff,
v.
Dataquill Limited, Counterdefendant.

No. 08cv543-IEG-LSP.
May 14, 2009.

West KeySummaryPatents 291 ⇌314(1)

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k314 Hearing
            291k314(1) k. In General. Most Cited Cases
    Patentee, bringing action alleging infringement of patents relating to handheld mobile devices, failed to demonstrate a stay pending Patent and Trademark Office's (PTO) ex parte re-examination of the patents-in-suit would cause undue prejudice, by arguing that a stay would cause delay in collecting monetary damages, a delay in excluding alleged infringer from practicing the patent, and loss of value of its license. Patentee failed to show that monetary damages would inadequately compensate it for those alleged injuries.

Gregory S. Markow, Hecht Solberg Robinson and Goldberg, San Diego, CA, Greg Smith, Attorney at Law, Chicago, IL, for Plaintiff and Counter-Defendant.

Frederick William Kosmo, Jr., Wilson Petty Kosmo and Turner LLP, San Diego, CA, Gregory A. Duffey, Michelle C. Replogle, Peter J. Chassman, Howrey LLP, Houston, TX, for Defendant.

ORDER GRANTING HTC'S MOTION TO STAY THE PROCEEDINGS PENDING PATENT REEXAMINATION
IRMA E. GONZALEZ, Chief Judge.

*1 In this patent infringement action, Defendant High Tech Computer Corp. ("HTC") has filed a motion to stay the proceedings pending the U.S. Patent and Trademark Office's ("PTO") ex parte reexamination of the patents-in-suit. (Doc. No. 21.) Plaintiff DataQuill Limited ("DataQuill") opposed and HTC replied. After considering the parties' submissions, and for the reasons set forth below, the Court GRANTS HTC's motion.

BACKGROUND
On May 2, 2000, the PTO issued U.S. Patent No. 6,504,304 ("the '304 patent") to DataQuill. The technology at issue relates to handheld mobile devices with remote access capability and optional features such as a touch sensitive screens or integrated cameras.

In November 2006, the PTO issued U.S. Patent No. 7,139,591 ("the '591 patent") to DataQuill. The '591 patent also claims inventions in the field of handheld mobile devices. From May 2006 to late 2008, DataQuill pursued infringement counterclaims against a third party to enforce the '304 and '591 patents in the Northern District of Texas (the "Texas Action").

Currently, the PTO is conducting an ex parte reexamination of both the '304 patent and the '591 patent. The reexamination of the '304 patent began on January 25, 2007, at the request of a third party. The PTO found a substantial question of patentability existed and rejected all of the '304 patent's claims. DataQuill responded to this rejection and now awaits further PTO action.

On February 9, 2007, a third party requested the PTO reexamine the '591 patent. The PTO found a substantial question of patentability existed and rejected all claims of the '591 patent. However, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)
(Cite as: 2009 WL 1391537 (S.D.Cal.))

PTO reopened the prosecution after a March 4, 2009 meeting with DataQuill. On April 8, 2009, the PTO issued a "Notice of Intent to Issue a Reexamination Certificate," finding the '591 patent's claims to be patentable.

DataQuill alleges HTC infringed both the '304 patent and the '591 patent. HTC answered and filed counterclaims on December 8, 2008. On January 27, 2009, DataQuill received a 60-day extension to respond to HTC's counterclaims. (Doc. No. 4.) The Early Neutral Evaluation Conference occurred on February 9, 2009.[FN1] On April 1, 2009, HTC filed this motion to stay the proceedings. The Court has delayed scheduling the Case Management Conference pending resolution of this motion.

> FN1. HTC asserts "the Early Neutral Evaluation conference has yet to transpire ...." (Def. Mot. at 1.) However, the docket reflects the ENE occurred on February 9, 2009. (Doc. No. 18.)

**LEGAL STANDARD**

A court has the inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422,1426-27 (Fed.Cir.1988). "The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court." *SKF Condition Monitoring, Inc. v. SAT Corp.,* 2008 WL 706851 at *6 (S.D.Cal. February 27, 2008). When faced with parallel PTO reexamination proceedings, courts generally favor granting the stay. *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994). Courts consider three factors when evaluating the propriety of a stay: "(1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case." *SKF Condition Monitoring,* 2008 WL 706851 at *6 (citing *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)).

**DISCUSSION**
**A. Stage of the Proceedings**

*i. Parties Arguments*

*2 HTC argues the early stage of litigation weighs in favor of the stay. According to HTC, the ENE has not occurred, the Case Management Conference has not been scheduled, and discovery has not commenced. HTC emphasizes opinions of other courts that have stayed actions pending reexamination even when the parties have partially or substantially completed discovery, citing *SKF Condition Monitoring,* 2008 WL 706851 at *6, and *Sorenson v. The Black and Decker Corp.,* 2007 U.S. Dist. LEXIS 66712, at *10 (S.D.Cal. Sept. 10, 2007).

DataQuill argues progress in related cases weighs against a stay. DataQuill notes HTC's counsel, who represented a third party in the Texas Action, already has experience with the disputed patents. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 2008 U.S. Dist. LEXIS 102716, at *5-6, 2008 WL 5335400 (D.Del. December 19, 2008). This experience, argues DataQuill, will allow HTC to shorten discovery and claim construction proceedings, thereby, mitigating the need for a stay. DataQuill also argues HTC has impeded progress of the suit, which weighs against the stay. *Sorensen v. AmPro Tools Corp.,* 2009 U.S. Dist. LEXIS 21627, at *3-6, 2008 WL 5335400 (N.D.Cal. March 9, 2009).

HTC notes the Texas Action did not involve the '591 patent because it had not yet issued. Because the '591 patent did not exist, HTC's lawyers have not deposed the inventors.

*ii. Analysis*

The action is in its infancy: discovery has not commenced and the Court has delayed setting the Case Management Conference during the pendency of this motion. This factor weighs in favor of a stay.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)
(Cite as: 2009 WL 1391537 (S.D.Cal.))

*See, e.g., Tesco Corp. v. Weatherford Int'l, Inc.,* 599 F.Supp.2d 848, 853 (S.D.Tex.2009) ("Here, the case has just begun, no trial date has been set, and the Court delayed entry of a scheduling order until this motion to stay was decided. This factor weighs in favor of a stay.").

The completion of discovery in the Texas Action is irrelevant. Other courts evaluate the extent discovery has been completed in related cases only when both actions involve the same parties and issues. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc,* 2008 U.S. Dist. LEXIS 102716, at *5-6, 2008 WL 5335400 (D.Del. December 19, 2008). However, HTC was *not* a party to the Texas Action. HTC is entitled to its own discovery and claims construction proceeding. The participation of HTC's *counsel* in other suits is immaterial to HTC's right to discovery in this action. Further, the '591 patent was not at issue in the Texas Action.

HTC's purported dilatory tactics do not alter this Court's conclusion, notwithstanding DataQuill's reliance on *Sorensen.* In *Sorensen,* the court discounted the early stage of the proceedings and granted the stay because the defendant had "stalled th[e] action for almost one year." *Sorensen,* 2009 U.S. Dist LEXIS 21627, at *6, 2008 WL 5335400. Specifically, the defendant "refused to participate in the proceedings for almost one year" and "did not even begin to respond to [plaintiff's] claim until the clerk made the default entry." *Id.* at *5. Unlike the *Sorensen* defendant, HTC filed an answer, waived service, and participated in ENE. Therefore, the Court finds *Sorensen* inapplicable and the stage of the proceedings favors a stay.

**B. Undue Prejudice or Disadvantage**

*i. Parties Arguments*

*3 HTC argues a stay would not prejudice DataQuill because it has an adequate remedy at law, citing *SKF Condition Monitoring,* 2008 U.S. Dist. LEXIS 24310, at *19. HTC asserts DataQuill's delay in prosecuting the alleged infringement demonstrates DataQuill does not believe delay will cause prejudice.

DataQuill contends its ability to license its patents will be hampered by the stay and evidence may be lost. DataQuill believes its ability to pursue injunctive relief is irrelevant and argues it has diligently pursued this action. Further, DataQuill argues proceeding with the case will not harm HTC because it is "already up to speed." (Pl. Opp. at 13.) DataQuill also argues the '591 patent has been deemed "patentable" by the PTO, therefore, there is no reason to grant the stay. Based on these arguments, DataQuill concludes a stay would be unduly prejudicial.

*ii. Analysis*

"Where Plaintiffs have an adequate remedy at law, there is no undue prejudice." *SKF Condition Monitoring,* 2008 U.S. Dist. LEXIS 24310 at *19 (internal quotations omitted). Here, DataQuill claims a stay would cause a delay in collecting monetary damages, a delay in excluding HTC from practicing the patent, and loss of value of its license. DataQuill has not shown monetary damages will inadequately compensate it for these alleged injuries. Further, although DataQuill worries the reexamination will delay prosecution of its infringement claims, the delay caused by the reexamination process "does not constitute, by itself, undue prejudice." *Photoflex Prods. v. Circa 3 LLC,* 2006 U.S. Dist. LEXIS 37743 at *5 (N.D.Cal. May 23, 2006). Additionally, the potential loss of evidence, while relevant, is not dispositive. None of the cited cases relied exclusively on the potential loss of evidence when denying a stay. *See, e.g., Sorensen v. AmPro Tools Corp.,* 2009 U.S. Dist. 21627 at *6 (considering the bad faith dilatory tactics, which threatened a loss of evidence, when denying the stay). Accordingly, the Court finds a stay will not unduly prejudice DataQuill.

**C. Simplifying the Issue and Streamline the Tri- al**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)
(Cite as: 2009 WL 1391537 (S.D.Cal.))

*i. Parties' Arguments*

HTC argues a stay will simplify the issues for trial. HTC contends the Court can benefit from the PTO's expert evaluation of the claims in both patents. Additionally, if the PTO finds any of the claims invalid, then the infringement issue could be mooted. Finally, HTC discusses the problems arising from a scenario in which it is held liable for infringement, but the patent is later invalidated.

DataQuill believes a stay will not simplify the issues because the PTO has already found the amended claims of the '591 patent are patentable and the reexamination of the '304 patent does not affect some of the issues in this action.

HTC's reply is three-fold. First, HTC notes the PTO only issued the "Notice of Intent to Issue a Reexamination Certificate" after extensive amendments to the '591 patent. Therefore, HTC urges, the Court should await the final results of the reexamination, which bear upon claim construction and prosecution history estoppel. Second, HTC contends a "Notice of Intent to Issue a Reexamination Certificate" does not guarantee the PTO will issue a reexamination certificate, citing *Panduit Corp. v. Hellermannyton Corp.*, 2005 U.S. Dist. LEXIS 5627 (N.D.Ill.2005) (refusing to lift stay upon the PTO's issue of notice of intent to issue a reexamination certificate until the reexamination certificate actually exists). Third, HTC argues regardless of the '591 patent's status, the Court should stay the action pending the reexamination of the '304 patent.

*ii. Analysis*

*4 The Court finds the stay will result in the simplification of issues in this case. As the Federal Circuit explained, the "purpose of the reexamination procedure is to eliminate trial" of the issue of patent claim validity. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983). As one Court noted, "historical data indicates that a patent undergoing re-examination is more likely than not to change in some way, which would be grounds to justify a stay." *Abbott Laboratories, Inc. v. Medtronic, Inc.*, 2009 WL 799404, at *3 (N.D.Cal. March 24, 2009). In this case, the Court will benefit from the PTO's evaluation of the prior art. DataQuill has extensively amended the '591 patent during reexamination. Similar amendments could occur during the reexamination of the '304 patent-which would profoundly impact claim construction and the evaluation of prosecution history.

Further, the stay will continue until the PTO completes reexamination of both the '304 patent and the '591 patent. "When there are overlapping issues between [a] reexamined patent[ ] and other patents in suit, courts have found staying the entire case to be warranted." *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *4 (N.D.Cal. March 16, 2006). Courts have stayed the entire action if reexamination of one patent would significantly affect the litigation of the non-examined patent. *Id.* Here, the '304 patent is the parent application to the '591 patent, meaning many of the claims taught in the '304 patent affects the interpretation of the '591 patent. Therefore, a stay of the entire action is warranted pending completion of the PTO's reexamination of both patents.

**D. Balancing the Factors**

All of the factors weigh in favor of granting the stay. Accordingly, the Court finds a reasonable stay of 90 days is appropriate to avoid the risk of unnecessary litigation and to clarify the issues before the Court. If the PTO completes reexamination within the 90 day period, counsel shall notify the Court in writing. Additionally, either party may move for exception to the stay if it reasonably believes an exception is needed to preserve evidence. Therefore, HTC's motion to stay is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS HTC's Motion to Stay. The Court will conduct a status conference for *August 31, 2009 at 10:30 a.m.* The parties should submit a status report on the reexamination process no later than *August 17, 2009.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)
**(Cite as: 2009 WL 1391537 (S.D.Cal.))**

**IT IS SO ORDERED.**

S.D.Cal.,2009.
Dataquill Ltd. v. High Tech Computer Corp.
Not Reported in F.Supp.2d, 2009 WL 1391537 (S.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.