Westlaw.

Page 1

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

C
Only the Westlaw citation is currently available.

United States District Court,
W.D. Michigan,
Southern Division.
MAGNA DONNELLY CORPORATION, Plaintiff,
v.
PILKINGTON NORTH AMERICA, INC., et al.,
Defendants.

No. 4:06-CV-126.
March 12, 2007.

David Michael Schoenherr, Jeffrey A. Sadowski, Kristopher K. Hulliberger, Howard & Howard Attorneys PC, Bloomfield Hills, MI, for Plaintiff.

John Frank Rabena, Sughrue Mion PLLC, Washington, DC, Scott L. Gorland, James D. Vandewyngearde, Pepper Hamilton LLP, Detroit, MI, for Defendants.

*OPINION*
ROBERT HOLMES BELL, Chief United States District Judge.

*1 Plaintiff Magna Donnelly Corporation has filed the instant patent infringement action under 35 U.S.C. §§ 101 and 271, alleging that Defendants Pilkington North America, Inc. and United L-N Glass, Inc. have infringed nine patents-in-suit to which Magna Donnelly is the current assignee of right.[FN1] The matter presently is before the Court on Defendants' motion to stay the litigation (Docket # 23) pending determination of Defendants' requests for reexamination by the United States Patent and Trademark Office ("PTO") of all of the patents-in-suit. For the reasons that follow, the motion is granted.

> FN1. The following are the nine patents-in-suit: United States Patent 5,551,197 ("the '197 patent"); United States Patent 5,704,173 ("the '173 patent"); United States Patent 5,853,895 ("the '895 patent"); United States Patent 5,966,874 ("the '874 patent"); United States Patent 6,068,719 ("the '719 patent"); United States Patent 6,128,860 ("the '860 patent"); United States Patent 6,298,606 ("the '606 patent"); United States Patent 6,319,344 ("the '344 patent"); and United States Patent 6,871,450 ("the '450 patent").

I.
The instant action was filed on October 17, 2006 against these and other Defendants. The nine patents-in-suit involve a series of bonded vehicular window assemblies and bonding methods. Plaintiff alleges that Defendants are willfully manufacturing automotive windows that infringe upon Plaintiff's patents and are thereby causing Plaintiff a loss of sales and undermining Plaintiff's competitive position.

After a stipulated dismissal of the other named Defendants, the remaining Defendants filed answers to the complaint, affirmative defenses and counterclaims on December 28, 2006. Defendants' counterclaims seek declaratory judgment on the grounds of noninfringement, invalidity and unenforceability of the patents. Plaintiff answered Defendants' counterclaims on January 17, 2007. The Court ordered a scheduling conference before the Magistrate Judge for January 29, 2006.

In the interim, on January 26, 2007, Defendant Pilkington filed requests with the PTO for reexamination of all nine patents. The requests for reexamination seek to invalidate the patents-in-suit on the grounds of prior art not considered by the PTO during prosecution of the patents-in-suit. On January 29, 2007, Defendants filed the instant motion to stay the litigation pending resolution by the PTO of the requests for reexamination. During the scheduling conference held that same date, the Magistrate Judge reserved issuing a scheduling order until after this Court had resolved the instant motion. At

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

this date, due dates for FED. R. CIV. P. 26(a)(1) disclosures, fact discovery and expert discovery have not been established and no discovery has been conducted. In the parties' joint status report filed January 24, 2007, Plaintiff has requested that Rule 26(a)(1) disclosures be delayed until May 1, 2007.

## II.

Reexamination of patent validity is allowed under 35 U.S.C. § 301 *et seq.* A reexamination may be requested at any time by any person upon showing the existence of "prior art," "consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." 35 U.S.C. §§ 301, 302. Within three months of the request, the PTO must determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications." 35 U.S.C. § 303(a). Reexamination, if granted, may result in an order cancelling the patent as unpatentable, confirming the patent, or amending the patent. *See* 35 U.S.C. § 282; *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F.Supp.2d 481, 483 (D.Md.2006).

*2 "The primary purpose of the reexamination procedure is to 'eliminate trial of that issue (when the [patent] is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [USPTO] (when a claim survives the reexamination proceedings).' " *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983)); *Glafish v. Tyco Toys, Inc.*, 1993 WL 625509, 29 U.S.P.Q.2d 1718 (E.D.Cal. Sept.15, 1993). The intent of Congress in establishing the reexamination procedure was to provide an inexpensive and rapid resolution that would provide the federal courts with the expertise of the PTO in resolving patent claims. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed.Cir.1985). Courts have noted that issuing a stay has many advantages, including the narrowing or elimination of issues, the alleviation of discovery problems, the encouragement of settlement, the benefit to the court of PTO expertise, the simplicity of introducing the PTO record as evidence at trial, and the reduction of costs for both the parties and the court. *See Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, No. 03-2330, 2005 WL 2175436, at *2 (W.D.Tenn. Sept.1, 2005); *Ralph Gonocci Revocable Living Trust v. Three M Tool & Machine, Inc.*, 2003 U.S. Dist. LEXIS 24423, 68 U.S.P.Q.2D (BNA) 1755 (E.D.Mich. Oct.7, 2003) (quoting *Emhart Indus. v. Sankyo Seiki Mfg. Co. Ltd.*, 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2D 1889, 1890 (N.D.Ill.1987)); *see also Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2D 1633, 1635 (S.D.N.Y.2000).

The decision whether to issue a stay rests within the sound discretion of the district court. *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F.Supp. 951, 953 (W.D.N.Y.1996); *Gonocci*, 2003 U.S. Dist. LEXIS 24423 at *5 (citing *Gould*, 705 F.2d at 1342.) In determining whether to grant a stay, courts routinely have considered three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See, e.g., Akzenta*, 464 F.Supp.2d at 484; *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032 (C.D.Cal.2005); *Lectrolarm*, 2005 WL 2175436, at *3; *Gonocci*, 2003 U.S. Dist. LEXIS 24423 at *7; *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406-07 (W.D.N.Y.1999).

Defendants argue that, in the instant case, all three factors point to the granting of a stay. The Court finds that, on balance, the factors weigh heavily in favor of a stay.

### A. *Simplification of Issues*

Defendants argue that a stay of litigation pending determination by the PTO will simplify or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

moot the issues before this Court. In addition, the grant of a stay will benefit the Court by ensuring the availability of the PTO's expertise and experience to resolve the remaining issues. Further, they argue that the PTO's reexamination is likely to prevent either the parties or the Court from litigating claims that may be declared void by the PTO. For all these reasons, they argue that both efficiency and judicial economy favor staying the litigation.

*3 In response, Plaintiff contends that, because only 12% of reexamination proceedings result in the invalidation of a patent and because Plaintiff views Defendants' grounds for reexamination as weak, the litigation, in all likelihood, will not be mooted by the PTO's reexamination. While Plaintiff acknowledges that in 59% of the cases, some claims are changed during reexamination, it argues that, because trial will still likely be necessary and because invalidity of the patents will continue to be an issue, the reexamination procedure will not simplify the case.

Plaintiff's argument proves too much. The mere fact that reexamination is not likely to completely dispose of the case does not mean that issues will not be simplified by reexamination. The statistics recited by both parties clearly indicated that patent claims are invalidated or modified in over 70% of reexamination proceedings conducted. The cases cited by the parties strongly suggest that reexamination generally, though not always, simplifies litigation. *See, e.g., Gonocci,* 2003 U.S. Dist. LEXIS 24423 at 13 (noting that, even if issues are not eliminated, the PTO's decision will be admissible and will carry a presumption of validity); *Softview,* 2000 U.S. Dist. LEXIS 11274 at *10 (emphasizing the significance of PTO's expertise as factor in simplification); *IMAX,* 385 F.Supp.2d at 1032 (recognizing that stay will always simplify the issues to some extent by narrowing discovery and providing PTO expertise, even if in particular case, other claims are so likely to predominate that simplification is not sufficient). Those cases cited by Plaintiff to the contrary typically rest on the particular facts and stage of the litigation in issue, where the potential for simplification is small. *See, e.g., Nexmed Holdings, Inc. v. Block Inv., Inc.,* No. 2:04-cv-288, 2006 WL 149044, at *1 (D.Utah Jan.19, 2006) (noting that, because the defense of invalidity was waived and the case was at late stage of proceedings, stay would not simplify issues); *Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D.Del. June 29, 2001) (in light of late stage of litigation and existence of large number of claims not linked to the patent infringement claim, reexamination would not significantly simplify the case); *Glafish,* 1993 WL 625509, at *2 (because PTO does not consider the type of evidence that predominates in the case, a trial considering such evidence would remain necessary).

Moreover, courts routinely have recognized the benefits to courts of having PTO expertise and experience to inform patent trial proceedings. *See Bausch & Lomb,* 914 F.Supp. at 953 ("Because the PTO is considered to have expertise in deciding issues of patentability many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.") (citations omitted). Congress itself has recognized that "an advantage of the reexamination process is that it allows the validity of the patent to be 'tested in the Patent Office where the most expert opinions exist and at a much reduced cost.'" *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed.Cir.1988)) (quoting H. Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463; *see also Patlex,* 758 F.2d at 602; *Gould,* 705 F.2d at 1342).

*4 The Court is persuaded that reexamination is likely to simplify both the issues remaining before the Court and the trial on those issues. Nine patents are in issue and Defendants have filed reexamination petitions of between 50 and 100 pages on each. The particulars of the prior art are technical, complicated and interrelated. *See Gonocci,* 2003 U.S. Dist. LEXIS 24423 at *13. Defendants affirm-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

atively defend the case on the grounds of patent invalidity and they have filed a counterclaim on that issue. *Cf. Nexmed,* 2006 WL 149044, at *1. By all parties' representations, it is statistically likely that reexamination will result in at least some modification of the claims, even if no patents are canceled. And both discovery and trial on the matter will be greatly simplified by having the opinion and expertise of the PTO before the Court. *See, e.g., Gonocci,* 2003 U.S. Dist. LEXIS 24423 at 13 (noting that the PTO's decision will be admissible and will carry a presumption of validity). Moreover, most of the issues pending in the litigation are closely related to patent validity. *Cf. Cognex,* 2001 WL 34368283, at *2 (finding little simplification where case contained many claims not related to the patent infringement claim, including copyright and trademark infringement and unfair competition). The Court therefore concludes that this factor strongly favors issuance of a stay.

B. *Stage of the Litigation*

Defendants assert that a stay is particularly appropriate at this early stage of litigation, where neither party has conducted fact discovery and answers have just been served. Plaintiff does not dispute that the action is in its earliest stages. It argues instead that contemporaneous discovery in this action is appropriate in order to most quickly resolve the claim.

The Court concludes that the stage of the litigation weighs strongly in favor of granting Defendants' motion. Defendants have sought reexamination before the PTO and a stay in this Court even before case scheduling deadlines have been set. It would be difficult to conceive of a case in which this factor more strongly favored the issuance of a stay. *See Gonocci,* 2003 U.S. Dist. LEXIS 24423, at *12 (granting stay where action pending less than a year); *Softview,* 2000 U.S. Dist. LEXIS 11274, at 9 (granting stay, despite fact that case had been pending three years and substantial activity had occurred, because much remained to be done before trial); *ASCII Corp.,* 844 F.Supp. at 1381 (noting that case had been pending less than one year); *cf. Akzenta,* 464 F.Supp.2d at 484 (finding that stage-of-litigation factor did not weigh heavily either way where some discovery had occurred but there existed a dispute about what remained).

C. *Prejudice to Non-Moving Party*

Plaintiff asserts that it will be prejudiced by issuance of a stay during the pendency of the reexamination proceedings. Plaintiff has filed an extensive affidavit by Niall R. Lynam, Ph.D., Plaintiff's Senior Vice President and Chief Technical Officer, supporting three central claims of prejudice over time. First, Plaintiff contends, Defendants' past patent infringements already have jeopardized Plaintiff's hardware bonding business, which employs 200 people. Second, Plaintiff argues that it is unable to compete with manufacturers that do not respect its patents because, since it does not manufacture the glass, its proprietary technology is its principal competitive advantage. Third, Plaintiff argues that its demand will have little or no meaning if, by the time the reexamination process is concluded, competitors including Defendants have scooped its remaining hardware bonding business.

*5 The Court is unpersuaded by Plaintiff's claims that it will be prejudiced in ways not remediable by monetary damages. First, despite Plaintiff's claims that delay would cause irreparable damage to its business, Plaintiff has not sought a preliminary injunction in this matter. Indeed, Plaintiff itself requested in the Joint Status Report that Rule 26(a) disclosures not be required before May 1, 2007. Further, although Plaintiff contends that it did not have clear evidence that Defendants were infringing its patent before October 3, 2006, (Lynam Aff. ¶¶ 11-14, docket # 29, Ex. 1), Plaintiff unquestionably was aware that Defendants purported to have their own process and were competing with Plaintiff as early as 2003 on projects that included specifications tailored to Plaintiff's technology. (Ash Aff. ¶¶ 4-6, docket # 25, Ex. 13; Lynam Aff. ¶¶ 6-12, docket # 29, Ex. 1.) Yet Plaintiff did not file the instant action until October 2006.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
(Cite as: 2007 WL 772891 (W.D.Mich.))

In addition, Plaintiff admits it previously has licensed its patents-in-suit. (Lynam Aff. ¶ 12.) Even accepting Plaintiff's claims that the license it issued was limited and does not apply to the RT Window Program, licensure to others suggests that the manufacture of Plaintiff's products by others has not been treated by Plaintiff as imminently threatening to its window business.

Plaintiff argues that courts have recognized that reexamination proceedings can take years to resolve. *See IMAX*, 385 F.Supp.2d at 1033 (noting prejudice in a delay of potentially two years); *St.-Gobain Perf. Plastics. Corp. v. Advanced Flexible Composites, Inc.*, 436 F.Supp.2d 252 (D.Mass.2006) (noting that the average reexamination takes 21 months). Plaintiff therefore contends that it will have lost its competitive position by the time reexamination is complete.

While reexamination procedures undoubtedly take some time to resolve, the PTO is required to decide whether to grant the requests for reexamination within three months, or by April 28, 2007, before initial disclosures were even proposed by Plaintiff.[FN2] As a result, a stay clearly is appropriate at least during that period. Moreover, while courts have found that the average reexamination procedure takes over one-and-one-half years, *see Akzenta*, 464 F.Supp.2d at 485, reexamination cases involved in litigation are required to "be conducted with special dispatch within the [PTO]." 35 U.S.C. § 305. Section 2261 of the Manual of Patent Examining Procedure (MPEP) more specifically defines the statutory requirement:

> FN2. Indeed, in a supplement filed on March 8, 2006, Defendants advise the Court that the PTO already has granted reexamination of two of the patents-in-suit because the petitions have raised "substantial new question[s] of patentability affecting claims ... of United States Patent Number[s '173 and '874] ...." (Supp. to Def's Mot. for Stay, Docket # 32, Ex. 1 & 2 at 2.)

> Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases.

MPEP 2261. Neither party has indicated the average amount of time for the conduct of proceedings entitled to such special dispatch. However, given the early stages of this litigation and the present litigation delays in this Court caused by judicial vacancies, a stay pending the reexamination process is unlikely to cause substantial prejudice from delay. Reexamination is likely to be completed well before adjudication would be possible in this district.

*6 Plaintiff next represents that it will be damaged during certain automakers' bidding processes likely to occur in 2007 to 2008 because the stay will prevent a judicial determination during that time. It asserts that its Engineered Glass Division may have to close if these contracts are lost. However, as previously noted, Plaintiff has not sought to expedite this action or to obtain a preliminary injunction. As the Court has indicated, pretrial preparation and trial in this Court would not be completed in time to satisfy the 2007/2008 deadline upon which Plaintiff rests for its claim of prejudice. As a result, the claim of prejudice does not appear to comport with Plaintiff's conduct to this point.

Finally, the Court notes that, if Plaintiff's patents are ultimately found to be valid and infringed, Defendants will be responsible to Plaintiff for damages, including possible treble damages, for all of the infringing products it has sold. *See Softview*, 2000 U.S. Dist. LEXIS 11274, at *10-11 (citing 35 U.S.C. § 284). Despite Plaintiff's representations that up to 200 jobs will be lost because Plaintiff's divisions operate on an entrepreneurial basis and must justify program continuations, it is apparent from Plaintiff's own exhibits that the alleged infringements and delay are unlikely to have a significant prejudicial effect on the company. Plaintiff is a multinational corporation with $23 billion in sales in 2005. (Pl. Resp. to Motion to Stay, Ex. 1-B at 4.) Of those total sales, $1.5 billion (6.5%) were in the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)
**(Cite as: 2007 WL 772891 (W.D.Mich.))**

mirror and window division. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) Window sales constituted only 20% of the mirror and window business. (Pl. Resp. to Motion to Stay, Ex. 1-B at 5.) By Plaintiff's own evidence, window sales amount to only 1.3% of Plaintiff's total sales, and the hardware bonding business represents only some fraction of total window sales. Plaintiff has nine "bonded hardware" programs. (Pl. Resp. to Motion to Stay, Ex. 1-B at 17.) As a result, it is clear that the RT contract would represent only a small fraction of Plaintiff's total business. The Court is unpersuaded by either Lynam's affidavit or Plaintiff's own prior conduct that delay will result in the claimed irreparable prejudice.

In sum, balancing all three factors, the Court finds that issuance of a stay pending reexamination by the PTO will promote efficient and expeditious disposition of the claims, will conserve judicial resources, and will ensure that adjudication is informed by the expertise of the PTO. In light of the early stage of the proceedings and the absence of credible evidence that Plaintiff will be prejudiced in a way not fully remediable by monetary compensation, the Court concludes that a stay should issue.

### III.

For the foregoing reasons, the Court will grant Defendants' motion to stay proceedings pending reexamination by the PTO. An order consistent with this opinion shall issue.

W.D.Mich.,2007.
Magna Donnelly Corporation v. Pilkington North America, Inc.
Not Reported in F.Supp.2d, 2007 WL 772891 (W.D.Mich.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.