Westlaw.

H.R. REP. 96-1307(I), H.R. REP. 96-1307, H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980
U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)

*1 P.L. 96-517, PATENT AND TRADEMARK LAWS
SEE PAGE 94 STAT. 3015
HOUSE REPORT (JUDICIARY COMMITTEE) NO. 96-1307(I), SEPT. 9,
1980 (TO ACCOMPANY H.R. 6933)
HOUSE REPORT (GOVERNMENT OPERATIONS COMMITTEE)
NO. 96-1307(II), SEPT. 23, 1980 (TO ACCOMPANY H.R. 6933)
CONG. RECORD VOL. 126 (1980)
DATES OF CONSIDERATION AND PASSAGE
HOUSE NOVEMBER 17, 21, 1980
SENATE NOVEMBER 20, 1980
NO SENATE REPORT WAS SUBMITTED WITH THIS LEGISLATION.

(CONSULT NOTE FOLLOWING TEXT FOR IN-
FORMATION ABOUT OMITTED MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOC-
UMENT ON WESTLAW.)

HOUSE REPORT NO. 96-1307(I)
SEPT. 9, 1980

*1 *6460 THE COMMITTEE ON THE JUDICIARY TO WHOM WAS REFERRED THE BILL (H.R. 6933)
ENTITLED: 'TO AMEND THE PATENT AND TRADEMARK LAWS', HAVING CONSIDERED THE
SAME, REPORT FAVORABLY THEREON WITH AMENDMENTS AND RECOMMEND THAT THE BILL
AS AMENDED DO PASS.

* * * *

STATEMENT

THE NEED FOR THE LEGISLATION

MANY ANALYSTS OF THE U.S. ECONOMY HAVE WARNED THAT THE ROOTS OF THE CURRENT
RECESSION LIE IN A LONGER TERM ECONOMIC MALAISE WHICH ARISES OUT OF A FAILURE OF
AMERICAN INDUSTRY TO KEEP PACE WITH THE INCREASED PRODUCTIVITY OF FOREIGN COM-
PETITORS. [1]

ACCORDING TO THE COMMITTEE FOR ECONOMIC DEVELOPMENT, 'THE SLOWING OF PRO-
DUCTIVITY IMPROVEMENT DURING THE PAST FEW YEARS PARALLELS THE DISCOURAGING
DECLINE IN THE RATE OF INVESTMENT IN PLANT AND EQUIPMENT.' [2] THE RATE OF INVEST-
MENT AS A PROPORTION OF GNP HAS AVERAGED ABOUT ONE HALF THE RATE FOR FRANCE
AND GERMANY AND ABOUT ONE THIRD THE RATE FOR JAPAN. FURTHER, THE SITUATION
DOES NOT *2 APPEAR TO BE IMPROVING. THERE HAS BEEN AN ESPECIALLY SIGNIFICANT DE-
CLINE IN TOTAL U.S. EXPENDITURES FOR RESEARCH AND DEVELOPMENT, AS *6461 MEASURED
IN CONSTANT DOLLARS SINCE 1970. [3] SINCE THE PRIMARY MEANS OF IMPROVING PRODUCTIV-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**TAB 10**

ITY LIES IN THE CREATION OF NEW TECHNOLOGIES, THE DECLINE IN EXPENDITURES FOR RE-
SEARCH AND DEVELOPMENT IS ESPECIALLY SIGNIFICANT TO THE HEALTH OF THE OVERALL
ECONOMY.

TESTIMONY PRESENTED TO THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE AD-
MINISTRATION OF JUSTICE ALSO INDICATES THAT THE FEDERAL GOVERNMENT IS BEARING
AN EVER INCREASING SHARE OF THE BURDEN OF FINANCING BASIC RESEARCH AND DEVEL-
OPMENT. [4] THIS MEANS THAT THE EFFECTIVE COMMERCIALIZATION OF GOVERNMENT FIN-
ANCED RESEARCH IS BECOMING AN EVER MORE IMPORTANT ISSUE FOR THOSE WHO ARE CON-
CERNED WITH INDUSTRIAL INNOVATION. THE PATENT POLICIES GOVERNING THE UTILIZA-
TION OF GOVERNMENT FUNDED RESEARCH WILL BECOME EVEN MORE IMPORTANT WHEN THE
RESEARCH EXPECTED TO FLOW OUT OF RECENT CONGRESSIONAL ENACTMENTS SUCH AS THE
ENERGY SECURITY ACT OF 1980 [5] BEGINS TO PRODUCE USABLE NEW TECHNOLOGIES. IT IS
HIGHLY LIKELY THAT THE FUEL WHICH POWERS OUR AUTOMOBILES AND THE BOILERS
WHICH HEAT OUR HOMES WILL OWE PART OF THEIR CHEMICAL COMPOSITION OR MECHANIC-
AL OPERATION TO PATENTED RESEARCH DEVELOPED IN PART BY GOVERNMENT FUNDS. AT
THE PRESENT TIME U.S. COMPANIES DESIRING TO USE GOVERNMENT FUNDED RESEARCH TO
DEVELOP NEW PRODUCTS AND PROCESSES MUST CONFRONT A BEWILDERING ARRAY OF 26
DIFFERENT SETS OF AGENCY REGULATIONS GOVERNING THEIR RIGHTS TO USE SUCH RE-
SEARCH. THIS BUREAUCRATIC CONFUSION DISCOURAGES EFFICIENT USE OF TAXPAYER FIN-
ANCED RESEARCH AND DEVELOPMENT.

## HISTORY OF THE BILL

*2 THE CRISIS IN U.S. PRODUCTIVITY AND THE GOVERNMENTAL ROLE IN IT HAS NOT GONE
UNNOTICED, HOWEVER. IN MAY OF 1978 THE PRESIDENT CALLED FOR A MAJOR POLICY RE-
VIEW OF INDUSTRIAL INNOVATION AS THE KEY TO INCREASED PRODUCTIVITY IN THE UNITED
STATES. THIS WHITE HOUSE CALL TO ACTION RESULTED IN THE CREATION OF AN ADVISORY
COMMITTEE OF MORE THAN 150 SENIOR REPRESENTATIVES FROM THE INDUSTRIAL, PUBLIC
INTEREST, LABOR, SCIENTIFIC, AND ACADEMIC COMMUNITIES. THE WORK OF THE ADVISORY
COMMITTEE WAS OVERSEEN BY A CABINET LEVEL COORDINATING COMMITTEE CHAIRED BY
THE SECRETARY OF COMMERCE. THE COMMITTEE STUDIED ALL THE AREAS IN WHICH FEDER-
AL GOVERNMENT POLICY IMPACTS ON PRODUCTIVITY AND INNOVATION IN THE PRIVATE
SECTOR. THESE FIELDS OF INQUIRY INCLUDED: ECONOMIC AND TRADE POLICY; ENVIRON-
MENTAL, HEALTH AND SAFETY REGULATIONS; ANTI-TRUST ENFORCEMENT; FEDERAL PRO-
CUREMENT POLICIES, AND FEDERAL PATENT AND INFORMATION POLICIES.

WHEN THE ADVISORY COMMITTEE ISSUED ITS 300 PAGE REPORT LAST YEAR, A KEY SEG-
MENT CONTAINED RECOMMENDATIONS ON GOVERNMENT PATENT POLICY. THESE RECOM-
MENDATIONS, IN TURN, WERE RECEIVED BY THE PRESIDENT, AND FORMED THE BASIS OF A
MAJOR LEGISLATIVE PROPOSAL WHICH WAS CONVEYED TO THE CONGRESS. SPECIAL EM-
PHASIS WAS PLACED ON THE ROLE OF THE PATENT SYSTEM AND THE PATENT POLICY RE-
GARDING GOVERNMENT FUNDED RESEARCH IN PROMOTING INDUSTRIAL INNOVATION. THESE
PATENT RELATED RECOMMENDATIONS WERE FORWARDED TO THE COMMITTEE*6462 *3 ON
THE JUDICIARY AND ARE EMBODIED IN H.R. 6933 AND H.R. 3806.

H.R. 6933 HAS THREE MAJOR THRUSTS. FIRST, IT STRENGTHENS INVESTOR CONFIDENCE IN
THE CERTAINTY OF PATENT RIGHTS BY CREATING A SYSTEM OF ADMINISTRATIVE REEXAMIN-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATION OF DOUBTFUL PATENTS. SECONDLY, IT STRENGTHENS THE FINANCIAL RESOURCES OF THE PATENT OFFICE TO PROVIDE FAST AND ACCURATE PROCESSING OF PATENT APPLICA-TIONS BY REVISING THE FEE STRUCTURE OF THE OFFICE. FINALLY, THE EXISTING MELANGE OF 26 DIFFERENT AGENCY POLICIES ON VESTING OF PATENT RIGHTS IN GOVERNMENT FUN-DED RESEARCH IS REPLACED BY A SINGLE, UNIFORM NATIONAL POLICY DESIGNED TO CUT DOWN ON BUREAUCRACY AND ENCOURAGE PRIVATE INDUSTRY TO UTILIZE GOVERNMENT FUNDED INVENTIONS THROUGH THE COMMITMENT OF THE RISK CAPITAL NECESSARY TO DE-VELOP SUCH INVENTIONS TO THE POINT OF COMMERCIAL APPLICATION.

H.R. 3806 EMBODIES ANOTHER RECOMMENDATION OF THE ADVISORY COMMITTEE AND THE PRESIDENT. IT GRANTS JURISDICTION OVER APPEALS IN PATENT CASES TO A SINGLE COURT OF APPEALS-- ENDING THE CURRENT LEGAL CONFUSION CREATED BY 11 DIFFERENT APPEL-LATE FORUMS, ALL GENERATING DIFFERENT INTERPRETATIONS OF THE PATENT LAW. THE NEW COURT WILL DO A GREAT DEAL TO IMPROVE INVESTORS' CONFIDENCE IN PATENTED TECHNOLOGY.

IN ADDITION TO THE THREE BROAD AREAS ALREADY OUTLINED, H.R. 6933 ADDRESSES THE SPECIAL NEEDS OF UNIVERSITIES AND SMALL BUSINESSES WHEN THEY ATTEMPT TO DEAL WITH PATENT ISSUES ARISING OUT OF GOVERNMENT CONTRACTS. BOTH OF THESE GROUPS LACK THE RESOURCES TO COPE WITH THE BEWILDERING REGULATORY AND BUREAUCRATIC PROBLEMS ASSOCIATED WITH TRANSFER OF PATENT RIGHTS PURSUANT TO GOVERNMENT CONTRACTS; AND THE UNIVERSITY SECTOR IN PARTICULAR IS AN IMPORTANT LINK TO THE PRIVATE SECTOR.

*3 THE SUBCOMMITTEE ON COURTS, CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE HELD SEVEN DAYS OF HEARINGS ON H.R. 6933 AND RELATED PATENT LAW PROPOS-ALS. IN ALL, OVER THIRTY WITNESSES FROM GOVERNMENT, THE PRIVATE BAR, INDUSTRY, EDUCATION, SMALL BUSINESS, AND THE JUDICIARY OFFERED TESTIMONY ON THE VARIOUS LEGISLATIVE PROPOSALS BEFORE THE SUBCOMMITTEE. HEARINGS WERE FOLLOWED BY FOUR DAYS OF MARKUP, DURING WHICH H.R. 3806, CREATING A NEW COURT OF APPEALS FOR THE FEDERAL CIRCUIT, H.R. 6933, CONTAINING REFORMS IN PATENT POLICY AND PROCED-URES, AND H.R. 6934, CLARIFYING THE LAW OF COPYRIGHT OF COMPUTER PROGRAMS, WERE REPORTED FAVORABLY. EACH BILL WAS REPORTED UNANIMOUSLY. THE UNANIMOUS VOTES, PARTICULARLY ON H.R. 6933, WERE CAST ONLY AFTER CAREFUL EXAMINATION OF THE LEGIS-LATION IN LIGHT OF THE CRITICISMS MADE DURING THE HEARINGS AND AFTER CONSULTA-TION WITH MEMBERS OF THE COMMITTEE ON SCIENCE AND TECHNOLOGY, WHICH SHARES JURISDICTIONAL INTEREST. DURING THE COURSE OF MARKUP H.R. 6933 WAS AMENDED SUB-STANTIALLY TO RESPOND TO CRITICISMS RAISED DURING THE HEARING.

## SUMMARY OF THE BILL

H.R. 6933, AS AMENDED, ADDRESSES FOUR MAJOR ISSUES. SECTION 1 PROVIDES FOR A SYS-TEM OF ADMINISTRATIVE REEXAMINATION OF PATENTS WITHIN THE PATENT OFFICE. THIS NEW PROCEDURE WILL PERMIT ANY PARTY TO PETITION THE PATENT OFFICE TO REVIEW THE EFFICACY OF A PATENT, SUBSEQUENT TO ITS ISSUANCE, ON THE BASIS OF NEW INFORMATION ABOUT PREEXISTING TECHNOLOGY WHICH MAY HAVE ESCAPED REVIEW AT THE TIME OF THE INITIAL EXAMINATION OF THE PATENT APPLICATION. REEXAMINATION *4 WILL PERMIT EFFI-CIENT RESOLUTION OF QUESTIONS ABOUT THE VALIDITY OF ISSUED PATENTS WITHOUT RE-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

COURSE TO EXPENSIVE AND LENGTHY INFRINGEMENT LITIGATION. THIS, IN TURN, WILL PRO-MOTE INDUSTRIAL INNOVATION BY ASSURING THE KIND OF CERTAINTY ABOUT PATENT VALIDITY WHICH IS A NECESSARY INGREDIENT OF SOUND INVESTMENT DECISIONS.

THE COST INCURRED IN DEFENSIVE PATENT LITIGATION SOMETIMES REACHES $250,000 FOR EACH PARTY, AN IMPOSSIBLE BURDEN FOR MANY SMALLER FIRMS. THE RESULT IS A CHILLING EFFECT ON THOSE BUSINESSES AND INDEPENDENT INVENTORS WHO HAVE RE-PEATEDLY DEMONSTRATED THEIR ABILITY TO SUCCESSFULLY INNOVATE AND DEVELOP NEW PRODUCTS. A NEW PATENT REEXAMINATION PROCEDURE IS NEEDED TO PERMIT THE OWNER OF A PATENT TO HAVE THE VALIDITY OF HIS PATENT TESTED IN THE PATENT OFFICE WHERE THE MOST EXPERT OPINIONS EXIST AND AT A MUCH REDUCED COST. PATENT OFFICE REEX-AMINATION WILL GREATLY REDUCE, IF NOT END, THE THREAT OF LEGAL COSTS BEING USED TO 'BLACKMAIL' SUCH HOLDERS INTO ALLOWING PATENT INFRINGEMENTS OR BEING FORCED TO LICENSE THEIR PATENTS FOR NOMINAL FEES.

THE REEXAMINATION OF ISSUED PATENTS COULD BE CONDUCTED WITH A FRACTION OF THE TIME AND COST OF FORMAL LEGAL PROCEEDINGS AND WOULD HELP RESTORE CONFID-ENCE IN THE EFFECTIVENESS OF OUR PATENT SYSTEM.

THE BILL DOES NOT PROVIDE FOR A STAY OF COURT PROCEEDINGS. IT IS BELIEVED BY THE COMMITTEE THAT STAY PROVISIONS ARE UNNECESSARY IN THAT SUCH POWER ALREADY RESIDES WITH THE COURT TO PREVENT COSTLY PRETRIAL MANEUVERING WHICH ATTEMPTS TO CIRCUMVENT THE REEXAMINATION PROCEDURE. IT IS ANTICIPATED THAT THESE MEAS-URES PROVIDE A USEFUL AND NECESSARY ALTERNATIVE FOR CHALLENGERS AND FOR PAT-ENT OWNERS TO TEST THE VALIDITY OF UNITED STATES PATENTS IN AN EFFICIENT AND REL-ATIVELY INEXPENSIVE MANNER.

*4 SECTIONS 2 THROUGH 5 OF H.R. 6933 PROVIDE FOR A NEW FEE STRUCTURE FOR THE PAT-ENT OFFICE. AT THE PRESENT TIME PATENT EXAMINATION FEES ARE ESTABLISHED BY STATUE, LAST REVISED IN 1967. WHEN ENACTED, THE PRESENT FEE STRUCTURE PROVIDED REVENUES WHICH MET 67 PERCENT OF THE COSTS OF OPERATING THE PATENT OFFICE. INFLA-TION HAS NOW REDUCED THE IMPACT OF THOSE FEES TO THE POINT WHERE THEY GENERATE ONLY 27 PERCENT OF THE FUNDING NECESSARY TO THE OPERATION OF THE OFFICE.

AT THE PRESENT TIME PATENT FEES AVERAGE ABOUT $239 PER APPLICATION. [6]

H.R. 6933 WOULD ENTIRELY REVISE THE FEE STRUCTURE. IT GRANTS THE COMMISSIONER THE POWER TO ESTABLISH FEES. AS INTRODUCED, THE BILL PROVIDED THAT THE FEE LEVEL WOULD BE REVISED YEARLY TO GENERATE 60 PERCENT OF THE REVENUE NEEDED TO OPER-ATE THE OFFICE. HOWEVER, THE SUBCOMMITTEE AMENDED THE BILL TO REDUCE THAT LEVEL TO 50 PERCENT. THIS WAS IN RESPONSE PARTICULARLY TO CRITICISM FROM SMALL BUSINESS AND INDIVIDUAL INVENTORS THAT THE FEES WOULD PLACE TOO GREAT A BURDEN ON THOSE GROUPS.

IN ORDER FURTHER TO SOFTEN THE IMPACT ON SMALL BUSINESS AND IND VIDUAL INVENT-ORS, THE FEES ARE TO BE PAID IN FOUR INSTALLMENTS OVER THE LIFE OF THE PATENT. THIS SYSTEM, KNOWN AS MAINTENANCE FEES, IS IN USE IN MOST ADVANCED INDUSTRIAL NA-TIONS AND HAS THE ADVANTAGE OF DEFERRING PAYMENT UNTIL THE INVENTION BEGINS TO RETURN REVENUE TO THE INVENTOR.

*5 *6464 SHOULD THE INVENTION PROVE TO HAVE NO COMMERCIAL VALUE, THE INVENTOR HAS THE OPTION OF PERMITTING THE PATENT TO LAPSE, THUS AVOIDING ALL FURTHER FEES.

SECTION 6 OF H.R. 6933 PROVIDES FOR A UNIFORM POLICY GOVERNING THE DISPOSITION OF

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH. THIS WOULD REPLACE THE 26 DIFFER-ENT AGENCY POLICIES NOW IN EFFECT. THERE ARE TWO PATENT POLICIES PROVIDED IN THIS SECTION. NON-PROFIT RESEARCH INSTITUTIONS AND SMALL BUSINESSES ARE GIVEN PREFER-ENTIAL TREATMENT. THE LEGISLATION ESTABLISHES A PRESUMPTION THAT OWNERSHIP OF ALL PATENT RIGHTS IN GOVERNMENT FUNDED RESEARCH WILL VEST IN ANY CONTRACTOR WHO IS A NON-PROFIT RESEARCH INSTITUTION OR A SMALL BUSINESS. THIS PORTION OF H.R. 6933 SUBSTANTIALLY INCORPORATES LEGISLATION SEPARATELY INTRODUCED, H.R. 2414 (S. 414), ENTITLED THE UNIVERSITY, SMALL BUSINESS PATENT POLICY ACT.

LARGE BUSINESSES ARE GOVERNED BY A SEPARATE POLICY. THEY RECEIVE EXCLUSIVE LI-CENSES FOR SPECIFIC USES THEY INTEND TO COMMERCIALIZE. AS WITH SMALL BUSINESS AND UNIVERSITIES, HERE TOO THE PRESUMPTION LIES WITH THE GRANTING OF EXCLUSIVE RIGHTS TO THE CONTRACTOR.

CRITICS OF THE BILL TESTIFIED THAT IT WOULD BE IMPOSSIBLE FOR A CONTRACTOR TO DE-TERMINE IN GOOD FAITH HIS ABILITY TO COMMERCIALIZE IN A PARTICULAR FIELD OF USE AT THE TIME OF DISCLOSURE OF THE INVENTION.

AS A RESULT AND FOR THE PURPOSES OF FOREIGN PATENT RIGHTS, THE SUBCOMMITTEE AP-PROVED AN AMENDMENT WHICH GRANTS TEMPORARY TITLE TO A CONTRACTOR FOR UP TO FOUR AND ONE HALF YEARS BEFORE REQUIRING HIM TO SPECIFY HIS FIELDS OF USE. THIS PROVIDES FOR MORE FLEXIBILITY FOR THE CONTRACTOR WHILE AT THE SAME TIME PRO-TECTING THE TAXPAYING PUBLIC BECAUSE:

*5 1. THE GOVERNMENT, NOT THE CONTRACTOR, WILL OBTAIN OWNERSHIP OF PATENT RIGHTS TO CONTRACT INVENTIONS.

2. THE GOVERNMENT WILL PERMIT CONTRACTORS TO OBTAIN EXCLUSIVE LICENSES BUT ONLY FOR FIELDS OF USE IN WHICH THEY INTEND TO COMMERCIALIZE A PATENTED INVEN-TION.

3. THE GOVERNMENT HAS THE RIGHT TO DENY THE TRANSFER OF EXCLUSIVE RIGHTS FOR ANY FIELD OF USE WITHIN 90 DAYS OF THE CONTRACTOR'S DISCLOSURE OF A FIELD OR FIELDS OF USE HE INTENDS TO COMMERCIALIZE.

4. PUBLIC INTEREST ANTITRUST AND NATIONAL SECURITY STANDARDS ARE TO BE APPLIED BY THE GOVERNMENT IN MAKING SUCH DETERMINATION WHETHER TO DENY AN EXCLUSIVE LICENSE.

FROM A CONTRACTOR POINT OF VIEW, THE AMENDMENT OFFERS MANY OF THE ADVANT-AGES OF PATENT OWNERSHIP, INCLUDING FULL TITLE ABROAD AND THE RIGHT TO SUBLI-CENSE DOMESTICALLY.

FROM AN INNOVATION POINT OF VIEW, THE REQUIREMENT THAT EXCLUSIVE LICENSES BE LIMITED TO SPECIFIED FIELDS OF USE THAT THE CONTRACTOR INTENDS TO COMMERCIALIZE SHOULD PREVENT SITTING ON TECHNOLOGY, AND SPUR INNOVATION.

SOME CONTRACTORS, PARTICULARLY IN THE DEFENSE AREA, WILL LOSE SOME RIGHTS WHICH THEY PRESENTLY RECEIVE THROUGH FULL WAIVER. HOWEVER, THE OVERWHELMING NUMBER OF CONTRACTORS WILL RECEIVE FASTER, MORE EFFICIENT TREATMENT UNDER THESE PROVISIONS. FOR EXAMPLE, DELAYS IN ACTING ON PATENT RIGHT WAIVER REQUESTS, WHICH NOW TAKE ON THE AVERAGE A YEAR AND A HALF IN AGENCIES LIKE THE DEPART-MENT OF ENERGY, WILL BE ELIMINATED. CONTRACTORS WILL KNOW THEIR RIGHTS WITH CERTAINTY WITHIN 90 DAYS OF IDENTIFYING A SPECIFIC FIELD OF USE UNDER A PATENT TO A GOVERNMENT FINANCED INVENTION.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*6 \*6465** IN DEVELOPING THE AMENDMENT TO THIS SECTION, IT SHOULD BE NOTED THAT THE SUBCOMMITTEE WORKED CLOSELY WITH THE SCIENCE AND TECHNOLOGY COMMITTEE, AND IT IS PARTICULARLY GRATEFUL TO MEMBERS OF THAT COMMITTEE FOR THEIR CONTRIBUTIONS.

FINALLY, SECTIONS 9 AND 10 OF THE BILL, AS REPORTED BY THE SUBCOMMITTEE, REFLECT AMENDMENTS WHICH ARE DESIGNED TO RESPOND TO THE CRITICISM OF WITNESSES WHO ARGUED BOTH THAT THE PATENT OFFICE OUGHT TO BE INDEPENDENT OF THE DEPARTMENT OF COMMERCE AND THAT THE PRESENT SEARCH FILES OF THE OFFICE FAIL TO EFFECTIVELY UTILIZE MODERN COMPUTER TECHNOLOGY.

## SECTION-BY-SECTION ANALYSIS

## REEXAMINATION

SECTION 1 OF THE BILL WOULD ADD SEVEN NEW SECTIONS TO THE PATENT LAWS TO ESTABLISH A PATENT REEXAMINATION SYSTEM. THESE SEVEN NEW SECTIONS WOULD CONSTITUTE CHAPTER 30 OF TITLE 35 OF THE UNITED STATES CODE.

## SECTION 301. CITATION OF PRIOR ART

SECTION 301 PROVIDES STATUTORY AUTHORITY FOR THE CITATION TO THE PATENT AND TRADEMARK OFFICE (PTO) OF PRIOR ART CONSISTING OF PATENTS OR PRINTED PUBLICATIONS WHICH A PERSON BELIEVES TO HAVE A BEARING ON THE PATENTABILITY OF ANY CLAIM OF A PARTICULAR PATENT. SECTION 301 WOULD MAKE CLEAR THAT A CITATION OF PRIOR ART IS NOT TO BE INCLUDED IN THE OFFICIAL FILE ON A PATENT UNLESS THE CITER SUBMITS A WRITTEN STATEMENT AS TO THE PERTINENCY AND APPLICABILITY TO THE PATENT. SECTION 301 ALSO WOULD REQUIRE THE PTO TO KEEP THE IDENTITY OF THE CITER OF PRIOR ART CONFIDENTIAL IF THE CITER SO REQUESTS IN WRITING. WITHOUT THE CONFIDENTIALITY PROVISION, COMPETITORS OF A PATENT OWNER MIGHT BE RELUCTANT TO CITE PRIOR ART TO THE PTO.

## SECTION 302. REQUEST FOR REEXAMINATION

**\*6** SECTION 302 PROVIDES AUTHORITY FOR ANY PERSON TO SEEK REEXAMINATION BY THE PTO ON THE BASIS OF THE PATENTS AND PRINTED PUBLICATIONS CITED UNDER SECTION 301. SUCH A PERSON NEED NOT BE THE ONE WHO CITED PRIOR ART UNDER SECTION 301. THE PERSON COULD EVEN BE THE PATENTEE.

SECTION 302 REQUIRES THAT THE PERSON SEEKING REEXAMINATION PAY A FEE ESTABLISHED BY THE SECRETARY. UNDER SECTION 2 OF THIS BILL, THE SECRETARY WOULD BE REQUIRED TO ESTABLISH A FEE TO RECOVER THE ESTIMATED AVERAGE COST OF A REEXAMINATION PROCEEDING. THUS, THOSE WHO REQUEST REEXAMINATION WOULD PAY FOR IT.

SECTION 302 REQUIRES THE COMMISSIONER TO SEND A COPY OF THE REQUEST PROMPTLY TO THE PATENT OWNER, AS SHOWN BY THE RECORDS OF THE OFFICE. THE PATENT OWNER WOULD HAVE TO SEE THAT HIS OWNERSHIP AND CURRENT ADDRESS ARE RECORDED PROPERLY SO THAT THE REQUEST IS NOT SENT TO A PREVIOUS OWNER.

## SECTION 303. DETERMINATION OF ISSUE BY COMMISSIONER

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBSECTION 303(A) REQUIRES THE COMMISSIONER TO DETERMINE IF A 'SUBSTANTIAL NEW QUESTION OF PATENTABILITY' IS RAISED IN CONNECTION WITH ANY CLAIMS OF THE PATENT AGAINST WHICH A PATENT OR PRINTED PUBLICATION IS CITED AND TO ORDER REEXAMINATION UPON A POSITIVE DETERMINATION.*6466 *7 FURTHER, IT WOULD PERMIT THE COMMISSIONER TO INITIATE REEXAMINATION WITHOUT A REQUEST UPON A DETERMINATION THAT A SUBSTANTIAL NEW QUESTION OF PATENTABILITY IS RAISED BY PATENTS OR PUBLICATIONS DISCOVERED BY HIM OR CITED UNDER THE PROVISIONS OF SECTION 301. THIS AUTHORITY TO INITIATE REEXAMINATION WITHOUT A REQUEST IS NOT INTENDED TO ABROGATE IN ANY WAY THE RIGHT OF THE UNITED STATES TO SUE TO CANCEL A PATENT OBTAINED BY FRAUDULENT MEANS.

THIS 'SUBSTANTIAL NEW QUESTION' REQUIREMENT WOULD PROTECT PATENTEES FROM HAVING TO RESPOND TO, OR PARTICIPATE IN UNJUSTIFIED REEXAMINATIONS. FURTHER, IT WOULD ACT TO BAR RECONSIDERATION OF ANY ARGUMENT ALREADY DECIDED BY THE OFFICE, WHETHER DURING THE ORIGINAL EXAMINATION OR AN EARLIER REEXAMINATION.

SUBSECTION 303(B) REQUIRES THAT THE COMMISSIONER'S DETERMINATION BE RECORDED IN THE FILE OF THE PATENT AND A COPY PROMPTLY SENT TO THE PATENT OWNER AND THE PERSON REQUESTING THE REEXAMINATION.

SUBSECTION 303(C) MAKES FINAL AND NONAPPEALABLE A DECISION BY THE COMMISSIONER NOT TO CONDUCT REEXAMINATION. IN SUCH A CASE, HOWEVER, A PORTION OF THE REEXAMINATION FEE COULD BE RETURNED.

NO ONE WOULD BE DEPRIVED OF ANY LEGAL RIGHT BY A DENIAL BY THE COMMISSIONER OF A REQUEST FOR REEXAMINATION. A PARTY TO A REEXAMINATION PROCEEDING COULD STILL ARGUE IN ANY SUBSEQUENT LITIGATION THAT THE PTO ERRED AND THAT THE PATENT IS INVALID ON THE BASIS OF THE CITED PRIOR ART.

### SECTION 304. REEXAMINATION ORDER BY COMMISSIONER

SECTION 304 SPECIFIES THE INITIAL STEPS TO BE TAKEN WHERE THE COMMISSIONER DETERMINES THAT REEXAMINATION SHOULD BE ORDERED. UPON ISSUANCE OF A DETERMINATION ORDERING REEXAMINATION, THE PATENT OWNER WOULD BE GIVEN THE OPPORTUNITY TO FILE A STATEMENT WITH THE OFFICE AND, IF HE WISHES, TO PROPOSE AN AMENDMENT TO THE SPECIFICATION OR CLAIMS OF HIS PATENT AS WELL AS A NEW CLAIM OR CLAIMS IN RESPONSE TO THE COMMISSIONER'S DETERMINATION. THE PATENT OWNER WOULD BE REQUIRED TO SERVE A COPY OF ANY SUCH STATEMENT AND ANY PROPOSED AMENDMENT ON THE PERSON REQUESTING REEXAMINATION, WHO WOULD BE PERMITTED TO FILE A REPLY WITH THE OFFICE, WITH SERVICE REQUIRED ON THE PATENT OWNER.

### SECTION 305. CONDUCT OF REEXAMINATION PROCEEDINGS

*7 SECTION 305 GOVERNS THE CONDUCT OF THE ACTUAL REEXAMINATION PROCEEDING. SECTION 305 SPECIFIES THAT AFTER THE INITIAL EXCHANGE PERMITTED UNDER SECTION 304, THE PTO WILL UTILIZE THE SAME PROCEDURES IT USES FOR THE INITIAL EXAMINATION OF PATENT APPLICATIONS UNDER PATENT LAW SECTIONS 132 AND 133. THE PATENT OWNER COULD PROPOSE AN AMENDMENT TO HIS PATENT SPECIFICATION OR CLAIMS, AS WELL AS PROPOSE A NEW CLAIM OR CLAIMS, TO DISTINGUISH HIS INVENTION FROM THE PRIOR ART CITED UNDER SECTION 301. HOWEVER, THE BILL WOULD PROHIBIT THE COMMISSIONER FROM

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

GRANTING DURING REEXAMINATION ANY AMENDED OR NEW CLAIM THAT ENLARGES THE SCOPE OF A CLAIM OF THE ORIGINAL PATENT. ALSO, THE BILL WOULD REQUIRE REEXAMINATION TO BE PROMPTLY HANDLED, SO AS TO MAKE IT AS HELPFUL AS POSSIBLE.

## SECTION 306. APPEAL

SECTION 306 GRANTS A PATENT OWNER THE RIGHT TO PURSUE THE SAME APPEAL ROUTES AVAILABLE TO PATENT APPLICANTS. AN ADVERSE DECISION ON REEXAMINATION BY THE PRIMARY EXAMINER COULD BE APPEALED TO *8 *6467 THE BOARD OF APPEALS. ADVERSE FINAL DECISIONS ON REEXAMINATION BY THE BOARD OF APPEALS OR BY THE COMMISSIONER COULD BE APPEALED TO THE U.S. COURT OF CUSTOMS AND PATENT APPEALS OR DE NOVO REVIEW OF THE REEXAMINATION DECISION COULD BE SOUGHT IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

## SECTION 307. CERTIFICATE OF PATENTABILITY, UNPATENTABILITY, AND CLAIM CANCELLATION

SECTION 307(A) REQUIRES THE COMMISSIONER AT THE CONCLUSION OF REEXAMINATION TO CANCEL ANY PATENT CLAIM FOUND TO BE UNPATENTABLE, CONFIRM ANY PATENT CLAIM FOUND TO BE PATENTABLE, AND ADD ANY AMENDED OR NEW CLAIMS FOUND TO BE PATENTABLE.

SUBSECTION 307(B) PROVIDES INTERVENING RIGHTS SIMILAR TO THOSE PROVIDED BY PATENT LAW SECTION 252 WITH RESPECT TO REISSUED PATENTS. THUS, A PERSON PRACTICING A PATENTED INVENTION WOULD NOT BE CONSIDERED AN INFRINGER FOR THE PERIOD BETWEEN ISSUANCE OF AN INVALID PATENT AND ITS CONVERSION THROUGH REEXAMINATION TO A VALID PATENT.

IT ORDINARILY IS IN THE INTERESTS OF BOTH PARTIES TO EXPEDITE THE DISPOSITION OF PATENT LITIGATION. A PARTY DISCOVERING NEW PRIOR ART ON WHICH REEXAMINATION MIGHT BE CONDUCTED ORDINARILY WILL REVEAL IT PROMPTLY TO THE PATENT OWNER. IF HE DOES NOT, THE COURT MAY EXERCISE ITS EQUITY POWER BY ALLOWING THE PATENT OWNER TO REQUEST REEXAMINATION LATER IN THE TRIAL, OR PRECLUDING THE PARTY FROM RELYING ON SUCH PRIOR ART OR BY OTHER APPROPRIATE MEASURES.

## ADMINISTRATIVE FEE SETTING

SECTION 2 OF THE BILL WOULD RESTRUCTURE AND MODERNIZE COMPLETELY SECTION 41 OF TITLE 35, UNITED STATES CODE-- THE BASIC FEE PROVISION OF THE PATENT LAWS.

THE COMMITTEE RECOGNIZES THAT THE PTO, IN ISSUING PATENTS AND REGISTERING TRADEMARKS, PERFORMS A SIGNIFICANT PUBLIC SERVICE IN IMPLEMENTING THE FEDERAL PATENT AND TRADEMARK LAWS AND ALSO CONFERS BENEFIT ON PRIVATE PERSONS WHO SEEK TO PROTECT THEIR INTELLECTUAL PROPERTY. THE COMMITTEE, THEREFORE, SUPPORTS THE PREMISE THAT PATENT APPLICANTS AND THOSE SEEKING TO REGISTER TRADEMARKS SHOULD BEAR A SIGNIFICANT SHARE OF THE COST OF OPERATING THE PTO BY THE PAYMENT OF FEES. HOWEVER, THE COMMITTEE HAS MADE CERTAIN AMENDMENTS TO THE FORMULA WHICH EMPOWERS THE COMMISSIONER TO SET THESE FEES. CERTAIN COSTS OF OPERATING THE PTO CONFER NO DIRECT BENEFIT ON APPLICANTS BUT RATHER GO TO MEET THE RE-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SPONSIBILITY OF THE FEDERAL GOVERNMENT TO HAVE A PTO IN ORDER TO EXECUTE THE LAW. FOR EXAMPLE, THE COST OF EXECUTIVE DIRECTION AND ADMINISTRATION OF THE OF-FICE, INCLUDING THE OFFICE OF THE COMMISSIONER AND CERTAIN AGENCY OFFICES IN-VOLVED WITH PUBLIC INFORMATION, LEGISLATION, INTERNATIONAL AFFAIRS AND TECHNO-LOGY ASSESSMENT. MAINTAINING THE PUBLIC SEARCH ROOM CONFERS A GENERAL PUBLIC BENEFIT, AS DOES THE MAINTENANCE OF THE PATENT FILES IN DEPOSITORY LIBRARIES. THE CONTRIBUTION TO THE WORLD INTELLECTUAL PROPERTY ORGANIZATION RELATIVE TO THE PATENT COOPERATION TREATY IS A TREATY OBLIGATION. THESE COSTS SHOULD BE PAID FOR ENTIRELY FROM APPROPRIATED FUNDS.

*8 THE COMMITTEE INSERTED THE WORD 'ACTUAL' IN THIS LEGISLATION TO DESCRIBE THOSE COSTS WHICH SHOULD BE ASSUMED 50 PERCENT BY APPLICANTS. PATENT APPLICANTS SHOULD BEAR THROUGH THE PAYMENT OF FEES, 25 PERCENT IN PROCESSING OF FEES, AND 25 PERCENT IN MAINTENANCE *9 *6468 FEES, THE COST OF THE PATENT EXAMINERS AND THEIR CLERICAL SUPPORT, AS WELL AS QUALITY REVIEW, APPEALS, INTERFERENCES, AND PATENT PRINTING INCLUDING INTERNAL PTO PRINTING COSTS. ALSO, 'ACTUAL' IS INTENDED TO EX-CLUDE FROM SUCH COSTS THE ACQUISITION OR REPLACEMENT OF EQUIPMENT WHERE SUCH ACQUISITION OR REPLACEMENT INVOLVES SUBSTANTIAL CAPITAL OUTLAYS. SUCH EX-PENDITURES WOULD BE PAID FROM THE PATENT AND TRADEMARK OFFICE'S APPROPRIATION. THE COST OF DATA AND DOCUMENT RETRIEVAL SYSTEMS, HOWEVER, TO THE EXTENT THAT THESE EXPENDITURES GOES TOWARD THE RECLASSIFICATION OF THE PATENT SEARCH FILE, SHOULD BE BORNE 50 PERCENT BY THE PUBLIC. THESE ARE THE ACTUAL COSTS OF PRO-CESSING PATENT APPLICATIONS, AN ACTIVITY WHICH CONFERS CERTAIN DIRECT BENEFITS ON PRIVATE PERSONS.

THE COMMITTEE NOTES THAT THE PTO FURNISHES TO THE PUBLIC COPIES OF ISSUED PAT-ENTS FOR A FEE. THE COSTS TO THE PTO OF SUCH COPIES SHOULD BE CHARGED TO APPLIC-ANTS.

THE TRADEMARK EXAMINERS AND THEIR CLERICAL SUPPORT, THE TRIAL AND APPEAL PRO-CESS, AND TRADEMARK PRINTING SHOULD BE PAID FOR TO THE EXTENT OF 50 PERCENT BY APPLICANTS FOR THE REGISTRATION OF TRADEMARKS.

SOME OF THE COST OF OPERATING THE PTO CONFERS NO DIRECT BENEFIT TO THE GENERAL PUBLIC, BUT RATHER GOES TO PROVIDING SERVICES TO PRIVATE PARTIES. THE COST OF CUS-TOMER SERVICES SUCH AS PROVIDING COPIES SHOULD BE RECOVERED 100 PERCENT IN FEES. ALSO, IN THE PATENT PROCESS, DRAFTING AND ASSIGNMENTS SHOULD BE SELF-SUPPORTING.

ILLUSTRATIVE EXAMPLE OF PTO RECOVERY POLICY-- BASED ON FISCAL YEAR 1981 BUDGET

I. GOVERNMENT 100 PERCENT: COMMISSIONER (INCLUDES OFFICE OF INFORMATION SER-VICES); OFFICE OF LEGISLATION AND INTERNATIONAL AFFAIRS; MANAGEMENT PLANNING; ADMINISTRATIVE SERVICES; AUTOMATIC DATA PROCESSING; AND SEARCH ROOM.

II. GOVERNMENT 50 PERCENT/USERS 50 PERCENT: EXAMINATION-- PROFESSIONAL STAFF; QUALITY REVIEW; CLERICAL FORCE; APPEALS; INTERFERENCES; PATENT PRINTING; SOLICIT-OR; DATA AND DOCUMENT RETRIEVAL; PUBLICATION SERVICES; EXAMINATION OF TRADE-MARKS; TRADEMARK TRIAL AND APPEAL; AND TRADEMARK PRINTING.

III. USERS 100 PERCENT: CUSTOMER SERVICES; DRAFTING; AND ASSIGNMENT.

SECTION 41. PATENT FEES

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBSECTION 41(A) AUTHORIZES THE SECRETARY OF COMMERCE TO SET FEES ADMINISTRAT-
IVELY FOR PROCESSING A PATENT APPLICATION, FOR MAINTAINING A PATENT IN FORCE, AND
FOR PROVIDING ALL OTHER PATENT SERVICES AND MATERIALS.

SUBSECTION 41(B) REQUIRES THE SECRETARY OF COMMERCE TO ESTABLISH FEES FOR PRO-
CESSING PATENT APPLICATIONS, FROM FILING TO DISPOSITION BY ISSUANCE OR ABANDON-
MENT, EQUAL IN AGGREGATE TO 25 PERCENT OF THE ESTIMATED AVERAGE COST OF ACTU-
ALLY PROCESSING AN APPLICATION. AS FEE REVENUES AND COSTS CHANGE, THE SECRETARY
WOULD ADJUST FEES TO ACHIEVE THE SPECIFIED RECOVERY RATE ONCE EVERY THREE
YEARS. THESE FEES ARE THOSE OF THE TYPE NOW SPECIFIED IN PARAGRAPHS 1, 2, 3, AND 6 OF
EXISTING SUBSECTION 41(A) OF THE PATENT LAWS. THE SECRETARY WOULD HAVE AUTHOR-
ITY TO ELIMINATE OR CHANGE THE AMOUNTS OF ANY OF THE PRESENT FEES AND ESTABLISH
OTHERS, SO LONG AS A FEE CHARGED DIRECTLY *10 *6469 RELATES TO THE ACTUAL PRO-
CESSING OF PATENT APPLICATIONS AND THE AGGREGATE FEES FOR AN APPLICATION EFFECT
THE SPECIFIED 25 PERCENT RECOVERY RATE.

*9 SUBSECTION 41(B) WOULD TREAT DESIGN PATENT PROCESSING FEES DIFFER NTLY THAN
FEES FOR OTHER TYPES OF PATENTS. SINCE THE COSTS TO THE OFFICE OF PROCESSING
DESIGN PATENT APPLICATIONS ARE SIGNIFICANTLY LOWER AND MAINTENANCE FEES WILL
NOT BE IMPOSED, DESIGN PATENT APPLICANTS WOULD BE CHARGED FEES EQUAL IN AGGREG-
ATE TO 50 PERCENT OF THE ESTIMATED COST OF PROCESSING SUCH AN APPLICATION.

SUBSECTION 41(C) REQUIRES THE PAYMENT OF MAINTENANCE FEES THREE TIMES IN A PAT-
ENT'S LIFE-- SIX MONTHS PRIOR TO THE FOURTH, EIGHTH AND TWELFTH ANNIVERSARIES OF
THE PATENT'S SEVENTEEN-YEAR TERM. AS REQUIRED BY THE PARIS CONVENTION FOR THE
PROTECTION OF INDUSTRIAL PROPERTY, SUBSECTION 41(C) PERMITS LATE PAYMENT DURING
A SIX-MONTH GRACE PERIOD. FAILURE TO PAY AN APPLICABLE MAINTENANCE FEE BY THE
END OF THE GRACE PERIOD WOULD RESULT IN EXPIRATION OF THE PATENT ON THE DATE THE
GRACE PERIOD ENDS.

SUBSECTION 41(C) ALSO REQUIRES THE SECRETARY TO ESTABLISH MAINTENANCE FEES AT
LEVELS THAT RECOVER 30 PERCENT OF THE COSTS TO THE OFFICE FOR THE YEAR IN WHICH
SUCH MAINTENANCE FEES ARE RECEIVED OF PROCESSING ALL APPLICATIONS FOR PATENTS
OTHER THAN DESIGN PATENTS, FROM FILING THROUGH DISPOSITION BY ISSUANCE OR ABAN-
DONMENT, BY THE FIFTEENTH YEAR FOLLOWING ENACTMENT OF THE ACT.

SUBSECTION 41(D) REQUIRES THE SECRETARY TO ESTABLISH FEES FOR ALL OTHER PATENT-
RELATED SERVICES AND MATERIALS AT LEVELS WHICH WILL RECOVER THE FULL COSTS TO
THE OFFICE OF PERFORMING THOSE SERVICES OR PROVIDING THOSE MATERIALS. FEES
WOULD BE ADJUSTED AS COSTS VARY. SUBSECTION 41(D), HOWEVER, WOULD MAINTAIN THE
EXISTING SUBSECTION 41(A)(9) FEE OF $50 FOR PROVIDING A DEPOSITORY LIBRARY WITH UN-
CERTIFIED PRINTED COPIES OF THE SPECIFICATIONS AND DRAWINGS FOR ALL PATENTS IS-
SUED IN A YEAR.

SUBSECTION 41(E) ALLOWS THE COMMISSIONER TO WAIVE ANY FEE FOR A SERVICE OR
PRODUCT PROVIDED TO A GOVERNMENT AGENCY. THIS AUTHORITY NOW IS PROVIDED IN EX-
ISTING SUBSECTION 41(C).

SUBSECTION 41(F) LIMITS THE ADJUSTMENT OF PATENT APPLICATION PROCESSING FEES
AND MAINTENANCE FEES TO ONCE EVERY THREE YEARS.

SUBSECTION 41(G) IMPOSES A NOTICE REQUIREMENT ON EFFECTIVE DATE OF NEW OR AD-
JUSTED FEES.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## CREDITING OF FEE REVENUE TO THE PTO APPROPRIATION ACCOUNT

SECTION 3 OF THIS BILL WOULD AMEND SECTION 41 OF TITLE 35, U.S.C. BY COMPLETELY RE-WRITING IT.

## SECTION 42. PATENT AND TRADEMARK OFFICE FUNDING

SUBSECTION 42(A) MAKES ALL FEES FOR PATENT AND TRADEMARK OFFICE SERVICES AND MATERIALS PAYABLE TO THE COMMISSIONER OF PATENTS AND TRADEMARKS. THIS PROVISION IS CARRIED OVER FROM EXISTING SECTION 42.

SUBSECTION 42(B) REQUIRES ALL FEE REVENUES AND ALL PATENT AND TRADEMARK OFFICE APPROPRIATIONS TO BE CREDITED TO THE PATENT AND TRADEMARK OFFICE APPROPRIATION ACCOUNT IN THE TREASURY OF THE UNITED STATES. AT PRESENT, PATENT AND TRADEMARK OFFICE FEE REVENUES ARE DEPOSITED IN THE GENERAL FUND OF THE TREASURY AND ARE UNAVAILABLE FOR DIRECTLY FUNDING PTO ACTIVITIES.

\*11 \*6470 SUBSECTION 42(C) MAKES FEE REVENUES CREDITED TO THE PTO APPROPRIATION ACCOUNT AVAILABLE TO THE SECRETARY OF COMMERCE TO CARRY OUT THE ACTIVITIES OF THE PATENT AND TRADEMARK OFFICE. BUDGETARY CONTROL IS MAINTAINED SINCE THE PTO WOULD CONTINUE TO RECEIVE APPROPRIATIONS AND THE USE OF FEE REVENUES WOULD BE LIMITED 'TO THE EXTENT PROVIDED FOR IN AN APPROPRIATIONS ACTS.'

\*10 SUBSECTION 42(D) AUTHORIZES THE SECRETARY TO REFUND ANY FEE PAID BY MISTAKE OR ANY ACCOUNT PAID IN EXCESS OF THAT REQUIRED. THIS AUTHORITY IS FOUND IN EXISTING SECTION 42.

## TECHNICAL AMENDMENT

SECTION 4 OF THE BILL IS A TECHNICAL AMENDMENT TO SECTION 154 OF THE PATENT LAWS NECESSITATED BY CREATION OF THE MAINTENANCE FEE SYSTEM.

## TRADEMARK FEES

SECTION 5 OF THE BILL AMENDS EXISTING SECTION 31 OF THE TRADEMARK ACT OF 1946 AS AMENDED (15 U.S.C. 1113) TO MODERNIZE THE TRADEMARK FEE SYSTEM. THE PRESENT STATUTORY FEES SPECIFIED IN THIS SECTION WOULD BE REPLACED BY FEES ESTABLISHED BY THE SECRETARY.

## SECTION 31. FEES

SUBSECTION 31(A) PERMITS THE SECRETARY TO ELIMINATE OR VARY SOME PRESENT FEES AND TO ESTABLISH OTHERS. FEES FOR TRADEMARK EXAMINATION AND PROCESSING, AS WELL AS FOR PRODUCTS AND SERVICES PROVIDED IN CONNECTION WITH TRADEMARKS, WOULD BE REQUIRED TO RECOVER 50 PERCENT OF ALL COSTS OF THESE PRODUCTS AND SERVICES. FEES COULD BE CHANGED ONLY ONCE VERY THREE YEARS.

SUBSECTION (B) PERMITS THE COMMISSIONER TO WAIVE THE PAYMENT OF ANY FEE IN CONNECTION WITH AN OCCASIONAL REQUEST FROM ANOTHER GOVERNMENT AGENCY, AND PROVIDES THAT NO FEE SHALL BE CHARGED TO THE INDIAN ARTS AND CRAFTS BOARD TO REGISTER GOVERNMENT TRADEMARKS OF GENUINENESS AND QUALITY FOR INDIAN PRODUCTS

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

H.R. REP. 96-1307(I)                                                                        Page 12


OR FOR PRODUCTS OF PARTICULAR INDIAN TRIBES AND GROUPS.

### GOVERNMENT PATENT POLICY

SECTION 6 OF THE BILL AMENDS TITLE 35 OF THE U.S.C. BY ADDING AFTER CHAPTER 37 A NEW CHAPTER 38, ENTITLED THE GOVERNMENT PATENT POLICY ACT OF 1980, TO ESTABLISH A UNIFORM FEDERAL SYSTEM FOR THE COMMERCIALIZATION AND ALLOCATION OF RIGHTS IN INVENTIONS RESULTING FROM FEDERALLY SPONSORED OR SUPPORTED RESEARCH AND DE-VELOPMENT. CHAPTER 38 IS DIVIDED INTO FOUR SUBCHAPTERS WHICH TOGETHER ADD THIRTY-ONE NEW SECTIONS TO TITLE 35.

### SECTION 381. TITLE

SECTION 381 PROVIDES FOR THE CHAPTER TO BE KNOWN AS THE GOVERNMENT PATENT POLICY ACT OF 1980.

### *12 *6471 SUBCHAPTER I-- CONTRACT INVENTIONS

### SECTION 382. 'CONTRACT INVENTIONS'; REPORTING

SECTION 382 DEFINES 'CONTRACT INVENTIONS' AND SETS FORTH A CONTRACTOR'S RE-SPONSIBILITY WITH REGARD TO A CONTRACT INVENTION.

SUBSECTION (A) DEFINES 'CONTRACT INVENTIONS' AS 'INVENTIONS MADE IN THE COURSE OF OR UNDER FEDERAL CONTRACTS.'

SUBSECTION (B) REQUIRES THAT ALL CONTRACTORS PROVIDE THE RESPONSIBLE FEDERAL AGENCY WITH TIMELY REPORTS ON EACH CONTRACT INVENTION CONTAINING SUFFICIENT TECHNICAL INFORMATION TO INFORM THE GOVERNMENT AS TO THE NATURE OF THE INVEN-TION AND A LIST OF EACH COUNTRY, IF ANY, IN WHICH THE CONTRACTOR ELECTS TO FILE A PATENT APPLICATION.

THE GOVERNMENT IS PROHIBITED FROM PUBLISHING OR RELEASING THESE REPORTS UNTIL THE EARLIER OF ONE YEAR FROM RECEIPT OF THE INVENTION DISCLOSURE OR THE CON-TRACTOR HAS HAD A REASONABLE TIME TO FILE A PATENT APPLICATION; THE GOVERNMENT ALSO MUST WITHHOLD SUCH INFORMATION FROM OTHER RECORDS OR REPORTS. THE TEM-PORARY PROHIBITION ON PUBLISHING OR RELEASING CONTRACTOR REPORTS OR INFORMA-TION IS NECESSARY IN ORDER TO AVOID THE POSSIBLE FORFEITURE OF PATENT PROTECTION IN SOME COUNTRIES. SUBSECTION (C) PROVIDES THAT THE RESPONSIBLE AGENCY MAY DE-PRIVE A CONTRACTOR WHO UNREASONABLY FAILS TO FILE THE REPORTS REQUIRED BY SUB-SECTION (B) OF ANY OR ALL OF THE RIGHTS IT OTHERWISE WOULD HAVE UNDER SUBCHAPTER I PERTAINING TO THE CONTRACT INVENTION FOR WHICH SUCH REPORT HAS BEEN UNREASONABLY WITHHELD.

SECTION 383. ALLOCATION OF RIGHTS-- SMALL BUSINESSES AND NONPROFIT ORGANIZATIONS

*11 SUBSECTION (A) PROVIDES FOR THE ACQUISITION OF TITLE TO CONTRACT INVENTIONS BY CONTRACTORS WHICH ARE EITHER A SMALL BUSINESS OR A NONPROFIT ORGANIZATION. THEY WOULD ACQUIRE TITLE IN EACH COUNTRY LISTED UNDER SECTION (B)(2) OF SECTION 382 IN WHICH THEY FILED A PATENT APPLICATION WITHIN A REASONABLE TIME; THEIR TITLE


© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

WOULD BE SUBJECT TO THE GOVERNMENT'S MINIMUM RIGHTS UNDER SECTION 386 AND TO MARCH-IN RIGHTS UNDER SECTION 387.

SUBSECTION (B) PROVIDES FOR ACQUISITION OF TITLE TO CONTRACT INVENTIONS BY THE GOVERNMENT IN EACH COUNTRY IN WHICH A SMALL BUSINESS OR NONPROFIT ORGANIZA-TION ELECTS NOT TO FILE A PATENT APPLICATION OR FAILS TO FILE WITHIN A REASONABLE TIME.

### SECTION 384. ALLOCATION OF RIGHTS-- OTHER CONTRACTORS

SUBSECTION (A) PROVIDES THAT A CONTRACTOR THAT IS NOT A SMALL BUSINESS OR NON-PROFIT ORGANIZATION WILL HAVE FOUR AND ONE-HALF YEARS FROM THE FILING OF AN IN-VENTION REPORT UNDER SECTION 382(B) TO SELECT ONE OR MORE FIELDS OF USE WHICH IT INTENDS TO COMMERCIALIZE OR OTHERWISE ACHIEVE PUBLIC USE UNDER AN EXCLUSIVE LI-CENSE; AN EXAMPLE OF SUCH IS MAKING THE INVENTION AVAILABLE TO OTHERS FOR LI-CENSING ON REASONABLE TERMS AND CONDITIONS. DURING THE FOUR AND ONE-HALF YEAR PERIOD THE CONTRACTOR WILL HAVE TEMPORARY TITLE TO THE INVENTION, SUBJECT TO THE GOVERNMENT'S RIGHT UNDER THE ACT.

CONTRACTORS ARE ENCOURAGED TO FILE FIELD OF USE LISTS FROM TIME TO TIME, AND NOT WAIT UNTIL THE END OF THE 4 1/2 YEAR PERIOD. EACH FILING WILL BE SEPARATELY RE-VIEWED, AND TITLE TO THE PATENTS IN QUESTION WILL NOT PASS TO THE GOVERNMENT UN-TIL THE FILING OF THE FINAL FIELD OF USE LIST, OR 4 1/2 YEARS, WHICHEVER IS EARLIER.

*13 *6472 COMMERCIALIZATION OR MARKETING OF PRODUCTS OR PROCESSES EMBODYING AN INVENTION MAY INITIALLY BE ACCOMPLISHED BY A CONTRACTOR PRIOR TO REPORTING HIS FIELD OF USE SELECTION TO THE GOVERNMENT, WHICH IS A PREREQUISITE TO OBTAIN-ING AN EXCLUSIVE LICENSE UNDER SECTION 384(B) AND (C), IF THE CONTRACTOR ELECTS TO INITIALLY COMMERCIALIZE OR MARKET SUCH PRODUCTS OR PROCESSES PURSUANT TO THE NON-EXCLUSIVE LICENSE PROVISIONS OF SECTION 385. UPON THE CONTRACTOR THEREAFTER FILING THE FIELD OF USE LIST OR LISTS FOR SUCH PROCESSES OR PRODUCTS, SUCH NON-EXCLUSIVE LICENSE SHALL BECOME AN EXCLUSIVE LICENSE FOR THE SELECTED FIELDS OF USE UPON THE EXPIRATION OF THE 90-DAY PERIOD PROVIDED IN SUBSECTION (C) UNLESS THE GOVERNMENT NOTIFIES THE CONTRACTOR WITHIN SUCH 90-DAY PERIOD OF A CONTRARY DE-TERMINATION MADE UNDER SUBSECTION (D).

SUBSECTION (B) PROVIDES FOR THE CONTRACTOR TO RECEIVE AN EXCLUSIVE LICENSE IN EACH DESCRIBED FIELD OF USE IF IT FIELDS A UNITED STATES PATENT APPLICATION WITHIN A REASONABLE TIME. THE CONTRACTOR'S LICENSE IS SUBJECT TO THE GOVERNMENT'S MIN-IMUM RIGHTS UNDER SECTION 386 AND MARCH-IN RIGHTS UNDER SECTION 387.

SUBSECTION (C) PROVIDES THAT THE CONTRACTOR WILL AUTOMATICALLY ACQUIRE AN EXCLUSIVE LICENSE FOR EACH DESCRIBED FIELD OF USE BY OPERATION OF LAW NINETY DAYS AFTER PROVIDING THE RESPONSIBLE AGENCY WITH THE FIELD OF USE REPORT RE-QUIRED BY SUBSECTION (A) OF SECTION 384 UNLESS THE AGENCY EARLIER NOTIFIES THE CONTRACTOR OF A CONTRARY DETERMINATION UNDER SUBSECTION (D) OF THIS SECTION WITH RESPECT TO SUCH FIELD OF USE. IN THAT CASE, THE CONTRACTOR WOULD ACQUIRE AN EXCLUSIVE LICENSE BY OPERATION OF LAW IN ALL OTHER SELECTED FIELDS OF USE, IF ANY. THE COMMITTEE BELIEVES THAT EXPEDITION AND PREDICTABILITY ARE TWO ESSENTIAL IN-GREDIENTS OF ACHIEVING COMMERCIALIZATION OF GOVERNMENT FUNDED INVENTIONS

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

H.R. REP. 96-1307(I)                                                      Page 14

AND THEREFORE INTENDS THAT THE 90-DAY PERIOD BE A MAXIMUM TIME NOT SUBJECT TO EXTENSION EVEN BY CONSENT OF THE CONTRACTOR. ALSO FOR THIS REASON, IT IS THE COMMITTEE'S INTENT THAT THERE BE A PRESUMPTION IN FAVOR OF THE CONTRACTOR RECEIVING SUCH EXCLUSIVE LICENSE, AND THE COMMITTEE INTENDS THAT CONTRACTORS SHALL RECEIVE SUCH EXCLUSIVE LICENSES EXCEPT IN THE MOST EXTRAORDINARY OF CIRCUMSTANCES.

*12 SUBSECTION (D) SETS FORTH THE BASIS FOR AN AGENCY DETERMINATION THAT A CONTRACTOR WILL NOT RECEIVE AN EXCLUSIVE LICENSE IN A SELECTED FIELD OF USE.

THE CONTRACTOR WILL NOT ACQUIRE AN EXCLUSIVE LICENSE IN ANY FIELD OF USE IF THE RESPONSIBLE AGENCY DETERMINES THAT THE CONTRACTOR'S POSSESSION OF SUCH LICENSE: (1) WOULD IMPAIR NATIONAL SECURITY; OR (2) WOULD CREATE OR MAINTAIN A SITUATION INCONSISTENT WITH THE ANTITRUST LAWS.

SUBSECTION (B) IS INTENDED TO BE PERMISSIVE AND IS NOT INTENDED TO RESULT IN THE CREATION OF SPECIAL SECTIONS OR THE HIRING OF ADDITIONAL PERSONNEL FOR ITS ADMINISTRATION. AN AGENCY IS NOT REQUIRED TO UNDERTAKE ANY DETERMINATION, PERHAPS EXCEPT IN EXTRAORDINARY CASES, TO AWAIT ACTUAL EXPERIENCE UNDER THE EXCLUSIVE LICENSE TO SEE WHETHER CIRCUMSTANCES THEN JUSTIFY EXERCISE OF A MARCH-IN RIGHT RESERVED BY SECTION 387. FURTHER, TO REDUCE ADMINISTRATIVE BURDENS AND TO INCREASE THE SECURITY OF THE CONTRACTOR IN ITS KNOWLEDGE THAT IT WILL RECEIVE EXCLUSIVE RIGHTS IN THE INVENTION, THE SCOPE OF THE AGENCY'S INQUIRY UNDERLYING THIS DETERMINATION IS LIMITED. THE AGENCY'S REVIEW SHOULD FOCUS ON THOSE UNFORESEEN ANTITRUST AND *14 *6473 NATIONAL SECURITY CIRCUMSTANCES OF WHICH IT HAS BECOME AWARE SINCE THE TIME OF CONTRACTING THAT MIGHT NOW REQUIRE IT TO DENY THE CONTRACTOR AN EXCLUSIVE LICENSE IN A PARTICULAR FIELD OF USE. THE CONTRACTOR SHOULD NOT BE DENIED AN EXCLUSIVE LICENSE SOLELY ON THE BASIS OF FACTS THAT WERE KNOWN OR REASONABLY FORESEEABLE BY THE AGENCY AT THE TIME OF CONTRACTING. THE AGENCY NORMALLY WILL DEVIATE FROM THE STANDARD PATENT RIGHTS CLAUSE SO THAT THE CONTRACTOR WILL KNOW AT THAT TIME THAT IT WILL NOT RECEIVE AN EXCLUSIVE LICENSE TO PRACTICE A FORTHCOMING INVENTION IN A PARTICULAR FIELD OF USE.

THE ANTITRUST PROVISION OF SUBSECTION (D)(2) AND SIMILAR PROVISIONS THROUGHOUT THE BILL ARE INTENDED TO ENCOMPASS EXISTING JUDICIAL INTERPRETATIONS OF ACTIVITIES PROHIBITED BY THE ANTITRUST LAWS. THIS PROVISION DOES NOT AUTHORIZE EACH AGENCY TO CREATE ITS OWN BODY OF ANTITRUST LAW OR POLICY; BUT IN APPLYING THIS PROVISION EACH AGENCY HAS THE AUTHORITY, SUBJECT TO COURT REVIEW, TO DETERMINE WHETHER QUESTIONABLE CONDUCT DOES OR DOES NOT VIOLATE EXISTING ANTITRUST LAWS AS JUDICIALLY INTERPRETED.

SUBSECTION (E) PROVIDES THAT, WHENEVER AN AGENCY DETERMINES THAT A CONTRACTOR WILL NOT RECEIVE AN EXCLUSIVE LICENSE IN ANY FIELD OF USE, IT MUST INCLUDE IN ITS DETERMINATION WRITTEN REASONS, AND THAT THE CONTRACTOR HAS THE RIGHT OF APPEAL DE NOVO TO THE UNITED STATES COURT OF CUSTOMS AND PATENT APPEALS WITHIN SIXTY DAYS AFTER THE DETERMINATION IS ISSUED, THE COURT OF CUSTOMS AND PATENT APPEALS IS GIVEN EXCLUSIVE JURISDICTION TO AFFIRM, REVERSE, OR MODIFY THE AGENCY DETERMINATION. THE BURDEN OF PROOF RESTS WITH THE AGENCY. SPECIFICALLY INCLUDED IS THE AUTHORITY FOR THE COURT TO ORDER THE RESPONSIBLE AGENCY TO ISSUE AN EXCLUSIVE LICENSE TO THE CONTRACTOR.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SUBSECTION (F) PERMITS THE CONTRACTOR TO OBTAIN TITLE TO ANY CONTRACT INVENTION IN ANY FOREIGN COUNTRY IN WHICH THE CONTRACTOR AGREES TO FILE A PATENT APPLICATION, UNLESS THE RESPONSIBLE AGENCY DETERMINES THAT THE NATIONAL INTEREST WOULD BE AFFECTED ADVERSELY, WHICH SHOULD NOT OCCUR EXCEPT IN EXTRAORDINARY CIRCUMSTANCES. HOWEVER, TITLE WILL BE SUBJECT TO THE GOVERNMENT MINIMUM RIGHTS UNDER SECTION 386 AND MARCH-IN RIGHTS UNDER SECTION 387. IF THE CONTRACTOR DOES NOT FILE A PATENT APPLICATION WITHIN A REASONABLE TIME, THEN THE GOVERNMENT MAY ACQUIRE TITLE TO PATENTS ON THE CONTRACT INVENTION.

## SECTION 385. CONTRACTOR LICENSE

*13 SUBSECTION 385 AUTOMATICALLY GRANTS A NONEXCLUSIVE, ROYALTY FREE LICENSE TO EACH CONTRACTOR COMPLYING WITH SUBSECTION (B) OF SECTION 382 TO PRACTICE THE CONTRACT INVENTION IN ALL COUNTRIES IN WHICH IT NEITHER RECEIVES TITLE UNDER SUBSECTION (A) OF SECTION 383 NOR HAS AN EXCLUSIVE LICENSE UNDER SUBSECTION (B) OF SECTION 384. THIS NONEXCLUSIVE CONTRACTOR LICENSE MAY BE REVOKED BY THE GOVERNMENT ONLY TO THE EXTENT NECESSARY TO GRANT AN EXCLUSIVE LICENSE UNDER SUBCHAPTER III. IT IS EXPECTED THAT, SO LONG AS THE CONTRACTOR IS PURSUING COMMERCIALIZATION OF THE INVENTION UNDER ITS NONEXCLUSIVE LICENSE, THERE WOULD BE NO OCCASION TO GRANT AN EXCLUSIVE LICENSE, AND, THEREFORE, NO NEED TO REVOKE THE CONTRACTOR'S NON-EXCLUSIVE LICENSE. IT IS ALSO EXPECTED THAT THE CONTRACTOR'S LICENSE TO PRACTICE THE INVENTION SHALL INCLUDE THE RIGHT TO GRANT SUBLICENSES OF THE SAME SCOPE, AND ON REASONABLE TERMS AND CONDITIONS, TO SUBSIDIARIES AND AFFILIATES WITHIN THE CORPORATE STRUCTURE OF THE CONTRACTOR'S ORGANIZATION*6474 *15 AND TO EXISTING LICENSEES WHO THE CONTRACTOR IS OBLIGATED TO LICENSE OR TO ASSURE FREEDOM FROM INFRINGEMENT LIABILITY.

## SECTION 386. MINIMUM GOVERNMENT RIGHTS

SUBSECTION (A) SETS FORTH THE MINIMUM RIGHTS THE GOVERNMENT HAS IN EVERY CONTRACT INVENTION, UNLESS WAIVED UNDER THE AUTHORITY OF SECTION 388. THESE MINIMUM RIGHTS INCLUDED:
(1) 'THE RIGHT TO REQUIRE FROM THE CONTRACTOR WRITTEN REPORTS ON THE USE OF THE INVENTION IF PATENTED;
(2) A ROYALTY-FREE WORLDWIDE LICENSE TO PRACTICE THE INVENTION OR HAVE IT PRACTICED FOR THE GOVERNMENT; AND
(3) THE RIGHT TO LICENSE OR SUBLICENSE STATE AND LOCAL GOVERNMENTS TO PRACTICE THE INVENTION OR HAVE IT PRACTICED FOR THEM, IF THE AGENCY DETERMINES AT THE TIME OF CONTRACTING THAT ACQUISITION OF THIS RIGHT WOULD SERVE THE NATIONAL INTEREST.'
SUBSECTION (B) REQUIRES THAT WHENEVER THE GOVERNMENT HAS RIGHTS IN A CONTRACT INVENTION, NOTICE TO THAT EFFECT SHALL BE INCLUDED IN EACH UNITED STATES PATENT APPLICATION AND PATENT ON THE INVENTION.

## SEC. 387. MARCH-IN RIGHTS

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

SECTION 387 SETS FORTH THE BASIS ON WHICH THE RESPONSIBLE AGENCY MAY TERMINATE THE CONTRACTOR'S TITLE OR EXCLUSIVE RIGHTS WITH RESPECT TO ONE OR MORE FIELDS OF USE IN ANY PATENT ON A CONTRACT INVENTION; MAY REQUIRE THE CONTRACTOR TO GRANT APPROPRIATE LICENSE OR SUBLICENSE TO RESPONSIBLE APPLICANTS; OR, IF NECESSARY, MAY GRANT SUCH LICENSES OR SUBLICENSES ITSELF.

SUBSECTION (A) SETS FORTH THE GROUNDS FOR EXERCISE OF THE GOVERNMENT'S MARCH-IN RIGHTS:

(1) IF THE CONTRACTOR HAS NOT TAKEN AND IS NOT EXPECTED TO TAKE TIMELY AND EF-FECTIVE ACTION TO ACHIEVE PRACTICAL APPLICATION OF THE INVENTION IN ONE OR MORE OF THE FIELDS OF USE SELECTED;

(2) IF NECESSARY TO PROTECT THE NATIONAL SECURITY;

(3) IF NECESSARY TO MEET REQUIREMENTS FOR PUBLIC USE SPECIFIED BY FEDERAL REGU-LATION;

(4) IF CONTINUATION OF THE CONTRACTOR'S RIGHTS IN THE INVENTION WOULD CREATE OR MAINTAIN A SITUATION INCONSISTENT WITH THE ANTITRUST LAWS; OR

*14 (5) IF THE CONTRACTOR HAS FAILED TO COMPLY WITH THE REPORTING REQUIREMENTS OF THIS ACT WITH RESPECT TO SUCH INVENTION.

THE GOVERNMENT MAY MARCH-IN ONLY IN A FIELD OF USE WHICH GIVES RISE TO ONE OR MORE OF THE SITUATIONS DESCRIBED IN THE ABOVE FIVE PARAGRAPHS. THE FACT THAT A CONTRACTOR'S BEHAVIOR DOES NOT GIVE RISE TO SUCH A SITUATION WITH RESPECT TO SOME FIELDS OF USE WILL NOT PREVENT THE GOVERNMENT FROM MARCHING-IN IN ANOTH-ER FIELD OF USE.

THIS SECTION IS INTENDED TO CONTINUE EXISTING PRACTICE AND THE COMMITTEE IN-TENDS THAT AGENCIES CONTINUE TO USE THE MARCH-IN PROVISIONS IN AS A RESTRAINED AND JUDICIOUS MANNER AS IN THE PAST.

SUBSECTION (B) PERMITS THE RESPONSIBLE AGENCY TO EXERCISE ITS MARCH-IN RIGHTS EITHER ON ITS OWN INITIATIVE OR IN RESPONSE TO A PETITION FROM AN INTERESTED PER-SON JUSTIFYING SUCH ACTION. AGENCY FAILURE TO INITIATE A MARCH-IN PROCEEDING IN RESPONSE TO A PETITION IS NOT A DETERMINATION APPEALABLE TO THE UNITED STATES COURT OF CUSTOMS AND PATENT APPEALS UNDER SECTION 407.

*16 *6475 SUBSECTION (C) ENABLES AN AGENCY TO SPECIFY REASONABLE LICENSING TERMS WHENEVER, IN EXERCISE OF ITS MARCH-IN RIGHTS, IT REQUIRES A CONTRACTOR TO GRANT A LICENSE OR SUBLICENSE.

### SECTION 388. DEVIATION AND WAIVER

SECTION 388 PERMITS FEDERAL AGENCIES, TO FURTHER AN AGENCY'S MISSION AND THE PUBLIC INTEREST, TO DEVIATE FROM ANY STANDARD PATENT RIGHTS CLAUSE ISSUED UNDER SECTION 390 ACQUIRING MORE OR FEWER RIGHTS TO A CONTRACT INVENTION.

SUBSECTION (A) AUTHORIZES DEVIATIONS EITHER ON A CLASS BASIS IN ACCORDANCE WITH REGULATIONS TO BE ISSUED UNDER SECTION 390, OR, UNLESS PROHIBITED BY THOSE REGULATIONS, UNDER REGULATIONS ISSUED BY AN AGENCY ITSELF. CASE-BY-CASE DEVI-ATIONS ARE PERMITTED WHEN AUTHORIZED BY THE HEAD OF AN AGENCY OR A DESIGNEE, AND DESCRIBED IN THE FEDERAL REGISTER. THE COMMITTEE INTENDS THAT AGENCIES NOR-MALLY WILL NOT DEVIATE AND ESPECIALLY SO IN RESPECT OF CONTRACTS DEALING WITH

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

THE DEVELOPMENT OF DEFENSE RELATED TECHNOLOGY.

SUBSECTION (B) FORBIDS WAIVER UNDER ANY CIRCUMSTANCES OF THE NATIONAL SECUR-
ITY AND ANTITRUST MARCH-IN RIGHTS RESERVED BY SECTIONS 387(A)(2), 387(A)(4), AND 387(C).

SUBSECTION (C) FORBIDS WAIVER OF RIGHTS RESERVED BY SECTIONS 384(A), AND 387(A)(1),
(1) IN CONTRACTS INVOLVING CO-SPONSORED, COST-SHARING, OR JOINT VENTURE RESEARCH
TO WHICH THE CONTRACTOR MAKES A SUBSTANTIAL CONTRIBUTION OF FUNDS, TECHNO-
LOGY, FACILITIES, OR EQUIPMENT; OR (2) IN CONTRACTS WITH A CONTRACTOR WHOSE PARTI-
CIPATION IS NECESSARY FOR THE SUCCESSFUL ACCOMPLISHMENT OF AN AGENCY MISSION
AND SUCH CONTRACT CANNOT BE OBTAINED UNDER THE STANDARD PATENT RIGHTS CLAUSE.

### SECTION 389. TRANSFER OF RIGHTS TO CONTRACTOR EMPLOYEES

SECTION 389 AUTHORIZED A CONTRACTOR'S EMPLOYEE-INVENTOR TO RECEIVE SOME OR
ALL OF THE CONTRACTOR'S RIGHTS TO A CONTRACT INVENTION IF THE RESPONSIBLE
AGENCY AND THE CONTRACTOR APPROVE. THE CORRESPONDING OBLIGATIONS OF THE CON-
TRACTOR UNDER SUBCHAPTER I THEN BECOME THE OBLIGATIONS OF THE EMPLOYEE.

### SECTION 390. REGULATIONS AND STANDARD PATENT RIGHTS CLAUSE

*15 SUBSECTION 390(A) REQUIRES THE OFFICE OF FEDERAL PROCUREMENT POLICY TO DIR-
ECT THE ISSUANCE OF REGULATIONS IMPLEMENTING SUBCHAPTER 1, INCLUDING THE ESTAB-
LISHMENT OF A STANDARD PATENT RIGHTS CLAUSE OR CLAUSES.

SUBSECTIONS (B), (C) AND (D) REQUIRE A SHARING OF THE ROYALTIES AND/OR REVENUES
WITH THE GOVERNMENT TO PAY THE GOVERNMENT FOR FEDERAL FUNDING OF RESEARCH
AND DEVELOPMENT. REGULATIONS TO BE DEVELOPED MAY PERMIT WAIVER OF SOME OR ALL
OF THIS PAYMENT.

### SUBCHAPTER II-- INVENTIONS OF FEDERAL EMPLOYEES

### SECTION 391. EMPLOYEE INVENTIONS

SECTION 391 DEFINES 'EMPLOYEE INVENTIONS' AS INVENTIONS MADE BY FEDERAL EM-
PLOYEES.

### SECTION 392. REPORTING OF INVENTIONS

SECTION 392(A) REQUIRES THAT A FEDERAL EMPLOYEE REPORT TO THE EMPLOYEE'S
AGENCY ALL INVENTIONS MADE WHILE AN EMPLOYEE OF THAT *17 *6476 AGENCY. THE GOV-
ERNMENT IS PROHIBITED FROM PUBLISHING OR RELEASING THESE REPORTS UNTIL THE
EARLIER OF ONE YEAR AFTER THEIR RECEIPT OR THE FINAL DISPOSITION OF RIGHTS UNDER
THIS SUBCHAPTER.

### SECTION 393. CRITERIA FOR THE ALLOCATION OF RIGHTS

SECTION 393 ESTABLISHES THE CRITERIA FOR ALLOCATION OF INVENTION RIGHTS
BETWEEN THE GOVERNMENT AND ITS EMPLOYEE-INVENTOR. BASICALLY, THE ALLOCATION

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

DEPENDS UPON THE RELATIONSHIP OF THE INVENTION TO THE EMPLOYEE'S WORK AND THE USE OF GOVERNMENT RESOURCES.

PARAGRAPH (1) PROVIDES FOR GOVERNMENT ACQUISITION OF ALL INVENTION RIGHTS IF THE INVENTION BEARS A DIRECT RELATION TO THE DUTIES OF THE EMPLOYEE-INVENTOR OR WAS MADE IN CONSEQUENCE OF THE EMPLOYEE'S EMPLOYMENT.

PARAGRAPH (2) PROVIDES THAT, WHERE THE INVENTION NEITHER BEARS A DIRECT RELA-TION TO THE EMPLOYEE'S DUTIES NOR WAS MADE IN CONSEQUENCE OF THE EMPLOYEE'S EM-PLOYMENT, BUT WAS MADE WITH A CONTRIBUTION OF FEDERAL RESOURCES, THE EMPLOYEE MAY RECEIVE ALL RIGHTS IN THE INVENTION SUBJECT TO A NONEXCLUSIVE ROYALTY-FREE WORLDWIDE LICENSE TO THE GOVERNMENT TO PRACTICE THE INVENTION OR HAVE IT PRAC-TICED FOR THE GOVERNMENT AS WELL AS TO SUBLICENSE STATE, LOCAL, OR FOREIGN GOV-ERNMENTS IF ACQUISITION OF THIS RIGHT WOULD SERVE THE NATIONAL INTEREST.

PARAGRAPH (3) PERMITS THE GOVERNMENT TO WAIVE TO THE EMPLOYEE ITS RIGHTS UN-DER PARAGRAPH (1) OF THIS SECTION, SUBJECT TO THE GOVERNMENT LICENSE DESCRIBED IN PARAGRAPH (2) OF THIS SECTION.

PARAGRAPH (4) REQUIRES THE GOVERNMENT TO ACQUIRE ALL RIGHTS IN ANY INVENTION IF THE NATIONAL SECURITY MIGHT BE IMPAIRED SHOULD THE EMPLOYEE-INVENTOR RE-CEIVE RIGHTS TO IT, NOTWITHSTANDING THE PROVISIONS OF PARAGRAPHS (2) OR (3) OF THIS SECTION.

PARAGRAPH (5) ENTITLES AN EMPLOYEE-INVENTOR TO ALL RIGHTS IN AN INVENTION MADE BY THE EMPLOYEE NOT COVERED BY PARAGRAPHS (1), (2), OR (3) OF THIS SECTION.

PARAGRAPH (6) PERMITS THE GOVERNMENT TO ENTER INTO AGREEMENTS ALLOCATING RIGHTS IN INVENTIONS RESULTING FROM RESEARCH AND DEVELOPMENT TO WHICH OTHER PARTIES HAVE CONTRIBUTED SUBSTANTIALLY, NOTWITHSTANDING PARAGRAPH (1) OF THIS SECTION.

### SECTION 394. PRESUMPTIONS

SECTION 304 ESTABLISHES REBUTTABLE PRESUMPTIONS FOR THE APPLICATION OF THE CRI-TERIA SET FORTH IN SECTION 393.

*16 SUBSECTION (A) SETS OUT EMPLOYEE DUTIES WHICH ESTABLISH A REBUTTABLE PRE-SUMPTION THAT AN INVENTION FALLS WITHIN THE CRITERIA OF PARAGRAPH (1) OF SECTION 393. THUS, FOR EXAMPLE, IF AN EMPLOYEE IS ASSIGNED TO CONDUCT RESEARCH AND DEVEL-OPMENT WORK, IT IS PRESUMED THAT THE GOVERNMENT WILL HAVE THE RIGHT TO TITLE IN ANY INVENTION MADE.

SUBSECTION (B) ESTABLISHES A REBUTTABLE PRESUMPTION THAT AN INVENTION MADE BY AN EMPLOYEE WHOSE DUTIES FALL OUTSIDE THOSE LISTED IN PARAGRAPH (A) OF THIS SEC-TION FALLS WITHIN THE CRITERIA OF PARAGRAPH (2) OF SECTION 393, RESERVING TO THE EMPLOYEE TITLE TO AN EMPLOYEE-INVENTION SUBJECT TO CERTAIN LICENSE RIGHTS IN THE GOVERNMENT.

### *18 *6477 SECTION 395. REVIEW OF AGENCY DETERMINATIONS

SECTION 395 PROVIDES FOR THE REVIEW OF FEDERAL AGENCY DETERMINATIONS REGARD-ING THE RESPECTIVE RIGHTS OF THE GOVERNMENT AND A FEDERAL EMPLOYEE-INVENTOR IN SITUATIONS IN WHICH THE AGENCY DETERMINES NOT TO ACQUIRE ALL RIGHTS IN AN INVEN-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

TION OR WHERE AN AGGRIEVED EMPLOYEE-INVENTOR REQUESTS REVIEW. THE REVIEW IS TO BE CONDUCTED ACCORDING TO REGULATIONS ISSUED UNDER SECTION 399.

### SECTION 396. REASSIGNMENT OF RIGHTS

SECTION 396 ESTABLISHES A RIGHT IN THE GOVERNMENT TO ADJUST THE RIGHTS AC-QUIRED FROM A FEDERAL EMPLOYEE-INVENTOR ON THE BASIS OF EVIDENCE THAT THE GRANTING OF GREATER RIGHTS TO THE EMPLOYEE-INVENTOR IS NECESSARY TO CORRECT AN INEQUITABLE ALLOCATION OF RIGHTS.

### SECTION 397. INCENTIVE AWARDS PROGRAM

SUBSECTION (A) PROVIDES FEDERAL AGENCIES THE RIGHT TO ESTABLISH AN INCENTIVE AWARDS PROGRAM WHICH IS INTENDED TO MONETARILY RECOGNIZE FEDERAL EMPLOYEE-INVENTORS, STIMULATE INNOVATIVE CREATIVENESS, AND ENCOURAGE DISCLOSURES OF IN-VENTIONS WHICH IN TURN WILL ENHANCE THE POSSIBILITY OF UTILIZATION THROUGH THE FEDERAL LICENSING PROGRAM ESTABLISHED UNDER SUBCHAPTER III.

SUBSECTION (B) SETS FORTH THE CRITERIA FOR MAKING AN AWARD.

SUBSECTION (C), (D), AND (E) ESTABLISH THE PROCEDURES FOR MAKING AWARDS OF DIF-FERENT AMOUNTS.

SUBSECTION (F) PROVIDES THAT ACCEPTANCE OF A CASH AWARD CONSTITUTES AN AGREE-MENT BY THE EMPLOYEE-INVENTOR THAT ANY USE BY THE GOVERNMENT OF AN INVENTION FOR WHICH AN AWARD IS MADE DOES NOT FORM THE BASIS OF A FURTHER CLAIM OF ANY NATURE AGAINST THE GOVERNMENT BY THE RECIPIENT, HIS HEIRS, OR ASSIGNS.

SUBSECTION (G) REQUIRES THAT AN AWARD SHOULD BE PAID FROM THE FUND OR APPRO-PRIATION OF THE AGENCY PRIMARILY BENEFITTING.

### SECTION 398. INCOME SHARING FROM PATENT LICENSES

SECTION 398 AUTHORIZES FEDERAL AGENCIES TO SHARE INCOME FROM LICENSING THE GOVERNMENT'S PATENT RIGHTS WITH THE EMPLOYEE-INVENTOR.

### SECTION 399. REGULATIONS

SUBSECTION (A) MAKES THE SECRETARY OF COMMERCE RESPONSIBLE FOR ISSUING REGU-LATIONS TO IMPLEMENT SUBCHAPTER II.

SUBSECTION (B) PROVIDES THAT DETERMINATION CONCERNING A FEDERAL EMPLOYEE'S PROMOTION OF THE EMPLOYEE'S INVENTION IS SUBJECT TO REGULATIONS TO BE PRESCRIBED BY THE SECRETARY OF COMMERCE WITH THE CONCURRENCE OF THE OFFICE OF GOVERN-MENT ETHICS AND THE ATTORNEY GENERAL. THE INTENTION IS TO ENSURE THAT A FEDERAL EMPLOYEE WILL NOT BE PROHIBITED FROM PROMOTING HIS OWN INVENTION IF CONSISTENT WITH CONFLICT OF INTERESTS REGULATIONS.

### SUBCHAPTER III-- LICENSING OF FEDERALLY OWNED INVENTIONS

### SECTION 400. COVERED INVENTIONS

*17 SECTION 400 PROVIDES THAT SUBCHAPTER III APPLIES TO ALL FEDERALLY-OWNED PAT-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ENT RIGHTS, INCLUDING LICENSES OR SUBLICENSES GRANTED OR REQUIRED TO BE GRANTED
BY THE GOVERNMENT UNDER SECTION 387, UPON **19 *6478** OR AFTER EXERCISE OF THE
MARCH-IN PROVISIONS. HOWEVER IT DOES NOT APPLY TO LICENSES ESTABLISHED BY THE
OTHER SECTIONS OF SUBCHAPTER I.

### SECTION 401. EXCLUSIVE OR PARTIALLY EXCLUSIVE LICENSES

SECTION 401 SETS OUT TERMS AND CONDITIONS UNDER WHICH A FEDERAL AGENCY MAY
GRANT AN EXCLUSIVE OR PARTIALLY EXCLUSIVE LICENSE.

SUBSECTION (A) PROVIDES THAT AN EXCLUSIVE OR PARTIALLY EXCLUSIVE DOMESTIC LI-
CENSE NOT AUTOMATICALLY GRANTED UNDER SECTION 384 MAY BE GRANTED ONLY AFTER
PUBLIC NOTICE AND OPPORTUNITY FOR FILING WRITTEN OBJECTIONS AND ONLY IF THE RE-
SPONSIBLE AGENCY DETERMINES THAT SUCH LICENSING IS NECESSARY TO ACHIEVE PRAC-
TICAL APPLICATION OF THE INVENTION AND THAT THE SCOPE OF PROPOSED EXCLUSIVITY IS
NOT GREATER THAN REASONABLY NECESSARY.

SUBSECTION (B) PROVIDES THAT AN EXCLUSIVE OR PARTIALLY EXCLUSIVE FOREIGN LI-
CENSE MAY BE GRANTED ONLY AFTER PUBLIC NOTICE AND OPPORTUNITY FOR FILING WRIT-
TEN OBJECTIONS AND AFTER A DETERMINATION WHETHER THE INTERESTS OF THE GOVERN-
MENT OR OF UNITED STATES INDUSTRY IN FOREIGN COMMERCE WILL BE ENHANCED.

SUBSECTION (C) PROHIBITS THE GRANTING OF A LICENSE UNDER THIS SECTION IF THE RE-
SPONSIBLE AGENCY DETERMINES THAT THE GRANT WOULD CREATE OR MAINTAIN A SITU-
ATION INCONSISTENT WITH THE ANTITRUST LAWS.

SUBSECTION (D) REQUIRES FEDERAL AGENCIES TO MAINTAIN PUBLICLY AVAILABLE, PERI-
ODICALLY UPDATED RECORDS OF THEIR DETERMINATIONS TO GRANT EXCLUSIVE OR PAR-
TIALLY EXCLUSIVE LICENSES.

### SECTION 402. MINIMUM GOVERNMENT RIGHTS

SECTION 402 SETS FORTH THE MINIMUM RIGHTS THE GOVERNMENT IS TO HAVE IN EVERY
EXCLUSIVE OR PARTIALLY EXCLUSIVE LICENSE. THESE MINIMUM RIGHTS INCLUDE:

(1) 'THE RIGHT TO REQUIRE FROM THE LICENSEE WRITTEN REPORTS ON THE USE OF THE IN-
VENTION;

(2) A ROYALTY-FREE. WORLDWIDE RIGHT TO PRACTICE THE INVENTION OR HAVE IT PRAC-
TICED FOR THE GOVERNMENT; AND

(3) THE RIGHT TO LICENSE STATE AND LOCAL, TO PRACTICE THE INVENTION OR HAVE IT
PRACTICED FOR THEM IF THE AGENCY DETERMINES THAT RESERVATION OF THIS RIGHT
WOULD SERVE THE NATIONAL INTEREST.'

### SECTION 403. MARCH-IN RIGHTS

SECTION 403 SETS FORTH THE BASIS ON WHICH THE RESPONSIBLE AGENCY MAY TERMINATE
AN EXCLUSIVE OR PARTIALLY EXCLUSIVE LICENSE.

SUBSECTION (A) SETS FORTH THE GROUNDS FOR SUCH TERMINATION.

(1) 'IF THE LICENSEE HAS NOT TAKEN AND IS NOT EXPECTED TO TAKE TIMELY AND EFFECT-
IVE ACTION TO ACHIEVE PRACTICAL APPLICATION OF THE INVENTION IN THE FIELDS OF USE
AFFECTED;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(2) IF NECESSARY TO PROTECT NATIONAL SECURITY;

(3) IF NECESSARY TO MEET REQUIREMENTS FOR PUBLIC USE SPECIFIED BY FEDERAL REGU-LATION;

(4) CONTINUATION OF LICENSEE'S RIGHTS IN THE INVENTION WOULD CREATE OR MAINTAIN A SITUATION INCONSISTENT WITH THE ANTITRUST LAWS; OR

(5) IF THE LICENSEE HAS FAILED TO COMPLY WITH THE TERMS OF THE LICENSE.'

*18 SUBSECTION (B) PERMITS THE RESPONSIBLE AGENCY TO EXERCISE ITS MARCH-IN RIGHTS EITHER ON ITS OWN INITIATIVE OR IN RESPONSE TO A PETITION FROM AN INTER-ESTED PERSON.

#### *20 *6479 SECTION 404. REGULATIONS

SECTION 404 MAKES THE OFFICE OF FEDERAL PROCUREMENT POLICY RESPONSIBLE FOR DIRECTING THE ISSUANCE OF REGULATIONS SPECIFYING THE TERMS AND CONDITIONS UPON WHICH FEDERALLY-OWNED PATENT RIGHTS MAY BE LICENSED. AGENCIES ARE PERMITTED TO DEVIATE FROM SUCH REGULATIONS ON A CLASS BASIS UNLESS PROHIBITED BY THE OF-FICE OF FEDERAL PROCUREMENT POLICY.

#### SUBCHAPTER IV-- MISCELLANEOUS

#### SECTION 405. PATENT ENFORCEMENT SUITS AND RIGHT OF INTERVENTION

SUBSECTION 405(A) PROVIDES FOR ENFORCEMENT OF AN EXCLUSIVE LICENSE UNDER THE CHAPTER BY AN EXCLUSIVE LICENSEE WITHOUT THE NECESSITY OF JOINING THE UNITED STATES OR ANY OTHER EXCLUSIVE LICENSEE AS A PARTY. THE INTENTION IS TO MAKE THE EXCLUSIVE LICENSE THE FUNCTIONAL EQUIVALENT OF TITLE WITHIN THE SPECIFIED FIELDS OF USE. HOWEVER, THE ATTORNEY GENERAL AND THE AGENCY THAT GRANTED THE LICENSE MUST BE GIVEN PROMPT NOTICE OF THE SUIT AND SERVED COPIES OF PAPERS AS THOUGH THEY WERE PARTIES TO THE SUIT.

SUBSECTION (B) REQUIRES THE RESPONSIBLE AGENCY TO NOTIFY ALL OF ITS EXCLUSIVE LI-CENSEES OF ANY SUIT BY AN EXCLUSIVE LICENSEE, THE GOVERNMENT, OR ANOTHER PER-SON. ONE INTENTION OF SECTION 405 IS TO PROVIDE FOR THE ADJUDICATION OF THE IN-FRINGEMENT AND VALIDITY OF A GOVERNMENT-OWNED PATENT SUBJECT TO THIS ACT WITHOUT THE NECESSITY OF THE UNITED STATES APPEARING BEFORE THE COURT AS A PARTY.

#### SECTION 406. BACKGROUND RIGHTS

'BACKGROUND RIGHTS' REFER TO PATENT RIGHTS ON NON-CONTRACT INVENTIONS. THOSE INVENTIONS WHICH DID NOT RESULT FROM FEDERALLY FUNDED RESEARCH BUT WHICH MAY RELATE TO THE WORK OBJECT OF A FUNDING AGREEMENT. THE COMMITTEE DOES NOT CON-TEMPLATE THAT FUNDING AGREEMENTS MAY REQUIRE THE CONTRACTOR TO LICENSE SUCH INVENTION (NOT DEVELOPED WITH FEDERAL FUNDS) TO THIRD PARTIES. MOREOVER RETEN-TION OF BACKGROUND RIGHTS BY FEDERAL AGENCIES IS NOT CONSIDERED BY YOUR COM-MITTEE TO BE CONSISTENT WITH THE INTENT OF THIS BILL.

THE PROBLEM OF 'BACKGROUND RIGHTS' HAS SERIOUSLY DISADVANTAGED CERTAIN BUSI-NESSES, PRIMARILY SMALL BUSINESSES, WHICH BID ON GOVERNMENT RESEARCH AND DE-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

MERCE TO COORDINATE A PROGRAM TO HELP AGENCIES CARRY OUT THEIR AUTHORITIES UN-
DER SECTION 149.

PARAGRAPH (A)(6) AUTHORIZES THE SECRETARY TO PUBLISH NOTICES OF ALL FEDERALLY-
OWNED PATENT RIGHTS AVAILABLE FOR LICENSING.

PARAGRAPH (A)(3) AUTHORIZES THE SECRETARY TO EVALUATE INVENTIONS REFERRED TO
IT BY FEDERAL AGENCIES IN ORDER TO IDENTIFY THOSE INVENTIONS WITH THE GREATEST
COMMERCIAL POTENTIAL.

PARAGRAPH (A)(5) AUTHORIZES THE SECRETARY TO DEVELOP AND MANAGE A GOVERN-
MENT-WIDE PROGRAM, WITH PRIVATE SECTOR PARTICIPATION, TO STIMULATE TRANSFER TO
THE PRIVATE SECTOR OF POTENTIALLY VALUABLE FEDERALLY-OWNED TECHNOLOGY
THROUGH THE DISSEMINATION OF INFORMATION ABOUT THE TECHNOLOGY.

PARAGRAPH (A)(4) AUTHORIZES THE SECRETARY TO ASSIST THE FEDERAL AGENCIES IN
SEEKING AND MAINTAINING PATENT PROTECTION IN ANY COUNTRY, INCLUDING THE PAY-
MENT OF FEES AND COSTS.

PARAGRAPH (A)(1) AUTHORIZES THE SECRETARY TO CONSULT WITH THE FEDERAL AGEN-
CIES ABOUT AREAS OF SCIENCE AND TECHNOLOGY WITH COMMERICAL POTENTIAL.

PARAGRAPH (A)(7) REQUIRES THE SECRETARY, SEVEN YEARS AFTER THE DATE OF ENACT-
MENT OF THE ACT, TO REPORT ON ITS OPERATIVE EFFECT TO THE CONGRESS.

*22 *6481 SUBSECTION (B) AUTHORIZES THE APPROPRIATION TO THE SECRETARY OF COM-
MERCE OF SUCH SUMS AS THEREAFTER MAY BE NECESSARY TO ENABLE THE SECRETARY TO
CARRY OUT RESPONSIBILITIES UNDER THIS SECTION.

### SECTION 411. DEFINITIONS

*20 SECTION 411 SETS OUT THE DEFINITIONS, FOR PURPOSES OF THE ACT FOR THE TERMS
'AGENCY,' 'RESPONSIBLE AGENCY,' 'ANTITRUST LAWS,' 'CONTRACT, ' 'CONTRACTOR,'
'FEDERAL EMPLOYEE,' 'INVENTION,' 'MADE,' 'NONPROFIT ORGANIZATION,' 'PATENT RIGHTS,'
'PRACTICAL APPLICATION,' 'SMALL BUSINESS, ' 'STATE,' 'LOCAL,' AND 'WILL.'

### CONFORMING PATENT POLICY AMENDMENTS

SECTION 7 AMENDS OR REPEALS PARTS OF OTHER ACTS AS NECESSARY TO IMPLEMENT THE
PROVISIONS OF NEW CHAPTER 38 OF TITLE 35, UNITED STATES CODE. ACTS AMENDED OR RE-
PEALED IN PART ARE:

TITLE 7, U.S.C. 427(1).
TITLE 7, U.S.C. 1624(A).
THE FEDERAL COAL MINE HEALTH AND SAFETY ACT OF 1969.
THE NATIONAL TRAFFIC AND MOTOR VEHICLE SAFETY ACT OF 1966.
THE NATIONAL SCIENCE FOUNDATION ACT OF 1950.
THE ATOMIC ENERGY ACT OF 1954.
THE NATIONAL AERONAUTICS AND SPACE ACT OF 1958.
THE COAL RESEARCH AND DEVELOPMENT ACT OF 1960.
THE HELIUM ACT AMENDMENTS OF 1960.
THE ARMS CONTROL AND DISARMAMENT ACT OF 1961.
THE APPALACHIAN REGIONAL DEVELOPMENT ACT OF 1965.
THE FEDERAL NONNUCLEAR ENERGY RESEARCH AND DEVELOPMENT ACT OF 1974.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

VELOPMENT CONTRACTS. BACKGROUND RIGHTS REFER TO PATENT RIGHTS ON NON-CONTRACT INVENTIONS, THOSE INVENTIONS WHICH DID NOT RESULT FROM FEDERALLY FUNDED RESEARCH, BUT WHICH MAY RELATE TO THE WORK OBJECT OF A FUNDING AGREEMENT. BACKGROUND RIGHTS CONSTITUTE VALUABLE PROPERTY TO MANY BUSINESSES, PARTICULARLY TO SMALL FIRMS; HOWEVER, SOME AGENCIES HAVE ROUTINELY AND UNNECESSARILY REQUIRED THAT CONTRACTORS SIGN AWAY THEIR EXCLUSIVE RIGHTS TO BACKGROUND INVENTIONS AS A COST OF DOING BUSINESS WITH THE GOVERNMENT. THE RETENTION OF BACKGROUND RIGHTS BY FEDERAL AGENCIES MUST BE CURBED UNLESS SUCH USE IS CLEARLY JUSTIFIED BY A NATIONAL NEED.

### SECTION 407. NOTICE, HEARING, AND JUDICIAL REVIEW

SUBSECTION (A) REQUIRES THAT AGENCY DETERMINATIONS UNDER SECTIONS 382, 387(A) AND 387(C), AND 403, MUST HAVE WRITTEN REASONS AND BE PRECEDED BY PUBLIC NOTICE AND AN OPPORTUNITY FOR A HEARING IN *21 *6480 WHICH THE UNITED STATES, ANY AGENCY, AND ANY INTERESTED PERSON MAY PARTICIPATE.

*19 SUBSECTION (B) PERMITS THE UNITED STATES OR AN ADVERSELY AFFECTED PARTICIPANT TO APPEAL A SUBSECTION (A) DETERMINATION TO THE UNITED STATES COURT OF CUSTOMS AND PATENT APPEALS WITHIN SIXTY DAYS AFTER IT IS ISSUED. THE COURT OF CUSTOMS AND PATENT APPEALS IS GIVEN EXCLUSIVE JURISDICTION TO DETERMINE THE MATTER DE NOVO, AFFIRMING, REVERSING, OR MODIFYING THE AGENCY DETERMINATION. THE BURDEN OF PROOF SHALL REST WITH THE AGENCY.

### SECTION 408. RELATIONSHIP TO OTHER LAWS

SECTION 408 IS INTENDED TO REMOVE ANY IMPLICATION THAT THE ACT PROVIDES IMMUNITY FROM THE ANTITRUST LAWS.

### SECTION 409. AUTHORITY OF FEDERAL AGENCIES

SUBSECTIONS (A), (B), (C), (D), (E), AND (F) SET FORTH THE AUTHORITY OF FEDERAL AGENCIES TO PROTECT PATENT RIGHTS AT HOME AND ABROAD IN-- 'ANY INVENTION IN WHICH THE GOVERNMENT HAS AN INTEREST IN ORDER TO PROMOTE THE USE OF INVENTIONS HAVING SIGNIFICANT COMMERCIAL POTENTIAL OR OTHERWISE ADVANCE THE NATIONAL INTEREST'-- TO LICENSE FEDERALLY-OWNED PATENT RIGHTS; TO TRANSFER PATENT RIGHTS TO AND ACCEPT TRANSFERS OF PATENT RIGHTS FROM OTHER AGENCIES WITHOUT REGARD TO THE PROPERTY TRANSFER PROCEDURES REQUIRED BY THE FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT OF 1949 (40 U.S.C. 471); TO WITHHOLD PUBLICATION OR RELEASE OF INFORMATION DISCLOSING ANY INVENTION LONG ENOUGH FOR PATENT APPLICATIONS TO BE FILED; TO PROMOTE THE LICENSING OF FEDERALLY-OWNED PATENT RIGHTS; AND TO ENTER INTO CONTRACTS TO ACCOMPLISH THE PURPOSES OF THIS SECTION.

### SECTION 410. RESPONSIBILITIES OF THE SECRETARY OF COMMERCE

SECTION 410 PROVIDES THE AUTHORITIES NECESSARY FOR THE DEPARTMENT OF COMMERCE EFFECTIVELY TO ASSIST OTHER FEDERAL AGENCIES ADMINISTER THE LICENSING OF FEDERALLY-OWNED INVENTIONS. PARAGRAPH (A)(2) AUTHORIZES THE SECRETARY OF COM-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

MERCE TO COORDINATE A PROGRAM TO HELP AGENCIES CARRY OUT THEIR AUTHORITIES UN-
DER SECTION 149.

PARAGRAPH (A)(6) AUTHORIZES THE SECRETARY TO PUBLISH NOTICES OF ALL FEDERALLY-
OWNED PATENT RIGHTS AVAILABLE FOR LICENSING.

PARAGRAPH (A)(3) AUTHORIZES THE SECRETARY TO EVALUATE INVENTIONS REFERRED TO
IT BY FEDERAL AGENCIES IN ORDER TO IDENTIFY THOSE INVENTIONS WITH THE GREATEST
COMMERCIAL POTENTIAL.

PARAGRAPH (A)(5) AUTHORIZES THE SECRETARY TO DEVELOP AND MANAGE A GOVERN-
MENT-WIDE PROGRAM, WITH PRIVATE SECTOR PARTICIPATION, TO STIMULATE TRANSFER TO
THE PRIVATE SECTOR OF POTENTIALLY VALUABLE FEDERALLY-OWNED TECHNOLOGY
THROUGH THE DISSEMINATION OF INFORMATION ABOUT THE TECHNOLOGY.

PARAGRAPH (A)(4) AUTHORIZES THE SECRETARY TO ASSIST THE FEDERAL AGENCIES IN
SEEKING AND MAINTAINING PATENT PROTECTION IN ANY COUNTRY, INCLUDING THE PAY-
MENT OF FEES AND COSTS.

PARAGRAPH (A)(1) AUTHORIZES THE SECRETARY TO CONSULT WITH THE FEDERAL AGEN-
CIES ABOUT AREAS OF SCIENCE AND TECHNOLOGY WITH COMMERICAL POTENTIAL.

PARAGRAPH (A)(7) REQUIRES THE SECRETARY, SEVEN YEARS AFTER THE DATE OF ENACT-
MENT OF THE ACT, TO REPORT ON ITS OPERATIVE EFFECT TO THE CONGRESS.

**\*22 \*6481** SUBSECTION (B) AUTHORIZES THE APPROPRIATION TO THE SECRETARY OF COM-
MERCE OF SUCH SUMS AS THEREAFTER MAY BE NECESSARY TO ENABLE THE SECRETARY TO
CARRY OUT RESPONSIBILITIES UNDER THIS SECTION.

### SECTION 411. DEFINITIONS

**\*20** SECTION 411 SETS OUT THE DEFINITIONS, FOR PURPOSES OF THE ACT FOR THE TERMS
'AGENCY,' 'RESPONSIBLE AGENCY,' 'ANTITRUST LAWS,' 'CONTRACT, ' 'CONTRACTOR,'
'FEDERAL EMPLOYEE,' 'INVENTION,' 'MADE,' 'NONPROFIT ORGANIZATION,' 'PATENT RIGHTS,'
'PRACTICAL APPLICATION,' 'SMALL BUSINESS, ' 'STATE,' 'LOCAL,' AND 'WILL.'

### CONFORMING PATENT POLICY AMENDMENTS

SECTION 7 AMENDS OR REPEALS PARTS OF OTHER ACTS AS NECESSARY TO IMPLEMENT THE
PROVISIONS OF NEW CHAPTER 38 OF TITLE 35, UNITED STATES CODE. ACTS AMENDED OR RE-
PEALED IN PART ARE:

TITLE 7. U.S.C. 427(I).

TITLE 7, U.S.C. 1624(A).

THE FEDERAL COAL MINE HEALTH AND SAFETY ACT OF 1969.

THE NATIONAL TRAFFIC AND MOTOR VEHICLE SAFETY ACT OF 1966.

THE NATIONAL SCIENCE FOUNDATION ACT OF 1950.

THE ATOMIC ENERGY ACT OF 1954.

THE NATIONAL AERONAUTICS AND SPACE ACT OF 1958.

THE COAL RESEARCH AND DEVELOPMENT ACT OF 1960.

THE HELIUM ACT AMENDMENTS OF 1960.

THE ARMS CONTROL AND DISARMAMENT ACT OF 1961.

THE APPALACHIAN REGIONAL DEVELOPMENT ACT OF 1965.

THE FEDERAL NONNUCLEAR ENERGY RESEARCH AND DEVELOPMENT ACT OF 1974.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

THE TENNESSEE VALLEY AUTHORITY ACT OF 1933.
THE CONSUMER PRODUCT SAFETY ACT.
TITLE 30, U.S.C. 323.
THE RESOURCES CONSERVATION AND RECOVERY ACT OF 1976.
THE ELECTRIC AND HYBRID VEHICLE RESEARCH, DEVELOPMENT, AND DEMONSTRATION ACT OF 1976.
PUBLIC LAW 95-39.
THE WATER RESEARCH AND DEVELOPMENT ACT OF 1978.

## TRANSITIONAL PROVISIONS

## SECTION 8. EFFECTIVE DATE

SECTION 8 PROVIDES FOR THE TAKING EFFECT OF THE BILL'S VARIOUS PROVISIONS.

SECTION 8(A) SPECIFIED AND THAT THE FEE SETTING AUTHORITY PROVISIONS OF THE BILL AND THE CONFORMING TECHNICAL AMENDMENT TAKE EFFECT UPON ENACTMENT. NEVERTHELESS, THESE FEES NEED NOT BE SET TO RECOVER THE LEVELS SPECIFIED IN THE BILL (25 PERCENT RECOVERY FOR PATENT PROCESSING AND FULL RECOVERY FOR PROVIDING MATERIALS AND SERVICES IN PATENT AND TRADEMARK CASES) UNTIL THE FIRST DAY OF THE FIRST FISCAL YEAR BEGINNING ONE CALENDAR YEAR AFTER ENACTMENT. THIS WILL PROVIDE AT LEAST A YEAR TO DETERMINE THE AMOUNTS AND NATURES OF FEES NEEDED.

SUBSECTION 8(B) PROVIDES THAT THE REEXAMINATION PROVISIONS OF THIS BILL TAKE EFFECT SIX MONTHS AFTER ENACTMENT AND APPLY TO PATENTS THEN IN FORCE OR ISSUED THEREAFTER.

**\*23 \*6482** SUBSECTION 8(C) PROVIDES THAT THE AUTHORITY TO CREDIT FEE REVENUES TO THE OFFICE'S APPROPRIATION ACCOUNT TAKE EFFECT AS OF THE FIRST DAY OF THE FIRST FISCAL YEAR BEGINNING ONE CALENDAR YEAR AFTER ENACTMENT. THUS, AT LEAST ONE YEAR WOULD BE AVAILABLE TO OBTAIN NEEDED ADMINISTRATIVE APPROVAL AND IMPLEMENT AN APPROPRIATE ACCOUNTING SYSTEM. HOWEVER, UNTIL SECTION 3 TAKES EFFECT, THE SECRETARY, IN ORDER TO PAY REEXAMINATION COSTS, MAY CREDIT THE PATENT AND TRADEMARK OFFICE APPROPRIATION ACCOUNT WITH THE REVENUES FROM COLLECTED REEXAMINATION FEES.

SUBSECTION 8(D) CONTINUES EXISTING FEES UNTIL NEW FEES ARE ESTABLISHED.

**\*21** SUBSECTION 8(E) PROVIDES THAT MAINTENANCE FEES SHALL NOT BE APPLICABLE TO PATENTS APPLIED FOR PRIOR TO THE DAY OF ENACTMENT OF THIS ACT.

SUBSECTION 8(F) PROVIDES THAT SECTIONS 6 AND 7 OF THIS BILL WHICH ESTABLISH A UNIFORM PATENT POLICY AND MAKE NECESSARY CONFORMING AMENDMENTS TO EXISTING LAWS TAKE EFFECT SIX MONTHS AFTER ENACTMENT.

## STUDY OF THE PATENT, TRADEMARK, AND COPYRIGHT SYSTEMS

SECTION (A) PROVIDES THAT, ON OR BEFORE JULY 1, 1981, THE COMPTROLLER GENERAL WILL REPORT TO THE CONGRESS AND THE PRESIDENT WITH RESPECT TO THE PATENT AND TRADEMARK OFFICE, THE COPYRIGHT OFFICE, AND THE COPYRIGHT ROYALTY TRIBUNAL WITH A VIEW TOWARD THE DESIRABILITY OF OF MERGING THEM.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## COMPUTERIZATION OF THE PATENT SEARCH FILE

SUBSECTION 10(A) REQUIRES THE COMMISSIONER OF PATENTS AND TRADEMARKS TO RE-PORT TO THE CONGRESS, WITHIN SIX MONTHS OF THE EFFECTIVE DATE OF THE ACT, ON COM-PUTERIZED DATA AND RETRIEVAL STATE OF THE ART SYSTEMS FOR ALL ASPECTS OF OPERA-TIONS OF THE OFFICE.

SUBSECTION (B) REQUIRES THE COMMISSIONER TO SUBMIT ADDITIONAL REPORTS TO THE CONGRESS EVERY SIX MONTHS UNTIL SUCH A PLAN IS FULLY IMPLEMENTED.

## CREATION OF AN INDEPENDENT PATENT OFFICE

SECTION 11 CREATES THE PATENT AND TRADEMARK OFFICE AS AN INDEPENDENT AGENCY, SEPARATE FROM THE DEPARTMENT OF COMMERCE, OF WHICH IT IS NOW A PART.

## COPYRIGHTABILITY OF COMPUTER PROGRAMS

SECTION 12 EMBODIES THE RECOMMENDATIONS OF THE COMMISSION ON NEW TECHNOLO-GICAL USES OF COPYRIGHTED WORKS WITH RESPECT TO CLARIFYING THE LAW OF COPY-RIGHT OF COMPUTER SOFTWARE.

DURING THE COURSE OF COMMITTEE CONSIDERATION THE QUESTION WAS RAISED AS TO WHETHER THE BILL WOULD RESTRICT REMEDIES FOR PROTECTION OF COMPUTER SOFTWARE UNDER STATE LAW, ESPECIALLY UNFAIR COMPETITION AND TRADE SECRET LAWS. THE COM-MITTEE CONSULTED THE COPYRIGHT OFFICE FOR ITS OPINION AS TO WHETHER SECTION 301 OF THE 1976 COPYRIGHT ACT IN ANY WAY PRE-EMPTED THESE AND OTHER FORMS OF STATE LAW PROTECTION FOR COMPUTER SOFTWARE. ON THE BASIS OF THIS ADVICE AND *24 *6483 ADVICE OF ITS OWN COUNSEL THE COMMITTEE CONCLUDED THAT STATE REMEDIES FOR PRO-TECTION OF COMPUTER SOFTWARE ARE NOT LIMITED BY THIS BILL.

## OVERSIGHT STATEMENT

OVERSIGHT OF THE PATENT AND TRADEMARK OFFICE IS THE RESPONSIBILITY OF THE COM-MITTEE ON THE JUDICIARY. DURING THE FIRST SESSION OF THE 96TH CONGRESS THE SUB-COMMITTEE ON COURTS, CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE HELD HEARINGS ENTITLED, 'GENERAL OVERSIGHT ON THE PATENT, TRADEMARK AND COPYRIGHT SYSTEMS.' THEY HAVE BEEN PUBLISHED AS SERIAL NO. 15, NINETY-SIXTH CONGRESS. THE COMMITTEE AND ITS SUBCOMMITTEE INTEND TO CONTINUE THIS OVERSIGHT INTO THE NEXT CONGRESS.

NO OVERSIGHT STATEMENT HAS BEEN RECEIVED FROM THE COMMITTEE ON GOVERNMENT OPERATIONS REGARDING H.R. 6933.

## NEW BUDGET AUTHORITY

IN REGARD TO CLAUSE 2(1)(3)(B) OF RULE XI OF THE HOUSE OF REPRESENTATIVES, H.R. 6933 CREATES NO NEW BUDGET AUTHORITY.

## STATEMENT OF THE BUDGET COMMITTEE

NO STATEMENT ON H.R. 6933 HAS BEEN RECEIVED FROM THE COMMITTEE ON THE BUDGET.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## ESTIMATED COST OF THE LEGISLATION

**\*22** IT IS ESTIMATED THAT THERE WILL BE NO ADDITIONAL COSTS TO THE UNITED STATES DUE TO THE PROVISIONS OF H.R. 6933. AS THE STATEMENT OF THE CONGRESSIONAL BUDGET OFFICE INDICATES, THERE WILL BE A SUBSTANTIAL SAVINGS TO THE UNITED STATES AS A RESULT OF THE LEGISLATION.

### STATEMENT OF THE CONGRESSIONAL BUDGET OFFICE

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
WASHINGTON, D.C., AUGUST 28, 1980.
HON. PETER W. RODINO, JR.,
CHAIRMAN, COMMITTEE ON THE JUDICIARY,
U.S. HOUSE OF REPRESENTATIVES, WASHINGTON, D.C.
DEAR MR. CHAIRMAN: PURSUANT TO SECTION 403 OF THE CONGRESSIONAL BUDGET ACT OF 1974, THE CONGRESSIONAL BUDGET OFFICE HAS PREPARED THE ATTACHED COST ESTIMATE FOR H.R. 6933, A BILL TO AMEND THE PATENT AND TRADEMARK LAWS.
SHOULD THE COMMITTEE SO DESIRE, WE WOULD BE PLEASED TO PROVIDE FURTHER DE-TAILS ON THIS ESTIMATE.
SINCERELY,
JAMES BLUM
(FOR ALICE M. RIVLIN, DIRECTOR).

### CONGRESSIONAL BUDGET OFFICE-- COST ESTIMATE, AUGUST 28, 1980

1. BILL NUMBER: H.R. 6933.

2. BILL TITLE: A BILL TO AMEND THE PATENT AND TRADEMARK LAWS.

**\*25 \*6484** 3. BILL STATUS: AS ORDERED REPORTED BY THE HOUSE COMMITTEE ON THE JUDI-CIARY ON AUGUST 20, 1980.

4. BILL PURPOSE: THE BILL WOULD ESTABLISH THE PATENT AND TRADEMARK OFFICE (PTO) AS AN INDEPENDENT AGENCY, REMOVING IT FROM THE DEPARTMENT OF COMMERCE (DOC). IT WOULD PROVIDE FOR A SYSTEM OF ADMINISTRATIVE REEXAMINATIONS, ESTABLISH A NEW FEE STRUCTURE, AND CREATE A UNIFORM GOVERNMENT POLICY REGARDING PATENT RIGHTS. H.R. 6933 WOULD REQUIRE THE GENERAL ACCOUNTING OFFICE (GAO) TO REPORT ON THE DESIRABILITY OF MERGING THE PTO WITH THE COPYRIGHT OFFICE AND THE COPYRIGHT ROYALTY TRIBUNAL. THE PTO WOULD ALSO BE REQUIRED TO REPORT EVERY SIX MONTHS ON THE PROGRESS BEING MADE TOWARDS IMPLEMENTATION OF A COMPUTERIZED DATA AND RETRIEVAL SYSTEM. FINALLY, H.R. 6933 REPEALS SECTION 117 OF THE 1976 COPYRIGHT ACT TO CLARIFY COPYRIGHT LAWS REGARDING COMPUTER PROGRAMS.

5. COST ESTIMATE: THE TABLE BELOW REFLECTS THE BUDGET IMPACT RESULTING FROM A CHANGE PROPOSED BY H.R. 6933 IN THE CLASSIFICATION OF THE FEES RECEIVED BY THE PTO. TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

THE COSTS OF THIS BILL FALL PRIMARILY WITHIN BUDGET SUBFUNCTION 376.

6. BASIS OF ESTIMATE: FOR PURPOSES OF THIS ESTIMATE, IT IS ASSUMED THAT THIS BILL WILL BE ENACTED AROUND OCTOBER 1, 1980.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## REEXAMINATION OF PATENTS

H.R. 6933 WOULD ALLOW ANY PARTY TO PETITION THE PTO TO REEXAMINE A PATENT FOR VALIDITY. THE COST OF REEXAMINATION WOULD BE PAID BY THE PARTY BASED ON A FEE STRUCTURE ESTABLISHED BY THE COMMISSIONER OF PATENTS. IT IS ANTICIPATED THAT THE NUMBER OF PATENT APPLICATIONS FOR REEXAMINATIONS WILL BE LIMITED BY THE COST IN-VOLVED AND THE POTENTIAL FOR COMMERCIAL DEVELOPMENT. BASED ON RATES CUR-RENTLY AVAILABLE IN FOREIGN COUNTRIES FOR SIMILAR PROCEDURES, AS WELL AS ESTIM-ATES PROVIDED BY THE PTO, IT IS ESTIMATED THAT THE NUMBER OF APPEALS WILL BE AP-PROXIMATELY 500 IN FISCAL YEAR 1981, INCREASING TO 2,000 BY 1982, AND REMAIN RELAT-IVELY STABLE THEREAFTER.

*23 ALTHOUGH THE BILL DOES NOT SPECIFICALLY AUTHORIZE FUNDING FOR THIS PURPOSE, IT IS ASSUMED THAT ADDITIONAL STAFF WILL BE REQUIRED TO HANDLE THE REEXAMINA-TION PROCEDURES. BASED ON PTO DATA, IT IS ESTIMATED THAT THE AVERAGE COST PER EM-PLOYEE, INCLUDING OVERHEAD AND BENEFITS, WOULD BE APPROXIMATELY $40,000 IN FISC-AL YEAR 1981. ASSUMING APPROXIMATELY 30 HOURS PER REEXAMINATION, PLUS CLERICAL SUPPORT, IT IS ESTIMATED THAT APPROXIMATELY 55 APPEALS COULD BE REVIEWED ANNU-ALLY BY A PROFESSIONAL STAFF MEMBER. IT IS ESTIMATED THAT THE COST OF THIS PROCED-URE WOULD BE APPROXIMATELY $0.4 MILLION IN FISCAL YEAR 1981, WHICH REFLECTS SIX MONTHS' ACTIVITY. COSTS ARE *26 ESTIMATED*6485 TO BE $1.4 MILLION IN FISCAL YEAR 1982, INCREASING TO $2.5 MILLION BY FISCAL YEAR 1985. IT IS ASSUMED, HOWEVER, THAT THE FULL AMOUNT REQUIRED BY THE PTO FOR SALARIES AND EXPENSES WOULD BE RECOVERED BY FEES SET AT THE BEGINNING OF THE FISCAL YEAR AND ADJUSTED ANNUALLY FOR INFLA-TION AND ANTICIPATED WORKLOAD. IT IS ASSUMED THAT FEES WOULD BE INCLUDED WITH THE REQUEST FOR REEXAMINATION AND REFLECTED AS A REIMBURSABLE TO THE AGENCY, RESULTING IN A NET OUTLAY OF AROUND ZERO IN EACH FISCAL YEAR.

## REVISION OF FEE STRUCTURE

H.R. 6933 WOULD RESTRUCTURE THE CURRENT FEE STRUCTURE FOR PATENTS AND TRADE-MARKS. CURRENTLY, THE PTO RECOVERS APPROXIMATELY 20 PERCENT OF THE COST OF PRO-CESSING PATENTS AND APPROXIMATELY 30 PERCENT OF THE COST OF ISSUING TRADEMARKS. THESE FEES ARE DEPOSITED IN THE GENERAL FUND OF THE TREASURY.

THE BILL WOULD ALLOW THE PTO TO RECOVER UP TO 25 PERCENT OF THE AVERAGE PRO-CESSING COSTS AND 25 PERCENT OF THE MAINTENANCE COSTS FOR PATENTS, THE LATTER FEE COLLECTED IN FOUR INSTALLMENTS OVER THE LIFE OF THE PATENT. IN ADDITION, THE PTO WOULD BE ALLOWED TO RECOVER A MAXIMUM OF 50 PERCENT OF THE COST OF ISSUING TRADEMARKS. ALL FEES FOR PATENTS AND TRADEMARKS COULD BE ADJUSTED NO MORE THAN ONCE EVERY THREE YEARS AND WOULD BE CREDITED TO THE PTO AS A REIMBURS-ABLE TO THE AGENCY, RATHER THAN AS A REVENUE TO THE TREASURY.

IT IS ASSUMED THAT THE REVISED FEE STRUCTURE FOR TRADEMARKS WOULD BE IMPLE-MENTED EARLY IN THE SECOND QUARTER OF FISCAL YEAR 1981, AND FOR PATENTS BEGIN-NING IN FISCAL YEAR 1982. IT IS ASSUMED THAT THE AGENCY COSTS FOR PROCESSING PAT-ENTS AND TRADEMARKS FROM WHICH RECOVERY COULD BE MADE WOULD BE APPROXIM-ATELY $84 MILLION IN FISCAL YEAR 1982, INCREASING TO APPROXIMATELY $109 MILLION BY FISCAL YEAR 1985. IT IS ASSUMED THAT AN AVERAGE RECOVERY RATE OF 25 AND 50 PER-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

H.R. REP. 96-1307(I)                                                        Page 28

CENT, ADJUSTED EVERY THIRD YEAR, WOULD BE ESTABLISHED FOR PROCESSING FEES FOR PATENTS AND FOR TRADEMARKS, RESPECTIVELY. PATENT MAINTENANCE FEES WOULD BE COLLECTED THREE TIMES IN A PATENT'S LIFE-- AROUND THE FOURTH, EIGHTH, AND TWELFTH YEAR. SINCE THE FIRST PAYMENT WOULD NOT BE MADE UNTIL FISCAL YEAR 1986, IT IS NOT REFLECTED IN THE TABLE BELOW.
TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

### *27 *6486 GOVERNMENT PATENT POLICY

H.R. 6933 WOULD ESTABLISH A UNIFORM FEDERAL SYSTEM FOR THE COMMERCIALIZATION AND ALLOCATION OF RIGHTS IN INVENTIONS RESULTING FROM FEDERALLY SPONSORED OR SUPPORTED RESEARCH AND DEVELOPMENT. THE BILL WOULD ALLOW CONTRACTORS FROM SMALL BUSINESSES AND NON-PROFIT INSTITUTIONS TO ACQUIRE TITLE TO INVENTIONS RESULTING FROM GOVERNMENT FUNDED RESEARCH. OTHER CONTRACTORS COULD RECEIVE EXCLUSIVE LICENSES FOR SPECIFIC USES. THE BILL DIRECTS THE OFFICE OF FEDERAL PROCUREMENT POLICY (OFPP) TO ISSUE REGULATIONS TO IMPLEMENT THESE POLICY CHANGES. ACCORDING TO THE OFPP, THE COST OF REVISING EXISTING REGULATIONS WOULD BE MINIMAL. IT IS ESTIMATED IMPLEMENTATION OF THESE CHANGES IN THE VARIOUS FEDERAL AGENCIES, INCLUDING TRAINING, WOULD COST APPROXIMATELY $650,000 IN FISCAL YEAR 1981. OUTLAYS ARE ESTIMATED TO BE 90 PERCENT THE FIRST YEAR AND 10 PERCENT THE SECOND YEAR.
*24 H.R. 6933 WOULD REVISE THE CRITERIA FOR ALLOCATION OF INVENTION RIGHTS BETWEEN THE FEDERAL GOVERNMENT AND EMPLOYEES WHO PRODUCE INVENTIONS. TO STIMULATE INNOVATION, THE BILL WOULD ESTABLISH AN INCENTIVE CASH AWARDS PROGRAM TO FEDERAL EMPLOYEE-INVENTORS. THE AWARD ARE TO BE PAID FROM FUNDS FROM ROYALTIES OR AGENCY APPROPRIATIONS; CONSEQUENTLY, IT IS ESTIMATED THAT THIS PROVISION WOULD RESULT IN NO ADDITIONAL COST TO THE GOVERNMENT.
THE BILL ALSO AUTHORIZES FEDERAL AGENCIES TO SHARE INCOME FROM LICENSING THE GOVERNMENT'S PATENT RIGHTS WITH THE EMPLOYEE-INVENTOR. IT IS NOT POSSIBLE AT THIS TIME TO ESTIMATE THE EXTENT TO WHICH ROYALTIES WILL BE GENERATED OR SHARED WITH EMPLOYEE-INVENTORS.

### ESTABLISH AN INDEPENDENT PTO

H.R. 6933 WOULD CREATE AN INDEPENDENT PTO, WHICH IS CURRENTLY AN AGENCY WITHIN DOC. BASED ON DATA PROVIDED BY THE PTO, IT IS ESTIMATED THAT THE NET ADDITIONAL COST OF THIS REORGANIZATION WOULD BE APPROXIMATELY $130,000 IN FISCAL YEAR 1981. ADJUSTED FOR INFLATION, IT IS ESTIMATED THAT THE COST WOULD INCREASE TO APPROXIMATELY $190,000 BY FISCAL YEAR 1985.

### GAO STUDY

THE GAO ESTIMATES THAT THE COST OF ANALYZING THE FEASIBILITY OF MERGING THE PTO WITH THE COPYRIGHT OFFICE AND THE COPYRIGHT ROYALTY TRIBUNAL WOULD BE APPROXIMATELY $250,000 IN FISCAL YEAR 1981.

### OTHER

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

THE BILL WOULD REPEAL SECTION 117 OF THE 1976 COPYRIGHT ACT, WHICH DISCLAIMS ANY INTENT TO MODIFY THE PRE-EXISTING COPYRIGHT LAW FOR COMPUTER PROGRAMS. THIS HAS THE EFFECT OF CLEARLY APPLYING THE 1976 LAW TO COMPUTER PROGRAMS, WHICH IS NOT EXPECTED TO HAVE A COST IMPACT UPON THE FEDERAL GOVERNMENT.

IN ADDITION, H.R. 6933 OUTLINES THE RESPONSIBILITIES OF THE SECRETARY OF COMMERCE TO ASSIST AGENCIES AND OTHERS IN PROMOTING ACCESS TO PATENT INFORMATION. CURRENTLY THESE ACTIVITIES ARE BEING PERFORMED BY THE NATIONAL TECHNICAL INFORMATION SERVICE (NTIS), CREATED IN 1970. THE PRESIDENT IS REQUESTING APPROXIMATELY $740,000 FOR THESE ACTIVITIES IN FISCAL YEAR 1981, WHICH IS ABOUT THE SAME LEVEL OF FUNDING IN THE CURRENT FISCAL YEAR. THE BILL WOULD AUTHORIZE THE APPROPRIATION OF SUCH SUMS AS MAY BE NECESSARY FOR THESE ACTIVITIES. SINCE CURRENT LAW AUTHORIZES THESE ACTIVITIES IT IS ESTIMATED *28 *6487 THAT NO ADDITIONAL COSTS WOULD BE INCURRED AS A RESULT OF ENACTMENT OF THIS LEGISLATION.

FINALLY THE PTO WOULD BE REQUIRED TO REPORT REGULARLY ON THE STATUS OF A COMPUTERIZED DATA RETRIEVAL SYSTEM. SINCE THE PTO IS ALREADY PLANNING TO STUDY AND EVALUATE THE FEASIBILITY OF SUCH A SYSTEM, IT IS ASSUMED THAT ANY SIGNIFICANT COSTS INCURRED AS A RESULT OF ANALYZING OR IMPLEMENTING SUCH A SYSTEM WOULD NOT BE A DIRECT RESULT OF THE LEGISLATION. CONSEQUENTLY, NO COST HAS BEEN ESTIMATED FOR THIS PROVISION.

7. ESTIMATE COMPARISON: THE COMMISSIONER OF PATENTS HAS ESTIMATED THAT APPROXIMATELY 1,000 TO 3,000 REQUESTS FOR REEXAMINATIONS WOULD BE MADE ANNUALLY, REQUIRING FROM 25 TO 100 ADDITIONAL STAFF MEMBERS, AT A COST OF BETWEEN $1 MILLION AND $4.5 MILLION ANNUALLY. CBO ESTIMATES APPROXIMATELY 500 APPLICATIONS WILL BE PROCESSED BEGINNING IN FISCAL YEAR 1981 BECAUSE A LATER DATE OF ENACTMENT IS ASSUMED.

*25 8. PREVIOUS CBO ESTIMATE: ON FEBRUARY 27, 1980, THE CONGRESSIONAL BUDGET OFFICE PREPARED A COST ESTIMATE FOR S. 1679, THE PATENT LAW AMENDMENTS OF 1979, AS ORDERED REPORTED BY THE SENATE COMMITTEE ON THE JUDICIARY ON FEBRUARY 19, 1980. THE COSTS OF S. 1679 AND THE COSTS ATTRIBUTED TO REEXAMINATION IN THIS BILL ARE THE SAME, WITH ADJUSTMENTS ASSUMED FOR DATE OF ENACTMENT.

ON DECEMBER 4, 1979, CBO PREPARED A COST ESTIMATE ON S. 414, THE UNIVERSITY AND SMALL BUSINESS PATENT PROCEDURES ACT, AS ORDERED REPORTED BY THE SENATE COMMITTEE ON THE JUDICIARY ON NOVEMBER 20, 1979. THE CBO ESTIMATED THAT NO SIGNIFICANT COST WOULD BE INCURRED BY THE GOVERNMENT IF A UNIFORM PATENT PROCEDURE FOR SMALL BUSINESSES AND NONPROFIT ORGANIZATIONS PERFORMING GOVERNMENT-SUPPORTED RESEARCH AND DEVELOPMENT WERE ESTABLISHED.

9. ESTIMATE PREPARED BY: MARY MAGINNISS.

10. ESTIMATE APPROVED BY: C. G. NUCKOLS (FOR JAMES L. BLUM, ASSISTANT DIRECTOR FOR BUDGET ANALYSIS.)

## INFLATIONARY IMPACT STATEMENT

H.R. 6933 WILL HAVE NO FORSEEABLE INFLATIONARY IMPACT ON PRICES OR COSTS IN THE OPERATION OF THE NATIONAL ECONOMY.

## COMMITTEE VOTE

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

H.R. 6933 WAS APPROVED BY THE COMMITTEE ON THE JUDICIARY ON AUGUST 20, 1980, BY A VOICE VOTE.

### *29 DISSENTING VIEWS OF HONORABLE JACK BROOKS

THE MAJOR PROBLEM I HAVE WITH H.R. 6933 IS THAT IT VIOLATES A BASIC PROVISION OF THE UNWRITTEN CONTRACT BETWEEN THE CITIZENS OF THIS COUNTRY AND THEIR GOVERN- MENT; NAMELY, THAT WHAT THE GOVERNMENT ACQUIRES THROUGH THE EXPENDITURE OF ITS CITIZENS' TAXES, THE GOVERNMENT OWNS. ASSIGNING AUTOMATIC PATENT RIGHTS AND EXCLUSIVE LICENSES TO COMPANIES OR ORGANIZATIONS FOR INVENTIONS DEVELOPED AT GOVERNMENT EXPENSE IS A PURE GIVEAWAY OF RIGHTS THAT PROPERLY BELONG TO THE PEOPLE.

*6488 THE ARGUMENT IS MADE BY PROPONENTS OF THE BILL THAT IT WILL SPUR PRO- DUCTIVITY, A GOAL THAT IS BOTH NECESSARY AND DESIRABLE IF THE UNITED STATES IS TO REGAIN ITS POSITION IN THE WORLD ECONOMY. BUT THAT ARGUMENT IGNORES THE FACT THAT THE FEDERAL GOVERNMENT IS ALREADY PAYING HALF THE COSTS OF RESEARCH AND DEVELOPMENT IN THE UNITED STATES AT AN ANNUAL COST OF $30 BILLION. NO COMPANIES OR NONPROFIT ORGANIZATIONS THAT I KNOW OF HAVE BEEN TURNING DOWN THAT MONEY BECAUSE THEY ARE NOT NOW RECEIVING AUTOMATIC PATENT AND EXCLUSIVE LICENSING RIGHTS. SO UNLESS IT IS THE INTENT OF THE SUPPORTERS OF H.R. 6933 THAT THE GOVERN- MENT GREATLY INCREASE THIS ALREADY ENORMOUS PUBLIC INVESTMENT IN RESEARCH AND DEVELOPMENT, I FAIL TO SEE HOW ENACTMENT OF THE BILL WILL LEAD TO INCREASED PRODUCTION.

IT IS ALSO ARGUED THAT THIS LEGISLATION WILL INCREASE COMPETITION IN INDUSTRY AND THEREBY SPUR PRODUCTION. BUT AGAIN THE CONNECTION IS HARD TO ESTABLISH. UN- DER CURRENT PRACTICE, INVENTIONS, NEW PRODUCTS AND TECHNOLOGICAL ADVANCES DE- VELOPED UNDER GOVERNMENT CONTRACTS-- UNLESS AWARDED TO A SPECIFIC CONTRACT- OR UNDER EXISTING PERMISSIBLE ARRANGEMENTS-- ARE AVAILABLE TO ALL. THAT AP- PROACH WOULD SEEM TO OFFER FAR GREATER POTENTIAL FOR INCREASED COMPETITION AND PRODUCTIVITY THAN HANDING OVER EXCLUSIVE RIGHTS TO ONE COMPANY. IN THE LATTER CASE THE COMPANY MIGHT EVEN CHOOSE TO REDUCE PRODUCTION WITH THE AIM OF INCREASING ITS PROFITS.

*26 I DO NOT OVERLOOK OR UNDERESTIMATE THE IMPORTANCE OF PATENTS IN DEVELOP- ING AND MAINTAINING A THRIVING ECONOMY. MY CONCERN IS SIMPLY THE ROLE OF THE GOVERNMENT AND THE RIGHTS OF THE PEOPLE IN THE PATENT PROCESS. WHEN A PRIVATE COMPANY RISKS ITS OWN MONEY TO DEVELOP NEW PRODUCTS AND PROCEDURES IT DE- SERVES AND RECEIVES THE PROFITS THAT MAY RESULT. THERE SHOULD NOT BE A DIFFERENT STANDARD APPLIED WHEN IT IS THE GOVERNMENT THAT RISKS THE TAXPAYERS' MONEY. THE REWARDS OF SUCCESSFUL RESEARCH AND DEVELOPMENT CONDUCTED AT GOVERN- MENT EXPENSE SHOULD GO TO ALL THE PEOPLE.

ANOTHER PROVISION OF THIS BILL THAT I STRONGLY OPPOSE IS THE REMOVAL OF THE PAT- ENT OFFICE FROM THE DEPARTMENT OF COMMERCE AND ITS ESTABLISHMENT AS AN INDE- PENDENT OFFICE. I HAVE SEEN NO EVIDENCE *30 THAT THIS ORGANIZATIONAL REALIGNMENT WILL RESULT IN ANY INCREASE IN EFFICIENCY IN THE OPERATIONS OF THE PATENT OFFICE OR IN ANY INCREASE IN PRODUCTIVITY IN U.S. INDUSTRIAL OUTPUT. ON THE OTHER HAND,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

THERE IS EVERY REASON TO BELIEVE IT WILL RESULT IN INCREASED EXPENDITURES AND FURTHER FRAGMENTATION OF GOVERNMENT MANAGEMENT. ALSO, ITS INCLUSION IN THIS BILL RAISES A SERIOUS JURISDICTIONAL PROBLEM AS GOVERNMENT REORGANIZATIONS ARE MATTERS WITHIN THE JURISDICTION OF THE COMMITTEE ON GOVERNMENT OPERATIONS.

## COMPETITION VS. MONOPOLY

PROPONENTS OF THIS LEGISLATION ALLEGE THAT ASSIGNING TITLE OR AUTOMATIC EX-CLUSIVE LICENSING RIGHTS TO GOVERNMENT CONTRACTORS AND GRANTEES WILL RESULT IN GREATER PRODUCTIVITY. IN FACT, THE OPPOSITE RESULT MAY OCCUR. BY GRANTING AN EXCLUSIVE LICENSE TO THE DEVELOPER OF A GOVERNMENT-FUNDED PATENT, THE NUMBER OF POTENTIAL PRODUCERS AND MARKETERS MAY BE SUBSTANTIALLY RESTRICTED. OPEN COMPETITION HAS LONG BEEN THE BASIC ELEMENT OF OUR ECONOMIC SYSTEM. PROVIDING *6489 PATENT RIGHTS INHERENTLY GRANTS A TYPE OF MONOPOLY PRIVILEGE. SUCH PRIV-ILEGES CAN BE JUSTIFIED WHEN A PRIVATE INDIVIDUAL OR ENTITY HAS RISKED CONSIDER-ABLE SUMS ON THE RESEARCH AND DEVELOPMENT OF THE PRODUCT, COSTS WHICH THE DE-VELOPER SHOULD BE ABLE TO RECAPTURE UPON COMMERCIALIZATION. A QUITE DIFFERENT SITUATION EXISTS, HOWEVER, WHEN THE FINANCIAL RISK HAS BEEN BORNE BY THE TAXPAY-ER. IN THAT CASE, THE JUSTIFICATION FOR THE GRANTING OF ANTICOMPETITIVE PATENT RIGHTS DOES NOT EXIST.

## UNIFORMITY OF PATENT POLICIES:

CURRENTLY, THERE ARE ABOUT 26 AGENCIES WITH REGULATIONS GOVERNING PATENT RIGHTS ON GOVERNMENT-FUNDED INVENTIONS. THE PROPONENTS OF THIS LEGISLATION AR-GUE THAT UNIFORMITY IN PATENT POLICY IS BADLY NEEDED. I WOULD AGREE THAT UNI-FORMITY IS, IN ALL PROBABILITY, DESIRABLE, BUT NOT AT THE COST OF GIVING AWAY TITLE AND EXCLUSIVE LICENSES IN PUBLIC PROPERTY.

FURTHERMORE, THIS BILL DOES NOT ACHIEVE UNIFORMITY IN PATENT POLICY. THIS BILL WILL ESTABLISH THREE DIFFERENT POLICIES FOR HANDLING GOVERNMENT-FUNDED PAT-ENTS. THE APPLICABLE POLICY WILL NOT BE DETERMINED BY THE NATURE OF THE PATENT OR THE PUBLIC GOOD, BUT RATHER BY THE NATURE AND SIZE OF THE CONTRACTOR OR GRANTEE. ONE POLICY ASSIGNS AUTOMATIC TITLE TO THE CONTRACT INVENTION WHERE THE CONTRACTOR IS A SMALL BUSINESS OR NONPROFIT ORGANIZATION; ANOTHER POLICY ASSIGNS AUTOMATIC EXCLUSIVE LICENSES TO OTHER CONTRACTORS; AND A THIRD POLICY PROVIDES CRITERIA FOR GRANTING EXCLUSIVE OR PARTIALLY EXCLUSIVE LICENSES IN ALL OTHER CASES. WHERE IS THE UNIFORMITY THIS LEGISLATION WAS SUPPOSED TO PROVIDE?

## POTENTIAL DECREASE IN PRIVATE RESEARCH FUNDS

*27 THE FEDERAL GOVERNMENT PRESENTLY PAYS FOR WELL-OVER HALF THE COST OF RE-SEARCH AND DEVELOPMENT IN THE U.S. TO THE TUNE OF $30 BILLION A YEAR. UNDER THIS LEGISLATION, THE PERCENTAGE OF GOVERNMENT-FUNDED RESEARCH MAY BECOME EVEN GREATER. IT WOULD MAKE NO SENSE FOR A COMPANY TO SPEND ITS OWN MONEY ON THE RESEARCH AND DEVELOPMENT OF NEW PRODUCTS AND TECHNOLOGY WHEN THE GOVERN-MENT WILL CARRY THE COSTS AND BEAR THE RISK FOR THEM. IT IS AN ENTREPRENEUR'S *31

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

H.R. REP. 96-1307(I)                                                                                    Page 32

DREAM. IF HE IS SUCCESSFUL, THE GOVERNMENT GIVES HIM HIGHLY PROFITABLE MONOPOLY
RIGHTS OVER THE PRODUCT; AND, IF HE FAILS, WELL, HE HASN'T LOST ANYTHING. THERE IS
SIMPLY NOT SUFFICIENT EVIDENCE TO SUPPORT THE CREATION OF ANOTHER WELFARE FUND
FOR PRIVATE BUSINESS WHICH CAN ONLY SERVE AS A DISINCENTIVE FOR PRIVATE INVEST-
MENT.

### EMPHASIS ON PROFIT RATHER THAN PUBLIC PURPOSE

THE POLICIES AND OBJECTIVES OF GOVERNMENT FUNDING OF RESEARCH AND DEVELOP-
MENT SHOULD BE DETERMINED ON THE BASIS OF WHAT IS IN THE BEST INTEREST OF THE
PUBLIC. THEY SHOULD NOT BE LEGISLATED TO PARALLEL THE POLICIES AND PRACTICES FOL-
LOWED COMMERCIAL ESTABLISHMENTS. TO DO THIS WOULD CHANGE THE DIRECTION OF
FEDERAL RESEARCH AND DEVELOPMENT FROM A PROCESS OF INTELLECTUAL AND TECHNO-
LOGICAL INNOVATION FOR THE GENERAL WELFARE OF THE PEOPLE TO ONE WHICH EMPHAS-
IZES THE PROFIT INCENTIVE UNDERLYING COMMERCIALIZATION IN THE *6490 MARKETPLACE.
WHEN A GRANT OR CONTRACT DETERMINATION FOR RESEARCH AND DEVELOPMENT IN-
CLUDES AN AUTOMATIC CONCESSION OF EXCLUSIVE RIGHTS TO COMMERCIALIZE ANY RES-
ULTING INVENTION, TECHNOLOGICAL INNOVATION WILL BE OF CONCERN TO THE CONTRACT-
OR ONLY TO THE EXTENT IT CONTRIBUTES TO THE PRODUCTION OF A PROFITABLE PRODUCT.

### REIMBURSEMENT PROVISIONS INSUFFICIENT

WHILE THERE ARE PROVISIONS IN THE BILL FOR RECOVERY OF GOVERNMENT-FUNDED RE-
SEARCH AND DEVELOPMENT COSTS IN CERTAIN INSTANCES, THE EXCEPTIONS FOR REIM-
BURSEMENT HAVE A TENDENCY TO RENDER THE PROVISIONS MEANINGLESS. SECTION
390(C)(2) PERMITS EXEMPTIONS FROM REIMBURSEMENT WHERE THE FEDERAL GOVERNMENT'S
CONTRIBUTION TO THE TECHNOLOGY AS LICENSED OR UTILIZED IS INSUBSTANTIAL COM-
PARED WITH PRIVATE INVESTMENT MADE OR TO BE MADE. THE PRIVATE INVESTMENT 'TO BE
MADE' IS HIGHLY SPECULATIVE AT BEST. ANY GOOD ACCOUNTANT SHOULD BE ABLE TO
SHOW THAT THE GOVERNMENT'S INVESTMENT IS MINIMAL COMPARED TO WHAT THE MAR-
KETER 'EXPECTS' TO SPEND.
SECTION 390(C)(4) PERMITS WAIVER OF REIMBURSEMENT WHERE THE GOVERNMENT FUND-
ING OF THE TECHNOLOGY WITH THE CONTRACTOR IS LESS THAN $1 MILLION, A CLEARLY AR-
BITRARY EXCLUSION.
SECTION 390(C)(5) PERMITS FOREGOING PAYMENT WHEN IT WOULD PLACE THE CONTRACT-
OR AT A COMPETITIVE DISADVANTAGE OR WOULD STIFLE COMMERCIAL UTILIZATION OF THE
TECHNOLOGY. HOW REPAYMENT OF RESEARCH AND DEVELOPMENT COSTS WOULD PLACE A
AT A COMPETITIVE DISADVANTAGE IS NOT QUITE CLEAR WHERE AN EXCLUSIVE LICENSE PRE-
CLUDES COMPETITION.
SUBSECTION 6 PERMITS EXEMPTION FROM PAYMENT WHEN 'IT IS OTHERWISE IN THE BEST
INTEREST OF THE GOVERNMENT AND THE GENERAL PUBLIC.' IT IS HARD TO IMAGINE A TAX-
PAYER WHO, HAVING FUNDED THE COST AND BORNE THE RISK OF THE RESEARCH AND DE-
VELOPMENT OF A PRODUCT, WOULD CONCLUDE THAT IT IS IN HIS BEST INTERESTS NOT TO BE
REIMBURSED FROM THE PROCEEDS ACCRUING TO THE CONTRACTOR.

### INDEPENDENT PATENT OFFICE

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*28** THE BILL AS AMENDED WILL TAKE THE PATENT OFFICE OUT OF THE DEPARTMENT OF COMMERCE, WHERE IT HAS BEEN FOR MANY YEARS. THIS ACTION WILL REQUIRE MORE FUNDS AND WILL NOT PROVIDE THE BENEFITS CLAIMED.

**\*32** IT HAS BEEN SAID THAT AN INDEPENDENT PATENT OFFICE WOULD HAVE ONLY A SMALL ADDITIONAL COST. THIS IS ILLUSORY. SETTING UP AN INDEPENDENT OFFICE WITH ITS OWN ADMINISTRATIVE HIERARCHY, WHICH MUST MAKE AVAILABLE THE FACILITIES AND SER-VICES THAT ARE NOW BEING PROVIDED BY THE DEPARTMENT OF COMMERCE, WILL BE A VERY COSTLY OPERATION. I SPEAK FROM SOME EXPERIENCE BECAUSE THE COMMITTEE ON GOVERNMENT OPERATIONS HAS BEEN CALLED UPON TO CREATE NUMEROUS INDEPENDENT AGENCIES AND OFFICES OVER THE YEARS. MANY OF THESE HAVE BEEN ESTABLISHED FOR GOOD PURPOSES, BUT WITH HARDLY AN EXCEPTION THEY REQUIRED SUBSTANTIAL EXTRA EXPENDITURES.

TAKING THE PATENT OFFICE OUT OF COMMERCE WILL NOT NECESSARILY ENHANCE ITS EF-FICIENCY OR IMPROVE ITS SERVICES TO THE BUSINESS COMMUNITY AND THE PUBLIC. THIS SHIFT MAY REQUIRE A REALIGNMENT OF PROCEDURES WHICH COULD AS WELL BE DONE WITHIN THE DEPARTMENT OF **\*6491** COMMERCE. INEVITABLY, ANY REORGANIZATION RE-QUIRES A TEMPORARY SLOWDOWN IN OPERATIONS AND PROCEDURES UNTIL THE NEW OR-GANIZATION HAS BEEN PUT INTO EFFECT AND HAD ITS SHAKEDOWN CRUISE. THIS COULD TAKE MONTHS OR EVEN YEARS AND COULD HAVE, AT THE VERY LEAST, A TEMPORARY DELE-TERIOUS EFFECT ON PATENT OFFICE SERVICES.

I CANNOT SEE HOW THE CREATION OF AN INDEPENDENT AGENCY WILL NECESSARILY ADD TO THE AMOUNT OF FUNDING AVAILABLE TO THE PATENT OFFICE OR BRING ABOUT AN IN-CREASE IN THE NUMBER OF PATENT EXAMINERS. THE DOUBTS ABOUT THE NEED FOR LARGER APPROPRIATIONS WILL EXIST WHETHER OR NOT THE PATENT OFFICE IS IN COMMERCE OR OUTSIDE. THE BUDGET WILL STILL HAVE TO GO THROUGH THE OFFICE OF MANAGEMENT AND BUDGET AND BE SUBJECT TO THE ADMINISTRATION'S OVERALL POLICY AND WILL STILL HAVE TO RUN THE GAUNTLET OF THE APPROPRIATIONS COMMITTEES AND OF THE CONGRESS.

BASICALLY, OUR OBJECTIVE IS TO INCREASE PRODUCTIVITY IN THE UNITED STATES AND MAKE OURSELVES MORE COMPETITIVE WITH THE TECHNOLOGICAL INVENTIVENESS AND IN-GENUITY OF FOREIGN NATIONS. CERTAINLY THIS IS AN URGENT MATTER WHICH NEEDS SERI-OUS ATTENTION AND ATTACK. BUT A REMOVAL OF THE PATENT OFFICE FROM THE AGENCY IN WHICH IT IS CURRENTLY HOUSED WOULD ONLY BE COSMETIC AND IN NO WAY ALLEVIATE THE ROOT CAUSES OF THE PROBLEM. LET US UNDERTAKE THE DIFFICULT STEPS THAT ARE NEEDED BUT NOT FOOL OURSELVES AND THE AMERICAN PUBLIC BY MAKING CHANGES THAT WILL HAVE LITTLE OR NO EFFECT.

## CONCLUSION

I AGREE WHOLEHEARTEDLY WITH THE ESTABLISHMENT OF A U.S. PATENT POLICY THAT EN-COURAGES THE DEVELOPMENT AND PRODUCTION OF NEW PRODUCTS, THAT WILL REWARD THOSE WHO TAKE RISKS, AND THAT WILL INSPIRE INCREASED CONFIDENCE IN OUR ECO-NOMY. MY COMMENTS ABOVE DEAL ONLY WITH THE VERY SPECIAL ISSUE OF GOVERNMENT-FUN-DED RESEARCH AND DEVELOPMENT ACTIVITIES.

THE FEDERAL GOVERNMENT HAS THE EQUIVALENT OF A FIDUCIARY RESPONSIBILITY TO THE TAXPAYERS OF THIS COUNTRY. PROPERTY ACQUIRED WITH PUBLIC FUNDS SHOULD BE-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LONG TO THE PUBLIC. DEVIATIONS FROM THAT FUNDAMENTAL PRINCIPLE SHOULD BE AL-
LOWED ONLY WHERE A COMPELLING JUSTIFICATION CAN BE SHOWN AND WHERE THE VOICE
OF THE PUBLIC CAN BE HEARD IN PROTEST. THIS LEGISLATION STANDS THAT PRINCIPLE ON
ITS HEAD BY AUTOMATICALLY CONVEYING TITLE OR THE EXCLUSIVE RIGHT TO USE PUBLIC
PROPERTY TO PRIVATE ENTITIES AND PLACING THE BURDEN ON THE FEDERAL GOVERNMENT
TO DEMONSTRATE THAT A RETRIEVAL OF THOSE RIGHTS IS IN THE PUBLIC INTEREST.
**\*29** JACK BROOKS.

\* \* \* \*

1 REPORT OF THE PRESIDENT'S ADVISORY COMMITTEE ON INDUSTRIAL INNOVATION, SEPT.
1979.

2 STIMULATING TECHNOLOGICAL PROGRESS. A STATEMENT BY THE RESEARCH AND
POLICY COMMITTEE OF THE COMMITTEE FOR ECONOMIC DEVELOPMENT, JAN. 1980, PP. 2-7.

3 SCIENCE INDICATORS, NATIONAL SCIENCE BOARD, 1976, PP. 108-115.

4 TESTIMONY OF PINDAROS ROY VAGELOS, M.D., BEFORE THE SUBCOMMITTEE ON COURTS,
CIVIL LIBERTIES AND THE ADMINISTRATION OF JUSTICE APRIL 15, 1980, TRANSCRIPT P. 14.

5 P.L. 96-294.

6 TESTIMONY OF HONORABLE SIDNEY DIAMOND, COMMISSIONER OF PATENTS, APRIL 24,
1980-- P. 50.

                              (Note: 1. PORTIONS OF THE SENATE, HOUSE AND
CONFERENCE REPORTS, WHICH ARE DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY
TO THE INTERPRETATION OF THE LAWS, ARE OMITTED. OMITTED MATERIAL IS INDICATED
BY FIVE ASTERISKS: \*\*\*\*\*. 2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOP-
IC FIELD SEARCH USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

H.R. REP. 96-1307(I), H.R. REP. 96-1307, H.R. Rep. No. 1307(I), 96TH Cong., 2ND Sess. 1980, 1980
U.S.C.C.A.N. 6460, 1980 WL 12929 (Leg.Hist.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.