04/12/06  WED 16:08 FAX 5152881338          MCKEE VOORHEES & SEASE    →→→ PTO                    ☑001

# MCKEE, VOORHEES & SEASE, PLC

**ATTORNEYS AT LAW**

801 GRAND AVENUE • SUITE 3200 • DES MOINES, IA 50309-2721
PHONE: 515-288-3667 • FAX: 515-288-1338 • www.ipmvs.com

**RECEIVED
CENTRAL FAX CENTER**

**APR 1 2 2006**

DATE:       April *12*, 2006

TO:         COMMISSIONER FOR PATENTS

COMPANY:    USPTO - MAIL STOP AF
            ART UNIT 2152

PHONE:

FAX:        **571-273-8300**

FROM:       BART A. FISHER

NUMBER OF PAGES (Including cover): *22*

Please file the attached **AMENDMENT AFTER FINAL REJECTION and 37
C.F.R. § 1.131 Declaration** for the following:

APPLICANT:    **BONNSTETTER**, Bill J., et al.
SERIAL NO:    09/760,145
FILED:        January 12, 2001
TITLE:        NETWORK BASED DOCUMENT DISTRIBUTION
              METHOD

Art Unit:            2152
Examiner:            MOORTHY, Aravind K.
Confirmation No:     2367
Docket No:           P04361US01

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMITTAL COVER SHEET CONTAIN INFORMATION FROM THE LAW FIRM OF McKEE, VOORHEES & SEASE WHICH MAY BE CONFIDENTIAL AND/OR LEGALLY PRIVILEGED. THE DOCUMENTS ARE INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE ADDRESSEE IDENTIFIED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING THESE DOCUMENTS TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS TRANSMITTED INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY THIS FIRM SO THAT WE CAN ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS TO US. THANK YOU.

**BEST AVAILABLE COPY**

EXHIBIT C

04/12/06 WED 16:09 FAX 5152881338          MCKEE VOORHEES & SEASE   →→→ PTO                    ☒002

**RECEIVED**
**CENTRAL FAX CENTER**

**APR 1 2 2006**

*PATENT*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| APPLICANT: | **BONNSTETTER,** Bill J., et al. |
| SERIAL NO: | 09/760,145 |
| FILED: | January 12, 2001 |
| TITLE: | NETWORK BASED DOCUMENT DISTRIBUTION METHOD |

| | |
|---|---|
| Art Unit: | 2152 |
| Examiner: | MOORTHY, Aravind K. |
| Confirmation No: | 2367 |
| Docket No: | P04361US01 |

### AMENDMENT AFTER FINAL REJECTION

Commissioner for Patents
Mail Stop AF
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

    In response to the Final Office Action mailed January 12, 2006, please enter the following

Declaration and remarks into the record for the above application.

---

CERTIFICATE OF MAILING/TRANSMISSION (37 CFR 1.8(a))

I hereby certify that this correspondence is, on the date shown below, being:

| MAILING | FACSIMILE |
|---|---|
| ☐ deposited with the United States Postal Service with sufficient postage as First Class mail in an envelope addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450. | ☒ transmitted by facsimile to the Patent and Trademark Office, Art Unit 2152 at Fax No. (571) 273-8300 Mail Code AF |

Date: _4-12-06_

                                                  Bart A. Fisher

## In the Claims

Claim 1 (Original):    A method of evaluation or assessment of persons, jobs, or employees comprising:

(a)    assigning a password for a respondent;

(b)    initializing a set of permissions relative to the password;

(c)    providing an assessment instrument to a respondent after verification of password;

(d)    receiving responses from the respondent to the assessment instrument;

(e)    processing the responses into an assessment report;

(f)    sending the assessment report to one or more locations authorized by the set of permissions associated with the password.


Claim 2 (Original):    The method of claim 1 further comprising managing distribution of documents including assessment instruments, over a wide area network.


Claim 3 (Previously presented):        The method of claim 2 wherein the wide area network is a global computer network.


Claim 4 (Original):    The method of claim 1 wherein the password is useable one time and then invalidated.


Claim 5 (Original):    The method of claim 1 wherein the permissions include what can be accessed, opened, or changed.


2

Claim 6 (Original):      The method of claim 1 wherein the assessment instrument is a survey related to human performance.

Claim 7 (Original):      The method of claim 5 wherein human performance relates to job performance.

Claim 8 (Original):      The method of claim 5 wherein human performance relates to personal performance.

Claim 9 (Original):      The method of claim 1 further comprising assigning a password for one or more other entities.

Claim 10 (Original):   The method of  claim 8 wherein the entities are categorized in a hierarchy of different hierarchy levels.

Claim 11 (Previously presented):      The method of claim 10 wherein each hierarchy level has a set of permissions.

Claim 12 (Previously presented):      The method of claim 11 wherein the hierarchy levels range from a higher to a lower hierarchy level, and no set of permissions of a lower hierarchy level is broader than any higher hierarchy level.

3

Claim 13 (Original):   The method of claim 2 wherein there can be simultaneous access by a plurality of authorized entities.

Claim 14 (Original):   The method of claim 13 further comprising a web site.

Claim 15 (Original):   The method of claim 14 wherein the web site contains an administration site and a survey site.

Claim 16 (Original):   The method of claim 9 wherein a plurality of entities can have simultaneous access.

Claim 17 (Original):   The method of claim 1 wherein the password comprises identifying information and a secured access code.

Claim 18 (Original):   The method of claim 9 wherein the other entities are selected from the set comprising a master distributor, a distributor, a client and a respondent.

Claim 19 (Original):   The method of claim 18 wherein the set of permissions associated with a master distributor password include (a) ability to create response links and passwords, (b) ability to set up new accounts, (c ) ability to manage reports, (d) ability to change its own and others' account options.

4

Claim 20 (Original): The method of claim 18 wherein the set of permissions associated with a distributor password include (a) ability to create response links and passwords, (b) ability to set up new accounts, (c ) ability to manage reports, (d) ability to change its own account options.

Claim 21 (Original): The method of claim 18 wherein the set of permissions associated with a client include (a) ability to create response links and passwords, (b) ability to manage reports, (c) ability to change account options.

Claim 22 (Original): The method of claim 18 wherein the set of permissions associated with a respondent include (a) respond to an assigned assessment instrument.

Claim 23 (Original): The method of claim 1 wherein the step of sending the reports includes a variety of reporting options.

Claim 24 (Original): The method of claim 23 wherein the variety of options includes (a) to whom the report will be sent, (b) when they will be sent, (c ) what will be in the report, (d) what form it will be sent.

Claim 25 (Original): The method of claim 1 wherein the variety of reporting options include (a) an activity report of who responded to assessment instruments, (b) automatic electronic delivery of a report to one or more addresses, (c ) sorting capabilities, (d) summarizations.

Claim 26 (Original):  The method of claim 1 further comprising changing options for the permissions via the wide area network.

Claim 27 (Original):  The system of claim 1 wherein more permissions than are assigned to an entity can not be passed on to another entity.

Claim 28 (Previously presented):      A method for managing distribution of assessment documents over a wide area comprising:

(a)     providing an assessment instrument for completion by respondents;

(b)     assigning a password for an entity having a level of rights;

(c)     initializing permissions relative to the password based on the level of rights for the entity, said permissions including at least one respondent password having permissions based on the level of rights for a respondent;

(d)     allowing the entity access to a web site on a global computer network and enabling the initialized permissions for the entity;

(e)     providing an assessment instrument to the respondent which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job;

(f)     receiving responses from the respondent to the assessment instrument;

(g)     processing the responses into an assessment report;

(h)     sending the assessment report to one or more locations authorized by the permissions.

6

Claim 29 (Original): The method of claim 26 wherein the set of permissions for a given level of rights can not be exceeded by a password associated with a lesser level of rights.

Claim 30 (Original): The method of claim 27 further comprising four levels of rights, namely, master distributor, distributor, client, and respondent.

Claim 31 (Original): The method of claim 28 wherein the permissions associated with a master distributor level of rights include (a) ability to create response links and passwords, (b) ability to set up new accounts, (c) ability to manage reports, (d) ability to change its own and others' account options.

Claim 32 (Original): The method of claim 28 wherein the permissions associated with a distributor level of rights include (a) ability to create response links and passwords, (b) ability to set up new accounts, (c) ability to manage reports, (d) ability to change its own account options.

Claim 33 (Original): The method of claim 28 wherein the permissions associated with a client level of rights include (a) ability to create response links and passwords, (b) ability to manage reports, (c) ability to change account options.

Claim 34 (Original): The method of claim 28 wherein the permissions associated with a respondent level of rights include (a) respond to an assigned assessment instrument.

7

Claim 35 (Previously presented):     A system for managing assessments comprising:

(a)     a plurality of terminals each adapted to access a wide area network;

(b)     a central server;

(c)     software associated with the central server which administers a web site and which
        provides permissions;

(d)     a password having a set of permissions correlated to a respondent for an assessment
        survey which gauges an individual potential employee's suitability with regards to a
        particular job, an individual existing employee's suitability or performance, with regards
        to a particular job, or an individual boss's performance with regards to a particular job;

(e)     a password having a set of permissions correlated to an entity interested in the respondent's
        responses to the assessment survey specifics.


Claim 36 (Previously presented):     The system of claim 35 wherein the assessment relates to
job or personal performance of a human.


Claim 37 (Previously presented):     The system of claim 35 wherein the assessment survey is
electronic in nature or is hard copy in nature.


Claim 38 (Previously presented):     The system of claim 35 wherein the report is electronic in
nature or is hard copy in nature.


Claim 39 (Previously presented):     The system of claim 35 wherein the set of permissions can
vary from password to password.

8

Claim 40 (Previously presented):          A method of evaluation or assessment of persons,

jobs, or employees comprising:

(a)    assigning a password for a respondent;

(b)    initializing a set of permissions relative to the password;

(c)    providing an assessment instrument which gauges an individual potential employee's

       suitability with regards to a particular job, an individual existing employee's suitability or

       performance with regards to a particular job, or an individual boss's performance with

       regards to a particular job to a respondent after verification of password;

(d)    receiving responses from the respondent to the assessment instrument;

(e)    processing the responses into an assessment report;

(f)    sending the assessment report to one or more locations authorized by the set of

       permissions associated with the password.

9

## REMARKS

### Overview

Claims 1–40 are pending in the present application. Claims 1-40 have been rejected. A 37 C.F.R. §-1.131 Declaration is attached with this Amendment showing invention prior to the earliest effective date of U.S. Patent No. 6,853,975 to Dirksen et al., newly cited in the Final Rejection. It thereby removes Dirksen as a prior art reference. Entry of this Amendment After Final is respectfully requested.

### Improper Final Rejection

On January 12, 2006, the Examiner rejected all pending claims 1-40 of the present application under 35 U.S.C. § 103 using U.S. Patent No. 6,853,975 to Dirksen, in light of various other patents. Dirksen had not been previously cited. With this rejection, the Examiner issued an improper Final Rejection.

37 C.F.R. § 1.113(a) states in part that "on the second or any subsequent examination or consideration by the Examiner the rejection or other action may be made final . . ." however, MPEP § 706.07 clarifies this stating:

> Before final rejection is in order a clear issue should be developed
> between the examiner and applicant. To bring the prosecution to as
> speedy conclusion as possible and at the same time to deal justly by both
> the applicant and the public, the invention as disclosed and claimed
> should be thoroughly searched in the first action and the references fully
> applied; and in reply to this action the applicant should amend with a
> view to avoiding all the grounds of rejection and objection. Switching
> from one subject matter to another in the claims presented by applicant in
> successive amendments, *or from one set of references to another by the*
> *examiner in rejecting in successive actions claims of substantially the*
> *same subject matter, will alike tend to defeat obtaining the goal of*
> *reaching a clearly defined issue for an early termination, i.e., either an*
> *allowance of the application or a final rejection.*

10

> While the rules no longer give to the applicant the right to 'amend as often
> as the examiner presents new references or reasons for final rejection,'
> *present practice does not sanction hasty and ill-considered final*
> *rejections. The applicant who is seeking to define his or her invention*
> *and claims that will give him or her the patent protection to which he or*
> *she is justly entitled should receive the cooperation of the examiner to*
> *that end, and not be prematurely cut off in the prosecution of his or her*
> *application. . . . .*
>
> The examiner should never lose sight of the fact that in every case the
> applicant is entitled to a full and fair hearing, and that a clear issue
> between applicant and examiner should be developed, if possible, before
> appeal. . . ." *(Emphasis added).*

The Office Action dated January 12, 2006 rejected all pending claims in the present application,

in light of U.S. Patent No. 6,853,975 to Dirksen. Dirksen had not previously been used or

referred to in the prosecution of the present application. Thus, as specifically stated in MPEP §

706.07 a clearly defined issue has not been developed between the Examiner and the Applicant

because the Examiner has switched from one set of references to another in successive actions

for claims of substantially the same subject matter. In fact, claim 1 and its depending claims

were not amended and were exactly the same subject matter in the successive actions. Therefore,

the Examiner has not met his burden of clearly defining the issues by allowing the Applicant a

chance to response to the Dirksen reference before a final rejection was issued. Therefore, the

final rejection was improperly issued and should be withdrawn.

To further support this argument, MPEP § 706.07(a) states in part that "a second or any

subsequent action on the merits in any application . . . *will not be made final* if it includes a

rejection, on newly cited art, . . . *of any claim not amended by applicant or patent owner in spite*

*of the fact the other claims may have been amended to require newly cited art.*" While it is true

that Applicant's amendment may necessitate new grounds of rejection requiring a final rejection

11

at times, claim 1 has not been amended and therefore a final rejection on claim 1 and its

depending claims is improper. Furthermore, MPEP § 706.07(a) further states that "a second or

any subsequent action on the merits in any application . . . should *not* be made final if it includes

a rejection, on prior art not of record, of any claim amended to include limitations which should

reasonably have been expected to be claimed." Here again, the Examiner should have expected

amendments which do not limit, but simply further define the invention, in an Amendment dated

October 27, 2005 in response to Office Action dated June 27, 2005. Once again, the final

rejection on all claims is improper and should be withdrawn. Applicant is not now petitioning to

withdraw the final, assuming the Examiner will enter the below discussed Rule 131 Declaration.

**Seasonable Presentation of Declaration Under 37 C.F.R. § 1.131**

The enclosed 37 C.F.R. § 1.131 Declaration predates the earliest effective date of

November 10, 1999 of U.S. Patent No. 6,853,975 to Dirksen. MPEP § 715.09 states that

> Affidavits or declarations under 37 C.F.R. § 1.131 must be timely presented
> in order to be admitted. Affidavits and declarations submitted under 37
> C.F.R. § 1.131 and other evidence traverses rejections are considered timely
> if submitted:
>   (a)    prior to a final rejection; . . .
>   (c)    after final rejection, but before or on the same date of filing an
> appeal, upon a showing of good and sufficient reasons why the affidavit or
> other evidence is necessary and was not earlier presented in compliance with
> 37 C.F.R. § 1.116(e).

Applicant submits that, as discussed above, the final rejection is improper and should be

withdrawn. Certainly the 37 C.F.R. § 1.131 Declaration enclosed is seasonably presented under

MPEP § 715.09(a). In any event, the enclosed 37 C.F.R. § 1.131 Declaration is still seasonably

presented after final rejection upon a showing of good and sufficient reasons why the declaration

or other evidence is necessary and was not earlier presented. Applicant submits that Applicant

12

has a good and sufficient reason why the Declaration was not earlier presented since the reference being sworn behind, namely U.S. Patent No. 6,853,975 to Dirksen, was not previously used by the Examiner. Thus, the Applicant could not earlier present a Declaration to swear behind Dirksen. Therefore, entry of the enclosed 37 C.F.R. § 1.131 Declaration is respectfully requested to allow ante-dating of Dirksen.

In light of the improper final rejection and the seasonably presented 37 C.F.R. § 1.131 Declaration swearing behind the Dirksen reference, the Examiner has not made a *prima facie* case for rejecting any of the pending claims in the present application. The Examiner implies that certain elements in the supplemental references do not disclose or suggest all elements of the pending claims in the present application without Dirksen. Applicants agree. Thus, without the Dirksen reference available as prior art, the Examiner's rejections are defective and should be withdrawn. A Notice of Allowance of all pending claims is respectfully requested.

**Conclusion**

Claims 1-40 are pending in the present application, all of which have been rejected. The Examiner's final rejection is improper and should be withdrawn. In addition, a Declaration is included to remove U.S. Patent No. 6,853,975 to Dirksen as a prior art reference and thus all claim rejections fail and should be withdrawn. A Notice of Allowance of all pending claims is respectfully requested.

This is an earnest attempt to put all claims in proper form for immediate allowance. If, however, the Examiner does not believe that all claims are in proper form for immediate allowance, the Examiner is specifically requested to contact Applicant's attorney at the below-identified telephone number to remedy any outstanding issues.

13

No fees or extensions of time are believed to be due in connection with this amendment;

however, consider this a request for any extension inadvertently omitted, and charge any

additional fees to Deposit Account No. 26-0084.

Respectfully submitted,

BART A. FISHER, Reg. No. 55,181
McKEE, VOORHEES & SEASE, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, Iowa  50309-2721
Phone No. (515) 288-3667
Fax No.  (515) 288-1338

**CUSTOMER NO: 22885**
Attorneys of Record

- bja -
Enclosure:  37 C.F.R. § 1.131 Declaration and Exhibits

14

` 04/12/06  WED 16:12 FAX 5152881338        MCKEE VOORHEES & SEASE   →→→ PTO                ☑016

RECEIVED
CENTRAL FAX CENTER

**APR 1 2 2006**

*PATENT*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT:        **BONNSTETTER**, Bill J. et al.
SERIAL NO:        09/760,145
FILED:            January 12, 2001
TITLE:            NETWORK BASED DOCUMENT DISTRIBUTION METHOD

Art Unit:         2152
Examiner:         MOORTHY, Aravind K.
Confirmation No:  2367
Docket No:        P04361US01


**DECLARATION OF PRIOR INVENTION IN THE UNITED STATES TO
OVERCOME CITED PATENT FOR PUBLICATION (37 C.F.R. § 1.131)**


COMMISSIONER FOR PATENTS
Mail Stop AF
P. O. Box 1450
Alexandria, VA 22313-1450


Dear Commissioner:

    1.    This Declaration is to establish completion of the invention in this application

in the United States at a date prior to November 10, 1999, the earliest filing date of cited U.S.

Patent No. 6,853,975 to inventors Dirksen et al., presented by the Examiner for the first time

in the Final Rejection of January 12, 2006.

    2.    The persons making this Declaration are the named inventors of Serial No.

09/760,145.

    3.    The Assignment is recorded at Reel 011799, frame 0047 dated May 11, 2001.

1

4.    To establish the date of invention of this application, the following attached documents are submitted as evidence:

Exhibit A:    Document.titled.DBNotes.txt

Exhibit B:    A screen print of the folder containing the file of Exhibit A, the date of which is blocked out, but which is earlier than November 10, 1999.

5.    From these documents, all of which were created and in existence and made in the Unites States of America prior to November 10, 1999, it can be seen that the invention defined in this application was conceived prior to the November 10, 1999, filing date of Dirksen.

6.    From the time of conception to a time just prior to the effective filing date of the reference, the inventors diligently worked towards filing of the application identified in the caption of this Declaration.

7.    The present application relies on a provisional application filing date of January 14, 2000, which is only a few weeks after the earliest filing date of the reference, evidencing that the work on the invention was done much earlier. Our inventors records indicate we took this information on conception and reduction to practice to our patent attorney, Mark Hansing on October 15, 1999, which is also prior to Dirksen.

8.    The document of Exhibit A is shown to prove conception of the present invention prior to November 10, 1999 by briefly mentioning elements a-f of claim 1 of the present application. Each element a-f of claim 1 is noted as a-f in the left margin on Exhibit

2

A, which elements have been added to the attached copy for purposes of this declaration. Exhibit A is otherwise original.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on the information and belief are believed to be true; and further that these statements were made with the knowledge that the willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

Date: 4-12-06                         Bill J. Bonustetter

Date: 4/12/06                         David R. Bonustetter

Date: 4/12/06.                        Rodney Cox

3

File: L:\WebProject\DBNotes.txt  8/11/1999, 3:44:08PM

Here is a brief explanation of the database structure:

(See Prototype.mdb/tools/relationships)

User Accounts:

The Account, AcctOptions and AcctTag tables encapsulate the data for an administrative account. This includes all levels of users except the person who responds to an instrument.

The information in AcctOptions is broken off from Account just to make the record a little neater. Also, we probably will have others tables such as AcctReportOptions, and maybe others.

 The AccountID is the unique (internal) identifier for each user.  LoginName and Password are what they actually type in to log in.

 The OwnerID and ParentID situate each user in the hierarchical tree.

Experiences (Links)

The Experience table encapsulates the information for each link setup. (We decided on 'experience' rather than 'link' to let link refer to actual web links.  The ExperienceDNAInfo table is just extra information that we will need for a DNA type of experience.  We may need other such tables for other types of experiences.

 The ExperienceID is the unique number for each experience.  The AccountID links the experience to the user account.

The ExpRptView table links each experience with one or more report views to be linked to by the experience.

The ExperienceDNAInfo contains auxiliary information pertinent to the DNA process.

Page: 1



EXHIBIT

A

File: L:\WebProject\DBNotes.txt  8/11/1999, 3:44:08PM

We might end up with other supplementary information linked to the Experience
information.

Reports and Report Views

The ReportView table is static information and each record defines a single report
'view'. We decided on this term to indicate the actual printed form of a report. Thus,
the Style Analysis instrument can produce several 'report views', while Style Analysis
results would be considered the 'report'.

The ReportViewDef is a memo field that contains the 'script' for the report. In our first
go, it will be Dave's current data for each report. That's why a report view must be
defined for each language, since they are actually different reports. The
ReportViewVer number indicates the version of scripting so that if we come up with a
better way to define the report, we can mix old and new ways.


The Report and Responses table contain the results of each respondent's responses
for each link in the experience. The reason we separated into two tables is to handle
the case of 360 type reports, where the 'report' is acually the summary of several
responses. In fact, we conceived EVERY report as being a 360 type report with most
cases having only one reponse (the Self.)

The RaterCategory table contains descriptions of the types of raters for 360 type
reports

The Respondent table provides information, on a user account level of those who
have/will be the subjects of experiences. They may be anonymous or pre-defined (or
post-defined!)

The ReportsPrinted table creates a record for each printing of a report view. These
may or may not be charged, based on policies.

Instrument Collection / Instrument

Page: 2

File: L:\WebProject\DBNotes.txt  8/11/1999, 3:44:08PM

The InstrumentCollection table is a container for what we usually call an Instrument. This is because some report 'instruments' are actually a combination of individual instruments, some of which are mandatory or optional. So this table contains this definition and information, using our XML scripting method.

The Instrument table defines a single instrument (or even section of an instrument) for use by the InstrumentColletion. The 'script' in InstrumentDef drives the engine that presents the survey to the respondent.

04/12/06   WED 16:13 FAX 5152881338     MCKEE VOORHEES & SEASE   →→→ PTO     ☑022





BEST AVAILABLE COPY