## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TARGET TRAINING INTERNATIONAL, LTD., | § § | |
| | § | Civil Action No. 4:10-cv-03350 |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| EXTENDED DISC NORTH AMERICA, INC., | § § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

### EXTENDED DISC'S MOTION TO STAY LITIGATION IN VIEW OF REJECTION OF ALL ASSERTED CLAIMS AND IN VIEW OF COPENDING CASE AGAINST EDI

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION* _____ *5*

*II.*    *FACT SUMMARY* _____ *7*

*III.*    *ISSUES PRESENTED* _____ *8*

*IV.*    **LEGAL PRINCIPLES** _____ **9**

   **A.**  **A Liberal Policy Exists for Staying Litigation Pending Reexamination** _ **9**

   **B.**  **Three-Factor Analysis For Determining Whether A Stay is Proper, and Potential Benefits of a Stay** _____ **9**

*V.*    ***The Court Should Stay This Action Pending Reexamination of the '372 Patent Because All Three Factors Favor A Stay*** _____ ***10***

   **A.**  **A Stay Will Not Unduly Prejudice Or Present A Clear Tactical Disadvantage To TTI** _____ **10**

   **B.**  **A Stay Is Appropriate Because Reexamination Will Likely Narrow The Issues And May Eliminate The Need For Further Litigation** _____ **12**

      *1.*  *Reexamination Is Likely To Simplify Litigation Issues* _____ 12

      *2.*  *A Stay Will Speed The Pace Of Reexamination* _____ 15

   **C.**  **The Current Stage Of Discovery Favors A Stay** _____ **15**

*VI.*    ***THIS CASE SHOULD BE STAYED IN VIEW OF THE CUSTOMER SUIT EXCEPTION*** _____ ***17***

   **1.**  **The "Customer Suit" Exception is Applicable, and Would Simplify the Issues by Staying Claims as to Resellers** _____ **17**

      a.  *TTI's Claims Against EDNA are Merely Peripheral to The Suit Against EDI* _ 17

      b.  *Adjudication Against EDI Will Dispose of the Major Issues Against* _____ 19

      *EDNA as to EDI's Products* _____ 19

      c.  TTI Will Be Neither Prejudiced Nor Tactically Disadvantaged by a Stay _ 21

*VII.*    ***CONCLUSION*** _____ ***23***

## TABLE OF AUTHORITIES

**Cases**

*Alza Corp v. Wyeth*, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006) ........................ 11

*Alza Corp. v. Wyeth*, No. 9:06-CV-156, 2006 WL 3500015, *1 (E.D. Tex. Nov. 21, 2006) ................................................................................................................. 14

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) .................... 12

*Broadcast Innovation*, 2006 WL 1897165 .............................................................. 12

*Broadcast Innovation, LLC v. Charter Comm., Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165 ................................................................................................. 10

*Broadcast Innovation, LLC*, 2006 WL 1897165 ....................................................... 12

*Cameras Onsite*, at *2 (citing, *Echostar Tech. Corp. v. Tivo, Inc.,* 2006 WL 2501494 at *4 (E.D. Tex. July 14, 2006)) ................................................................................. 9

*Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) .......................... 17

*Echostar*, 2006 WL 2501494 ...................................................................... 13, 15

*Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) .............................. 9

*Gould*, 705 F.2d 1340 (Fed.Cir.1983) .................................................................. 14

*Guthy-Renker Fitness LLC v. Icon Health and Fitness Inc.*, 48 U.S.P.Q.2d 1058, 1060 (C.D. Cal. 1998) ....................................................................................... 14

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990 ................................ 17, 19

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) .............................. 17, 19

*Katz*, 909 F.2d at 1464 ....................................................................... 17, 18, 21, 22

*LG Elec. Inc.*, 138 F.Supp. 2d at 585 ................................................................... 19

Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887, 1985 WL 1483, at *2 (W.D.Okla. Jan.3, 1985) ............................................................... 14

*Microsoft Corp. v. Commonwealth Scientific & Industrial Research Org.*, 2007 WL 4376104 at *2, (E.D. Tex. Dec. 2007) ............................................................... 18

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) .................................. 10

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985) ................................... 9

*Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ............................................................................. 11

*Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) ........................................ 17

*Shifferaw v. Emson USA*, 2010 U.S. Dist. LEXIS 25612 ....................................... 17, 18

*Shifferaw v. Emson USA*, 2010 U.S. Dist. LEXIS 25612 at *8 (E.D. Tex. Mar. 18, 2010) .................................................................................................... 17

*Shifferaw*, 2010 U.S. Dist. LEXIS 25612 ........................................................ 18, 19, 22

*Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578, (Fed. Cir. 1995) .............. 13

*Spectrum Int'l, Inc. v. Sterlite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998) ................... 13

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) .................................................................................................. 12

*Target Therapeutics, Inc.*, 33 U.S.P.Q.2d at 2023 .................................................... 14

*Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp.2d 755, 764 (S.D. Tex. 2010) ......... 13

*Thibodeaux v. Fibreboard Corp.*, 706 F.2d 728, 729 (5th Cir. 1983) .............................. 22

*Ultra Products, Inc. v. Best Buy Co.*, 2009 U.S. Dist. LEXIS 78678 at *17-18 (D.N.J. 2009) .................................................................................................. 20

*Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 997 F. Supp. 93,95 (D. Mass. 1997)
.......................................................................................................................................... 16

**Other Authorities**

H.R. Rep. No. 1307, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S.C.C.A.N. 6460, 6463
..........................................................................................................................................9

## I.      INTRODUCTION

All claims of U.S. Patent No. 7,249,372 ("the '372 patent") now stand rejected by the U.S. Patent and Trademark Office ("PTO").  Following the PTO's recent order granting reexamination of TTI's '372, the Examiner has now rejected all of the claims in view of prior art identified in the reexamination request.  Accordingly, Extended DISC North American, Inc. ("EDNA") now requests that the Court stay this case until the reexamination has concluded.  A stay at this stage would allow the PTO to conclude its reexamination proceedings and would prevent the parties and the Court from wasting additional time and resources litigating a patent that presently stands wholly rejected.

Further, as TTI admitted in its response to EDNA's first motion to stay, "there may be several advantages in granting a stay pending reexamination."  The advantages TTI recognized early in this case are even more applicable now that the PTO has rejected all claims of the '372 patent.  Also, contrary to TTI's unfounded allegations in its prior briefing, the reexamination process is proceeding quickly.  The multi-year delays of which TTI previously complained have not been an issue in this case.

In the currently pending reexamination proceeding, the PTO has issued an office action rejecting all of the claims of the '372 patent, including all of the claims that are the subject of this litigation.  Exh. A, Office Action dated August 18, 2011.  Therefore, the Court should stay this litigation until the reexamination is completed for at least the following reasons: (1) because TTI has not sought a preliminary injunction and because TTI has an adequate remedy at law (*i.e.*, the ability to collect monetary damages upon a showing of infringement); (2) the stay will promote judicial efficiency because reexamination will likely narrow issues or even eliminate the need for further litigation; and (3) the current stage of litigation favors granting the stay because

substantial discovery remains uncompleted, meaning a stay would spare both the parties and this court from substantial needless expenses.

If TTI is unable to overcome the PTO's rejection of all of its claims, the '372 patent will found be invalid and this case will be over.  However, even if TTI does manage to argue its way around the Examiner's rejections, there is a high likelihood that the claims will be amended in the process.  This would impact both the scope and enforceability of the claims that have been asserted against EDNA.  Additionally, TTI may be required to make arguments to the PTO that would influence this case, such as with regard to the scope and content of the prior art or with regard to the date of conception and reduction to practice of TTI's purported invention.

Further, it is antithetical to continue to litigate a patent that the PTO has found be to unpatentable.  This would only serve to waste the time and resources of the Court and the parties.

For these reasons, the Court should stay this case to prevent the Court and the parties from wasting additional time litigating a presently invalid patent and to allow the PTO to conclude its reexamination of the '372 patent.

In addition, the Court should now stay this case under the "customer suit" exception pending resolution of TTI's new suit against EDI.  On July 7, 2011, TTI filed suit against Extended DISC International, Ltd. ("EDI"), EDNA's former franchisor, in this District.  *See Target Training International, Ltd. v. Extended DISC International, Ltd*.; 4:11-cv-2531. Presently, this case and TTI's newly filed case are in different Courts.  This is problematic because it will inevitably lead to duplication of effort as each Judge must rehash the same or similar issues in each case.  In addition, there is a distinct possibility that substantially different results could be reached by each Court and/or jury in each case, even though the underlying facts and circumstances are virtually identical.

There is no dispute that the products that are accused of infringement in this case are the same products that are accused of infringement in TTI's case against EDI.  TTI admits in its complaint against EDI that "EDNA customers are also EDI customers."  Exh. B; TTI's Complaint, 4:11-cv-2531 (Dkt. No. 1).  In addition, it is undisputed that EDNA is merely a reseller of EDI's products, TTI admits as much in its complaint against EDI:

> 10.    Further, upon information and belief, the infringing acts or steps occur in the United States and are performed either by EDI or by EDI's customers under the control, direction, instruction, urge, assistance, facilitation, and or encouragement of EDI for the benefit of its customers and its franchisees in the United States, for which EDI receives compensation from U.S. citizens.

*Id*.  This is precisely the factual scenario that the customer suit exception is intended to address as it will allow the true parties-in-interest to more effectively and efficiently litigate their claims.

In sum, EDNA seeks a stay of this litigation for two significant reasons:  (1) in view of the rejection of all claims of the '372 patent and (2) in view of TTI's recent lawsuit against the real party-in-interest EDI.


## II.    FACT SUMMARY

Most recently, on August 18, 2011, the PTO issued an office action rejecting all of the claims of the '372 patent.  Exh. A.  To be clear, each and every claim, including each and every asserted claim, presently stands rejected by the PTO.  *Id*.

TTI filed this case on September 17, 2010 asserting infringement of claims 1-2 and 5-11 of the '372 patent.  There are no other patents or causes of action involved in this suit.  TTI seeks monetary damages and a permanent injunction of EDNA's activities. *See* Complaint (Dkt. No. 1) at 3-4.  However, TTI <u>did not seek</u> a preliminary injunction of EDNA's accused activities.

While the PTO was considering and rejecting the claims of the '372 patent, TTI filed a case substantially similar to this case naming EDI as the sole defendant. *See* Exh. A. This new case has been assigned to Judge Gilmore. To date, TTI has failed to comply with the Court's Related Litigation Policy which requires TTI to "advise the Court of related current or recent litigation and of directly affected non-parties." L.R. 5.2. Despite this failure, there is no reasonable dispute that this case and TTI's co-pending case against EDI are substantially related and, in fact, are virtually identical, including involving the same EDI products and the same '372 patent. *See* Exh. A.

Discovery in this case is remains on-going. Both parties are still engaged in document production. In addition, third party discovery and the taking of deposition testimony remain far from complete. Expert discovery has not yet commenced and initial expert reports are not due until October 28, 2011. The trial date is set for June 4, 2012, leaving a substantial amount of time for additional discovery and trial preparation by both parties.

### III.    ISSUES PRESENTED

(1)    Whether the Court should stay this litigation pending resolution of the reexamination proceedings where: (a) the PTO has determined that all claims of the '372 patent are unpatentable and/or invalid; (b) the plaintiff did not seek a preliminary injunction, and instead seeks money damages; (c) the plaintiff is not commercially harmed by any delay caused by the stay; and (d) discovery is ongoing and the trial date is more than nine months away.

(2)    Whether the Court should stay this litigation in favor of TTI's co-pending case against EDI, the manufacturer of the accused products and the real party-in-interest.

## IV.  LEGAL PRINCIPLES

### A.  A Liberal Policy Exists for Staying Litigation Pending Reexamination

"The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985). Indeed, one of Congress's primary purposes in creating the reexamination procedure was to "permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation" H.R. Rep. No. 1307, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S.C.C.A.N. 6460, 6463; *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)").

### B.  Three-Factor Analysis For Determining Whether A Stay is Proper, and Potential Benefits of a Stay

Courts generally analyze three factors in deciding to stay a case pending reexamination: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Cameras Onsite*, at *2 (citing, *Echostar Tech. Corp. v. Tivo, Inc.,* 2006 WL 2501494 at *4 (E.D. Tex. July 14, 2006). Additionally, in *Echostar,* Magistrate Judge Craven noted a number of potential benefits that result from a stay, including: (1) the suit will likely be dismissed if the PTO determines the claim to be invalid; (2) "[t]he outcome of the reexamination may encourage a settlement without the further use of the Court;" (3) "[t]he record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;" and (4) "[t]he cost will likely be reduced for both the parties and the Court." *Echostar,* at **4-5.

9

**V.     The Court Should Stay This Action Pending Reexamination of the '372 Patent Because All Three Factors Favor A Stay**

As explained more fully below, all three of the above factors weigh in favor of granting a stay pending reexamination. Additionally, the potential benefits of a stay are particularly applicable in this case.

**A.     A Stay Will Not Unduly Prejudice Or Present A Clear Tactical Disadvantage To TTI**

The first factor to consider in determining the appropriateness of a stay pending reexamination is whether the stay would unduly prejudice TTI. Undue prejudice would result if the stay would deprive the plaintiff of an adequate remedy at law. *See Broadcast Innovation, LLC v. Charter Comm., Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *10 (D. Colo. July 11, 2006) (summarizing the "undue prejudice" factor in terms of whether the nonmoving party retains an adequate remedy at law). Here, a stay of this suit pending reexamination will not result in undue prejudice to TTI.

Specifically, TTI will not suffer undue prejudice because a stay would not obviate an adequate remedy at law. If this litigation is stayed, TTI retains the ability to collect money damages for any proven infringement. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) (noting that damages for any infringement continue to accrue during the period of the stay). Notably, because TTI never moved for a preliminary injunction,[1] TTI cannot now argue that a stay would harm its place in the market.

In its response to EDNA's first motion to stay, TTI asserted that a stay would result in undue prejudice. TTI's First Response (Dkt. No. 27) at 4. In support of this argument, TTI

---

[1] TTI did request a permanent injunction in its complaint, but the stay does not affect the availability of this remedy. In addition, TTI did not request a preliminary injunction in complaint against EDI either.

asserted that the parties are direct competitors and that EDNA is "a small company."  *Id*. at 5.
TTI further alleges that a stay would be prejudicial because it <u>could</u> "lose...goodwill in the
market."  TTI also put forth this unsupported argument in response to EDNA's second motion to
stay.  Dkt. No. 57.  However, TTI has yet to produce any evidence of such loss of goodwill or
"erosion" of sales.

Here, as in *Cameras Onsite*, plaintiff's arguments are unavailing.  As this Court reasoned in
*Cameras Onsite*, "Plaintiff's purported prejudice is attenuated because it assumes (1) the ['372]
Patent is valid and infringed by [EDNA]."  *Cameras Onsite*, at *3.  The PTO's rejection of all of
the claims of the '372 patent further strengthens the reasoning in *Cameras Onsite*.  Moreover,
even if the Court denied the stay, since TTI has made no showing that it is entitled to a
preliminary injunction against EDNA, EDNA is free to continue its activities.  *See, Id*.  In
addition, it was TTI that chose to bring suit against a "small company" such as EDNA.  It cannot
now complain EDNA may not have the financial resources to satisfy a patent infringement
judgment.  At most, TTI can only complain that it is inconvenienced by the delay.  As TTI
admits, EDNA is a "small company."  There are a number of larger firms engaged in the same
business as EDNA.  To date, TTI has ignored these "bigger fish."  While TTI's litigation strategy
remains unknown, the fact that TTI has apparently ignored more significant competitors
evidences the weakness of TTI's arguments regarding its purported "goodwill in the market."

Further, "[t]he delay inherent to the reexamination process does not constitute, by itself,
undue prejudice."  *Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL
1440363, at *2 (N.D. Cal. May 24, 2006); *see also Alza Corp v. Wyeth*, 2006 WL 3500015, at *1
(E.D. Tex. Nov. 21, 2006) ("Reexamination does not threaten protracted or indefinite delay.").

The stay also does not tactically disadvantage TTI (or give a tactical advantage to EDNA).

To the contrary, a stay benefits both the parties and this court by permitting the PTO to assess patentability/validity before the parties incur additional costs of litigation and before the Court invests significant additional time in the case. This avoids the risk of investing tremendous resources preparing for trial on claims that may well be altered during reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) ("Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination."); *see also Broadcast Innovation*, 2006 WL 1897165, at \*10. The benefit of this avoided risk inures not just to the Court and EDNA, but also to TTI.

For these reasons, this factor favors a stay.

**B.     A Stay Is Appropriate Because Reexamination Will Likely Narrow The Issues And May Eliminate The Need For Further Litigation**

The second factor—whether a stay will simplify the issues in question and the trial of the case — now weighs heavily in favor of a stay.

### *1.     Reexamination Is Likely To Simplify Litigation Issues*

Patents rarely survive reexamination unscathed. In fact, 77% of *ex parte* reexamination proceedings result in amendment or the complete invalidation of the claims. Of course, invalidation of the '372 patent would moot all issues in the case. *Broadcast Innovation, LLC*, 2006 WL 1897165, at \*2 & \*10 ("If no claims survive, neither does the court's work....Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the four asserted claims will survive the reexamination process.").  As for claim amendments, even the amendment of a single claim of the '372 patent could significantly alter the landscape in

this case.  For instance, such an amendment would give rise to intervening rights, 35 U.S.C. § 307(b).  Further, any substantive change to the asserted claims would mean that the '372 patent could not be enforced for the period before the reexamination certificate issues.  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).  In addition, amendments to the claims could obviate TTI's basis for its infringement contentions, assuming any claim survives reexamination.

Even if TTI does not amend the claims, arguments it makes during reexamination will help define the scope of the asserted claims: the principle that a patentee "after relinquishing subject matter to distinguish a prior art reference asserted by the PTO during prosecution 'cannot during subsequent litigation escape reliance by the defendant upon this unambiguous surrender of subject matter'" applies to statements made during reexamination. *Spectrum Int'l, Inc. v. Sterlite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998) (citing *Southwall Techs. Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1578, (Fed. Cir. 1995)).

Moreover, even if the reexamination does not result in the cancellation or amendment of all claims of the '372 patent, the record of reexamination would likely be entered at trial and potentially reduce the complexity and length of the litigation. The actions by the PTO during reexamination may "greatly influence the proceedings going forward" and add clarity to the scope of the patent, as well as the scope of the prior art, thus simplifying the issues for trial. *Echostar*, 2006 WL 2501494, at *4.  As this Court has recognized, "a stay may be appropriate to avoid duplicative or contradictory findings as to the patents validity."   *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp.2d 755, 764 (S.D. Tex. 2010).

Given the likelihood that some or all of the asserted claims will be amended or canceled, a stay pending reexamination avoids wasting efforts on issues that will ultimately be irrelevant: "It

would be an egregious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceedings." *Echostar*, 2006 WL 2501494, at *4. Accordingly, "[i]t makes sense to ascertain the ultimate scope of the claims before trying to figure out whether products infringe." *Guthy-Renker Fitness LLC v. Icon Health and Fitness Inc.*, 48 U.S.P.Q.2d 1058, 1060 (C.D. Cal. 1998). Conversely, without a stay, "the parties may end up conducting a wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination. *Id. See also Target Therapeutics, Inc.*, 33 U.S.P.Q.2d at 2023.

In its response to EDNA's first motion to stay, TTI takes the unusual position that "[a] stay will not simplify the case."   TTI's First Response at 5.   This Court has considered such arguments and holding that:

> As noted by the Federal Circuit, reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. See Gould, 705 F.2d 1340 (Fed.Cir.1983), cert. denied 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court. See Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887, 1985 WL 1483, at *2 (W.D.Okla. Jan.3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. See Gould, 705 F.2d at 1342.

*Tesco*, 2006 WL 6625915 at *2 (S.D. Tex. Nov. 9, 2006) (granting motion to stay prior to order from PTO granting reexamination).   Clearly, this Court recognizes that a stay may simplify the issues in a number of ways, even where all claims are not found invalid.   To be clear, however, the PTO has now <u>rejected all of the claims</u> in the '372 patent.

There is no reasonable dispute that reexamination will simplify the issues.   This factor weighs heavily in favor of a stay.

### 2.      *A Stay Will Speed The Pace Of Reexamination*

As courts have recognized, a stay has other benefits as well; specifically, it speeds the pace of reexamination. *See Alza Corp. v. Wyeth*, No. 9:06-CV-156, 2006 WL 3500015, *1 (E.D. Tex. Nov. 21, 2006).  In cases stayed pending reexamination, the PTO conducts those reexaminations with special dispatch.  *See* M.P.E.P. §§ 2263 and 2286(I) (e.g., reducing office actions response period to one month when litigation is stayed).  Here, the PTO has acted quickly to reject all of the claims on the '372 patent.  The length of a stay is likely to be short given the quick pace of the reexamination proceedings.  However, despite this speed, the reexamination may not be concluded by the time this case reaches its current trial setting.  In that case, the parties would be put in the unenviable position of litigating a patent that has no valid and/or patentable claims.  Clearly, this is not a preferable result.  A stay would preclude this undesireable outcome.

### C.      The Current Stage Of Discovery Favors A Stay

Turning to the third factor considered by this court—whether discovery is complete and whether a trial date has been set—the current stage of litigation also favors a stay. Even if the '372 patent survives reexamination with a valid claim, there is a substantial likelihood that any such claim will include language or elements not present in the currently asserted claims. Thus, staying litigation pending reexamination ensures that the parties will be able to conduct discovery on all relevant issues relating to any claim surviving reexamination. On the other hand, if a stay is denied, there is a substantial risk that *both* parties' continued discovery efforts will be for naught.

Even when there has been "a great deal of activity" in the litigation, the third factor can weigh in favor of a stay if future discovery efforts may prove wasteful and unnecessary. *See Echostar*, 2006 WL 2501494, at *4 (weighing in favor of a stay where *Markman* hearings had already been held and trial was seven months away.); *see also Emhart Indus.*, 3 U.S.P.Q.2d at

1891 (granting a stay where "[t]he Court recognizes that significant, costly discovery [had] already taken place...[but] substantially no trial preparations [had] been carried out -- there [was] no pretrial order in place and no trial schedule [had] been set."). This factor is particularly relevant here because the claims have (a) been wholly rejected and (b) will more likely than not be amended as a result of the reexamination, staying this case and conducting discovery after the PTO takes a position on validity and claim scope would "enable the parties and the court to focus discovery in a way that makes more efficient use of party and court resources as the case proceeds" *Vivid Techs., Inc. v. American Science* & *Eng'g, Inc.,* 997 F. Supp. 93,95 (D. Mass. 1997).

In this case, both parties have begun discovery, however, much discovery still remains. Both parties continue to seek documents from each other and from third parties. No depositions TTI's witnesses, including the purported inventors of the '372 patent, have been conducted. Further, the proposed trial date is  more than nine months away, and no trial preparations have been carried out.  Therefore, a stay could save substantial costs for this court and both parties by avoiding wasteful and unnecessary discovery, as in *Echostar* and *Emhart*.

In its response to EDNA's first motion to stay, TTI complained that EDNA engaged in dilatory tactics and therefore a stay is not appropriate.  EDNA specifically and expressly denies such allegations, but notes that any minor delays in this case pale in comparison to the year and a half delay between TTI's initial contact with EDNA offering a license to the '372 patent and the filing of TTI's complaint.  If TTI was as truly concerned about the impact of EDNA's position in the market place, it could have and should have acted more quickly to address its alleged concerns.  It failed to do so and cannot now attempt to impute its own delay to EDNA.

# VI.  THIS CASE SHOULD BE STAYED IN VIEW OF THE CUSTOMER SUIT EXCEPTION

### 1. The "Customer Suit" Exception is Applicable, and Would Simplify the Issues by Staying Claims as to Resellers

The "customer suit" exception reflects a preference in the law that infringement suits involve the parties directly responsible for bringing accused products to market, such as manufacturers or distributors, instead of their customers, who are only secondarily involved. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Thus, where a patent holder has sued the manufacturer as well as its reseller customers, it is preferable to stay the reseller claims while allowing the claims against manufacturers to proceed first. *See, e.g., Katz*, 909 F.2d at 1464 (affirming stay of proceeding against dealers pending resolution of proceeding against manufacturers); *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (holding that an appeal of a district court's order to stay claims against customers was frivolous).  This practice is premised on "the recognition that, in reality, the manufacturer is the true defendant in the customer suit… [I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Id.* (emphasis added), *quoting Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977).

### a.  *TTI's Claims Against EDNA are Merely Peripheral to The Suit Against EDI*

In the instant matter, case law shows that the resellers are not "true defendants" contemplated under the "customer suit" exception because resellers are downstream in the supply chain from the manufacturers and suppliers, and thus the claims against the resellers, such as EDNA, are peripheral to the allegations of patent infringement for the Suppliers' products.

*See, e.g., Shifferaw v. Emson USA*, 2010 U.S. Dist. LEXIS 25612 at *8 (E.D. Tex. Mar. 18, 2010) (Everingham, J.) (Exh. C) (discussed infra), *citing LG Elec.*, 126 F.Supp. 2d at 422 ("[a] patent infringement claim against a distributor is peripheral to a claim against the manufacturer"); *LG Elec. Inc. v. First Int'l Computer, Inc.*, 138 F.Supp. 2d 574, 585 (D.N.J. 2001) ("[a] patent infringement claim against a reseller is peripheral to a claim against the manufacturer.")

Unlike resellers, "true defendants" to infringement have some upstream control over the accused products, either through designing and manufacturing the accused products, or by otherwise acting as the first link in the commercial chain, i.e. the upstream provider of the products. *See Microsoft Corp. v. Commonwealth Scientific & Industrial Research Org.*, 2007 WL 4376104 at *2, (E.D. Tex. Dec. 2007) (Davis, J.), (the "customer suit" exception prefers infringement suits to be "involving the true defendant in the plaintiff's suit, i.e., the party that controls the product's design, rather than in suits involving secondary parties, i.e. customers"); *see Rhode Gear*, 225 U.S.P.Q. at 1259 (the upstream importer of accused products is not like resellers who are "peripheral" to the infringement). By contrast, where a customer's allegedly infringing conduct consists solely of "the resale of products" purchased from an upstream provider, the claims against these customers are merely peripheral to an infringement suit. *See e.g., Shifferaw*, 2010 U.S. Dist. LEXIS 25612 at *8. Thus, the "customer suit" exception may properly be applied to stay claims against customers who only deal in, or resell, products purchased from others.  See Katz, 909 F.2d at 1464 (affirming application of "customer suit" exception to stay claims against customers who were "dealers in infringing goods of several manufacturers").

The Eastern District of Texas recognized this distinction in *Shifferaw v. Emson USA*, 2010 U.S. Dist. LEXIS 25612 at \*8. In *Shifferaw*, the patent holder instituted suit against both the manufacturer of an accused product as well as its customers, Amazon and Academy. *Id*. at \*2. The defendants moved to sever the claims as to the customers, arguing that, as mere retailers, they were not the true parties in interest. *Id*. The court agreed, noting that the retailers' "only relevant conduct" was in reselling products purchased from the primary parties in interest. *Id*. at \*9-10. On this basis, the court found that the retailers are "only peripherally involved." *Id*.; *see also LG Elec. Inc*., 138 F.Supp. 2d at 585 (holding that the claims against a reseller are peripheral because the reseller's only activity was to resell products purchased from the manufacturer and central distributor).

Here, the EDNA's situation is identical to that of the retailers described in cases like *Shifferaw*. As in those cases, the EDNA is involved in this suit because it has resold products purchased from EDI. Thus, EDNA cannot be a "true defendant" for the EDI's products. Therefore, just as Amazon and its *Shifferaw* co-retailers were found to be only "peripherally involved," so should EDNA be in this case.

**b.**   ***Adjudication Against EDI Will Dispose of the Major Issues Against EDNA as to EDI's Products***

The "customer suit" exception would simplify the issues in this case because adjudication of the claims against EDI will also dispose of the issues involving the same products against EDNA. *See Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed. Cir. 1990).

In *Katz*, the Federal Circuit found that allowing non-customer claims to proceed first would dispose of the issues of patent infringement and validity as to the customers as well. *Id*. The customers in *Katz* were "dealers in infringing goods of several manufacturers." *Id*. The plaintiff had asserted the same patent against these customers as it had against the manufacturers,

for the same products. *Id*. at 1460. Thus, the customers would not be liable for infringement if the manufacturers' products were found not to have infringed, and they would be exonerated if the manufacturers could prove invalidity. *See id*. at 1464; *see also Shifferaw*, 2010 U.S. Dist. LEXIS 25612 at *10 ("[i]f [the manufacturer] is not found liable, then [plaintiff] has no claims against the Retailer Defendants [whose only infringing conduct is selling manufacturer's products]"). The Court held that it did not matter that the customers had not agreed to be bound by the result against manufacturers, nor did it matter that there may be "additional issues" involving only the customers. *Id*. It sufficed for purposes of the "customer suit" exception that the "major issues" of infringement and validity would be resolved. *See id*.

A court may also find that adjudication against manufacturers will dispose of the major issues where the claims alleged against both manufacturers and customers read identically. *See Ultra Products., Inc. v. Best Buy Co*., 2009 U.S. Dist. LEXIS 78678 at *17-18 (D.N.J. 2009) (Exh. C). Although the court in *Ultra* recognized that it was possible for there to be some issues particular to the customers, it nonetheless found that there was substantial identity of the issues through a comparison of the complaints against manufacturers and customers. *Id*. at *17. The court noted that the patent holder had uniformly alleged "that both the manufacturers and their various customers, aid, abet, and otherwise induce the infringement [of plaintiff's patent]," such that "a comparison of the complaint filed [against the customers with that against manufacturers] reveals nearly identical allegations." *Id*. Thus, the court found the issues involving customers to be "very similar, if not identical, to the issues as to the respective manufacturers." *Id*. at *18. Under such circumstances, "it makes sense for the case against the actual manufacturers [of accused products] to proceed first." *Id*.

Applying the "customer suit" exception to stay claims against EDNA would have the same effect as that described in *Katz* and *Ultra*. Just as the patent holders had done in *Katz*, in this case TTI has asserted the same patent against the same products as between the both the EDI and EDNA. *See, e.g.*, Exh. B at ¶10 ("the infringing acts or steps…are performed by EDI or by EDI's customers under the control…of EDI for the benefit of tis customers and its franchisees.") Because the EDNA's only relevant conduct is buying and selling the EDI's products, liability of EDNA is premised on whether the products made or imported by the EDI are found to infringe. Furthermore, just as in *Ultra*, a comparison of the counts alleged against the EDNA to the counts alleged against the EDI shows that they are essentially identical. *Compare, e.g.*, TTI's complaint against EDNA (Dkt. No. 1) ¶7 with TTI's complaint against EDI ¶8 (allegations against EDI and EDNA are substantially identical). Thus, just as in *Ultra*, it "makes sense" to allow the claims against EDI to proceed first or, at a minimum, to allow EDI to "catch up."

Even if staying these claims against EDNA does not absolve it as to products not purchased directly from EDI, the rationale underlying cases such as *Katz* and *Ultra* still applies. The fact that EDI cannot be liable if no infringement is found against EDI remains unchanged. Likewise, the fact that EDNA cannot be liable if the patent is found invalid in the action against EDI also remains unchanged. Neither *Katz* nor *Ultra* expressly predicated their holdings on being able to remove all customers from the case. Rather, the *Katz* and *Ultra* courts emphasized removal of identical issues as the ground for applying the "customer suit" exception. *See Katz,* 909 F.2d at 1464; see Ultra, 2009 U.S. Dist. LEXIS 78678 at *18. Therefore, the exception should also be applied in this case.

### C.    TTI Will Be Neither Prejudiced Nor Tactically Disadvantaged by a Stay

TTI will not be prejudiced or tactically disadvantaged if this Court grants a stay as to the claims against EDNA.

First, TTI may still litigate the same issues if the claims against EDNA are stayed. As discussed above, EDNA IS only peripherally involved in TTI's allegations of infringement. Furthermore, the issues as to non-infringement and invalidity are identical as between the EDI and EDNA with respect to the same products, such that adjudication of claims in favor of the EDI would dispose of these issues against EDNA as well. Indeed, a stay would benefit TTI by eliminating duplicative litigation expenses.

Even if there were issues involving only the EDNA, TTI would not be prejudiced or disadvantaged by having the major issues of infringement and validity resolved first – rather, resolution of these threshold issues will advance adjudication of these latter issues, or alternatively conserve resources by rendering them moot. *See, e.g., Katz*, 909 F.2d at 1464 (affirming a stay of proceedings against dealers of manufacturers' products, "[a]lthough there may be additional issues [involving the dealers' proceeding], their prosecution will be advanced if [manufacturer] is successful…and may well be mooted if he is unsuccessful").

Second, in the unlikely event that TTI recovers at all with respect to its claims, it will be limited to a single recovery, and cannot collect from both EDI and EDNA for the same products. *See Shifferaw*, 2010 U.S. Dist. LEXIS 25612 at *10-11 ("If [manufacturer] is found liable and [plaintiff] collects damages from [manufacturer], then the plaintiff cannot then in turn collect damages from the Reseller Defendants, because [plaintiff] cannot receive a double recovery for the same sales"); *see also Thibodeaux v. Fibreboard Corp.*, 706 F.2d 728, 729 (5th Cir. 1983) ("[A]n injured plaintiff is entitled to only one satisfaction for the full amount of his damages"). Thus, TTI cannot deny that it will suffer no prejudice or disadvantage as a result of a stay.

For these reasons, the Court should stay this case in favor of TTI's co-pending suit against EDI.

## VII.        CONCLUSION

For the foregoing reasons, EDNA requests that the Court stay this litigation pending conclusion of the reexamination of the '372 patent. Further, the Court should stay this litigation in favor of the TTI's co-pending suit against EDI.

September 19, 2011                    Respectfully submitted,


                                     By: /s/   Stephen F. Schlather_____
                                     Stephen F. Schlather – Lead Counsel
                                     Texas Bar No. 24007993
                                     John J. Edmonds
                                     Texas Bar No. 789758
                                     COLLINS, EDMONDS & POGORZELSKI, PLLC
                                     1616 S. Voss Road, Suite 125
                                     Houston, Texas 77057
                                     Telephone: (713) 364-2371
                                     Facsimile: (832) 415-2535
                                     sschlather@cepiplaw.com
                                     jedmonds@cepiplaw.com


                                     ATTORNEYS FOR DEFENDANT,

                                     EXTENDED DISC NORTH AMERICA, INC.



## CERTIFICATE OF CONFERENCE

The undersigned certifies pursuant to LR 7.1 that he has conferred in good faith with counsel for Plaintiff by phone, and that counsel cannot agree about the disposition of this motion.

September 19, 2011                         /s/ Stephen Schlather_
                                          Stephen Schlather

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

September 19, 2011                                    /s/ Stephen Schlather
                                                     Stephen Schlather