Page 1

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
ULTRA PRODUCTS, INC., Plaintiff,
v.
BEST BUY CO., INC., et al., Defendants.

Civil Action No. 09-1095 (MLC).
Sept. 1, 2009.

West KeySummary**Patents 291** 🔑**314(1)**

291 Patents
    291XII Infringement
        291XII(B) Actions
            291k314 Hearing
                291k314(1) k. In general. Most Cited Cases

     Staying a patent assignee's suit against retail sellers of power supplies was appropriate in light of prior infringement actions against power supply manufacturers and resellers. The assignee claimed infringement when the supplies were installed in computer cases. It alleged that the retailers induced infringement through advertisements and web sites indicating the infringing installation of the power supplies in the computer case. The threshold questions of patent validity, enforceability, and construction would be addressed in the prior action. The resolution of those issues could have a major and even dispositive effect on the action against the retailers. The first-filed rule and the reasoning of its customer suit exception supported granting a stay. 35 U.S.C.A. § 271(b).

David Joyal, Michael A. Nicodema, Greenberg Traurig, LLP, Florham Park, NJ, for Plaintiff.

Peter Robert Bray, Bray, Chiocca & Miller, LLC, Parsippany, NJ, Frank L. Politano, Christopher A. Barbarisi, K&L Gates LLP, Newark, NJ, for Defendants.

**MEMORANDUM OPINION**

COOPER, District Judge.

**\*1** Defendants Best Buy Co. Inc. ("Best Buy"), Fry's Electronics, Inc. ("Fry's"), Micro Electronics, Inc., and Staples, Inc. (collectively "Group Defendants") move, and Defendant CDW Corporation ("CDW") separately moves, to stay the action. For the following reasons, issued without oral argument pursuant to Federal Rule of Civil Procedure 78, the Court will grant the motion and separate motion. This action will be stayed pending the resolution of *Ultra Products, Inc. v. Antec, Inc., et al,* M.D. Fla. No. 08-503.

**BACKGROUND**

     This patent infringement action was brought on March 9, 2009, by Plaintiff, Ultra Products, Inc. ("Ultra"). Ultra alleges that (1) it owns by assignment United States Patent No. 7,133,293 ("'293 Patent"), (2) the claims in the ' 293 Patent "require the combination of a modular power supply having certain features with a personal computer case", and (3) "[d]irect infringement of these claims occurs when the power supply is installed in the computer case." (Dkt. entry no. 1, Compl. at ¶ 11; dkt. entry no. 31, Ultra's Br. in Opp'n to Group Defs. Mot. to Stay ("Ultra's Group Defs. Br."), at 5; dkt. entry no. 46, Ultra's Br. in Opp'n to CDW's Mot. to Stay ("Ultra's CDW Br."), at 4.)

     The Group Defendants and CDW, which are retailers, purchase and resell power supplies from one or more suppliers. Ultra alleges that (1) each Defendant "makes, uses, sells, offers to sell, and/or imports power supplies within this judicial district and elsewhere with knowledge of Ultra's rights under the ' 293 patent, and knowingly and with specific intent actively aids and abets and otherwise induces others to utilize its power supplies in a manner that infringes claims of the '293 patent", and (2) these Defendants, their suppliers, and their distrib-

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**

utors have, upon information and belief, "been on notice of the existence of the '293 patent since at least about November, 2006," thereby rendering their continuing infringement "willful and deliberate." (Compl. at ¶¶ 14-27.) It seeks injunctive relief, compensatory and enhanced damages, and an award of fees. (*Id.* at 7-8.)[FN1]

> FN1. There is a dispute over whether the proper Best Buy entity is named. The pleading names "Best Buy Co., Inc." (Compl. at ¶ 2), but an answer was filed by "Best Buy Stores, L.P." (*see* dkt. entry no. 21, Best Buy Answer.) According to a declaration by Lisa Beth Lentini, Corporate Counsel for Best Buy Enterprise Services, Inc., (1) "Best Buy Stores, L.P. is a wholly owned, indirect subsidiary of Best Buy Co., Inc.", and (2) Best Buy Stores, L.P., manages and operates physical retail stores located in the United States and Best Buy Co., Inc., does not purchase or resell the products at issue. (Dkt. entry no. 29-10, Lentini Decl. at ¶¶ 3-5.) In its brief opposing a stay, Ultra notes that (1) Lentini's declaration does not address whether Best Buy Co., Inc., sells products through the World Wide Web, and (2) it intends to seek leave to amend the complaint to add Best Buy Stores L.P., and other defendants. (Ultra's Group Defs. Br. at 1 n. 1.) We need not resolve this dispute in order to rule on the pending stay motions. In fact, Best Buy Co., Inc., agrees to be bound by the decisions in the Florida litigation. (Lentini Decl., at ¶ 6.)

Defendants were served and answered the complaint. (Dkt. entry nos. 17, 18, 21, 26, 27.) The initial conference before the Magistrate Judge has been put on hold pending our ruling, and thus no discovery has occurred and no trial date has been set.

This action is not the only, or even the first, patent case filed by Ultra. It initially filed suit on April 4, 2008, in the United States District Court for the Middle District of Florida against 22 power supply manufacturers ("Manufacturers Case") (M.D.Fla. No. 08-503, Compl.). The complaint in the Manufacturers Case alleges that each defendant "actively aids and abets and otherwise induces others to utilize its power supplies in a manner that infringes claims of the '293 patent." (*Id.* at ¶¶ 37-82.) It appears that the claims against a number of defendants have been dismissed and that the others formed a defense alliance. (Dkt. entry no. 29-12, Br. in Supp. of Mot. to Stay Litig. as to Group Defs. ("Group Defs. Br."), at 3-4.) The defendants therein have moved to dismiss for lack of jurisdiction or to transfer venue to the Northern District of California. (*Id.* at 4.)

**\*2** Ultra also brought in 2008 two additional "induced" patent infringement actions in the Middle District of Florida (M.D.Fla.Nos.08-1500, 08-1854). It appears that Ultra named, among others, two resellers as defendants, and a motion to stay the proceeding was filed by these resellers (Group Defs. Br., at 4-5; Ultra's Group Defs. Br., at 1 n. 2.) Both actions were consolidated with the Manufacturers Case. (*Id.*)[FN2]

> FN2. In addition to the actions i District of Florida and this Court, proceeding before the International entry no. 32-1, Mem. of Law in Supp ("CDW's Br."), at 2 n. 1.)

The Group Defendants here moved to stay the litigation on June 12, 2009. (Dkt. entry no. 29, Notice of Mot. for Stay of Litig. as to Group Defendants; Group Defs. Br.; *see* dkt. entry nos. 29-1 through 29-11.) Ultra opposes the Group Defendants' motion. (Ultra's Group Defs. Br.; *see* dkt. entry nos. 31-1 through 31-9, 36.) The Group Defendants filed a reply brief in further support, and submitted a declaration with a "Request for Judicial Notice." (Docket entry no. 42, Reply Br. in Supp. of Mot. to Stay Litig. as to Group Defs. ("Group Defs. Reply Br."); dkt. entry no. 44, Resp. in Supp. of Group Defs. Mot. to Stay; dkt. entry no. 45, Decl. of Betty Kuo ("Kuo Decl.").).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

CDW separately moved on June 22, 2009, to stay this action pending resolution of the Manufacturers Case. (Dkt. entry no. 32, Not. of Mot. to Stay Matter as to CDW.; CDW's Br.) Ultra opposed it (Ultra's CDW Br.; dkt entry nos. 46-1, 46-2, 46-3). CDW replied. (Dkt. entry no. 51, Reply Mem. of Law in Supp. of CDW's Mot. to Stay ("CDW's Reply Br.").)

## DISCUSSION

This Court possesses the discretion to stay a proceeding. The power to do so " 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' " *Cheyney State Coll. Faculty v. Hufstedler,* 703 F.2d 732, 737 (3d Cir.1983) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). A district court generally considers:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set.

*Honeywell Int'l v. Audiovox Comms. Corp.,* Nos. 04-1337, 04-1338, & 04-1536, 2005 WL 2465898, at *2 (D.Del. May 18, 2005).

The "general rule favors the forum of the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993), *overruled on other grounds, Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *see also, e.g., Kahn v. GM Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989); *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir.1977). But this general preference for the first-filed action is not absolute, and should be applied with a degree of flexibility and common sense. *See, e.g., Genentech,* 998 F.2d at 937-38 (noting district court must exercise discretion and that Supreme Court has warned against mechanical application); *Codex,* 553 F.2d at 737 ("While the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound.").

**\*3** There is a "customer suit exception," which provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990); *see also, e.g., Kahn,* 889 F.2d at 1081-82; *Codex,* 553 F.2d at 737-40. This principle favoring a suit involving the manufacturer over one against a customer or reseller is premised on an understanding of who actually represents the real party in interest:

"At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit .... It is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products."

*Katz,* 909 F.2d at 1464 (quoting *Codex,* 553 F.2d at 737-38 (citations omitted)); *see also, e.g., Kahn,* 889 F.2d at 1081 ("customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse" (citing *Codex,* 553 F.2d at 737-38)). Nevertheless, district courts must still exercise their discretion in deciding whether to apply this specific exception to the particular circumstances confronting them. *See, e.g., Kahn,* 889 F.2d at 1082 (stating stay must be determined based on consideration of judicial and litigant economy as well as litigants' entitlement to having claims resolved); *Mitutoyo Corp. v. Cent. Purchasing,* No. 03-990, 2003 WL 21031963, at *4 (N.D.Ill. May 8, 2003) (emphasizing court's possession of discretion over whether to apply customer suit exception).

In *Kahn,* the Federal Circuit reversed the grant

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

of a stay of an infringement action against an alleged "customer," General Motors, in favor of a declaratory judgment action subsequently brought by the alleged "manufacturer" of the "technology," Motorola. *Id.* at 1078-83. The *Kahn* court observed that the "manufacturer" could not be considered the "real defendant" because:

> The district court held that General Motors was simply a customer of Motorola, and that the customer suit exception applies. However, in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve *all charges* against the customers in the stayed suit. Such undertaking is absent in the case at bar. Were [the patent infringement plaintiff] to prevail against Motorola on the issues raised in [the declaratory judgment action] in Illinois, he would still have to relitigate the question of infringement against General Motors, and perhaps also of validity. And, as we have remarked, the Illinois action can not dispose of the tortious conduct claims against General Motors.

**\*4** *Id.* at 1081 (emphasis added). General Motors itself could not be considered a "mere" or "simple" customer for infringement purposes, especially where the "manufacturer" actually did not make the allegedly infringing products (AM stereo receivers) and the plaintiff agreed that Motorola's "technology" did not infringe the patent. *Id.* at 1081-82. Thus, "[t]here may be situations, due to the prospects of recovery of damages or other reasons, in which the patentee has a *special interest* in proceeding against a customer himself, rather than solely as a *shadow* of the manufacturer." Codex, 553 F.2d at 738 n. 6 (emphasis added).

It appears that the Federal Circuit then clarified the language used in *Kahn,* which could be read to limit the scope of the customer suit exception to instances where the manufacturer's suit necessarily resolves every issue regarding the customer's own liability for infringement. The Federal Circuit in *Katz* observed that:

> However, Lear Siegler/Smith & Wesson [the manufacturer] have represented to the Massachusetts court [the forum for the manufacturer lawsuit] that resolution of the major issues before that court, including patent infringement, patent validity, and Mr. Katz's [the patent holder] capacity to sue, will resolve those issues as to their customers. The Massachusetts court's injunction against prosecution of the Batavia [customer] action, on this basis, was within the court's discretionary authority. Although there may be *additional issues* involving the defendants in the Batavia action, their prosecution will be advanced if Mr. Katz is successful on the major premises being litigated in Massachusetts, and may well be mooted if he is unsuccessful.

*Id.* at 1464 (emphasis added).

Both the first-filed rule and the customer suit exception appear to mandate a stay here. As the moving parties note (Group Defs. Br., at 12; CDW's Br., at 7), the case against the power supply manufacturers was brought first. Ultra filed its complaint in the Middle District of Florida on April 4, 2008. The current action was not brought until March 9, 2009, almost an entire year later. In the current action, Ultra asserts patent claims against several entities that purchase power supply products for resale to the public. While the consumer suit "exception" to the first-filed rule evidently does not apply because the Manufacturers Case was in fact filed first, the reasoning underlying the exception supports giving this earlier litigation priority over the current action.

Ultra argues that this reasoning does not apply here because of the nature of its infringement claims. As opposed to claiming direct infringement, it alleges that the various defendants in the Manufacturers Case as well as the current action aided, abetted, and otherwise induced others to commit infringement (Ultra's Group Defs. Br. at 4-7; Ultra's CDW Br. at 3-8). *See, e.g.,* 35 U.S.C. § 271(b) (stating "[w]hoever actively induces infringement of a patent shall be liable as an infringer.") Ultra as-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**

serts that (1) "[d]irect infringement of [the claims in the '293 Patent] occurs when the power supply is installed in the computer case", and (2) the inducement claims at issue here are separate and distinct from the manufacturer claims at issue in the Florida litigation, and the resolution of the manufacturer claims therefore will not dispose of the alleged liability of the Group Defendants and CDW for inducing infringement. (Ultra's Group Defs. Br. at 4-7; Ultra's CDW Br. at 3-8.) It contends that, far from merely reselling the power supplies to the ultimate end users with instructions previously provided by the manufacturers, the Group Defendants and CDW induced these end users to infringe the '293 Patent through advertisements and Web sites indicating the infringing installation of the power supplies in the computer case. (Ultra's Group Defs. Br., at 5-7; Ultra's CDW Br., at 4-5.) FN3

> FN3. Ultra also contends in passing that "Best Buy Co., Inc.'s wholly-owned subsidiary, Geek Squad, appears to have directly infringed the '293 patent by, on information and belief, installing modular power supplies within the cases of personal computers within this judicial district." (Ultra's Group Defs. Br. at 9 n. 6; *see also id.* at 2 n. 3.) Indicating its intention to amend the complaint to add Geek Squad, Inc., as a defendant, Ultra asserts that its complaint already alleges both direct and indirect infringement claims. (*Id.* at 1 n. 1, 9 n. 6.) Even assuming arguendo that its interpretation of the pleading is correct, we find that a stay of the current matter is still appropriate, especially given the fact that Geek Squad, Inc. is not yet a party to this multi-party litigation.

**\*5** We acknowledge that the nature of the infringement claims distinguish the current circumstances from the more typical direct infringement claims. As noted by the United States District Court for the Northern District of California, the reasoning underlying the exception appears inapplicable, or at least less persuasive, "where the patent owner seeks to hold the manufacturer liable solely on a theory of inducement/contributory infringement, claiming direct infringement only against the customer." *Am. Acad. of Sci. v. Novell, Inc.,* No. 91-4300, 1992 WL 313101, at \*3 (N.D. Cal. Jul 9, 1992) (citing *Kahn,* 889 F.2d at 1082; *A.P.T., Inc. v. Quad Envtl. Techs. Corp.,* 698 F.Supp. 718, 722 (N.D.Ill.1988)). In this case ( *"AAS"* ), the California district court refused to stay the direct infringement claims against the customer pending the resolution of the declaratory relief action subsequently brought by the manufacturer, which was allegedly liable only for actively inducing its customers to infringe the patent. *Id.* at \*1-\*3. The court explained that the manufacturer's declaratory judgment action would have little, if any, effect on the issues to be addressed in the customer's case. *Id.* at \*3. It noted, for instance, that the patent holder claimed that about half of the customer's infringing systems had nothing to do with the manufacturer's products. *Id.* at \*3 & n. 3. The *AAS* court explained that:

> judicial economy would not be served by staying the claims against BOA [the customer] while Novell [the manufacturer] proceeds with its declaratory action in Utah. It may well be that the case against BOA will cease to exist should Novell prevail on its claims of patent invalidity or unenforceability. However, should the '989 patent be found valid and enforceable, even if Novell prevails on the issue of *its* noninfringement, there are other issues that will need to be resolved in the action against BOA.

*Id.* at \*3; *see, e.g., In re Laughlin Prods., Inc.,* 265 F.Supp.2d 525, 537 (E.D.Pa.2003) ("However, where the patentee alleges that the customers themselves directly infringed the method or process disclosed in the patent, the customer suit exception does not apply." (citations omitted)); *Mitutoyo,* 2003 WL 21031963, at \*3 (citing *AAS* and identifying as a "typical situation in which separate issues concern the customer that will not be resolved by the second [manufacturer's] suit" instances where

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**

"the customer is charged with direct infringement while the manufacturer is only charged with contributory infringement or inducement"); A.P.T., 698 F.Supp. at 722 (observing plaintiff had separate interest in bringing suit against customers where patent at issue covered process because customers themselves are alleged direct infringers and manufacturer could be liable only under theories of contributory infringement or active inducement).

Nevertheless, the principles underlying the customer suit exception still apply here. As the Federal Circuit noted in *Katz* and the *AAS* court evidently recognized, the manufacturer's case need only promise to resolve the "major issues" concerning the claims against the customer, and not every conceivable issue. Katz, 909 F.2d at 1464; AAS, 1992 WL 313101, at *2-*3. As the moving parties emphasize (Group Defs. Br., at 13-14; CDW's Br., at 6), it appears that the threshold questions of patent validity, enforceability, and construction will be addressed in Florida. The resolution of such issues could have a major and even dispositive effect on the action currently before this Court. If, for instance, Ultra's '293 Patent is ruled invalid, this entire case evidently becomes moot. *See, e.g.,* Katz, 909 F.2d at 1464 (observing that additional issues involving customers "may well be mooted" if patent holder is unsuccessful in litigation against manufacturer).

**\*6** The *AAS* district court refused to grant a stay even though the case against the customer "will cease to exist should [the manufacturer] prevail on its claims of patent invalidity or unenforceability." AAS, 1992 WL 313101, at *3. But we are not confronted with a patent holder who is suing the customer for direct infringement and the manufacturer for mere inducement. Instead, Ultra alleges that both the manufacturers and their various customers aid, abet, and otherwise induce the infringement of its '293 Patent. In fact, a comparison of the complaint filed here with the pleading in the Manufacturers Case reveals nearly identical allegations. ( *Compare* Compl. *with* Manufacturers Case Compl.)

Although the claims against the Group Defendants and CDW may raise some additional issues regarding the specific acts of inducement they allegedly committed, such issues nevertheless appear very similar, if not identical, to the issues as to the respective manufacturers' liability for inducement. Here, it makes sense for the case against the actual manufacturers of the power supplies at issue to proceed first. The Florida litigation should clarify and possibly simplify the issues in this current matter. *See, e.g.,* Honeywell Int'l, 106 Ohio St.3d 385, 835 N.E.2d 372, 2005 WL 2465896, at *2. Furthermore, a temporary stay of the current action will not prejudice Ultra, especially given that no trial date has been set, no discovery has occurred, and the initial conference before the Magistrate Judge was put on hold pending our ruling as to a stay. *See, e.g., id.* Ultra will be free to pursue the Florida litigation and perhaps receive a full recovery for any alleged injuries. *See, e.g., id.*

We also emphasize that, unlike in *AAS,* the patent holder here actually chose to sue the manufacturers first. Accordingly, this is not a case where a party seeking a stay or similar relief is attempting to overcome the first-filed rule by invoking the customer suit "exception." Ultra does not address the consequences of its filing the Manufacturers Case almost a year before initiating the current customer litigation. It confusingly asserts that "[t]he fact that manufacturers are named in a first-filed suit does not mandate a stay of a second, retailer suit." (Ultra's Group Defs. Br., at 3; *see* Ultra's CDW Br., at 3.) But the case cited by Ultra-Kearns v. Wood Motors, 204 U.S.P.Q. 485 (E.D.Mich.1978)-does not appear to support its characterization. The *Kearns* court, while noting that the first-filed rule had been modified and criticized over the years, ultimately gave priority to the initial customer suit over the manufacturer's subsequent declaratory judgment action. *See* Kearns, 204 U.S.P.Q. at 492-93 & n. 11. As discussed *supra,* the first-filed rule is not absolute and is subject to, for instance, the customer suit exception itself. Ultra evidently overlooks the fact that both this rule as well as the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**

rule's own exception support giving priority to the Manufacturers Case.

***7** Other considerations also support a stay. Ultra argues that we should deny a stay because: (1) the mere fact that the manufacturers agreed to indemnify certain of the Group Defendants and that the Group Defendants agreed to be bound by the Florida district court's rulings does not automatically mandate a stay; (2) CDW's failure to agree to be bound by the Manufacturers Case rulings and the apparent lack of any indemnification arrangement with its suppliers creates a risk of prejudice to Ultra; and (3) one of the Group Defendants has a supplier who was not named as a defendant in the Manufacturers Case. (Ultra's Group Defs. Br., at 7-10; Ultra's CDW Br., at 8-9.) However, none of these counter-arguments cast doubt on the appropriateness of a stay here.

Initially, the existence of an agreement by the manufacturer to indemnify the customer and whether the customer in turn agrees to be bound by the rulings and results in the manufacturer's case constitute important, but not dispositive, factors in the stay analysis. *See, e.g., Katz,* 909 F.2d at 1464; *Kahn,* 889 F.2d at 1082. While minimizing the indemnification agreements and the willingness of the Group Defendants to be bound (Ultra's Group Defs. Br., at 7-9), Ultra contends that it would suffer prejudice from a stay because CDW does not agree to be bound by the Florida litigation (Ultra's CDW Br., at 8-9). But Ultra cannot have it both ways. As CDW argues in its reply brief (CDW's Reply Br., at 4-5), the Federal Circuit in *Katz* expressly rejected the theory that the district court committed reversible error by enjoining a first-filed customer suit merely because the customers did not agree to be bound by the result in the manufacturer's case. *Katz,* 909 F.2d at 1464. Accordingly, the Group Defendants' indemnification arrangements and agreements to be bound support, but in no way require, the entry of a stay. Also, the evident lack of an indemnification relationship between CDW and its manufacturers and the apparent absence of any agreement on CDW's part to be bound by the results in the Manufacturers Case may weigh against a stay, but we still must take into account all of the other considerations favoring a stay.

Fry's-one of the Group Defendants-does evidently obtain its power supplies from Fudin Computer Supplies Inc. ("FCS"), which in turn gets them from the ultimate manufacturer, Andyson International Co. Ltd. ("Andyson"). (Group Defs. Reply Br. at 4-5; Kuo Decl. at ¶¶ 2-3.) It appears that neither FCS nor Andyson have been named as a defendant in any judicial forum by Ultra. Such a fact weighs against a stay and calls into question the applicability of the customer suit exception, at least as to Fry's itself. *See, e.g ., Cherdak v. Sride-Rite Corp.,* 396 F.Supp.2d 602, 605 (D.Md.2005) (denying stay where putative customer purchased accused products from non-party manufacturers). However, as with CDW, we must not overlook the fact that we are concerned here with only a single customer in the context of multiple legal proceedings involving many different manufacturer and customer Defendants. The Group Defendants also point out that Ultra is currently in licensing negotiations with Andyson itself. (Group Defs.' Reply Br. at 4-5; Kuo Decl. at ¶ 3.) It therefore does not appear appropriate to deny a stay motion based simply on the failure of the patent holder to sue a particular manufacturer where the patentee is negotiating a licensing agreement that would resolve the outstanding infringement issues. Accordingly, we conclude that a stay is appropriate.

### CONCLUSION

***8** The Court will exercise its discretion to grant the motion and separate motion for a stay. This action will be stayed pending the resolution of the Manufacturers Case in the Middle District of Florida. The Court will issue an appropriate order.

D.N.J.,2009.
Ultra Products, Inc. v. Best Buy Co., Inc.
Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 2843888 (D.N.J.)
**(Cite as: 2009 WL 2843888 (D.N.J.))**


END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.