PTO/SB/58 (02-09)
Approved for use through 02/28/2013. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *INTER PARTES* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Inter Partes* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA  22313-1450**

**Attorney Docket No.:** ESP.1555.REEX

**Date:** 6 June 2011

1. [X] This is a request for *inter parte*s reexamination pursuant to 37 CFR 1.913 of patent number ___7,249,372___
   issued __July 24, 2007__. The request is made by a third party requester, identified herein below.

2. [X] a. The name and address of the person requesting reexamination is:

   Extended DISC North America, Inc.

   4840 W. Panther Creek Dr., Suite 203

   The Woodlands, TX 77381

   b. The real party in interest (37 CFR 1.915(b)(8)) is: Extended DISC North America, Inc.

3. [ ] a. A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(2);

   [ ] b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(2)
        to Deposit Account No. _____ ; **or**

   [X] c. Payment by credit card.  Form PTO-2038 is attached.

4. [X] Any refund should be made by [ ] check or [X] credit to Deposit Account No. 50-5215
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [X] A copy of the patent to be reexamined having a double column format on one side of a separate paper is
   enclosed.  37 CFR 1.915(b)(5)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**
      ii. [ ] paper
   c. [ ] Statements verifying identity of above copies

8. [ ] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [X] Reexamination of claim(s) __1-11__ is requested.

10. [X] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.915. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS  ADDRESS. **SEND TO: Mail Stop *Inter Partes* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/58 (02-09)
Approved for use through 02/28/2013.  OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☒ The attached detailed request includes at least the following items:

    a.  A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.915(b)(3)
    b.  An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested.  37 CFR 1.915(b)(1) & (3).

13. ☒ It is certified that the estoppel provisions of 37 CFR 1.907 do not prohibit this reexamination.  37 CFR 1.915(b)(7)

14. ☒ a.  It is certified that a copy of this request has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
The name and address of the party served and the date of service are:

Target Training International

17785 N. Pacesetter Way

Scottsdale, AZ 85255 USA

Date of Service: _____; **or**

☐ b.  A duplicate copy is enclosed because service on patent owner was not possible.  An explanation of the efforts made to serve patent owner **is attached**.  See MPEP 2620.

15.  Third Party Requester Correspondence Address: Direct all communications about the reexamination to:

☒ The address associated with Customer Number: **93582**

**OR**

☐ Firm or Individual Name _____

Address

| City | State | Zip |
|---|---|---|

Country

| Telephone | Email |
|---|---|

16. ☒ The patent is currently the subject of the following concurrent proceeding(s):
    ☐ a.  Copending reissue Application No. _____
    ☒ b.  Copending reexamination Control No. 90/011,434
    ☐ c.  Copending Interference No. _____
    ☒ d.  Copending litigation styled:
    Target Training Intl. Ltd. v. Extended DISC North America, Inc.
    Civil Action No. 4:10-CV-03350 Southern District of Texas

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| /gcz44004/ | 2011-06-06 |
|---|---|
| Authorized Signature | Date |
| Geza C. Ziegler, Jr. | 44,004 |
| Typed/Printed Name | Registration No., if applicable |

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(s):         Bill J. Bonnstetter

PATENT NO.:           7,249,372

ISSUE DATE:           24 July 2007

ORIGINAL             Aravind K. Moorthy
EXAMINER:

TITLE:                NETWORK BASED DOCUMENT DISTRIBUTION METHOD

ATTORNEY
DOCKET NO.:           ESP.1555.REEX

Mail Stop *Inter Partes* Reexam
Commissioner of Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**BRIEF DETAILING REQUEST FOR REEXAMINATION**

*Inter partes* reexamination of all claims 1-11 of U.S. Patent No. 7,249,372 ("the '372 Patent), which issued on July 24, 2007, to Bonnstetter, *et al.*, is hereby requested.

Accompanying this Request are (1) a transmittal form (PTO/SB/58), (2) an Information Disclosure Statement (form PTO/SB/08a) listing every printed publication relied upon to raise a substantial new question of patentability, (3) a copy of the patent for which reexamination is requested, (4) copies of the prior art relied upon in this Request, (5) a power of attorney executed by the third party requester, (6) a certification by the attorney that a copy of the request has been served in its entirety on the patent owner.

Also attached to this request are the following appendices:  Appendices A-D are claim charts for the rejections proposed in this Request.

Payment of the $8,800 *inter partes* reexamination request fee under 37 C.F.R. §1.20(c)(2) is submitted herewith.  The Commissioner is hereby authorized to charge any additional fees or credit any overpayment to Deposit Account No. 50-5215.

i

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                    ESP.1555

## TABLE OF CONTENTS

                                                                           **Page**

**I.**     Introduction..................................................... 2

**II.**    Disclosure of Related Proceedings.......................................3

**III.**   Identification of Real Party in Interest................................ 3

**IV.**   Statement of Non-Estoppel.............................................. 3

**V.**    Summary of Patent, Original Prosecution History ................... 4
          **A.**     Summary of Patent............................................... 4
          **B.**     Summary of Original Prosecution History.................... 5

**VI.**   Eligibility for *Inter Partes* Reexamination............................ 6

**VII.**  Identification of Claims for Which Reexamination is Requested... 6

**VIII.** Statements Pointing Out Substantial New Questions of
       Patentability.................................................................. 7

**IX.**   Proposed Rejections to which the Substantial New Questions
       of Patentability are Directed.............................................13

**X.**    Detailed Description of Manner and Pertinence of Applying
       the Cited Art...............................................................13

**XI.**   Conclusion................................................................16

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                    ESP.1555

## I.    INTRODUCTION

*Inter partes* reexamination of all claims 1-11 of the '372 Patent is requested.  The '372 Patent claims a method for managing distribution of assessment documents over a wide area, a system for managing assessments, and a method of evaluation of assessments of person, jobs or employees. The claims require an assessment instrument, a password, a set of permissions relative to the password based on a level of rights for an entity, a website, responses to the assessment instrument and an assessment report. The claims also require a central server and software that provides permissions.

This Request raises five substantial new questions of patentability ("SNQPs") and proposes corresponding rejections of all claims. A SNQP and rejection arises under 35 USC §102 and is based on US Patent No. 6,112,049 ("Sonnenfeld"), issued on August 29, 2000. Another SNQP and rejection arises under 35 USC §103 and is based on Sonnenfeld. A third SNQP and rejection arises under 35 USC §102 and is based on US 6,873,964 to Williams. A fourth SNQP and rejection arises under 35 USC §103 and is based on US 5,565,316 to Kershaw. A fifth SNQP arises under 35 USC §103 and is based on US 6,119,097 to Ibarra in view of US 6,292,904 to Broomhall.

The '372 Patent issued because the original Examiner believed the prior art did not teach initializing permissions relative to the password based on the level of rights for the entity, that the permissions included at least one respondent password having permissions based on the level of rights for a respondent or sending the assessment report to one or more locations authorized by the permissions. One or more of Sonnenfeld, Williams and Kershaw, as well as the combination of Ibarra and Broomhall, address the alleged deficiency in the prior art. The Office has never before considered any one of Sonnenfeld, Williams, Kershaw, Ibarra and Broomhall, either individually or in combination.

The Requester respectfully submits that this Request raises patentability questions that are both new and substantial and urges that *inter partes* reexamination of the '372 Patent should be ordered and that, in due course, the Office should cancel all claims of the '372 Patent.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                                              ESP.1555

## II.     DISCLOSURE OF RELATED PROCEEDINGS

The '372 Patent is the subject of one *ex parte* reexamination and at least one known litigation:

- *Ex parte* Reexamination Control No. 90/011,434, filed by Extended DISC International, Ltd. on April 4, 2011. *Ex parte* reexamination was granted by an order dated April 25, 2011.

- *Target Training International, Ltd. v. Extended DISC North America, Inc.*, Civil Action No. 4:10-CV-03350, at the United States District Court for the Southern District of Texas, filed on October 12, 2010, in which the real party in interest is a defendant.

## III.    IDENTIFICATION OF REAL PARTY IN INTEREST

The real party in interest is Extended DISC North America, Inc., the named defendant in the above-referenced litigation.

## IV.     STATEMENT OF NON-ESTOPPEL

The Requester is not subject to the estoppel provisions of 35 U.S.C. §315 or §317 or any other controlling law. In fact, the '372 Patent has never been the subject of a judgment in litigation, nor has the '372 Patent ever before been the subject of an *inter partes* reexamination.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                               ESP.1555

## V.   SUMMARY OF PATENT, ORIGINAL PROSECUTION HISTORY, AND RELATED REEXAMINATION PROCEEDINGS

### A.   Summary of Patent

The '372 Patent was filed on January 12, 2001, as US Application Serial No. 09/760,145, and claims priority to US Provisional Application Serial No. 60/176,420, filed on January 14, 2000.

A known method exists whereby employee evaluation firms sell, license, or otherwise market employee evaluation forms and employee evaluation systems to other businesses. In the usual manner, the forms are sold to businesses that utilize the forms to evaluate their employees. Forms are usually delivered to the business on printed paper. The employee evaluation firms may also process and analyze the completed forms for the various businesses that use them. (Col. 1, lines 26-37, "Background of the Invention.")

The '372 Patent discloses a method for the distribution of assessment documents that includes the step of displaying the documents on a web site for an "entity" to access. (Col. 2, lines 24-25). The "assessment documents" are reports that can be used to "gauge an existing employees aptitude for a present job or for a different job", or "for an existing employee to evaluate a boss" or "one that is designed to evaluate a potential employee's suitability for a particular job." (Col. 4, lines 32-41). Examples of the type of "surveys or reports" and how the reports can be processed are found in U.S. Patent No. 5,551,880. (Col. 4, lines 37-41).

An employee evaluation firm's web server has employee evaluation questions and surveys on the web server. (Col. 3, lines 10-12). Various entities are able to access the web server and perform different functions on the web server. (Col. 3, lines 15-16). The functions that each one of these entities can perform on the web server is limited through password access to the web server. (Col. 3, lines 18-20).

The '372 Patent discloses that each entity is assigned a password with a level of rights. Permissions are associated with and initialized based on the level of rights of the entity. The functions that an individual who logs onto the web server can perform are controlled by the user name and password. (Col. 3, lines 55-58).

After logging in, the respondent can complete a "survey". (Col. 9, lines 11-12). The responses to the survey or assessments are accepted on the web site. (Col. 9, lines 2-4) After

the responses have been accepted, they are processed into a report and the report is returned to an interested party. (Col. 9, lines 20-24).

Independent claim 1 is directed to the method of managing the distribution of assessment documents; claim 6 is directed to the system for managing the assessments; and claim 11 is directed to a method of evaluation or assessment of persons, jobs, or employees.

Requester contends that many of the terms used in the claims of the '372 patent are indefinite. However, for purposes of its arguments and analysis herein, Requester assumes *arguendo* that such terms have some meaning, even though that meaning is subject to different, if any, reasonable interpretations, including because such terms are not found in the specification and/or have no ordinary meaning in the art.

**B.      Summary of Original Prosecution History**

Overall, the prosecution history reveals that the reason for the allowance of the '372 Patent was that the Office did not believe the prior art of record taught initializing permissions based in the level of rights for a respondent and sending the assessment report to one or more locations authorized by the permissions.

In the Notice of Allowance of the '372 Patent, mailed March 21, 2007, the Examiner identifies WO 00/55792 ("Howard") as the closest prior art. Claims 28 and 31-40 (now patented claims 1-11) were allowed. In the statement of Allowable Subject Matter in the Notice of Allowance, on page 3, second paragraph, the Examiner states that the "Howard reference differs from the current application in several aspects." In particular, the Examiner states that:

1)      "Howard does not disclose **initializing permissions relative to the password based on the level of rights for the entity.**"

2)      Howard does not disclose **the permissions including at least one respondent password having permissions based on the level of rights for a respondent.**"

3)      "Howard does not disclose **sending the assessment report to one or more locations authorized by the permissions.**"

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                    ESP.1555

4)    "This disclosure teaches being able to send an assessment report to one or more locations, but **it does not disclose that this is authorized by the permissions set by the password.**"

(Notice of Allowance, page 3, line 15 to page 4, line 5, emphasis added).

In the Office Action mailed October 19, 2006, claims 28 and 31-40 were, for the first time, indicated as being allowable. Claims 1-27, 29 and 30 were rejected. Claims 1-27, 29 and 30 were subsequently cancelled. The reason for the allowable subject matter was that "as to independent claims 28, 35 and 40 prior art does not disclose, teach or suggest **a password having a set of permissions correlated to a respondent for an assessment survey** which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance, with regards to a particular job, or an individual boss's performance with respect to a particular job." (page 11, numbered paragraph 13 of Office Action mailed October 19, 2006, emphasis added.)

## VI.    ELIGIBILITY FOR *INTER PARTES* REEXAMINATION

The '372 Patent issued from a patent application filed on January 12, 2001, which claims priority to a provisional patent application filed on January 14, 2000. The '372 Patent is therefore eligible for *inter partes* reexamination.

## VII.    IDENTIFICATION OF CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

Reexamination of all of claims 1-11 is requested.

## VIII.  STATEMENTS POINTING OUT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

This request raises two substantial new questions of patentability under 35 USC §102 and three substantial new questions of patentability under 35 USC §103.

### A.    Listing of Substantial New Questions of Patentability

1.    **SNQP 1:**  Whether Claims 1-7, 9-11 are anticipated under 35 U.S.C. §102(e) by US 6,112,049 to Sonnenfeld.

2.    **SNQP 2:**    Whether Claim 8 is obvious under 35 U.S.C. §103(a) in view of US 6,112,049 to Sonnenfeld.

3.    **SNQP 3:**    Whether claims 1, 5-11 are anticipated under 35 U.S.C. §102(e) by US 6,873,964 to Williams.

4.    **SNQP 4:**    Whether claims 1, 6 and 11 are obvious under 35 U.S.C. §103(a) in view of US 5,565,316 to Kershaw.

5.    **SNQP 5:**    Whether claims 1-11 are obvious under 35 U.S.C. §103(a) over US 6,119,097 to Ibarra in view of US 6,292,904 to Broomhall.

### B.    Substantial New Questions of Patentability 1-5

#### 1.    Each of SNQP 1-5 is a New Question of Patentability

In the original prosecution of the '372 Patent, Howard was the primary prior art. The Notice of Allowance clearly articulated the key deficiencies of Howard that made the claims of the '372 Patent allowable, the key deficiencies being that

a)    "Howard does not disclose **initializing permissions relative to the password based on the level of rights for the entity**."

b)    Howard does not disclose **the permissions including at least one respondent password having permissions based on the level of rights for a respondent**."

c)    "Howard does not disclose **sending the assessment report to one or more locations authorized by the permissions**."

    d)      "This disclosure teaches being able **to send an assessment report to one or more locations**, but it does not disclose **that** this **is authorized by the permissions set by the password.**"

These limitations, which the Examiner states the prior art cited during the original prosecution failed to disclose, can be found in the following new prior art references, which therefore raise substantial new questions of patentability of claims 1-11.

All of the below-listed references are new art and were not of record or considered in the original prosecution of the '372 Patent and are believed to be closer to the subject matter of the '372 Patent than any prior art which was cited during prosecution.

    **A.**    **US Patent No. 6,112,049 to Sonnenfeld** (hereinafter "Sonnenfeld") raises a substantial new question of patentability.

Sonnenfeld provides new, non-cumulative technical teachings directly on point to the reasons for allowance during prosecution of the '372 Patent.

Sonnenfeld teaches "initializing permissions relative to the password based on the level of rights for the entity," and "the permissions including at least one respondent password having permissions based on the level of rights for a respondent." Sonnenfeld discloses assigning passwords to different users of the system or levels of rights, for example, the test designer (col. 20; lines 37-40) and the test taker (col. 51; lines 10-14). The test designer is allowed to, "add a new test taker account and **set test taker privileges**," that determine, "what fields a test taker sees after logging on to their ITS account." (col. 50, lines 35-40; col. 52, lines 4-22)  Permissions associated with the test taker (respondent) level are initialized upon the test taker logging into the system using the test taker password and are defined as, "What test taker is allowed to do when they log on to see test results, View fields above, Modify fields above," etc.  (col. 7, lines 29-32)

Sonnenfeld also discloses "sending the assessment report to one or more locations authorized by the permissions." Sonnenfeld discloses various reporting formats, including, "Automatically generate notes to test takers (students, job applicants,...); Generate notes and periodical report cards home to parents; Give feedback to upper management about how people have done in the past." (col. 9; lines 58-64).  Sonnenfeld also discloses that a test designer may view test results and reports when he is logged into the system using his test

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                    ESP.1555

designer password.  Sonnenfeld "[a]llows the test designer to view the test results." (Col. 17; lines 17-24).

Sonnenfeld raises a substantial new question of patentability as a reasonable Examiner would consider the "permissions associated with the test taker" and "test results and reports" teachings of Sonnenfeld to be "important in deciding whether or not the claims are patentable." MPEP §2642.  As explained in section X *infra*, and the attached claim charts, Sonnenfeld anticipates claims 1-7 and 9-11 of the '372 Patent, and renders claim 8 of the '372 Patent obvious.


**B.     US Patent No. 6,873,964 to Williams** (hereinafter "Williams") raises a substantial new question of patentability.

Williams provides new, non-cumulative technical teachings directly on point to the reasons for allowance during prosecution of the '372 Patent.

Williams teaches "initializing permissions relative to the password based on the level of rights for the entity," and "the permissions including at least one respondent password having permissions based on the level of rights for a respondent."  Williams discloses providing a job applicant or candidate 85 with a name and password to access the RRC external website 135, where the candidate is allowed to "download and fill out" employment forms.  Therefore, a password is associated with each respondent, and the respondent is given a level of rights to access the web site and download and respond to the employment forms. The fact that the candidate is allowed to access the web site and to respond to the forms implies that the permissions allowing him to do so have been initialized.

Williams also teaches "sending the assessment report to one or more locations authorized by the permissions."  Williams discloses electronic candidate folder 110 that is populated with each candidate resume and form package 130, including the responses to the Job Application and other employment forms, the contents of which are stored to the Regional Recruiting Information System (RRIS) 140.  In addition to storing the information on RRIS 140, these "reports" may be sent to authorized personnel using two methods.  First, referring to Col. 5, lines 21-25, the RRC Receptionist 150 provides portions of the form package 130 to the compensation analyst 185 and the Security manager 165.  Security form

130' only goes to the security manager 165, implying that sending the security form to this person is associated with a permission. Second, an electronic mail message 120 can be sent to Hiring Managers, informing each manager of the availability of electronic candidate folder 110 for viewing. The Managers can then access and review the folder 110 through the Alta Vista Forum 105 via a web browser, implicitly invoking permissions to be able to access the Forum and the folders 110.

Williams raises a substantial new question of patentability as a reasonable Examiner would consider the "providing a job applicant or candidate 85 with a name and password to access the RRC external website 135, where the candidate is allowed to "download and fill out" employment forms" and the sending of "reports" to "authorized personnel" teachings of Williams to be "important in deciding whether or not the claims are patentable." MPEP §2642. As explained in section X *infra*, and the attached claim charts, Williams anticipates claims 1 and 5-11.

**C.    US Patent No. 5,565,316 to Kershaw** (hereinafter "Kershaw") raises a substantial new question of patentability.

Kershaw provides new, non-cumulative technical teachings directly on point to the reasons for allowance during prosecution of the '372 Patent.

Kershaw teaches "initializing permissions relative to the password based on the level of rights for the entity," and "the permissions including at least one respondent password having permissions based on the level of rights for a respondent."

Kershaw also teaches "sending the assessment report to one or more locations authorized by the permissions."

Kershaw raises a substantial new question of patentability as a reasonable Examiner would consider the "permissions associated with the test taker" and "test results and reports" teachings of Kershaw to be "important in deciding whether or not the claims are patentable." MPEP §2642. As explained in section X *infra*, and the attached claim charts, Appendix C, Kershaw renders claims 1, 6 11 of the '372 Patent obvious.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                         ESP.1555

D.      **US Patent No. 6,119,097 to Ibarra** (hereinafter "Ibarra").

Ibarra provides new technical teachings not cumulative of references provided during prosecution of the '372 Patent and directly on point to the reasons for allowance.

Ibarra relates to enabling a supervisor to quantify job performance characteristics. An employee "problem-solving" worksheet is provided to the supervisor. Hard data is entered into the worksheet. The information is stored so that an employee's performance can be compared against previous month's performance. The system is implemented as a software program running on a general purpose computer.

An evaluation of the employee relative to standards information takes place, information which input to the computer database. (Col. 6, lines 15-22) The information is typically entered by the manager. When the review is complete, the employee is asked by the system to enter the employee's password to ensure the employee was present during the review. (Col. 6, lines 23-27).

A problem solving worksheet can be created that enables the manager to share perceptions of the employee. It is automatically generated by the system for the manager to fill in. (Col. 8, lines 22-24.). A computer display can present a performance appraisal summary, where categories and specific items scored can be modified to suit the particular job for which an employee is being evaluated. (Col. 8, lines 50-54).

After scoring is complete, a summary score is provided. (Col. 9, lines 9-11). The employee and managers can make comments which are recorded, and any section of the performance appraisal can be edited. (Col. 9, lines 15-19). A computer database can be controlled so that the organizational structure of a company can be viewed at a glance. (Col. 9, lines 25-30).

Ibarra raises a substantial new question of patentability as a reasonable Examiner would consider the "utilizing a computer system for measuring and improving an employee's job performance" teachings of Ibarra to be "important in deciding whether or not the claims are patentable." MPEP §2642. As explained in section X *infra*, and the attached claim charts, Ibarra in view of Broomhall renders claims 1-11 obvious.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                              ESP.1555

      **E.**      **US Patent No. 6,292,904 to Broomhall** (hereinafter "Broomhall").

Broomhall provides new technical teachings not cumulative of references provided during prosecution of the '372 Patent and directly on point to the reasons for allowance.

Broomhall relates to a system and method for providing secure user account identifiers and passwords to facilitate sharing by users of data between a secure internal server and an external server accessible over the Internet. The databases include a database 201 whose content the organization wishes to share with others while maintaining security. (Col. 3, lines 8-10). The databases contain the user ID's and passwords for the system users. The databases correspond to three different types of users. (Col. 3, lines 21-24). The administrative engine is a Web application accessible by a Web browser. (Col. 3, lines 32-34). A form allows the user to supply his personal ID number. (Col. 3, lines 46-48). Passwords are generated an applied to accounts. (Col. 4, lines 31-32). The highest access level offered to an external user may be different from that available to internal users. (Col. 5, lines 7-10).

Broomhall raises a substantial new question of patentability as a reasonable Examiner would consider the "database 201 whose content the organization wishes to share with others while maintaining security" and databases that "contain the user IDs and passwords for the system users" that "correspond to three different types of users" teachings of Broomhall to be "important in deciding whether or not the claims are patentable." MPEP §2642. As explained in section X *infra*, and the attached claim charts, Ibarra in view of Broomhall renders claims 1-11 obvious.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                                     ESP.1555

## IX.   PROPOSED REJECTIONS TO WHICH THE SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ARE DIRECTED

A.    Claims 1-7, 9-11 are anticipated under 35 U.S.C. §102(e) by US 6,112,049 to Sonnenfeld.

B.    Claim 8 is obvious under 35 U.S.C. §103(a) in view of US 6,112,049 to Sonnenfeld.

C.    Claims 1, 5-11 are anticipated under 35 U.S.C. §102(e) by US 6,873,964 to Williams.

D.    Claims 1, 6 and 11 are obvious under 35 U.S.C. §103(a) in view of US 5,565,316 to Kershaw.

E.    Claims 1-11 are obvious under 35 U.S.C. §103(a) over US 6,119,097 to Ibarra in view of US 6,292,904 to Broomhall.

## X.   DETAILED EXPLANATION OF MANNER AND PERTINENCE OF APPLYING THE CITED ART

All proposed rejections herein and in the attached claim charts may be premised on the broadest reasonable interpretation of the claim language, as the Office must apply in reexamination. *See* MPEP §2258(G); MPEP §2658. The Requestor does so in compliance with the Office's guidelines and does not concede that a court should interpret the claims in the same way. The Requester reserves all rights to argue that a court's claim construction may not be the same as the Office must apply during this reexamination. *See In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008)(explaining different claim construction/interpretation standards employed by courts and the Office).

In applying the prior art to the claims, a rejection can be sustained based on a preponderance of the evidence. *Id.* The '372 Patent is not presumed valid in this reexamination. *See Id.*

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
                                                                            ESP.1555

A.    **Claims 1-7, 9-11 are anticipated under 35 U.S.C. §102(e) by US 6,112,049 to Sonnenfeld (Answer to SNQP 1).**

Sonnenfeld discloses each and every limitation of claims 1-7 and 9-11.  Please see Appendix A for a detailed claim chart comparing the limitations of claims 1-7 and 9-11 of the '372 Patent to the disclosure of the Sonnenfeld reference.

B.    **Claim 8 is obvious under 35 U.S.C. §103(a) in view of US 6,112,049 to Sonnenfeld (Answer to SNQP 2)**

In regards to claim 8, Sonnenfeld discloses the incorporated limitations of claim 1, as presented above.  Additionally, Sonnenfeld discloses that the "present invention relates to the field of electronic testing, and more particularly to a method and system for designing, administering and taking tests through a computer network or other information distribution media."  (Col. 12; lines 6-9).  Sonnenfeld does not explicitly disclose, "wherein the assessment survey is electronic in nature or is hard copy in nature," as recited in claim 8 of the '372 Patent.  Hard copies of electronic information and documents such as assessment surveys are well known.  Additionally, most electronic devices, including the systems of Sonnenfeld, generally can be configured to communicate with a printer or other means of printing hard copies.  The limitation of hardy copy assessments, as recited in claim 8, is merely a substitution of one known element for another to obtain predictable results and, as such, it is obvious to one of skill in the art.

C.    **Claims 1, 5-11 are anticipated under 35 U.S.C. §102(e) by US 6,6,873,964 B1 to Williams (Answer to SNQP 3).**

Williams discloses the recited limitations of claims 1, 5-11.  Please see Appendix B for a detailed claim chart comparing the limitations of claims 1, 5-11 of the '372 Patent to the disclosure of the Williams reference.

D.    **Claims 1, 6 and 11 are obvious under 35 U.S.C. §103(a) in view of US 5,565,316 to Kershaw (Answer to SNQP 4).**

Please see Appendix C for a detailed claim chart and arguments explaining fully the detailed manner and pertinence of applying the disclosure of Kershaw to each of claims 1, 6 and 11 of the '372 Patent.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
                                                                                    ESP.1555

**E.      Claims 1-11 are obvious under 35 U.S.C. §103(a) over US 6,119,097 to Ibarra in view of US 6,292,904 to Broomhall (Answer to SNQP 5).**

Please see Appendix D for a detailed claim chart and arguments explaining fully the detailed manner and pertinence of applying the disclosure of Ibarra and Broomhall to each of claims 1-11 of the '372 Patent.  What follows below in the following subsection are merely some remarks introducing the claim chart, and some explanation to illustrate the proposed combination of references.  By reading the claim chart, with the explanation in mind, it becomes clear that the prior art results in the claimed subject matter.

Claims 1-11 should be rejected under 35 U.S.C. §103(a) as being obvious over Ibarra in view of Broomhall.  Ibarra utilizes a computer system to measure and improve an employee's job performance.  When the review is complete, the employee enters a password to ensure the employee was present during the review. (Col. 6, lines 24-27).  A manager's password only enables viewing of performance summaries for employees within the managers department. (Col. 9, lines 32-34).  Broomhall provide provides secure user account identifiers and passwords to facilitate sharing by users of data between a secure internal server and an external server accessible over the Internet.  It would be obvious to one of skill in the art to enhance the system of Ibarra with the security aspects of Broomhall to allow a business to "share sensitive information" while maintaining the integrity of the content of the databases. (Broomhall, Col. 1, lines 12-19)

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1                                          ESP.1555

## XI.    CONCLUSION

For all of the foregoing reasons, the Requester respectfully requests that *inter partes* reexamination of the '372 Patent be ordered and that, in due course, the Office issue a reexamination certificate cancelling all claims of the '372 Patent.

Respectfully submitted,

Extended DISC North America, Inc.,

Date: 6 JUNE 2011                    By: _____
                                         Geza C. Ziegler, Jr.
                                         Reg. No. 44,004

                                         Ziegler IP Law Group, LLC
                                         518 Riverside Avenue, Synergy Building
                                         Westport, CT 06880
                                         Tel: (203) 659-0388
                                         Customer No. 93582

**APPENDIX A**
**SONNENFELD REFERENCE CLAIM CHART**

**US 6,112,049 – Sonnenfeld**
**App. Serial No. 08/955,133**
**Filed: 21 October 1997**
**Issued: 28 August 2000**

Claims 1-7 and 9-11 are anticipated by Sonnenfeld under 35 U.S.C. §102(e).

| Claim 1 of '372 Patent | Relevant disclosure in Sonnenfeld (6,112,049) |
|---|---|
| 1. A method for managing distribution of assessment documents over a wide area comprising: | Col. 12, lines 16-18<br><br>The **administration of the test takers and the tests** may be performed either locally at the query server device, or **remotely through a network system**.<br><br>Col. 4, lines 52-54<br><br>In a preferred embodiment, the present system allows for the interactive and secure development and production of tests over the Internet using a standard web browser.<br><br>Col. 2, lines 41-43<br><br>The server is not burdened with continual monitoring of each user, and thus may serve a large number of test takers simultaneously, without overload. |
| (a) providing an assessment instrument for completion by respondents; | Col. 13, lines 11-15<br><br>"Other uses include giving **surveys** and **any other form** of test that is now given on paper."<br><br>Col. 10, lines 28-41<br><br>It is therefore an object of the invention to **provide a human response testing system**..and a terminal, communication with the host through a communication system, **adapted for interaction with the human to acquire responses**, wherein the host transmits information defining at least one of the sections to the terminal, **the terminal presents inquiries to the human**..." |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                              ESP.1555

|  |  |
|---|---|
|  | Col. 2, lines 32-36 |
|  | The test part, for example, is transmitted as a single logical unit from a server, which assembles each section, as necessary, based on the parameters, and then groups the sections, based on other parameters, as a part.  The server then awaits receipt of responses...and interprets the responses...for output. |
| (b) assigning a password for an entity having a level of rights; | Col. 16, lines 8-13: |
|  | The test administrator can create test designer accounts and test taker accounts.  Each test designer account can create test taker accounts or use those created by the test administrator: |
|  | Test Administrator → Test Taker(s) |
|  | Test Designer → Test Taker(s) |
|  | Col. 17, lines 29030 |
|  | A designer **logon identifier and password** is required. |
|  | Col. 17, lines  34-36: |
|  | Password • Enter the designer account password in the box to the right.  Passwords are case sensitive and may not be left blank. |
| (c)   initializing   permissions relative to the password based on the level of rights for the entity,   said   permissions including at least one respondent password   having   permissions based on the level of rights for a respondent; | Col. 7; lines 14-17: |
|  | Records test taker information: |
|  | Name |
|  | Logon Identifier |
|  | Password |
|  | Col. 7; lines 29-32: |
|  | Permissions: |
|  | What test taker is allowed to do when they log on to see test results |
|  | View fields above |
|  | Modify fields above |

| | |
|---|---|
| | Col. 9, lines 17-19 |
| | Limit who can take your test by **password protecting** your tests **by taker**. |
| | Col. 20, lines 37-40: |
| | Password • Enter the current password for security reasons. T**he password must match that stored in the ITS in order for the test designer to create a new test**. This field is case sensitive and required. |
| | Col. 52; lines 54-56: |
| | In order for them to be allowed to take the test, **the test taker account must be manually assigned to take a particular test**. |
| | Col. 50; lines 35-40: |
| | Create A New Test Taker Screen |
| | This web page appears after the test designer clicks click the Create New Taker link at the top of the "Your Personal Test Takers" Screen. This page allows the test designer to **add a new test taker account and set test taker privileges**. Test taker accounts are those accounts in the ITS which allow a person to take a test. |
| | Col. 51; lines 10-14: |
| | **Password** (Enter Twice). Enter the initial **test taker account password** in both boxes. This is necessary to verify that the test designer typed in the password correctly. The test taker can later change their own password if their account has permission to do so. The information entered is case-sensitive. |
| | Col. 52, lines 4-22 |
| | The second column is a set of check boxes. These check boxes determine **what fields a test taker sees after logging on to their ITS account**. If a check box is checked, the test taker can view the field listed in the first column described above. If the check box is not checked, |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

| | |
|---|---|
| | the test taker will not be able to see their information after logging on to the ITS....These check boxes determine what fields (if any) a test taker can change after logging onto their ITS account. |
| (d) allowing the entity access to a web site on a global computer network and enabling the initialized permissions for the entity; | Col. 2, lines 61-66:<br>The system is operable over intranets or the Internet using standard Web browsers.<br>Col. 3, lines 1-4:<br>The benefits of the present invention are possible using standard server and client systems, with a custom Web server (or other "test" server) to generate test parts and receive responses.<br>Col. 3, lines 38-40:<br>The present invention allows multiple remote users (clients) to interact with a central query server (host).<br><br>Col. 4; lines 52-54:<br>In a preferred embodiment, the present system allows for the **interactive and secure development and production of tests over the Internet using a standard web browser**.<br>Col. 7; lines 29-32:<br>Permissions:<br>What test taker is allowed to do when they log on to see test results<br>View fields above<br>Modify fields above<br>Col. 51; lines 10-23:<br>Password (Enter Twice). Enter the initial test taker account password in both boxes. This is necessary to verify that the test designer typed in the password correctly. The test taker can later change their own password if their account has permission to do so. The |

Page **4** of **19**

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                            ESP.1555

| | |
|---|---|
| | information entered is case-sensitive. These fields are required (however, this doesn't mean that the test designer has to check for passwords when giving a test . . . refer to "Assign Test Taker(s) To Take Your Test" Screen for more information). |
| | Logon ID. Enter the test taker account logon identifier. It must be unique among all of the test taker accounts. This field is used to **uniquely identify a test taker account when they log into the ITS system.**. |
| | Col. 10;lines 18-27: |
| | The ITS system also provides a number of security features, including: |
| | **Allowing the test designer to decide who can take your test(s)**, the number of times they can take them and when they can take them. |
| | **Password-protection** of tests to disallow them from being viewed by others when they are designed. |
| | Tampering with tests is not allowed (answers may be checked to ensure that they aren't changed). |
| (e) providing an assessment instrument to the respondent which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job; | Col. 10; lines 35-36: |
| | ...the terminal presents inquiries to the human defined by the section for receipt of responses... |
| | Col. 1, lines 15-17: |
| | Test results may be used, for example, to screen job applicants, assign grades to students, and to gain insight about human abilities, strengths and weaknesses. |
| | Col. 2, lines 9-11 |
| | Some systems that can be constructed from these building blocks include educational tests, quizzes, **surveys**, **questionnaires** and trivia quizzes. |
| | Col. 4, lines 14-16 |
| | The **query need not be of an academic or demographic nature**, and therefore the more general aspect of the |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                                                    ESP.1555

| | system seeks to determine a human response to a stimulus. |
|---|---|
| (f) receiving responses from the respondent to the assessment instrument; | Col. 2, lines 35-38:<br><br>The server then **awaits receipt of responses**, which are in form defined by the section parameters, and interprets the responses in accordance with the section parameters, for output.<br><br>Col. 3; lines 52-58:<br><br>The logical unit is transmitted to a client for presentation and interaction with the user. The client may include enhanced functionality defined by the logical unit, but outside the scope of the transmission. **The client obtains information relating to the sections from the user or through interaction with the user, and transmits results or responses back to the server, for analysis.** |
| (g) processing the responses into an assessment report | Col. 2, lines 38-40:<br><br>The output may be subject to **further analysis,** such as individual and group statistics, feedback to the test taker, or the like.<br><br>Col 8;lines 46-52:<br><br>The ITS allows a person to interactively create and give out tests securely on the Internet using a standard web browser interface. The use of the ITS can be broken into the following areas of functionality:<br><br>1 . Test Design and Development<br><br>2 . Test Taking ("Using The Test")<br><br>3 . **Statistics, Reports and Analysis of Test Results**<br><br>Col. 9, lines 46-47:<br><br>Know who took your test, when they took it, what they got right (or wrong) and how many times they took it. |
| (h) sending the assessment report to one or more locations authorized by the permissions. | Col. 9; lines 58-64:<br><br>The ITS system has various reporting formats, including: Automatically generate notes to test takers (students, job applicants, . . . ) |

| | Generate notes and periodical report cards home to parents<br><br>**Give feedback to upper management about how people have done in the past**<br><br>Col. 17; lines 17-24:<br><br>**View Test Results**, Take Tests or Change Your Personal Information • **Allows the test designer to view the test results** and to take test for which a test taker has been assigned.  A series of pages is presented which allow the test designer to review tests taken previously, compute grades and averages based on the tests a test taker has taken, take tests that have been assigned, email the test designer and modify personal account information. |
| --- | --- |

| **Claim 2 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
| --- | --- |
| 2.  The method according to claim 1 wherein the permissions associated with a master distributor level of rights include (a) ability to create response links and passwords | Col. 5; lines 11-12:<br><br>Test Administrators → Test Taker(s)<br><br>Test Designer(s) → Test Taker(s)<br><br>Col. 8; lines 28-30:<br><br>Allows **test database administrator** to:<br><br>Become ANY test designer and perform ALL functions associated with that test designer<br><br>Col.  13; lines 32-41:<br><br>When the test designer wants to see what others know about the material or take a poll or survey about the material, they give a test.  The individual elements of each **section of a test are, for example, coded as follows**:<br><br>1 • **Links**<br><br>Links appear as underlined words on the web page and represent hypertext links which, when clicked upon, take the web browser to another web page. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

| | |
|---|---|
| | Col. 11; lines 46-49: |
| | According to another object of the present invention, the query server formats a test as an HTML document, which may be, for example, read and responded to through a so-called web browser. |
| | Col. 23; lines 16-19: |
| | Create • ...After the test designer have entered the required test information, press the Create button to **create a test** (a valid designer password is required). |
| | Col. 51; lines 10-14: |
| | Password (Enter Twice). **Enter the initial test taker account password** in both boxes. This is necessary to verify that the test designer typed in the password correctly. The test taker can later change their own password if their account has permission to do so. The information entered is case-sensitive. |
| (b) ability to set up new accounts | Col. 14, lines 31-35: |
| | Test take account screens are web pages that appear when **creating accounts** for people to take a test. |
| | Col. 16; lines 8-11: |
| | The **test administrator can create test designer accounts** and test taker accounts. Each **test designer account can create test taker accounts** or use those created by the test administrator: |
| | Col. 50; lines 34-44: |
| | Create A New Test Taker Screen |
| | This web page appears after the test designer clicks click the Create New Taker link at the top of the "Your Personal Test Takers" Screen. This page allows **the test designer to add a new test taker account and set test taker privileges**. Test taker accounts are those accounts in the ITS which allow a person to take a test |
| | |

Page **8** of **19**

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                            ESP.1555

| | |
|---|---|
| (c) ability to manage reports | Col. 8; lines 46-52:<br><br>The ITS allows a person to interactively create and give out tests securely on the Internet using a standard web browser interface. The use of the ITS can be broken into the following areas of functionality:<br><br>1 . Test Design and Development<br><br>2 . Test Taking ("Using The Test")<br><br>3 . Statistics, Reports and Analysis of Test Results<br><br>Col. 9; lines 58-64:<br><br>The ITS system has various reporting formats, including:<br><br>Automatically generate notes to test takers (students, job applicants, . . . )<br><br>Generate notes and periodical report cards home to parents<br><br>Give feedback to upper management about how people have done in the past<br><br>Col. 17; lines 17-24:<br><br>View Test Results, Take Tests Or Change Your Personal Information • Allows the test designer to view the test results and to take tests for which a test taker has been assigned. |
| (d) ability to change its own and others' account options | Col. 8; lines 32-36:<br><br>Maintain designer accounts:<br><br>Create<br><br>Modify<br><br>Delete<br><br>Email designer<br><br>Col. 19; lines 14-20:<br><br>Modify Your Test Designer Information Screen<br><br>This web page appears after the test designer clicks the Modify link next to the designer information on the "Designer Information and Tests" screen. **This page allows the test designer to change the personal test** |

|  | **designer information and password**.  This screen has the following elements:<br><br>Col. 49; lines 62-65:<br><br>Modify • This button appears above and below the list (scroll) box.  When clicked, it presents the "Test Taker Modify" Screen which **allows the test designer to view and change the information for a particular test taker account**. |
| --- | --- |

In regards to claims **3 and 4** which claim a distributor and client level of rights, the same references apply as for claim 2. Naming of the distributor level or client level does not bring anything inventive to claims 3 and 4. The only difference between claim 3 and claim 2 is the lack of changing others' account options that is already anticipated with respect to claim 2. The only difference between claim 4 and claim 2 is the lack of the ability to set up new accounts and the ability to change others' account options that are anticipated with respect to claim 2.

| **Claim 5 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
| --- | --- |
| 5. The method according to claim 1 wherein the permissions associated with a respondent level of rights include (a) respond to an assigned assessment instrument. | Col. 52; lines 46-56:<br><br>This web page appears after the test designer clicks the view button on the "Your Personal Test Takers" Screen. This page allows the test designer to view a test taker account's current information. **Test takers are the people who are eligible to take any of the tests that the test designer creates create.** The test designer sets set up accounts for them by using this screen. Once an account has been set up for a test taker, however, doesn't mean that they can automatically take the test. In order for them to be allowed to take the test, the test taker account must be manually assigned to take a particular test.<br><br>Col. 50; lines 34-44:<br><br>This page allows the test designer to add a new test taker |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

|  | account and set test taker privileges. **Test taker accounts are those accounts in the ITS which allow a person to take a test.** |
|---|---|

| **Claim 6 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
|---|---|
| A system for managing assessments comprising:<br>(a) a plurality of terminals each adapted to access a wide area network; | Col. 10, lines 28-32:<br>It is therefore an object of the invention to provide a human response testing system, comprising a host...and **a terminal** communicating with the host through a communication system...<br>Col. 3, lines 38-40:<br>It is noted that, while a preferred embodiment of the present invention allows **multiple remote users (clients) to interact with a central query server (host)**...<br>Col. 2, lines 61-66:<br>By employing a standard language such as HTML, the system is **operable over intranets or the Internet** using standard Web browsweers such as Microsoft Internet Explorer (MSIE), e.g., MSIE 3.02, Netscape Navigator, e.g. Navigator 4.01, or the like, on **standard client computing platforms**.<br>See Terminal (I/O) 3 and 4 connected to Network 2 of Figure 1: |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

| | |
|---|---|
| |  |
| (b) a central server; | See Encryption/Query Server Host and Database 1 of Figure 1 |
| | Col. 3, lines 38-40: |
| | It is noted that, while a preferred embodiment of the present invention allows multiple remote users (clients) to interact with **a central query server (host)**.. |
| | Col. 2, lines 32-45: |
| | The test part, for example, is transmitted as a single logical unit from **a server**...The server is a transactional based device, servicing each test taker as needed to register, transmit a test part, and receive results. |
| | Col. 12; lines 60-65: |
| | **The ITS server runs with any standard ODBC compliant database and any standard web server that runs on the Windows.TM.** Operating System. Once the ITS server is running, however, all that is needed to design and develop tests is any web browser running on any platform. |
| (c) software associated with the central server which administers a web site and which provides permissions; | Col. 12; lines 56-65: |
| | A preferred embodiment of the present invention provides **a computer software system**, called the "Interactive Testing And Questionnaire System" (ITS), which **allows** |

| | |
|---|---|
| | **for the interactive and secure development and production of tests over the Internet using a standard web browser**. The ITS server runs with any standard ODBC compliant database and any standard web server that runs on the Windows.TM. Operating System. Once the ITS server is running, however, all that is needed to design and develop tests is any web browser running on any platform.<br><br>Col. 7; lines 29-33:<br>Permissions:<br>What test taker is allowed to do when the log on to see test results<br>View fields above<br>Modify fields above |
| (d) a password having a set of permissions correlated to a respondent for an assessment survey which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance, with regards to a particular job, or an individual boss's performance with regards to a particular job; | Col. 7, lines 14-17:<br>Records test taker information:<br>Name<br>Logon Identifier<br>**Password**<br>Col. 7, lines 29-33:<br>**Permissions:**<br>What test taker is allowed to do when they log on to see test results<br>View fields above<br>Modify fields above<br>....<br><br>Col. 50; lines 34-44:<br>Create A New Test Taker Screen<br>This web page appears after the test designer clicks click the Create New Taker link at the top of the "Your Personal Test Takers" Screen. This page allows the test designer to add a new test taker account and set t**est taker privileges**.<br>Col. 51; lines 10-14: |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                           ESP.1555

| | **Password** (Enter Twice). Enter the initial test taker account password in both boxes. This is necessary to verify that the test designer typed in the password correctly. The test taker can later change their own password **if their account has permission to do so**. The information entered is case-sensitive<br><br>Col. 9; lines 58-60:<br><br>The ITS system has various reporting formats, including: Automatically generate notes to test takers (students, **job applicants**, . . . ) |
|---|---|
| (e) a password having a set of permissions correlated to an entity interested in the respondent's responses to the assessment survey specifics. | Col. 17; lines 17-24:<br><br>View Test Results, Take Tests Or Change Your Personal Information • Allows the test designer to view the test results....<br><br>Col. 17; lines 32-36:<br><br>Designer ID • Enter the designer account identifier in the box to the right.  Identifiers are not case sensitive.<br><br>Password • Enter the designer account password in the box to the right.  Passwords are case sensitive and may not be left blank. |

| **Claim 7 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
|---|---|
| 7. The system of claim 6 wherein the assessment relates to job or personal performance of a human. | Col. 1; lines 12-18:<br><br>Tests of human knowledge, understanding and preferences are well known. In educational environments, they are typically used as **indicators for measuring human performance and our knowledge**. Test results may be used, for example, to screen job applicants, assign grades to students and to gain insight about human abilities, strengths and weaknesses. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

|  | Col. 4, lines 14-36:<br><br>The query need not be of an academic or demographic nature, and therefore the more general aspect of the system seeks to determine a human response to a stimulus. |
|---|---|

| **Claim 8 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
|---|---|
| 8. The system of claim 6 wherein the assessment survey is electronic in nature or is hard copy in nature. | Col. 12; lines 6-9:<br><br>The present invention relates to the field of **electronic testing**, and more particularly to a method and system for designing, administering and taking tests through a computer network or other information distribution media. |

| **Claim 9 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
|---|---|
| 9. The system of claim 6 wherein the report is electronic in nature or is hard copy in nature. | Col. 8; lines 46-52:<br><br>The ITS allows a person to interactively create and give out tests **securely on the Internet using a standard web browser interface**. The use of the ITS can be broken into the following areas of functionality:<br><br>1 . Test Design and Development<br><br>2 . Test Taking ("Using The Test")<br><br>3 . **Statistics, Reports and Analysis of Test Results**<br><br>Col. 9; lines 58-64:<br><br>The ITS system has **various reporting formats**, including:<br><br>Automatically generate notes to test takers (students, job applicants, . . . )<br><br>Generate notes and **periodical report cards home** to parents<br><br>Give feedback to upper management about how people have done in the past |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                        ESP.1555

| Claim 10 of '372 Patent | Relevant disclosure in Sonnenfeld (6,112,049) |
|---|---|
| 10. The system of claim 6 wherein the set of permissions can vary from password to password. | Col. 12; lines 48-55:<br>The operation of the system is defined herein functionally by way of its inputs and outputs. These inputs are presented as "screens", which are, in the preferred embodiment, HTML 3.0 coded web pages. The **system presents a number of different types of pages or screens to users, depending on their privilege level within the system and the task being performed.** |

| Claim 11 of '372 Patent | Relevant disclosure in Sonnenfeld (6,112,049) |
|---|---|
| A method of evaluation or assessment of persons, jobs, or employees comprising:<br>(a) assigning a password for a respondent; | Col. 7, lines 14-17:<br>Records test taker information:<br>Name<br>Logon Identifier<br>**Password** |
| (b) initializing a set of **permissions relative to the password**; | Col. 7, lines 29-33:<br>**Permissions:**<br>What test taker is allowed to do when they log on to see test results<br>View fields above<br>Modify fields above<br>Col. 52; lines 46-56:<br>This web page appears after the test designer clicks the view button on the "Your Personal Test Takers" Screen. This page allows the test designer to view a test taker account's current information. Test takers are the people who are eligible to take any of the tests that the test designer creates create. **The test designer sets set up** |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                                    ESP.1555

| | |
|---|---|
| | **accounts for them by using this screen**. Once an account has been set up for a test taker, however, doesn't mean that they can automatically take the test. In order for them to be allowed to take the test, **the test taker account must be manually assigned to take a particular test.**<br><br>Col. 51; lines 10-14:<br><br>**Password** (Enter Twice) . Enter the initial test taker account password in both boxes. This is necessary to verify that the test designer typed in the password correctly. The test taker can later change their own password if their account has permission to do so. The information entered is case-sensitive.<br><br><u>Col. 52, lines 4-22</u><br><br>The second column is a set of check boxes.  These check boxes determine **what fields a test taker sees after logging on to their ITS account**.  If a check box is checked, the test taker can view the field listed in the first column described above.  If the check box is not checked, the test taker will not be able to see their information after logging on to the ITS....These check boxes determine what fields (if any) a test taker can change after logging onto their ITS account. |
| (c) providing an assessment instrument which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job to a | <u>Col. 10; lines 35-36:</u><br><br>...the terminal presents inquiries to the human defined by the section for receipt of responses...<br><br><u>Col. 1, lines 15-17:</u><br><br>Test results may be used, for example, to screen job applicants, assign grades to students, and to gain insight about human abilities, strengths and weaknesses.<br><br><u>Col. 2, lines 9-11</u><br><br>Some systems that can be constructed from these building blocks include educational tests, quizzes, **surveys**, |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix A – Claim Chart - Sonnenfeld                                    ESP.1555

| | |
|---|---|
| respondent after verification of password; | **questionnaires** and trivia quizzes. <br><br> <u>Col. 4, lines 14-16</u> <br><br> The **query need not be of an academic or demographic nature**, and therefore the more general aspect of the system seeks to determine a human response to a stimulus. |
| (d) receiving responses from the respondent to the assessment instrument; | <u>Col. 2, lines 35-38:</u> <br><br> The server then **awaits receipt of responses**, which are in form defined by the section parameters, and interprets the responses in accordance with the section parameters, for output. <br><br> <u>Col. 3; lines 55-58:</u> <br><br> The client **obtains information relating to the sections from the user or through interaction with the user, and transmits results or responses back to the server**, for analysis. |
| (e) processing the reports into an assessment report | <u>Col. 2, lines 38-40:</u> <br><br> The output may be subject to **further analysis,** such as individual and group statistics, feedback to the test taker, or the like. <br><br> <u>Col. 8; lines 46-52:</u> <br><br> The ITS allows a person to interactively create and give out tests securely on the Internet using a standard web browser interface. The use of the ITS can be broken into the following areas of functionality: <br><br> 1 . Test Design and Development <br> 2 . Test Taking ("Using The Test") <br> 3 . **Statistics, Reports and Analysis of Test Results** |
| (f) sending the assessment report to one or more locations authorized by the set of permissions associated with the password. | <u>Col. 9; lines 58-64:</u> <br><br> The ITS system has various reporting formats, including: <br><br> **Automatically generate notes to test takers** (students, job applicants, . . . ) <br><br> Generate notes and periodical report cards home to |

| | parents |
| | **Give feedback to upper management about how people have done in the past** |

**APPENDIX B**
**WILLIAMS REFERENCE CLAIM CHART**

**US 6,873,964 – Williams**
**App. Ser. No. 09/209,211**
**Filed: 11 December 1998**
**Issued: 29 March 2005**

Claims 1, 5-11 are anticipated by US Pat. No. 6,873,964 to Williams.

| Claim 1 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|
| 1. A method for managing distribution of assessment documents over a wide area comprising:<br>(a) providing an assessment instrument for completion by respondents; | Col. 4, lines 31-37:<br>Upon accessing to the RRC Website 135, each candidate 85 downloads and preferably fills out the following **employment forms 130:**<br>**Job Application**<br>EEO Form<br>Conflict of Interest Form<br>Security Form.<br><br>Fig. 6<br> |
| (b) assigning a password for an entity having a level of rights;<br>(c) initializing permissions relative to the password based on the level | Col. 3, lines 42-46:<br>The candidate is scheduled for an interview appointment and given a web site address, **user name, and password to access the RRC external website**, and instructions on the web site |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                                     ESP.1487

| | |
|---|---|
| of rights for the entity, said permissions including at least one respondent password having permissions based on the level of rights for a respondent;<br><br>(d) allowing the entity access to a web site on a global computer network and enabling the initialized permissions for the entity; | applications required to be downloaded and filled out prior to arriving at the RRC.<br><br>Initializing and enabling permissions (c) and (d), are implicitly disclosed because this passage in Col. 3, lines 32-46 confirms that the candidate password exists and permissions must be initialized and enabled in order for the candidate to be able to **access** the web site and to **download** applications from the web site. |
| (e) providing an assessment instrument to the respondent which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job; | Col. 4; lines 31-37:<br>Upon accessing to the RRC Website 135, each candidate 85 downloads and preferably fills out the following **employment forms 130:**<br>**Job Application**<br>EEO Form<br>Conflict of Interest Form<br>Security Form.<br><br>Job Applications are, by nature, assessments of a potential employee's suitability with regards to a particular job and must be completed by a respondent. |
| (f) receiving responses from the respondent to the assessment instrument; | Col. 4, lines 38-41:<br>All forms 130 are preferably **collected** upon each candidate's 85 arrival to the RRC, but could also be **electronically transferrable to the RRC for example utilizing the website 135**. |
| (g) processing the responses into an assessment report | **electronic candidate folder 110**<br>**form package 130** |

2

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                              ESP.1487

| (h) sending the assessment report to one or more locations authorized by the permissions. | Content of the electronic candidate folder 110 is stored to the "Regional Recruiting Information System (RRIS) 140" <br><br> Col. 4, lines 42-47: <br> at the same time of the general briefing 27, the RRC Scheduler 85 begins to populate the Regional Recruiting Information System (RRIS) 140, an access database which houses the results of the interview day, with Candidate information 145 derived from the interviews, resume, phone interview, forms 130. <br><br> In addition to storing reports in the RRIS, the reports (form package 130, or parts of it) may be "sent" to different locations by: <br> Col. 5, lines 21-25: <br> Upon receiving a hardcopy of each candidate folder 110', the RRC Receptionist 150 provides the form package 130, with the exception of the Security Form 130', to the compensation analyst 185, and the Security Form 130' to the Security Manager 165. <br> Col. 3, line 62-Col. 4, line 5: <br> Referring now also to FIG. 5, upon completion of the electronic candidate folder 110 preparation, an electronic mail message 120 is sent to the Business Unit Hiring Managers 125, informing each manager 125 of the availability of candidate resumes 15 for review prior to arriving to the RRC for interviews. <br> Upon receiving an electronic mail notification 120 that resumes 15 are available on-line for review, Business Unit Hiring Managers 125 preferably review candidate resumes 15 prior to interview day.  Resumes 15 are accessed using the RRC Alta Vista Forum 105 via a web browser. |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                                    ESP.1487

|  | Implicitly, Hiring Managers and Recruiters must have permissions in order to access the RRC Alta Vista Forum 105 via the web browser in order to have access to forms 130. |
|---|---|

| Claim 5 of '372 Patent | Relevant disclosure in Williams (6,873,694) |
|---|---|
| 5. The method according to claim 1 wherein the permissions associated with a respondent level of rights include (a) respond to an assigned assessment instrument. | Col. 3, lines 42-46:<br>The candidate is scheduled for an interview appointment and given a web site address, **user name, and password to access the RRC external website**, and instructions on the web site applications required to be downloaded and filled out prior to arriving at the RRC.<br>Col. 4, lines 19-27:<br>The RRC external web site 135 preferably serves as a vehicle to communication the following information:<br>Information on the participating business units<br>Information about living and working in the business unit's geographical area<br>Information on preparing for a successful interviwe<br>**Employment forms to download and fill out prior to arrival** |

| Claim 6 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|

4

| A system for managing assessments comprising:<br><br>(a) a plurality of terminals each adapted to access a wide area network;<br><br>(b) a central server; | <br>**Figure 8**<br><br>A plurality of terminals are shown in Figure 8, as is a central server, corresponding to **RRIS Access Database 140**.<br><br><br>**Figure 12**<br><br>Figure 12 shows network 255. |

| | |
|---|---|
| | Figure 12 also discloses server/router/switch/hub configuration 455, 460, 465, 470.  (See Col. 8, lines 8-32)<br><br>Col. 3, lines 56-58:<br>Accessing the RRC Alta Vista Forum 105, for example, by using a commercial off the shelf software package available such as a web browser... |
| (c) software associated with the central server which administers a web site and which provides permissions; | Col. 3, lines 26-31:<br>Upon receiving job requirements from the Participating Business Units (divisions for example), Job Requisitions 65 are entered into a database 70 (hereinafter referred to as the Resumix Software System).   At the same time, as potential applicant resumes 15 are received, they are scanned and input into the Resumix Software System.<br>Col. 3, lines 42-46:<br>The candidate is scheduled for an interview appointment and given a web site address, **user name, and password to access the RRC external website**, and instructions on the web site applications required to be downloaded and filled out prior to arriving at the RRC. |
| (d) a password having a set of permissions correlated to a respondent for an assessment survey which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance, with regards to a particular job, or an individual boss's performance with regards | Col. 3, lines 42-46:<br>The candidate is scheduled for an interview appointment and given a web site address, **user name, and password to access the RRC external website**, and instructions on the web site applications required to be downloaded and filled out prior to arriving at the RRC.<br>Col. 4, lines 19-27:<br>The RRC external web site 135 preferably serves as a vehicle to communication the following information:<br>Information on the participating business units<br>Information about living and working in the business |

| | |
|---|---|
| to a particular job; | unit's geographical area |
| | Information on preparing for a successful interviwe |
| | **Employment forms to download and fill out prior to arrival** |
| | Col. 4; lines 31-37: |
| | Upon accessing to the RRC Website 135, each candidate 85 downloads and preferably fills out the following **employment forms 130:** |
| | **Job Application** |
| | EEO Form |
| | Conflict of Interest Form |
| | Security Form. |
| | |
| | Job Applications are, by nature, assessments of a potential employee's suitability with regards to a particular job and must be completed by a respondent. |
| (e) a password having a set of permissions correlated to an entity interested in the respondent's responses to the assessment survey specifics. | Implicitly, Hiring Managers and Recruiters must have permissions in order to access the RRC Alta Vista Forum 105 via the web browser in order to have access to resumes, candidate folder 110 and form packet 130. |
| | Col. 3, lines 53-61: |
| | Accessing the RRC Alta Vista Forum 105, for example, by using a commercial off the shelf software package available such as a web browser, the RRC Scheduler 95 creates an electronic folder 110 for the Interview Day for each candidate name.  Each candidate folder 110 is populated with the associated candidate resume. |
| | Col. 3, line 62-Col. 4, line 5: |
| | Referring now also to FIG. 5, upon completion of the electronic candidate folder 110 preparation, an electronic mail message 120 is sent to the Business Unit Hiring |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                    ESP.1487

|  | Managers 125, informing each manager 125 of the availability of candidate resumes 15 for review prior to arriving to the RRC for interviews.

Upon receiving an electronic mail notification 120 that resumes 15 are available on-line for review, Business Unit Hiring Managers 125 preferably review candidate resumes 15 prior to interview day.  Resumes 15 are accessed using the RRC Alta Vista Forum 105 via a web browser.

Col. 4, lines 6-12:

Preferably, hiring managers 125 select resumes 15 for review using two different methods.  The first method is through a selection of the Interview  Day folder and subsequently through each Candidate Electronic Folder 110.

Col. 4, lines 43-47:

Referring now also to FIG. 7, at the same time of the general briefing 27, the RRC Scheduler 85 begins to populate the Regional Recruiting Information System (RRIS) 140, an access database which houses the information 145 derived from the interviews, resume, phone interview, forms 130. |
|---|---|

| Claim 7 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|
| 7. The system of claim 6 wherein the assessment relates to job or personal performance of a human. | Col. 3, lines 32-36:

Based on RRC Job Requisitions opened (unfiled for example), the Resumix system performs a search 75 against open requisitions 65 and resumes 15 to identify applicants that meet job requisition requirements. |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                        ESP.1487

| Claim 8 of '372 Patent | Relevant disclosure in Sonnenfeld (6,112,049) |
|---|---|
| 8. The system of claim 6 wherein the assessment survey is electronic in nature or is hard copy in nature. | Col. 4; lines 31-37:<br>Upon accessing to the RRC Website 135, each candidate 85 downloads and preferably fills out the following **employment forms 130:**<br>**Job Application**<br>EEO Form<br>Conflict of Interest Form<br>Security Form.<br>Col. 4, lines 38-41:<br>All forms 130 are preferably **collected** upon each candidate's 85 arrival to the RRC, but could also be **electronically transferrable to the RRC for example utilizing the website 135**. |

| Claim 9 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|
| 9. The system of claim 6 wherein the report is electronic in nature or is hard copy in nature. | Electronic candidate folder 110<br>Hard copy of candidate folder 110' |

| Claim 10 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|
| 10. The system of claim 6 wherein the set of permissions can vary from password to password. | Permissions differing from password to password are implicit in the disclosure of Williams. As noted in regards to claim 6, potential job applicants have access via password and permissions to the RRC external web site. Hiring Managers and Recruiters also have access to the web site, and additionally to the Alta Vista Forum 105. |

9

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                    ESP.1487

| | Therefore, different permissions are associated with the different levels of access and passwords. |
|---|---|

| Claim 11 of '372 Patent | Relevant disclosure in Williams (6,873,964) |
|---|---|
| A method of evaluation or assessment of persons, jobs, or employees comprising:<br>(a) assigning a password for a respondent; | Col. 3, lines 42-46:<br>The candidate is scheduled for an interview appointment and given a web site address, **user name, and password to access the RRC external website**, and instructions on the web site applications required to be downloaded and filled out prior to arriving at the RRC.<br>Col. 4, lines 19-27:<br>The RRC external web site 135 preferably serves as a vehicle to communication the following information:<br>Information on the participating business units<br>Information about living and working in the business unit's geographical area<br>Information on preparing for a successful interviwe<br>**Employment forms to download and fill out prior to arrival** |
| (b) initializing a set of permissions relative to the password; | Initializing permissions (b) is implicitly disclosed because the passage in Col. 3, lines 32-46 confirms that the candidate password exists and permissions must be initialized and enabled in order for the candidate to be able to **access** the web site and to **download** applications from the web site. |
| (c) providing an assessment instrument which gauges an individual potential employee's suitability with regards to a particular job, an individual | Col. 4; lines 31-37:<br>Upon accessing to the RRC Website 135, each candidate 85 downloads and preferably fills out the following **employment forms 130:**<br>**Job Application** |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                                    ESP.1487

| | |
|---|---|
| existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job to a respondent after verification of password; | EEO Form<br><br>Conflict of Interest Form<br><br>Security Form.<br><br>Job Applications are, by nature, assessments of a potential employee's suitability with regards to a particular job and must be completed by a respondent. |
| (d) receiving responses from the respondent to the assessment instrument; | Col. 4, lines 38-41:<br><br>All forms 130 are preferably **collected** upon each candidate's 85 arrival to the RRC, but could also be **electronically transferrable to the RRC for example utilizing the website 135**. |
| (e) processing the reports into an assessment report | **electronic candidate folder 110**<br><br>**form package 130** |
| (f) sending the assessment report to one or more locations authorized by the set of permissions associated with the password. | Content of the electronic candidate folder 110 is stored to the "Regional Recruiting Information System (RRIS) 140"<br><br>Col. 4, lines 42-47:<br><br>at the same time of the general briefing 27, the RRC Scheduler 85 begins to populate the Regional Recruiting Information System (RRIS) 140, an access database which houses the results of the interview day, with Candidate information 145 derived from the interviews, resume, phone interview, forms 130.<br><br>In addition to storing reports in the RRIS, the reports (form package 130, or parts of it) may be "sent" to different locations by:<br><br>Col. 5, lines 21-25:<br><br>Upon receiving a hardcopy of each candidate folder 110', the RRC Receptionist 150 provides the form package |

Request for Ex Parte Reexamination
Appendix B – Claim Chart - Williams                                          ESP.1487

|  | 130, with the exception of the Security Form 130', to the compensation analyst 185, and the Security Form 130' to the Security Manager 165. |
|  | <u>Col. 3, line 62-Col. 4, line 5:</u> |
|  | Referring now also to FIG. 5, upon completion of the electronic candidate folder 110 preparation, an electronic mail message 120 is sent to the Business Unit Hiring Managers 125, informing each manager 125 of the availability of candidate resumes 15 for review prior to arriving to the RRC for interviews. |
|  | Upon receiving an electronic mail notification 120 that resumes 15 are available on-line for review, Business Unit Hiring Managers 125 preferably review candidate resumes 15 prior to interview day.  Resumes 15 are accessed using the RRC Alta Vista Forum 105 via a web browser. |
|  | Implicitly, Hiring Managers and Recruiters must have permissions in order to access the RRC Alta Vista Forum 105 via the web browser in order to have access to forms 130. |

APPENDIX C
KERSHAW REFERENCE CLAIM CHART

**US 5,565,316**
**Filed: 22 June 1992**
**Issued: 15 October 1996**

Claims 1, 6 and 11 are obvious in view of US Patent No. 5,565,316 to Kershaw.

| Claim 1 of '372 Patent | Relevant disclosure in Kershaw (US 5,565,316) |
|---|---|
| 1. A method for managing distribution of assessment documents over a wide area comprising:<br><br>(a) providing an assessment instrument for completion by respondents; | Abstract, lines 4-5:<br>A test delivery system for delivering the computerized test to an examinee.<br>Abstract, lines 24-29:<br>A data distribution system is provided…an examinee performance database…a file processing component for receiving files from the computer based testing system…and updating the examinee performance database with information from those files.<br>Col. 4, lines 4-8:<br>The computer-based testing system in a preferred embodiment further comprises an administrative system for **initiating and terminating the delivery of the computerized test to an examinee**. Preferably, the administrative system also provides security to prevent access by unauthorized persons.<br>Col. 4, lines 23-25:<br>In a preferred embodiment, the method further comprises **administering the test to an examinee** and securing the test from access by unauthorized persons.<br><br>Col. 61, lines 33-37:<br>The overall function of the Network Data Distribution System (NDDS) is to process data returned to the central processing sites from the test centers and to distribute data |

| | |
|---|---|
| | to the appropriate program specific post processing systems.<br><br>Figs. 3-7.<br>Network Data Distribution System (NDDS) 18. |
| (b) assigning a password for an entity having a level of rights; | Col. 4, lines 7-8:<br>Preferably, the administrative system also provides security to prevent access to unauthorized persons.<br>Col. 4, lines 23-25:<br>Administering the test to an examinee and securing the test from access by unauthorized persons.<br>Col. 4, lines 37-38:<br>Protects the installed computerized test from access by unauthorized persons.<br>Col. 10, lines 34-44:<br>The Administrative Application 30 provides test center administrators with the ability to perform various functions including: **controlling access to computerized tests and related data through levels of authorization and password protection**; entering and editing examinee identification information prior to the testing session; selecting the test to administer; terminating tests; backing up examinee and administrative data; transmitting data to the central processing site; changing passwords and adding or deleting administrator logon IDs; and reporting irregularity and activity data to the central processing site.<br>Col. 58, lines 36-40:<br>The examinee can enter his or her Identification Number and/or other biographical information which identifies the examinee. |
| (c) initializing permissions relative to the password based on the level of rights for the | Col. 10, lines 49-54:<br>The Test Center Administrative Application Interface 36 **permits the transfer of applications and computerized** |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                                          ESP.1555

| entity, said permissions including at least one respondent password having permissions based on the level of rights for a respondent; | **tests to the test center** and examinee records and reporting information (data related to system errors and test/workstation security) from the test centers to the central processing site.<br><br>Col. 30, lines 61-66:<br>The administrative application 511 of the Administrative system permits the administrator to initialize each workstation at the start of the day, to sign an examinee onto a workstation, to start a testing session, and to close each station at the end of the day.<br><br>Col. 46, lines 12-20:<br>The administrator may enter his or her ID and password...Once the administrator correctly enters his or her ID and password, the Administration Application Initialization Procedure 306 displays a main menu.<br><br>Col. 46, lines 50-52:<br>If the Adminstrator selects "Proceed" he/she must **enter a valid logon and password** and is **then presented** with an edit screen.<br><br>Col. 52, lines 8-11:<br>If a match is found, program control is returned to the Start_System_Procedure indicating that the administrator has successfully logged on with the default password. |
| (d) allowing the entity access to a web site on a global computer network and enabling the initialized permissions for the entity; | Col. 10, lines 34-44<br>"controlling access to computerized tests and related data through levels of authorization and password protection," (implying allowing certain entities access to the computerized test based on levels of permissions.)<br><br>Col. 61, lines 44-48:<br>Preferably the NDDS software supports a multi-user menu |

| | |
|---|---|
| | based system.  Although, **it should be understood that substantially any computer system could be used**, the NDDS application software is preferably run on a LAN located at the central processing site.<br><br>Col. 30, lines 43-47:<br>The test program 514 and CBT files 516 are administration system files and are preferably stored on the work station or server (if workstations are networked via local area network) hard disk prior to delivery of a computerized test to an examinee.<br><br>Kershaw does not explicitly disclose a "web site on a global computer network."  However, It would be obvious for one of skill in the art to substitute a known LAN connection with a known wide area connection for predictable results.  Furthermore, it is understood that methods suitable for LAN are also suitable for wide area or global networks.  Since the method would be carried out the same in either instance, it is obvious in view of Kershaw. |
| (e)   providing   an   assessment instrument   to   the   respondent which   gauges   an   individual potential  employee's  suitability with regards to a particular job, an        individual        existing employee's     suitability     or performance  with  regards  to  a particular  job,  or  an  individual boss's performance with regards to a particular job; | Col. 9, lines 6-7:<br>The Test Delivery System 12 actually presents questions and information to the examinee at a workstation.<br>Col. 8, lines 39-41:<br>Each test center 2 provides at least one workstation 3 on which **a  computerized  test  is  administered  to  an examinee**.<br>Col. 1, lines 12-14:<br>For many years standardized tests have been administered to examinees for various reasons such as for educational testing **or for evaluating particular skills**.<br><br>The tested person being a potential employee, an existing |

| | |
|---|---|
| | employee, or a boss does not bring anything inventive and a person skilled in the art would be able to use the method of claim 1 to test employee suitability or performance with predictable results. Therefore, this particular claim limitation is obvious in view of Kershaw. |
| (f) receiving responses from the respondent to the assessment instrument; <br><br> (g) processing the responses into an assessment report | Col. 8, lines 50-55: <br> The examinee's **responses to questions presented on the test are preferably stored on the hard disk on each workstation** 3 and are later preferably backed-up by the administrator and transferred to the central processing site 1 for scoring and evaluation. <br> Col. 26, lines 25-27: <br> The scoring and reporting unit provides for scoring, and optionally reporting, the results of one or more testing units delivered in a session. <br> Col. 26, lines 33-42 <br> The scoring and reporting unit preferably invokes the Educational Testing Services SKM (Scoring and Key Management) routines to return the following information: the score name for insertion into the **score report**, such as "Reading" or "Antonyms"; the score type for insertion into the score report, such as "number right," "percentile," or "converted score"; the **score value, such as "650" or "passed"**. It should be understood that any automated scoring system which provides this information can be used or the information may be provided directly by a user. <br> Col. 10, lines 57-60: <br> The NDDS 18 uses a Test Center Information Database 40 to determine which test centers should be sent any new/revised tests, and to **create reports** from data received from the test centers. |
| | |

| | |
|---|---|
| (h) sending the assessment report to one or more locations authorized by the permissions. | Col. 10, line 57-Col. 11, line 2:<br><br>The NDDS 18 uses a Test Center Information Database 40 to determine which test centers should be sent any new/revised tests, and to create reports from data received from the test centers. The NDDS Processing component 44 receives data from test centers 2 via Administrative Application Interface 36, checks it, sorts it, and processes it according to its type (program data, security data and reporting data). Reporting data is used to create the necessary reports. Program data such as examinee records, are processed to consolidate and reformat the information in a form suitable for postprocessing. The Distribution Interface 38 then distributes the processed data to the Postprocessing System 16. |

| **Claim 6 of '372 Patent** | **Relevant disclosure in Kershaw (5,565,316)** |
|---|---|
| A system for managing assessments comprising:<br>(a) a plurality of terminals each adapted to access a wide area network; | <br>*FIG. 3*<br>A plurality of workstations 3 are shown in Figure 3.<br>Col. 61, lines 44-48:<br>Preferably the NDDS software supports a multi-user menu based system.  Although, **it should be understood that substantially any computer system could be used**, the |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                    ESP.1555

| | |
|---|---|
| | NDDS application software is preferably run on a LAN located at the central processing site.<br><br>Col. 30, lines 43-47:<br><br>The test program 514 and CBT files 516 are administration system files and are preferably stored on the work station or server (if workstations are networked via local area network) hard disk prior to delivery of a computerized test to an examinee.<br><br>Kershaw does not explicitly disclose a wide area network. However, It would be obvious for one of skill in the art to substitute a known LAN connection with a known wide area connection for predictable results. Furthermore, it is understood that methods suitable for LAN are also suitable for wide area or global networks. Since the method would be carried out the same in either instance, it is obvious in view of Kershaw. |
| (b) a central server; | Col. 30, lines 39-47:<br><br>A block diagram on the Test Delivery System 12 is shown in Fig. 31. A test delivery application (TDA) 510 controls the test session, as directed by the test program 514, CBT files 516, and test delivery application data (TDA data) 512. The test program 514 and CBT files 516 are administration system files and are preferably stored on the work station **or server (if workstations are networked via local area network)** hard disk prior to delivery of a computerized test to an examinee. |
| (c) software associated with the central server which administers a web site and which provides permissions; | Col. 30, lines 62-66:<br><br>The **administrative application 511** of the administrative system **permits the administrator to initialize each workstation** at the start of the day, to sign an examinee onto a workstation, to start a testing session, and to close each station at the end of the day. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                        ESP.1555

| | |
|---|---|
| | Col. 31, lines 4-8: <br><br> In a preferred embodiment, when the administrator completes the procedure to sign an examinee onto a workstation and selects a test at 500, the Test Delivery Application is invoked.  The Test Delivery Application **reads the session script and executes the units it prescribes**.  When the end of the session script is reached, the Test Delivery Application returns control to the Administrative Application. <br><br> Again, Kershaw does not disclose the use of a website. However, as noted above, the method and system of Kershaw could as easily be implemented via a web site over a wide area network, as a wide area network is a known substitution for a local area network, and would be obvious to one of skill in the art. |
| (d) a password having a set of permissions correlated to a respondent for an assessment survey which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance, with regards to a particular job, or an individual boss's performance with regards to a particular job; | Col. 10, lines 34-44: <br><br> The Administrative Application 30 provides test center administrators with the ability to perform various functions including: **controlling access to computerized tests and related data through levels of authorization and password protection**; entering and editing examinee identification information prior to the testing session; selecting the test to administer; terminating tests; backing up examinee and administrative data; transmitting data to the central processing site; changing passwords and adding or deleting administrator logon IDs; and reporting irregularity and activity data to the central processing site. <br> Col. 9, lines 6-7: <br><br> The Test Delivery System 12 actually presents questions and information to the examinee at a workstation. <br> Col. 8, lines 39-41: <br><br> Each test center 2 provides at least one workstation 3 on |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                    ESP.1555

| | |
|---|---|
| | which **a computerized test is administered to an examinee**.<br><br>Col. 1, lines 12-14:<br><br>For many years standardized tests have been administered to examinees for various reasons such as for educational testing **or for evaluating particular skills**.<br><br>The tested person being a potential employee, an existing employee, or a boss does not bring anything inventive and a person skilled in the art would be able to use the method of claim 1 to test employee suitability or performance with predictable results.   Therefore, this particular claim limitation is obvious in view of Kershaw. |
| (e) a password having a set of permissions correlated to an entity interested in the respondent's responses to the assessment survey specifics. | Col. 45; lines 58-67:<br><br>The center unique disk contains three types of files; the key file, the logon file and the security file. The key file contains a unique code assigned to the test center and the test center name.   The logon file contains the administrative application logon ID, password, authority level, and the names of each person at the test center authorized to use the CBT system. Authority levels are associated with menu options of the administrative application; preferably no administrator can execute options that require higher **authority levels than that assigned his/her login ID in the logon file.** The security file contains some portion of code, such as a Dynamic Link Library, that is used by the Test Delivery system. Optimally, the test delivery application cannot be started without the information in the security file on the Center Unique Disk, which prevents unauthorized access to the delivery system.<br><br>Col. 10, lines 4-12:<br><br>FIG. 6 shows a block diagram of the Administrative |

|  |  |
|---|---|
|  | System 14 and Test Delivery System 12 and their respective interfaces as shown in FIG. 4. The Administrative System 14 permits test center administrators to control delivery of tests, transmit results to a central processing site, and perform administrative functions such as backup of data, item and software maintenance, and **reporting**. The Administrative System 14 further prohibits access to the computerized test by unauthorized persons. <br><br> Col. 10; lines 34-44: <br><br> The Administrative Application 30 **provides test center administrators** with the ability to perform various functions including: controlling access to computerized tests and related data through **levels of authorization and password protection**; entering and editing examinee identification information prior to the testing session; selecting the test to administer; terminating tests; backing up examinee and administrative data; transmitting data to the central processing site; changing passwords and adding or deleting administrator logon IDs; and reporting irregularity and activity data to the central processing site. |

| **Claim 11 of '372 Patent** | **Relevant disclosure in Sonnenfeld (6,112,049)** |
|---|---|
| A method of evaluation or assessment of persons, jobs, or employees comprising: <br> (a) assigning a password for a respondent; | Col. 10, lines 34-44: <br><br> The Administrative Application 30 provides test center administrators with the ability to perform various functions including: **controlling access to computerized tests and related data through levels of authorization and password protection**; entering and editing examinee identification information prior to the testing session; selecting the test to administer; terminating tests; backing up examinee and administrative data; transmitting data to |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                        ESP.1555

| | the central processing site; changing passwords and adding or deleting administrator logon IDs; and reporting irregularity and activity data to the central processing site. |
|---|---|
| (b)   initializing   a   set   of permissions   relative   to   the password; | Col. 10, lines 49-54: The Test Center Administrative Application Interface 36 **permits the transfer of applications and computerized tests to the test center** and examinee records and reporting information (data related to system errors and test/workstation security) from the test centers to the central processing site. Col. 30, lines 61-66: The administrative application 511 of the Administrative system permits the administrator to initialize each workstation at the start of the day, to sign an examinee onto a workstation, to start a testing session, and to close each station at the end of the day. |
| (c)   providing   an   assessment instrument   which   gauges   an individual   potential   employee's suitability   with   regards   to   a particular   job,   an   individual existing employee's suitability or performance   with   regards   to   a particular job, or an individual boss's performance with regards to   a   particular   job   to   a respondent   after   verification   of password; | Col. 4, lines 4-8: The computer-based testing system in a preferred embodiment further comprises an administrative system for **initiating and terminating the delivery of the computerized test to an examinee**. Preferably, the administrative system also provides security to prevent access by unauthorized persons. Col. 4, lines 23-25: In a preferred embodiment, the method further comprises **administering the test to an examinee** and securing the test from access by unauthorized persons. Col. 1, lines 12-14: For many years standardized tests have been administered to examinees for various reasons such as for educational testing **or for evaluating particular skills**. The tested person being a potential employee, an existing |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                    ESP.1555

| | |
|---|---|
| | employee, or a boss does not bring anything inventive and a person skilled in the art would be able to use the method of claim 1 to test employee suitability or performance with predictable results.   Therefore, this particular claim limitation is obvious in view of Kershaw. |
| (d) receiving responses from the respondent to the assessment instrument; <br> (e) processing the reports into an assessment report | Col. 8, lines 50-55: <br> The examinee's **responses to questions presented on the test are preferably stored on the hard disk on each workstation** 3 and are later preferably backed-up by the administrator and transferred to the central processing site 1 for scoring and evaluation. <br> Col. 26, lines 25-27: <br> The scoring and reporting unit provides for scoring, and optionally reporting, the results of one or more testing units delivered in a session. <br> Col. 26, lines 33-42 <br>  The scoring and reporting unit preferably invokes the Educational Testing Services SKM (Scoring and Key Management) routines to return the following information: the score name for insertion into the **score report**, such as "Reading" or "Antonyms"; the score type for insertion into the score report, such as "number right," "percentile," or "converted score"; the **score value, such as "650" or "passed"**. It should be understood that any automated scoring system which provides this information can be used or the information may be provided directly by a user. <br> Col. 10, lines 57-60: <br> The NDDS 18 uses a Test Center Information Database 40 to determine which test centers should be sent any new/revised tests, and to **create reports** from data received from the test centers. |
| (f) sending the assessment report | Col. 10, line 57-Col. 11, line 2: |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix C – Claim Chart - Kershaw                                              ESP.1555

| | |
|---|---|
| to one or more locations authorized by the set of permissions associated with the password. | The NDDS 18 uses a Test Center Information Database 40 to determine which test centers should be sent any new/revised tests, and to create reports from data received from the test centers. The NDDS Processing component 44 receives data from test centers 2 via Administrative Application Interface 36, checks it, sorts it, and processes it according to its type (program data, security data and reporting data). Reporting data is used to create the necessary reports. Program data such as examinee records, are processed to consolidate and reformat the information in a form suitable for postprocessing. The Distribution Interface 38 then distributes the processed data to the Postprocessing System 16. |

**APPENDIX D**
**IBARRA & BROOMHALL REFERENCE CLAIM CHART**

**US 6,119, 097- Ibarra**
**App. Ser. No. 08/978,532**
**Filed: 26 November 1997**
**Issued: 12 September 2000**

**US 6,292,904- Broomhall**
**App. Ser. No. 09/213,029**
**Filed: 16 December 1998**
**Issued: 18 September 2001**

Claims 1-11 are obvious over US Pat. No. 6,119,097 to Ibarra in view of US Patent No. 6,292,904 to Broomhall.

| Claim 1 of '372 Patent | Relevant disclosure in Ibarra (6,119,097) and Broomhall (6,292,904) |
|---|---|
| 1. A method for managing distribution of assessment documents over a wide area comprising:<br>(a) providing an assessment instrument for completion by respondents; | Ibarra, Col. 11, lines 1-2<br>The system can be a stand alone computer, or be implemented on a computer network.<br>Ibarra, Col. 11, lines 12-57<br>A method for utilizing a computer system for measuring and improving an employee's job performance….<br>Ibarra, Abstract, lines 1-2<br>A method and apparatus which enables a supervisor to quantify job performance characteristics.<br>Ibarra, Abstract, lines 9-12<br>A monthly evaluation of the person to determine whether or not the objective activities are being accomplished.<br>Ibarra, Col. 2, lines 52-54<br>The supervisor is provided with an employee problem-solving worksheet on a computer display..<br>Ibarra, Col. 8, lines 11-13<br>The menu option is directed towards the calculation and display of a performance appraisal summary for an employee. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| | |
|---|---|
| | Ibarra, Col. 8, lines 22-23 |
| | The performance appraisal summary is automatically generated by the system for a manager to fill in. |
| | Ibarra, Col. 8, lines 50-52 |
| | Fig. 6 is a snapshot of a computer display showing the performance appraisal summary. |
| (b) assigning a password for an entity having a level of rights; | Ibarra, Col. 10, lines 48-50 |
| | The system administrator will also obtain a login ID and password from the system for use by the new employee. |
| (c) initializing permissions relative to the password based on the level of rights for the entity, said permissions including at least one respondent password having permissions based on the level of rights for a respondent; | Broomhall, Abstract, lines 1-5 |
| | Providing secure user account identifiers and passwords to facilitate sharing of data. |
| | Broomhall, Col. 3, lines 21-24 |
| | Databases 205-207 contain the user ID's and passwords for the system users 120-1, …., 120-n and 105.  These three databases correspond to three different types of users. |
| (d) allowing the entity access to a web site on a global computer network and enabling the initialized permissions for the entity; | Ibarra, Col. 6, lines 24-27 |
| | The employee is asked by the system to enter the employee's password. |
| | Ibarra, Col. 7, lines 27-29 |
| | If the employee has closed the check-up session by entering the employee's password, no modification is possible through this menu option.  Re-access requires that the system administrator enable this option. |
| | Ibarra, Col. 9, lines 32-34 |
| | The manager's password only enables viewing of performance summaries for employees within the |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| | |
|---|---|
| | manager's department. |
| | Ibarra, Claim 16, Col. 12, lines 58-67 |
| | assigning a password to each employee whose job performance is being monitored; |
| | assigning a password to each supervisor; and |
| | requiring the employee's password and the supervisor's password to view or modify job performance information. |
| | Broomhall, Col. 4, lines 37-41 |
| | This feature prevents a person from fraudulently generating and using an account under another employee's name thereby enhancing the security of the system. |
| | Broomhall, Col. 5, lines 8-10 |
| | The highest access level offered to an external user may be different from that available to internal users. |
| | Broomhall, Col. 3, lines 32-35 |
| | The administrative engine (the "front end" accessible by the requester" is a Web application, accessible by a Web browser. |
| | Broomhall, Col. 3, lines 46-66 |
| | Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |
| | Ibarra, Col. 10, line 66 to Col. 11, line 3 |
| | A computer system that is capable of implementing the presently preferred embodiments can be a standalone personal computer, or be implemented on a computer network. |
| | |

| | |
|---|---|
| (e) providing an assessment instrument to the respondent which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job; | Ibarra, Col. 2, lines 52-65<br><br>First, the supervisor is provided with an employee problem-solving worksheet on a computer display. The problem-solving worksheet is where the supervisor, together with the employee, identifies objective standards for the employee. These standards are typically all facets of the bottom line goals for the employee. This worksheet forces the employer and the employee to identify exactly what the employee should be accomplishing. Associated with each standard are tasks or activities which are all directed toward helping the employee to at least meet the standard. Therefore, by looking at how close the employee is to meeting the standard, the employee and the employer can determine which activities are most likely to result in the employee at least meeting the standard.<br><br>Ibarra, Col. 2, line 66 to Col. 3, lines 5<br><br>Regarding the category of job and technical knowledge, the items that are scored are (1) Knows all aspects of the job, and (2) Adheres to policies and standards. Regarding the category of administrative, the items that are scored are (1) Planning and organization, (2) Accuracy of paperwork, (3) Forecasting and executing, and (4) Proper use of standards system. Regarding the category of leadership skills, the items that are scored are (1) Utilization of team concept, (2) Clarity of assignments, (3) Solves employee problems quickly, and (4) Respected by peers. Regarding the category of problem solving, the items that are scored are (1) Identifies problems early, (2) Solves problems logically, and (3) Displays creative thinking. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                    ESP.1555

| | |
|---|---|
| | <u>Ibarra, Col. 8, lines 22-39</u><br><br>The <u>performance appraisal summary</u> is automatically generated by the system for the manager to fill in after a cycle is completed. In this way, no one is forgotten when it comes time for a review. The month before the normally scheduled review, two blank copies of the summary will be printed during the normal "Check-up from the Neck-up" review session. The blank <u>copies are distributed to the manager and the employee</u>. Both parties write down their own perceptions of the employee's performance. The following month, when the performance appraisal actually occurs, the hand written summaries serve to open a dialogue between the manager and the employee. If differences occur, both parties should be open for dialogue. The manager's perceptions may or may not change as a result of the dialogue. However, the employee's input is not only valued and needed, it lets the employee know that there is a forum for discussion. |
| (f) receiving responses from the respondent to the assessment instrument; | <u>Ibarra, Col. 3, lines 42-44</u><br><br>Fig. 6 is a screen snapshot of a <u>performance appraisal summary</u> data entry screen, where the manager enters a score for each of the items listed under four categories.<br><u>Ibarra, Col. 8, line 58 to Col. 9, line 3</u><br><br>Regarding the category of job and technical knowledge, the items that are scored are (1) Knows all aspects of the job, and (2) Adheres to policies and standards. Regarding the category of administrative, the items that are scored are (1) Planning and organization, (2) Accuracy of |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                    ESP.1555

| | |
|---|---|
| | paperwork, (3) Forecasting and executing, and (4) Proper use of standards system. Regarding the category of leadership skills, the items that are scored are (1) Utilization of team concept, (2) Clarity of assignments, (3) Solves employee problems quickly, and (4) Respected by peers. Regarding the category of problem solving, the items that are scored are (1) Identifies problems early, (2) Solves problems logically, and (3) Displays creative thinking.<br><br>Ibarra, Col. 9, lines 6-7<br>Once a score has been highlighted for an item, it is recorded.  During scoring, it is also possible to type in any applicable comments for each of the four categories.<br>Ibarra, Col. 9, lines 11-13<br>It is then possible to make additional comments regarding the averaged score.<br>Ibarra, Col. 9, lines 15-17<br>The employee and the manager are both given the opportunity to make any last comments which are then recorded. |
| (g)  processing the responses into an assessment report | Ibarra, Col. 9, lines 8-10<br>After scoring is complete, a summary score is provided which is an average of all the scores entered during the appraisal…The system will also provide an overall summary of the employee's professional development, the year-to-date standards (check-up score), and a combined summary of the check-up scores.<br>Ibarra, Col. 9, lines 12-15<br>The system will also provide an overall summary…and a combined summary of the check-up scores. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| (h) sending the assessment report to one or more locations authorized by the permissions. | Ibarra, Col. 9, lines 31-37 <br><br> By selecting this option, a manager can view a performance summary for all employees in any selected department. The manager's password only enables viewing of performance summaries for employees within the manager's department. However, the manager can also pull up detail of any employee's standards, problem-solving worksheets and performance appraisals. <br><br> Broomhall, Col. 8, lines 56-60 <br> This is an advantage for groups…who wish to exchange sensitive information in a secure manner. |
|---|---|

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| Claim 2 of '372 Patent | Relevant disclosure in Ibarra (6,119,097) |
|---|---|
| 2. The method according to claim 1 wherein the permissions associated with a master distributor level of rights include (a) ability to create response links and passwords | Ibarra, Col. 10, lines 41-50<br>The description above has always assumed that the employee for which the activity revolved around was already in existence within the database. However, first time setup or initialization of the system involves several steps. Before setting up a new employee, it is required that the manager first contact the system administrator. The system administrator adds the new employee by entering personal data (i.e. title, hire date, and birth date). The system administrator will also obtain a login ID and password from the system for use by the new employee. |

In regards to claims **3 and 4** which claim a distributor and client level of rights, the same references apply as for claim 2.  Naming of the distributor level or client level does not bring anything inventive to claims 3 and 4. The only difference between claim 3 and claim 2 is the lack of changing others' account options that is already anticipated with respect to claim 2. The only difference between claim 4 and claim 2 is the lack of the ability to set up new accounts and the ability to change others' account options that are anticipated with respect to claim 2.

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| Claim 5 of '372 Patent | Relevant disclosure in Ibarra |
|---|---|
| 5. The method according to claim 1 wherein the permissions associated with a respondent level of rights include (a) respond to an assigned assessment instrument. | <u>Ibarra, Claim 16, Col. 2, lines 58-67</u><br>The method as defined in claim 15 wherein the method of implementing the security system further comprises the steps of:(1) assigning a password to each employee whose job performance is being monitored;(2) assigning a password to each supervisor; and(3) requiring the employee's password and the supervisor's password to view or modify job performance information. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                          ESP.1555

| Claim 6 of '372 Patent | Relevant disclosure in Ibarra and Broomhall |
|---|---|
| A system for managing assessments comprising:<br>(a) a plurality of terminals each adapted to access a wide area network;<br>(b) a central server; | Ibarra, Fig. 13<br><br>*Fig. 13*<br><br>Broomhall, Fig. 1<br><br>FIG. 1 |
| (c) software associated with the central server which administers a web site and which provides permissions; | Broomhall, Fig. 2 |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                           ESP.1555

| | |
|---|---|
| | <br><br>FIG. 2<br><br>Broomhall, Col. 3, lines 21-24<br><br>Databases 205-207 contain the user ID's and passwords for the system users 120-1, …., 120-n and 105.  These three databases correspond to three different types of users. |
| (e) a password having a set of permissions correlated to an entity interested in the respondent's responses to the assessment survey specifics. | Ibarra, Claim 16, Col. 2, lines 58-67<br><br>The method as defined in claim 15 wherein the method of implementing the security system further comprises the steps of: (1) assigning a password to each employee whose job performance is being monitored;(2) assigning a password to each supervisor; and(3) requiring the employee's password and the supervisor's password to view or modify job performance information.<br><br>Ibarra, Col. 9, lines 31-36<br><br>By selecting this option, a manager can view a performance summary for all employees in any selected department. The manager's password only enables viewing of performance summaries for employees within the manager's department. However, the manager can also pull up detail of any employee's standards, problem- |

Page **12** of **21**

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                ESP.1555

|  | solving worksheets and performance appraisals.<br><br>Broomhall, Col. 5, lines 8-10<br>The highest access level offered to an external user may be different from that available to internal users.<br>Broomhall, Col. 3, lines 46-66<br>Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |
|---|---|

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| Claim 7 of '372 Patent | Relevant disclosure in Ibarra |
|---|---|
| 7. The system of claim 6 wherein the assessment relates to job or personal performance of a human. | Ibarra, Claim 1, Col. 11, lines 12-57<br>A method for utilizing a computer system for measuring and improving an employee's job performance |

| Claim 8 of '372 Patent | Relevant disclosure in Ibarra |
|---|---|
| 8. The system of claim 6 wherein the assessment survey is electronic in nature or is hard copy in nature. | Ibarra, Col. 2, lines 52-65<br>First, the supervisor is provided with an employee **problem-solving worksheet on a computer display**. The problem-solving worksheet is where the supervisor, together with the employee, identifies objective standards for the employee. These standards are typically all facets of the bottom line goals for the employee. This worksheet forces the employer and the employee to identify exactly what the employee should be accomplishing. Associated with each standard are tasks or activities which are all directed toward helping the employee to at least meet the standard. Therefore, by looking at how close the employee is to meeting the standard, the employee and the employer can determine which activities are most likely to result in the employee at least meeting the standard.<br>Ibarra, Col. 8, lines 22-39<br>The performance appraisal summary is automatically generated by the system for the manager to fill in after a cycle is completed. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                        ESP.1555

| Claim 9 of '372 Patent | Relevant disclosure in |
|---|---|
| 9. The system of claim 6 wherein the report is electronic in nature or is hard copy in nature. | Ibarra, Col. 9, lines 4-20<br>The system will also provide an overall summary of the employee's professional development, the year-to-date standards (check-up score), and a combined summary of the check-up scores. |

| Claim 10 of '372 Patent | Relevant disclosure in Ibarra |
|---|---|
| 10. The system of claim 6 wherein the set of permissions can vary from password to password. | Ibarra, Claim 16, Col. 12, lines 57-67<br>implementing the security system further comprises the steps of:(1) assigning a password to each employee whose job performance is being monitored;(2) assigning a password to each supervisor; and(3) requiring the employee's password and the supervisor's password to view or modify job performance information.<br>Ibarra, Col. 9, lines 31-36<br>The manager's password only enables viewing of performance summaries for employees within the manager's department. However, the manager can also pull up detail of any employee's standards, problem-solving worksheets and performance appraisals.<br><br>Broomhall, Col. 3, lines 21-24<br>Databases 205-207 contain the user ID's and passwords for the system users 120-1, …., 120-n and 105.  These |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| | |
|---|---|
| | three databases correspond to three different types of users. |
| | <u>Broomhall, Col. 4, lines 37-41</u> |
| | This feature prevents a person from fraudulently generating and using an account under another employee's name thereby enhancing the security of the system. |
| | <u>Broomhall, Col. 5, lines 8-10</u> |
| | The highest access level offered to an external user may be different from that available to internal users. |
| | <u>Broomhall, Col. 3, lines 46-66</u> |
| | Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| Claim 11 of '372 Patent | Relevant disclosure in Ibarra |
|---|---|
| A method of evaluation or assessment of persons, jobs, or employees comprising:<br>(a) assigning a password for a respondent; | Ibarra, Claim 1, Col. 11, lines 12-57<br>A method for utilizing a computer system for measuring and improving an employee's job performance through identification and monitoring of at least one quantifiable and objective standard by assigning at least one quantifiable and objective activity to the employee and storing the at least one quantifiable and objective activity in the computer system…<br>Ibarra, Claim 16, Col. 12, lines 58-67<br>The method as defined in claim 15 wherein the method of implementing the security system further comprises the steps of:(1) assigning a password to each employee whose job performance is being monitored;(2) assigning a password to each supervisor.<br>Broomhall, Abstract, lines 1-5<br>Providing secure user account identifiers and passwords to facilitate sharing of data.<br><br>Broomhall, Col. 3, lines 21-24<br>Databases 205-207 contain the user ID's and passwords for the system users 120-1, …., 120-n and 105.  These three databases correspond to three different types of users. |
| (b) initializing a set of permissions relative to the password; | Ibarra, Claim 16, Col. 12, lines 65-67<br>requiring the employee's password and the supervisor's password to view or modify job performance information. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                    ESP.1555

| | |
|---|---|
| | Broomhall, Col. 4, lines 37-41<br><br>This feature prevents a person from fraudulently generating and using an account under another employee's name thereby enhancing the security of the system.<br><br>Broomhall, Col. 5, lines 8-10<br><br>The highest access level offered to an external user may be different from that available to internal users.<br><br>Broomhall, Col. 3, lines 46-66<br><br>Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |
| (c) providing an assessment instrument which gauges an individual potential employee's suitability with regards to a particular job, an individual existing employee's suitability or performance with regards to a particular job, or an individual boss's performance with regards to a particular job to a respondent after verification of password; | Ibarra, Col. 2., lines 52-65<br><br>First, the supervisor is provided with an employee problem-solving worksheet on a computer display. The problem-solving worksheet is where the supervisor, together with the employee, identifies objective standards for the employee. These standards are typically all facets of the bottom line goals for the employee. This worksheet forces the employer and the employee to identify exactly what the employee should be accomplishing.<br><br>Ibarra, Col. 8, lines 22-39<br><br>The performance appraisal summary is automatically generated by the system for the manager to fill in after a cycle is completed. In this way, no one is forgotten when it comes time for a review. The month before the normally scheduled review, two blank copies of the summary will be printed during the normal "Check-up from the Neck-up" review session. The blank copies are |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                                    ESP.1555

| | |
|---|---|
| | distributed to the manager and the employee. Both parties write down their own perceptions of the employee's performance. The following month, when the performance appraisal actually occurs, the hand written summaries serve to open a dialogue between the manager and the employee. If differences occur, both parties should be open for dialogue. The manager's perceptions may or may not change as a result of the dialogue. However, the employee's input is not only valued and needed, it lets the employee know that there is a forum for discussion.<br><br>Broomhall, Col. 3, lines 46-66<br>Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |
| (d) receiving responses from the respondent to the assessment instrument; | Ibarra, Col. 2, line 66-Col. 3, line 5<br>An integral part of the method is a monthly evaluation of each employee with the employee's supervisor. Hard data is entered into the worksheet because the activities are all objective.<br>Ibarra, Col. 3, lines 42-44<br>Fig. 6 is a screen snapshot of a performance appraisal summary data entry screen, where the manager enters a score for each of the items listed under four categories.<br>Ibarra, Col. 8, line 58-Col. 9, line 3<br>Regarding the category of job and technical knowledge, the items that are scored are (1) Knows all aspects of the job, and (2) Adheres to policies and standards. Regarding the category of administrative, the items that |

| | |
|---|---|
| | are scored are (1) Planning and organization, (2) Accuracy of paperwork, (3) Forecasting and executing, and (4) Proper use of standards system. Regarding the category of leadership skills, the items that are scored are (1) Utilization of team concept, (2) Clarity of assignments, (3) Solves employee problems quickly, and (4) Respected by peers. Regarding the category of problem solving, the items that are scored are (1) Identifies problems early, (2) Solves problems logically, and (3) Displays creative thinking. |
| (e) processing the reports into an assessment report | Ibarra, Col. 9, lines 4-20 <br><br> The system will also provide an overall summary of the employee's professional development, the year-to-date standards (check-up score), and a combined summary of the check-up scores. |
| (f) sending the assessment report to one or more locations authorized by the set of permissions associated with the password. | Ibarra, Col. 9, lines 24-36 <br><br> Fig. 7 is a flowchart of the fifth selectable option (Leadership Quickscan) in the menu of Fig. 1. The menu option is directed towards administrative tasks for controlling the computer database which organizes employees and supervisors into departments, thereby allowing the organizational structure of a company to be viewed at a glance. <br><br> By selecting this option, a manager can view a performance summary for all employees in any selected department. The manager's password only enables viewing of performance summaries for employees within the manager's department. |

Request for *Inter Partes* Reexamination
In Re: US Patent No. 7,249,372 B1
Appendix D – Claim Chart – Ibarra & Broomhall                              ESP.1555

| |
|---|
| Broomhall, Col. 8, lines 56-60<br><br>This is an advantage for groups…who wish to <u>exchange sensitive information</u> in a secure manner.<br><br>Broomhall, Col. 3, lines 46-66<br><br>Launching a form 350…for the user to supply his personal ID number…If a match is found (step 403), the data for the employee is displayed in a table (step 404). |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | |
| Filing Date | | |
| First Named Inventor | Bill Bonnstetter | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket  Number | ESP.1555.REEX | |

| U.S.PATENTS | | | | | |
|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 6112049 | | 2000-08-29 | Sonnenfeld | |
| | 2 | 6873964 | B1 | 2005-03-29 | Williams et al. | |
| | 3 | 5565316 | | 1996-10-15 | Kershaw et al. | |
| | 4 | 6119097 | | 2000-09-12 | Ibarra | |
| | 5 | 6292904 | B1 | 2001-09-18 | Broomhall et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | |
|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

**FOREIGN PATENT DOCUMENTS**

EFS Web 2.1.17

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

( **Not for submission under 37 CFR 1.99**)

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Bill Bonnstetter |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | ESP.1555.REEX |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

| NON-PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

| EXAMINER SIGNATURE | | | |
|---|---|---|---|
| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Bill Bonnstetter |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | ESP.1555.REEX |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99** )

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

### SIGNATURE
 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /gcz44004/ | Date (YYYY-MM-DD) | 2011-06-06 |
|---|---|---|---|
| Name/Print | Geza C. Ziegler, Jr | Registration Number | 44004 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10241957 |
| **Application Number:** | 95001641 |
| **International Application Number:** | |
| **Confirmation Number:** | 1160 |
| **Title of Invention:** | NETWORK BASED DOCUMENT DISTRIBUTION METHOD |
| **First Named Inventor/Applicant Name:** | Bill J. Bonnstetter |
| **Customer Number:** | 93582 |
| **Filer:** | GEZA C ZIEGLER JR/Fran Snow |
| **Filer Authorized By:** | GEZA C ZIEGLER JR |
| **Attorney Docket Number:** | ESP.1555.REEX |
| **Receipt Date:** | 06-JUN-2011 |
| **Filing Date:** | |
| **Time Stamp:** | 16:42:55 |
| **Application Type:** | inter partes reexam |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 8800 |
| RAM confirmation Number | 3708 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Transmittal Letter | 1555_InterPartesTransmittalForm110606.pdf | 415772<br>ae9892fc4158ef1fbc12437c16c0fdf9d1590599 | no | 3 |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Copy of patent for which reexamination is requested | 1555_Copy_USPatent7249372.pdf | 284679<br>69534ccbf884959f55aad21a39eab1e0b8d626ec | no | 25 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Receipt of Original Inter Partes Reexam Request | 1555_ReexamRequestBrief110606.pdf | 2297121<br>99c2947611a1b242f62581652b38b8a509599d4c | no | 17 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Receipt of Original Inter Partes Reexam Request | 1555_AppendixA_ClaimChart_Sonnenfeld.pdf | 262004<br>7a6203e3504e1e0f3e07c33cd5a46aa32ff7f094 | no | 19 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Receipt of Original Inter Partes Reexam Request | 1555_AppendixB_ClaimChart_Williams.pdf | 222661<br>c8f47ea4ce261772a1fe6f9690d02c4bc2605945 | no | 12 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Receipt of Original Inter Partes Reexam Request | 1555_AppendixC_ClaimChart_Kershaw.pdf | 209937<br>1cb527191c41ded77db8438725b777baab520ccc | no | 13 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 7 | Receipt of Original Inter Partes Reexam Request | 1555_AppendixD_ClaimChart_Ibarra.pdf | 261830<br>9e0058a3216f35fabfbbf988ca6c57c0789258ca | no | 21 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Information Disclosure Statement (IDS) Form (SB08) | 1555_IDS110606.pdf | 612295<br>a26ada73d77dc5ecdfd55e9b051b6e5b837b0903 | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Reexam Miscellaneous Incoming Letter | US6112049_Sonnenfeld.pdf | 481215<br>2bdf74fe970eb519b2e531ce0909c56d4128849f | no | 41 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| 10 | Reexam Miscellaneous Incoming Letter | US6873964_Williams.pdf | 272945<br><br>8726f958222acba65465d6661b583462026 71f84 | no | 20 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 11 | Reexam Miscellaneous Incoming Letter | US5565316_Kershaw.pdf | 8249534<br><br>bdd72f56a7215fbe1260ee1886fbbfe6fc12 a03d | no | 466 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 12 | Reexam Miscellaneous Incoming Letter | US6119097_Ibarra.pdf | 590053<br><br>062ffbf1fe8b4fe274f71df8bbf7969118bb5 297 | no | 22 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 13 | Reexam Miscellaneous Incoming Letter | US6292904_Broomhall.pdf | 294314<br><br>4917bea91c7d814e180abe20e9c909f13a5 d37d9 | no | 18 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 14 | Reexam Certificate of Service | 1555_CertificateofService1106 06.pdf | 74206<br><br>b27f64a1c0dbe94679fb43a66477dd0066 8c1fb | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 15 | Reexam Miscellaneous Incoming Letter | 1555_ReexamPowerofAttorney 110606.pdf | 279402<br><br>99235f3282b6cd9e4303671e5cf720db3d7 b668c | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 16 | Fee Worksheet (SB06) | fee-info.pdf | 29903<br><br>2190cfe5da5ffc7ed1da38f4255de190a31e 7fb0 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 14837871 | | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of June, 2011, copies of the attached Request for *Inter Partes* Reexamination of US Patent No. 7,249,372, was sent via United States Postal Service, first class mail, with adequate postage prepaid to:

McKee, Voorhees & Sease, PLC
801 Grand Avenue, Suite 3200
Des Moines, IA 50309-2721

and

Target Training International
17785 N. Pacesetter Way
Scottsdale, AZ 85255

By: _____
Geza C. Ziegler Jr.
Ziegler IP Law Group, LLC.
518 Riverside Avenue
Westport, CT 06880