IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TARGET TRAINING INTERNATIONAL, LTD., <br><br>     PLAINTIFF <br><br>   v. <br><br> EXTENDED DISC NORTH AMERICA, INC., <br><br>     DEFENDANT | Civil Action No. 4:10-cv-03350 <br><br><br> JURY TRIAL DEMANDED |

**EXTENDED DISC'S REPLY TO PLAINTIFF'S OPPOSITION TO EXTENDED DISC'S MOTION TO STAY LITIGATION IN VIEW OF REJECTION OF ALL ASSERTED CLAIMS AND IN VIEW OF COPENDING CASE AGAINST EDI**

## I.     INTRODUCTION

This case should be stayed until the reexamination of U.S. Patent 7,249,372 ("the '372 patent) has concluded.  TTI attempts to ignore the fact that the Examiner has <u>rejected all of the claims of the '372 patent</u> in view of the prior art identified in the reexamination request.  However, this is yet another significant step toward finding that the '372 patent in unpatentable and/or invalid.  The time and resources of the Court and the parties would be wasted if this litigation were to continue if the U.S. Patent and Trademark Office concludes that the '372 patent is invalid.

Likewise, the Court should grant EDNA's Motion to Stay under the "customer suit" exception pending the resolution of Target Training International, Ltd.'s ("TTI") new suit against Extended DISC International, Ltd. ("EDI").  This case and TTI's suit against EDI are presently pending in different courts.  At a minimum, this will result in significant duplication of effort by the Court and the parties and it is also very possible that different results would stem from both cases.  It is undisputed that EDI manufactures the products and services at issue in this case and therefore is the real-party-in-interest as Extended DISC North America, Inc. ("EDNA") is merely a reseller of EDI's products.  Accordingly, the "customer suit" exception applies in this case, therefore the Court should grant this Motion to Stay.

## II.     THIS CASE SHOULD BE STAYED PENDING THE COMPLETION OF THE REEXAMINATION OF THE '372 PATENT BECAUSE ALL THREE FACTORS FAVOR A STAY

In deciding whether to stay litigation pending reexamination, courts typically consider: "(1) whether a stay will cause undue prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether discovery is complete and whether a trial date has been set; and

(3) whether a stay will simplify the issues in question and trial of the case." *Cameras Onsite, LLC v. Digital Mgmt. Solutions, Inc.*, 2010 WL 1268054, *4 (S.D. Tex. Mar. 24, 2010).

### A.  There Is No Prejudice To TTI.

TTI argues that "it is hornbook law that each claim of a patent is presumed valid under 35 U.S.C. § 282 and may be enforced notwithstanding the presence of a pending reexamination proceeding"[1] in support of its opposition to EDNA's claim that the USPTO's rejection of all claims of the '372 patent supports its position of a stay of the case.  Notably, TTI fails to address the substantially probable outcome of the USPTO either amending or cancelling the claims of the '372 patent in reexamination.  While the '372 patent is presumed valid and may be enforced notwithstanding the presence of a pending reexamination, the parties would have to relitigate this dispute if the USPTO amends or cancels the claims of the '372 patent.  The recent Examiner's rejection of all claims of the '372 patent only further strengthens EDNA's position as to this factor.  EDNA would suffer undue prejudice if it were to relitigate this dispute.  In contrast, TTI would suffer no prejudice were this Court to grant the Motion to Stay.  This factor weighs in favor of a stay.

Undue prejudice would result if the stay would deprive the plaintiff of an adequate remedy at law. *See Broadcast Innovation, LLC v. Charter Comm., Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *10 (D. Colo. July 11, 2006) (summarizing the "undue prejudice" factor in terms of whether the nonmoving party retains an adequate remedy at law). Here, a stay of this suit pending reexamination will not result in undue prejudice to TTI.  TTI will not suffer prejudice because a stay would not obviate an adequate remedy at law.  If this litigation is stayed, TTI retains the ability to collect money damages for any proven infringement. *See Patlex*

---

[1] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 6).

*Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) (noting that damages for any infringement continue to accrue during the period of the stay).

In contrast to TTI, EDNA will likely be harmed if this litigation proceeds while the '372 patent is reexamined. First, if any of the asserted claims are either cancelled or amended during reexamination, EDNA (and this Court) will be burdened by needlessly litigating a dispute that is ultimately rendered moot by the reexamination. *See, e.g., In re Translogic Tech., Inc.*, 504 F.3d 1249, 1251, 1262 (Fed. Cir. 2007) (upholding the USPTO's determination in reexamination that patent was invalid for obviousness after judgment of infringement was entered against the defendant following a jury trial).   If claims are amended during the reexamination proceedings, this litigation will essentially have to restart, requiring ENDA (and this Court) to expend substantial further resources.

### B.  A Stay Will Simplify The Issues.

TTI argues that it has already produced all relevant responsive documents in its possession, custody or control.   TTI argues that discovery seems to be all but completed excluding scheduled depositions in mid-October.  EDNA expects additional discovery will be necessary following the depositions of TTI and the inventors of the'372 patent.  Notably, TTI fails to address EDNA's concern regarding the nature of the current reexamination as to discovery issues.  In the likely event that the claims of the '372 patent are either amended or canceled, more discovery would have to take place related to the result of the reexamination proceeding.  Future discovery would be wasteful and unnecessary if the Court does not grant a stay as the USPTO's position on validity and claim scope would "enable the parties and the court to focus discovery in a way that makes more efficient use of party and court resources as the case

proceeds." *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 997 F. Supp. 93, 95 (D. Mass. 1997).

As EDNA set forth in detail in its motion, a stay will simplify the issues for a number of significant reasons. First, all of the claims of the '372 patent have been rejected by the Examiner. The reexamination could dispose of all the issues in this case if TTI is unable to overcome these rejections. Even if it does not dispose of all claims, there is a significant likelihood that the claims will be amended, giving rise to intervening rights, which would have a substantial effect on damages, if any, in this case. Second, even if TTI is able to distinguish some of the cited prior art, the argument it makes in doing so will impact subsequent litigation. Any substantive changes made to the claims would preclude damages for the period prior to the issuance of a reexamination certificate. Each of these considerations taken individually is sufficient justification to stay this case. Taken together, it is compelling that a stay will simplify the issues in this case. Accordingly, this factor weighs in favor of a stay.

### C.  The Current Stage Of Discovery Favors A Stay.

Even if the '372 patent survives reexamination with a valid claim, there is a substantial likelihood that any such claim will include language or elements not present in the currently asserted claims. Thus, staying litigation pending reexamination ensures that the parties will be able to conduct discovery on all relevant issues relating to any claim surviving reexamination. On the other hand, if a stay is denied, there is a substantial risk that *both* parties' continued discovery efforts will be for naught. Accordingly, this factor weighs in favor of a stay.

III.    **THIS CASE SHOULD BE STAYED IN VIEW OF THE "CUSTOMER SUIT" EXCEPTION**

The "customer suit" exception reflects a preference in the law that infringement suits involve the parties directly responsible for bringing accused products to market, such as manufacturers or distributors, instead of their customers, who are only secondarily involved. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Thus, where a patent holder has sued the manufacturer as well as its reseller customers, it is preferable to stay the reseller claims while allowing the claims against manufacturers to proceed first. *See, e.g., Katz*, 909 F.2d at 1464 (affirming stay of proceeding against dealers pending resolution of proceeding against manufacturers); *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (holding that an appeal of a district court's order to stay claims against customers was frivolous).

A.    **The Customer Suit Exception Applies Here As There Is Current Litigation Against EDI.**

TTI argues that "[a]s an initial matter, the customer suit exception simply does not apply to this case. EDNA fails to address the requirement that the 'customer suit' must have been filed in a jurisdiction where the manufacturer was not amenable to suit."[2] TTI's unfounded prerequisite that the "customer suit" must have been filed in a jurisdiction where the manufacturer was not amenable to suit is not supported by case law. TTI fails to cite to any authority substantiating this claim.

---

[2] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 11).

The customer suit exception provides that, in certain patent cases, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 2011 WL 4454930, *6 (Fed. Cir. Sept. 26, 2011) (emphasis added) (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). The customer suit exception "is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Spread Spectrum Screening*, 2011 WL 4454930 at *7 (quoting *Kahn,* 889 F.2d at 1081); *see also Katz,* 909 F.2d at 1464 (noting that "the manufacturer is the true defendant in the customer suit" and that it "must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products") (citation omitted).

The customer suit exception applies here because there is current litigation against EDI, the manufacturer of the alleged infringing products. *See Target Training International, Ltd. v. Extended DISC International, Ltd.*; 4:11-cv-2531.

The Federal Circuit has recently dealt with this very issue. Litigation against the manufacturer of alleged infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. *Spread Spectrum Screening*, 2011 WL 4454930 at *6. Notably absent from the Federal Circuit's ruling in *Spread Spectrum Screening* was any mention of a prerequisite where the manufacturer was not amenable to suit.

**B.  EDNA Is A Mere Customer of EDI, Therefore The Claims Against EDNA Are Merely Peripheral To The EDI Suit.**

TTI argues that EDNA is not a mere customer of EDI as "the relationship between EDNA and EDI is more complex than a simple retailer such as Amazon.com or Wal-Mart."[3] TTI claims that EDNA has operated the alleged infringing software and sold the system independent of EDI.  TTI's statements directly contradict the facts in this case.  EDNA is a mere customer of EDI as EDNA "merely resells" the alleged infringing accused products manufactured by EDI.

EDNA is a mere customer because it has no upstream control of EDI's products.  Unlike resellers, "true defendants" to infringement have some upstream control over the accused products, either through designing and manufacturing the accused products, or by otherwise acting as the first link in the commercial chain, i.e. the upstream provider of the products. *See Microsoft Corp. v. Commonwealth Scientific & Industrial Research Org.*, 2007 WL 4376104, *2, (E.D. Tex. Dec. 2007).  Where a customer's allegedly infringing conduct consists solely of "the resale of products" purchased from an upstream provider, the claims against these customers are merely peripheral to an infringement suit. *See e.g., Shifferaw*, 2010 U.S. Dist. LEXIS 25612, *8 (E.D. Tex. Mar. 18, 2010).

The Federal Circuit in *Spread Spectrum Screening* addressed this issue as well. "Notably, in deciding to stay the case against the Kodak Customers, the district court did not apply the customer suit exception, and instead relied on Seventh Circuit case law in finding the Kodak Customers 'merely peripheral' to the litigation against Kodak." 2011 WL 4454930 at *8.

The Federal Circuit noted that the district court found that "because the customers 'merely use' the Kodak product, 'they have nothing substantive to offer during plaintiffs action against Kodak and likely do not even understand how the product software actually works and

---

[3] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 11).

will not be helpful to determine whether Kodak's Staccato product infringes the '623 patent.'" 2011 WL 4454930 at *3.  EDNA is directly similar to the Kodak customers in *Spread Spectrum Screening* and the retailers in *Shifferaw*.  Accordingly, the case against EDNA should be viewed as merely peripheral to the true defendant's case involving EDI.

### C. Adjudication Of The Second-Filed Suit Against EDI Will Dispose Of All The Major Issues Against EDNA.

TTI argues that EDNA and EDI are working together as EDNA "appears to complete the infringement by (1) performing and controlling the steps which result in infringement of the methods, and/or (2) combining the software provided by EDI with other components to create infringing systems."[4]  TTI argues that "because EDI and EDNA allegedly work together to accomplish infringement, a finding of non-infringement on the part of EDI would not relieve EDNA from liability."[5]  However, neither TTI's pleadings nor its infringement contentions support TTI's new joint infringement allegations.  TTI's attempt to create an issue from whole cloth is not sufficient to overcome Federal Circuit case law establishing that this case should be stayed in favor of the EDI case.

In addition and contrary to TTI's claims, a court may find that adjudication against manufacturers will dispose of the major issues where the claims alleged against both manufacturers and customers read identically. *See Ultra Products., Inc. v. Best Buy Co.*, 2009 U.S. Dist. LEXIS 78678 at *17-18 (D.N.J. 2009).  The court does not have to resolve all of the issues as to the customer, but only the primary issues of infringement as to the manufacturer. *Id.*

Further, TTI argues that "EDNA has not alleged that EDI is providing any indemnification nor has EDNA agreed to be bound by the results of the EDI litigation."[6]  EDNA

---

[4] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 13).
[5] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 12).
[6] TTI's Brief in Opposition to EDNA's Motion to Stay (Dkt. No. 118 at pg. 13).

is not required to do either of these tasks in order for the adjudication against EDI to dispose of all major issues against EDNA.   Adjudication of the EDI case is sufficient as not all issues as to EDNA must be fully resolved.

Like the Kodak customers in *Spread Spectrum Screening*, EDNA should not have to "take the lead" in these concurrent litigations.  Adjudication of the EDI case would dispose of all of the major issues against EDNA.  Accordingly, this case should be stayed pending adjudication of TTI's case against EDI.

## IV.   CONCLUSION

For at least the foregoing reasons, this Court should grant EDNA's motion to stay this action pending the outcome of the reexamination of the '372 patent to promote judicial economy. Likewise, this Court should grant EDNA's motion to stay this action pursuant to the "customer suit" exception because TTI's claims against EDNA are merely peripheral to those against EDI, and adjudication of the EDI case would dispose of all of the major issues as to this case.


October 3, 2011                                      Respectfully submitted,

                                                     By: /s/ Stephen F. Schlather
                                                     Stephen F. Schlather – LEAD COUNSEL
                                                     Texas Bar No. 24007993
                                                     John J. Edmonds
                                                     Texas Bar No. 789758
                                                     COLLINS, EDMONDS & POGORZELSKI,
                                                     PLLC
                                                     1616 S. Voss Rd., Suite 125
                                                     Houston, Texas 77057
                                                     Telephone: (281) 501-3425
                                                     Facsimile: (832) 415-2535
                                                     sschlather@cepiplaw.com
                                                     jedmonds@cepiplaw.com

                                                     ATTORNEYS FOR DEFENDANT
                                                     EXTENDED DISC NORTH AMERICA, INC

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have been served with this document via e-mail.

October 3, 2011

/s/ *Stephen F. Schlather*
Stephen F. Schlather