## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TARGET TRAINING INTERNATIONAL, LTD., | ) ) ) | Civil Action No. 4:10-cv-03350 |
| Plaintiff, | ) ) ) | Judge Kenneth M. Hoyt |
| v. | ) ) | |
| EXTENDED DISC NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF TARGET TRAINING INTERNATIONAL, LTD.'S OPPOSITION TO EXTENDED DISC NORTH AMERICA'S RENEWED MOTION TO STAY LITIGATION PENDING REEXAMINATION IN VIEW OF FINAL REJECTION OF ALL ASSERTED CLAIMS (DOCKET NO. 160)

## TABLE OF CONTENTS

I.    **ISSUE PRESENTED**...................................................................................................... 2

II.   STATEMENT OF THE LAW ...................................................................................... 2

III.   **ANY SIMPLIFICATION OF THE ISSUES IS OUTWEIGHED BY THE RESULTANT PREJUDICE TO TTI**.......................................................................... 3

  A.  **The Reexamination Involves Different References than those Raised by EDNA** ........ 3

     1.  The Reexamination Employs Different Presumptions than are to be Applied in Litigation ...................................................................................................... 4

     2.  Denial of a Stay will Bring About a Faster Resolution of All Issues.............................. 5

  B.  **The Current Stage of Litigation Greatly Amplifies the Prejudice to TTI**................... 6

     1.  The Case Law Cited by EDNA does not Support the Premise that Stays are Routinely Granted late in Litigation............................................................................. 7

     2.  A Stay would Greatly Prejudice TTI.......................................................................... 9

  C.  **EDNA Mischaracterizes the Reexamination** ................................................................ 10

     1.  TTI has Provided the Examiner with the Additional Information Requested............... 11

     2.  This Case will be Completed Long Before the Reexamination is Complete................. 11

     3.  The Patent Office is Likely to be Reversed on Appeal .................................................. 12

IV.  **CONCLUSION** ............................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647 (E.D. Tex. 2009) .................. 1, 2, 6, 7, 13

*Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS 2926 (N.D. Ill. Mar. 15, 1990) ........ 7

*Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed. Cir. 1991) ..................................... 6

*Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983) .................................... 8

*Graham v. John Deere Co.*, 383 U.S. 1 (1996) ......................................................... 13

*Hemstreet v. Spiegel, Inc.*, 851 F.2d 348 (Fed. Cir. 1988) ........................................... 6

*In re Etter*, 756 F.2d 852 (Fed. Cir. 1985) .......................................................... 3, 4

*Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886 (W.D. Okla 1985) ............. 8

*Middleton, Inc. v. Minn. Mining & Mfg.*, 2004 U.S. Dist. LEXIS 16812
 (S.D. Iowa Aug. 24, 2004) ..................................................................... 7, 8

*Motson v. Franklin Covey Co.*, 2005 U.S. Dist. LEXIS 34067 (D.N.J. Dec. 16, 2005) ................ 8

*Parallel Networks, LLC v. Microsoft Corp.*, 2:09-cv-00172-DF (E.D. Tex., May 10, 2010) .... 1, 2

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 225 U.S.P.Q. (BNA) 243 (Fed. Cir. 1985) ............. 2

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................ 10

*Robert H. Harris Co. v. Metal Mfg. Co.*, 1991 U.S. Dist. LEXIS 16086
 (E.D. Ark. June 20, 1991) ..................................................................... 8

*Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274 (S.D.N.Y. Aug.
 9, 2000) ....................................................................................... 8

**STATUTES**

35 U.S.C. § 282 .................................................................................. 1, 3

**OTHER AUTHORITIES**

MPEP § 2242 ....................................................................................... 5

MPEP § 2272 ...................................................................................... 10

MPEP § 2286 ....................................................................................... 5

Robert Greene Sterne et al., *Appeals from the Central Reexamination Unit*,
  presented at the 5th Annual Advanced Patent Law Institute, Univ. of Texas
  Law School (2010)...................................................................................................... 12

Table 3.1, U.S. Court of Appeals for the Federal Circuit—Appeals Filed, Terminated, and
  Pending,
  http://www.uscourts.gov/uscourts/Statistics/JudicialFactsAndFigures/2010/Table301.pdf. ... 13

Extended DISC North America (EDNA) has now filed its fourth Motion to Stay these proceedings.  Despite EDNA's attempt to cloud the issue, by statute Target Training International's (TTI's) patent is presumed valid and fully enforceable.  35 U.S.C. § 282.  As such, EDNA must meet its burden and make a showing that a stay is necessary.  *BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009).  In so doing, EDNA must go beyond generic arguments and instead show that the specific issues in the case favor a stay.  *Parallel Networks, LLC v. Microsoft Corp.*, 2:09-cv-00172-DF (E.D. Tex., May 10, 2010).  Here, as in its three prior motions, EDNA ignores the specific facts of the case and instead relies upon generic arguments that a "final" office action has been issued coupled with case law which does not support EDNA's position.  Importantly discovery has now closed with two depositions left to take out of time.

In this case, as set forth in more detail below, the facts strongly weigh against a stay.  The reexamination is addressing a different combination of references than at issue in this case, a situation which resulted from EDNA's failure to exercise diligence in developing its invalidity contentions.  (*See* Dkt. No. 129.)  Further, issuing a stay would have the effect of rendering the extensive discovery, including the expense and effort to obtain EDI's testimony in Finland, worthless and would reward EDI for its sudden and extended unavailability on the eve of its deposition.  Also, granting a stay would ignore the Patent Office's apparent invitation for a greater evidentiary showing regarding TTI's declaration of prior inventorship, which if accepted removes all references but one (a showing which TTI has recently filed with the Patent Office).

Simply put, this Court is in a position to finally determine all issues between the parties in a matter of months.  EDNA offers nothing but stock arguments in an attempt to draw this matter out for years in piecemeal administrative proceedings.  EDNA's stay will not promote

1

judicial efficiency, will not foster settlement and will greatly prejudice TTI.  As a result, TTI

respectfully requests that EDNA's Fourth Motion to Stay be Denied.

## I.      ISSUE PRESENTED

Should this Court grant a fourth motion to stay pending reexamination where the movant

has offered little more than stock arguments and has failed to address the key facts within a case

where discovery has now been completed?

## II.     STATEMENT OF THE LAW

The granting of a stay is within a district court's discretion.  *Patlex Corp. v. Mossinghoff*,

758 F.2d 594, 225 U.S.P.Q. (BNA) 243 (Fed. Cir. 1985).  Unless a movant demonstrates a stay is

necessary, it is entirely proper for litigation and reexamination to proceed concurrently.  *BarTex*

*Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009) (citations omitted).  In

order to sustain its burden, EDNA must address three factors.  Namely, "1) whether a stay will

unduly prejudice or present clear tactical disadvantage to the nonmoving party, 2) whether a stay

will simplify the issues in question and the trial of the case, and 3) whether discovery is complete

and whether a trial date has been set."  *BarTex Research*, 611 F. Supp. 2d at 649–50 (citations

omitted).  This showing must be made through more than generic arguments.  *Parallel Networks,*

*LLC v. Microsoft Corp.*, 2:09-cv-00172-DF (E.D. Tex. May 10, 2010).

Here, EDNA fails to even provide the Court with re-examination statistics and instead

relies upon generic judicial efficiency arguments.  However, EDNA's arguments fail to take the

case-specific facts into account.  When the facts of this case are properly considered, it becomes

clear that a stay would prejudice TTI and needlessly string out resolution of the matter while

allowing EDNA to effectively rewrite its invalidity contentions.

**III.     ANY SIMPLIFICATION OF THE ISSUES IS OUTWEIGHED BY THE RESULTANT PREJUDICE TO TTI**

EDNA argues that a stay is needed to avoid contradictory findings as to the '372 patent's validity.  (Docket 160, p. 7).  EDNA's argument is based on the false premise that the Court and the Patent Office must reach the same determination regarding the validity of the '372 patent.  However, there are different standards to contend with, and there are significant differences between the arguments before the Patent Office and the arguments in front of this Court.  As an initial matter, each proceeding involves a different set of prior art.  Also, the standards are different between the two forums—in front of this Court the patent enjoys a presumption of validity (35 U.S.C. § 282), which is not applied in reexamination (*In re Etter*, 756 F.2d 852, 855–56 (Fed. Cir. 1985)).  EDNA should not be allowed to use the reexamination to take a second bite at the validity apple.

**A.     The Reexamination Involves Different References than those Raised by EDNA**

EDNA fails to even mention that there are significant differences between the references under consideration in the reexamination.  EDNA's invalidity contentions include International Publication PO 99/33016 ("Wong") and an allegation that its use of the Extended DISC System invalidates the '372 patent.  The reexamination includes U.S. Patent 6,112,049 ("Sonnenfeld").  The only common references include two patents to Lacy and an international publication to Teknekron, each of which the Patent Office may find are not legally valid prior art by way of a Rule 131 proof of earlier invention process.

These differences are significant since the Patent Office has invited further proofs of invention.  This would leave only the Sonnenfeld reference (which is distinguished on other grounds).  Because Sonnenfeld was not included in EDNA's invalidity contentions, TTI may be

able to antedate all of the references EDNA has cited against the '372 patent.  EDNA appears to have recognized this problem and filed an untimely motion seeking to add Sonnenfeld to its invalidity contentions—this Court denied EDNA's request.  (Docket 117 and Docket 129).  Now EDNA is attempting to use the reexamination in order to make up for the shortcomings in its invalidity contentions which resulted from EDNA's failure to diligently assemble its invalidity contentions.  EDNA should not be allowed to use reexamination to commit an end-run around this Court's rules for patent cases.

        1.    <u>The Reexamination Employs Different Presumptions than are to be Applied in Litigation</u>

EDNA argues that "[a] stay of this case will not put TTI at a clear tactical disadvantage" and seeks to portray this litigation as complete duplication of the reexamination.  (Docket 160, p. 7).  However, before this Court the '372 patent is presumed valid and the claims are construed so as to sustain their validity—in the reexamination proceeding neither of these principles are applied.  *In re Etter*, 756 F.2d 852, 862 (Fed. Cir. 1985) (Neis, J., concurring).  In so concluding, Judge Neis, in a concurring opinion, expressed concern that the different standards create a situation where "the obvious strategy of an infringer would be to force the patentee back to the PTO where the patentee's presumptive advantage, as well as claim construction advantage, is eliminated."  *Id.*  The attractiveness of this strategy of delay is even greater where, as here, EDNA's invalidity contentions are clearly inadequate.

Further, EDNA has resisted legitimate discovery at almost every turn and has likely caused the need to adjust the dispositive motion deadlines as well as the trial date.  By stalling the resolution of this matter, EDNA attempts to shift the validity analysis to a reference it failed to raise in a forum considerably less favorable to TTI.  EDNA attempts to justify this result by arguing that concurrent proceedings may create "conflicting" rulings between the Patent Office

and this Court.  (Docket 160, p. 7).  Simply put there is no "conflict" where two different proceedings apply different standards, consider different facts and reach independent conclusions.  Indeed, if EDNA's argument was carried to its logical conclusion, no court could ever rule on a patent matter because some later court might come along and create a subsequently "conflicting" ruling.  The Patent Office is to give proper deference to the findings of fact of an earlier Article III court ruling between the parties.  *See* Manual of Patent Examining Procedure (hereinafter "MPEP") § 2286.

2.      Denial of a Stay will Bring About a Faster Resolution of All Issues

EDNA claims that the reexamination has the potential to make further efforts in this case a waste of time.  (Docket 160, p. 8).  However, EDNA's Motion to Stay ignores the fact that well established procedures enable litigation and reexamination to proceed at the same time with no loss of efficiency.

The Patent Office is well-equipped to handle the results from litigation concerning a patent subject to reexamination.  Indeed, the Patent Office even devotes a portion of its operating procedures to addressing the impact of judicial determinations during reexamination.  Under these rules, if this Court determines that the '372 patent is valid, then the Patent Office may accord deference to the factual findings made by the court.  MPEP § 2242.  If, assuming for the sake of argument that this Court finds the patent invalid, then the Patent Office will terminate the reexamination proceeding.  *Id.*

If EDNA's motion is denied, it is almost certain that this Court will enter judgment well before conclusion of the reexamination.  Trial is scheduled for June.  (Dkt. No. 23.)  However, TTI has moved to extend the date for trial on the merits so as to be completed by July or August as EDI—a necessary deponent—expressed a sudden unavailability for its deposition.  (Dkt. No.

5

163.)  Even the extended date of trial is well before the reexamination will terminate.  Once a

final judgment is entered, it is treated like any other final judgment by a court, the reexamination

will not change this Court's work nor will it change any awards of past damages.[1]  *See Foster v.*

*Hallco Mfg. Co., Inc.*, 947 F.2d 469, 474–83 (Fed. Cir. 1991); *Hemstreet v. Spiegel, Inc.*, 851

F.2d 348, 351 (Fed. Cir. 1988).  Given the above, it simply does not make sense to wait for a

piecemeal resolution of the issues when proceeding with the case will resolve all issues within

the next six to eight months—including the issues of infringement and the alleged prior use of

the Extended DISC system which are not before the Patent Office.  Simply put, denial of a stay

will result in final resolution of all issues in this case within six to eight months.  In contrast,

granting the stay would prejudice TTI by causing piecemeal resolution of the issues before this

Court over a needlessly protracted period of time that could be two years from resolution.

### B.    The Current Stage of Litigation Greatly Amplifies the Prejudice to TTI

Even EDNA admits that "this case has progressed substantially."  (Docket 160, p. 5).

Indeed, with the exception of a deposition of one of TTI's employees (which will be completed

on February 2, 2012) and the deposition of EDI (which, absent the sudden unavailability of EDI,

would have been completed prior to February 15, 2012) all discovery in this case is completed.

Under the three factor test, the fact that discovery is complete and a trial date set weighs against

the grant of a stay.  *BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 649–50 (E.D. Tex.

2009).

Rather than address the late stage of the case directly, EDNA provides a string cite to six

cases followed by an unsupported assertion that "[t]he primary reason that courts appear to deny

---

[1] The only portion of the judgment which might be impacted would be prospective relief
(ongoing royalties or an injunction) either of which would cease upon a finding of validity in any
future proceeding.

stays late in a case is because the moving party was not diligent in seeking a stay."  (Docket 160, p. 6).  The cases cited by EDNA do not support its contention regarding diligence of the moving party being a factor (which, coincidently, is also not listed as part of the *BarTex Research* factors).  Further, the cases are factually distinguishable from the present case.

Instead, the case law supports the conclusion that a procedurally advanced case is a very strong reason not to grant a motion to stay.  *Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS 2926 at *3 (N.D. Ill. Mar. 15, 1990) ("Most compelling, however, is the fact that discovery here is almost completed and the case is set for trial.").  Indeed, even EDNA's own case law notes that "[a]t least one court found that the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial of a motion to stay pending reexamination by the PTO."  *Middleton, Inc. v. Minn. Mining & Mfg.*, 2004 U.S. Dist. LEXIS 16812 at *18–19 (S.D. Iowa Aug. 24, 2004).  As in these cases, the case at bar is likewise "too far along the road to justify halting the journey while the defendant explores an alternate route."  *Enprotech Corp. v. Autotech Corp.*, 1990 U.S. Dist. LEXIS 2926 at *3 (N.D. Ill. Mar. 15, 1990).  Here, in addition to needlessly delaying ultimate resolution of this matter, granting the stay would render the extensive discovery (in particular, the effort and expense related to the Finland depositions) worthless.

           1.      <u>The Case Law Cited by EDNA does not Support the Premise that Stays are Routinely Granted late in Litigation</u>

Turning to the support cited by EDNA, half of the cases cited by EDNA do not seem to support its position that a stay should be granted regardless of the procedural posture of the case. *Gould v. Control Laser Corp.*, does not appear to contain any language in support of EDNA's assertion that the Federal Circuit granted a "motion to stay proceedings that were five years into litigation and twenty days before scheduled trial date" but instead seems to stand for the

proposition that an order granting a motion to stay is not immediately appealable.  705 F.2d

1340, 1341 (Fed. Cir. 1983).   Two of the other cases relied on by EDNA do not support EDNA's

premise as they reflect situations where, unlike here, discovery was not very advanced.  *Softview

Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274 at *9 (S.D.N.Y. Aug. 9,

2000) (noting that discovery was not yet completed and *Markman* hearing had not been held);

*Robert H. Harris Co. v. Metal Mfg. Co.*, 1991 U.S. Dist. LEXIS 16086 at *9 (E.D. Ark. June 20,

1991) (noting that the parties had not engaged in expensive discovery).

        EDNA's remaining three cases are factually distinguishable from the present case.  One is

of limited use as it was not seriously contested by the patent holder.  *Motson v. Franklin Covey

Co.*, 2005 U.S. Dist. LEXIS 34067 (D.N.J. Dec. 16, 2005) (patent holder filed a two page brief in

opposition generally alleging that the reexamination request was dilatory and premature).  One

involved a situation where there was no prejudice to the patent holder because, unlike the present

case, the patent holder did not market or sell the patented inventions.  *Middleton, Inc. v. Minn.

Mining & Mfg.*, 2004 U.S. Dist. LEXIS 16812 at *31 (S.D. Iowa Aug. 24, 2004) ("At present

Middleton is not, however, selling or marketing products under its patent . . . and thus has no

market to protect.")  The final case addresses a situation where the stay had been effectively

granted much earlier in the case "because the extremely heavy case load in this district provides

an automatic stay."  *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887

(W.D. Okla 1985).

        Indeed, if anything can be taken from EDNA's string of case citations, it is that a case

which is procedurally advanced weighs heavily against a stay such that some mitigating factor

should be found in order to justify stopping a case at such a late date.  *See, e.g,. Middleton, Inc.

v. Minn. Mining & Mfg.*, 2004 U.S. Dist. LEXIS 16812 at *31 (S.D. Iowa Aug. 24, 2004) (noting

that lack of competition mitigates prejudice to patentee from stay as money damages will be adequate). Here, EDNA ignores the specific considerations in the instant case and offers nothing more than stock arguments coupled with contraindicative case law in its fourth motion to stay.

### 2. A Stay would Greatly Prejudice TTI

At present, this case is within months of a final judgment which will resolve all issues between the parties. The parties have invested considerable time and effort in discovery, and TTI has been forced to spend considerable resources in order to obtain the testimony of EDI in Finland. Granting a stay would render TTI's efforts in Finland worthless as TTI would have to start the whole process again once the stay was lifted. A stay would also delay resolution of this entire dispute in favor of an administrative proceeding which will not address the issue of infringement and EDNA's claim that its systems anticipate the '372 patent. Finally, a stay would allow EDNA to use procedural wrangling in order to rely on references it failed to include in its invalidity contentions.

EDNA claims that "[c]ontinuing with this case creates the risk that further work done by the parties and by the Court will be a nullity." (Docket 160, p. 8) However, issuing a stay will nullify the work done by this Court, the parties and the courts of Finland regarding the deposition of EDI. TTI has invested considerable effort and resources into obtaining the testimony of EDI in Finland which has included translation fees, retaining foreign counsel and working through two separate court systems. Similarly, the courts of Finland have worked hard to execute the letters and take the necessary actions. Unfortunately, EDNA's refusal to cooperate in the process has already resulted in unnecessary motion practice before this court. As detailed in TTI's other briefing in this case, the deposition was likely to be completed by February 15, 2012. Shortly after the parties had agreed to permit completion of the EDI deposition within that timeframe,

EDI suddenly became unavailable.  If the Court were to grant a stay of this case, all of this effort and expense would be for naught as everyone involved would be forced to perform the entire process again once the stay was lifted.  This prejudices TTI and also cuts strongly against EDNA's judicial efficiency arguments.

C.        **EDNA Mischaracterizes the Reexamination**

EDNA characterizes the '372 patent as being "on its last leg" and "on life support, at best."  (Docket 160, pp.3 and 6).  Although rich in hyperbole, EDNA's characterizations represent a selective reading of the office action and a fundamental lack of understanding regarding the patent prosecution and reexamination process.  The fact of the matter is that patent prosecution represents "an ongoing negotiation between the PTO and the applicant . . . ."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).  As such, a "final" office examination is not truly the end of the matter.  Even EDNA acknowledges that the reexamination is not over as "TTI may still appeal the PTO's final rejection."  Further, EDNA completely ignores TTI's ability to file an amendment after final rejection.  (Docket 160, p. 3); MPEP § 2272 (hereinafter "MPEP").  This omission is particularly important where, as here, the Examiner appears to have invited just such an amendment, which has now been filed.

When the facts are considered, the issuance of the latest office action does not significantly change the situation from the last three times this Court denied EDNA's motions to stay.  First, TTI has provided the Examiner with additional information which addresses the issues raised in the last office action.  Second, this case will still resolve itself before conclusion of the reexamination which is on a multi-year path to completion.  Third, it is highly likely that many, if not all, of the rejections as they presently stand would be reversed on appeal.

     1.    <u>TTI has Provided the Examiner with the Additional Information Requested</u>

While EDNA makes much of the Examiner's initial rejection of TTI's declaration of prior inventorship, EDNA ignores an important quote from the office action.  Specifically, the Examiner stated "the evidence and declaration provided are insufficient to show conception of the invention of the claims 1–11 **at this time**." (Docket 160-3, p. 6) (emphasis added).  Based on the Examiner's comments, it appears that the Examiner is inviting an amendment after final to address the issues raised concerning the declaration.

In its original amendment, TTI filed a declaration of prior inventorship patterned after the two declarations which were accepted by the Patent Office during earlier prosecution.  (Docket 160-3, p. 60).  Because the prior showings were adequate, TTI did not believe that it needed to make a greater evidentiary showing in the reexamination.  However, the Examiner completely disregarded these prior declarations based on nothing more than a "cursory review."  (Docket 160-3, p. 60).

Although EDNA claims that the final rejection came "despite TTI's best arguments submitted in an attempt to maintain patentability," EDNA knows full well that TTI has more than 200 documents not previously submitted to the Patent Office which support TTI's claim of prior inventorship.  TTI has now submitted an amendment after final which provides the additional evidence and analysis requested by the Examiner.  In light of the additional showing, TTI believes it is likely to prevail in the reexamination.

     2.    <u>This Case will be Completed Long Before the Reexamination is Complete</u>

EDNA also makes light of TTI's originally projected timelines for the reexamination.  (Docket 160, p. 3).  For example, EDNA states that TTI's projections have proven "untrue" and claims that "the process has taken less than one year from filing to final rejection." (Docket 160,

p. 3).  Despite EDNA's rhetoric, it is worth noting that the reexamination proper is not yet concluded.  To date, we are more than one year into the reexamination and it is likely that prosecution will be reopened in light of the additional evidence submitted by TTI.

Further, there is still a significant amount of time between ultimate conclusion of negotiation with the Examiner (which has not yet occurred) and the docketing of the appeal.  The median time from Notice of Appeal to docketing of the appeal is between 18–20 months.  Robert Greene Sterne et al., *Appeals from the Central Reexamination Unit*, at 6, presented at the 5th Annual Advanced Patent Law Institute, Univ. of Texas Law School (2010) (hereinafter "Sterne et al.").  The time from docketing to decision is between 4.5 and 6.5 months.  *Id.*  Subsequent appeal to the Federal Circuit would extend this timeline even further.

All told, assuming that the amendment after final is not entered, the reexamination is still likely to go for an additional two years.  Even with the delay caused by EDI and EDNA's efforts to avoid depositions in Finland, judgment in this matter will have been entered and any appeal likely terminated long before the Patent Office has issued a reexamination certificate concluding the reexamination.

3.    The Patent Office is Likely to be Reversed on Appeal

EDNA also attempts to overplay the certainty of a final office action and goes so far as to say "the changes of that being reversed on appeal are slim."  (Docket 160, 1).  Again, EDNA's rhetoric fails to match the facts.  Across all reexaminations, the Board of Patent Appeals and Interferences reverses the Patent Office (at least in part) 37% of the time.  Sterne et al. at 26.  Considering ex parte reexaminations only, the reversal rate is 35% of the time.  *Id.*  By way of comparison, this is nearly three times the reversal rate of the Federal Circuit Court of Appeals.  Table 3.1, U.S. Court of Appeals for the Federal Circuit—Appeals Filed, Terminated, and

Pending,

http://www.uscourts.gov/uscourts/Statistics/JudicialFactsAndFigures/2010/Table301.pdf.

Additionally, this reversal rate does not take into consideration reversals at the next level of

appeal—the Federal Circuit.

       Considering the facts of the current reexamination, it appears highly likely that the Patent

Office would be reversed as it has committed multiple errors in the reexamination.  As an initial

matter, the Patent Office (without providing any justification) completely disregarded two

declarations of prior inventorship that it had previously accepted.  (Docket 160-3, p. 60)

Secondly, the Patent Office completely failed to consider any secondary considerations of non-

obviousness in direct contradiction to controlling case law.  (Docket 160-3, p. 65); *see also*

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1996); MPEP § 2141 ("Objective evidence

relevant to the issue of obviousness must be evaluated by Office personnel. Such evidence[] [is]

sometimes referred to as 'secondary considerations.'" (citing *Graham*, 383 U.S. at 17–18).

Simply put, the latest office action is not the last word concerning the validity of the '372 patent.

## IV.   CONCLUSION

       For the reasons set forth above, TTI respectfully requests that EDNA's fourth Motion to

Stay be denied.

Respectfully submitted,


/s/ R. Scott Johnson
Edmund J. Sease
R. Scott Johnson
Bradley J. Powers
McKEE, VOORHEES & SEASE, P.L.C.
801 Grand Avenue, Suite 3200
Des Moines, IA 50309-2721
Phone:  515-288-3667
Fax:  515-288-1338
Email:  sease@ipmvs.com
Email:  scott.johnson@ipmvs.com
Email:  brad.powers@ipmvs.com
Email:  mvslit@ipmvs.com

Michael E. Wilson
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, TX  77010
Phone:  713-651-5420
Fax:  713-651-5246
Email:  mikewilson@fulbright.com

***ATTORNEYS FOR PLAINTIFF TARGET
TRAINING INTERNATIONAL, LTD.***

14

I hereby certify that on February 1, 2012, I filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Stephen F. Schlather
John J. Edmonds
Joshua B. Long
Collins, Edmonds & Pogorzelski, PLLC
1616 S. Voss Rd., Suite 125
Houston, TX 77057
Phone:  (281) 501-3425
Fax:  (832) 415-2535
Email:  sschlather@cepiplaw.com
Email:  jedmonds@cepiplaw.com

/s/ R. Scott Johnson

15